Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )<br>) | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | )<br>)<br>) | Case No. 22-10964 (___) |
| Debtors. | )<br>) | (Joint Administration Requested) |

## DEBTORS' MOTION SEEKING ENTRY OF
## INTERIM AND FINAL ORDERS (I) AUTHORIZING THE PAYMENT
## OF CERTAIN TAXES AND FEES AND (II) GRANTED RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

### Relief Requested

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

(a) authorizing the Debtors to remit and pay (or use applicable tax credits to offset) Taxes and Fees

(as defined herein) in the ordinary course of business that are payable or become payable during

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

these chapter 11 cases (including any obligations subsequently determined upon audit or otherwise to be owed for periods prior to the Petition Date); and (b) granting related relief. In addition, the Debtors request that the Court (as defined herein) schedule a final hearing in approximately 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

### Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which

users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius employs a global workforce of approximately 670 employees and has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6.    On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration"), both filed contemporaneously with this Motion and incorporated by reference herein.[2] As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

7.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrent with the filing of this Motion, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

**Taxes and Fees**

8.    In the ordinary course of business, the Debtors collect, withhold, incur, and/or pay sales and use taxes, value added taxes, income taxes, customs and import duties, as well as other governmental taxes, fees, and assessments, and may pay property taxes (collectively, the "Taxes and Fees").[3]  The Debtors pay or remit, as applicable, Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities (each, a "Taxing Authority," and collectively, the "Taxing Authorities") on a periodic basis (monthly, quarterly, semi-annually, or annually) depending on the nature and incurrence of a particular Tax or Fee and as required by applicable laws and regulations.   A schedule identifying the Taxing Authorities is attached hereto as **Exhibit C**.[4]  The Debtors generally pay and remit Taxes and Fees through checks and electronic transfers that are processed through their banks and other financial institutions or service providers.  From time to time, the Debtors may also receive tax credits for overpayments or refunds with respect to certain Taxes or Fees.  The Debtors generally use these credits in the ordinary course of business to offset against future Taxes or Fees, or have the amount of such credits refunded to the Debtors.

9.    Additionally, the Debtors may become subject to routine audit investigations on account of tax returns and/or tax obligations in respect of prior years ("Audits") during these chapter 11 cases.  Audits may result in additional prepetition Taxes and Fees being assessed against

---

[3]    This Motion does not seek relief with respect to the Debtors' collection and remittance of employee-related taxes and withholdings, which are instead addressed in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

[4]    Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Taxing Authorities from **Exhibit C**.  The Debtors request relief with respect to Taxes and Fees payable to all Taxing Authorities, regardless of whether such Taxing Authority is specifically identified in **Exhibit C**.

the Debtors (such additional Taxes and Fees, "<u>Assessments</u>").[5]  The Debtors seek authority to pay

or remit tax obligations on account of the Audits as they arise in the ordinary course of the Debtors'

business, including as a result of any resolutions of issues addressed in an Audit.

10.    The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, typically

remitting them monthly, quarterly, and annually depending on the nature and incurrence of a

particular Tax or Fee.  The Debtors seek authority to pay and remit all prepetition and postpetition

obligations on account of Taxes and Fees, including where:  (a) Taxes and Fees accrue or are

incurred postpetition; (b) Taxes and Fees have accrued or were incurred prepetition but were not

paid prepetition, or were paid in an amount less than actually owed; (c) payments made prepetition

by the Debtors were lost or otherwise not received in full by any of the Taxing Authorities; and

(d) Taxes and Fees incurred for prepetition periods become due and payable after the

commencement of these chapter 11 cases.  In addition, for the avoidance of doubt, the Debtors

seek authority to pay Taxes and Fees for so-called "straddle" periods.[6]

11.    Any failure by the Debtors to pay the Taxes and Fees could materially disrupt the

Debtors' business operations in several ways, including (but not limited to):  (a) the Taxing

Authorities may initiate audits of the Debtors, which would unnecessarily divert the

Debtors' attention from these chapter 11 cases; (b) the Taxing Authorities may attempt to suspend

the Debtors' operations, file liens, seek to lift the automatic stay, and/or pursue other remedies that

will harm the estates; and (c) in certain instances, the Debtors' directors and officers could be

---

[5]    Nothing in this Motion, or any related order, constitutes or should be construed as an admission of liability by the
Debtors with respect to any Audit or Assessment.  The Debtors expressly reserve all rights with respect to any
Audit and the right to contest any Assessments claimed to be due as a result of any Audit.

[6]    The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and
to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative priority
treatment.

subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' restructuring. Taxes and Fees not paid on the due date as required by law may result in fines and penalties, the accrual of interest, or both. The Debtors also collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Taxing Authorities, and these funds may not constitute property of the Debtors' estates. Accordingly, the Debtors seek authority to pay, in their reasonable discretion, the Taxes and Fees in the ordinary course as they become due.

12.    The Debtors estimate that approximately $22.0 million in Taxes and Fees is outstanding as of the Petition Date:[7]

| Category | Description | Approximate Total Amount Accrued and Unpaid as of Petition Date | Approximate Amount Due During Interim Period |
|---|---|---|---|
| Income Taxes | Income taxes incurred in the ordinary course of business based on the jurisdictions in which the Debtors do business, payable on an annual basis. | $321,000 | $0 |
| Sales, Use, and VAT Taxes | Taxes on goods and services sold or used, assessed based on the value of such goods and services, generally payable on a monthly basis. | $20.2 million | $0 |
| Property Taxes | Taxes related to real and personal property holdings, generally payable on an annual basis. | $0 | $0 |
| Customs and Import Duties | Taxes imposed on the Debtors for importing goods into a particular jurisdiction from outside that jurisdiction. | $1.5 million | $1.5 million |
| Regulatory and Other Taxes and Fees | Taxes and Fees related to compliance with regulations, franchise taxes, and other miscellaneous taxes and fees, including periodic licensing, permitting, reporting, and similar requirements, payable on a monthly, quarterly, or annual basis, depending on the specific Tax or Fee. | $7,200 | $0 |
| **Total** | | **$22.0 million** | **$1.5 million** |

---

[7]    The Debtors cannot predict the amounts of any potential Assessments that may result from Audits, if any. Accordingly, the Debtors' estimate of outstanding Taxes and Fees as of the Petition Date does not include any amounts relating to potential Assessments.

I.    **Income Taxes**.

13.    The Debtors incur and are required to pay various state, local, and federal income taxes in the United States and certain income taxes in foreign jurisdictions where the Debtors operate (collectively, the "Income Taxes").  The Debtors generally remit Income Taxes on an annual basis.  In 2021, the Debtors paid approximately $1.6 million in aggregate Income Taxes to the Taxing Authorities.  As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $321,000 in Income Taxes that have not been remitted to the relevant Taxing Authorities.  The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Income Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

II.    **Sales, Use, and VAT Taxes**.

14.    The Debtors incur, collect, and remit sales and use taxes, to the Taxing Authorities in connection with the sale, purchase, and use of goods and services (the "Sales and Use Taxes"), and certain value added taxes (the "VAT Taxes" and, together with the Sales and Use Taxes, the "Sales, Use, and VAT Taxes").  Certain of the Debtors' operations have given rise to VAT Taxes in the United Kingdom.  The Debtors routinely acquire new mining equipment (the "Mining Rigs") for their cryptocurrency mining business and incur Sales and Use Taxes in connection with the acquisition, deployment, and disposition of Mining Rigs.  Because of the nature of the activities that give rise to the Debtors' Sales and Use Taxes and VAT Taxes, and certain tax positions with respect to such taxes, such taxes are not remitted on a regularly-scheduled basis.  As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $16.5 million in Sales and Use Taxes that have not been remitted to the relevant Taxing Authorities.    Additionally, as of the Petition Date, the Debtors anticipate that

approximately $3.7 million in potential VAT taxes have accrued, and the Debtors expect to accrue additional amounts postpetition due to Taxing Authorities for use taxes on certain assets stored in the United States.  The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Sales, Use, and VAT Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

### III.   Import and Customs Duties.

15.    The Debtors are required to pay both import duties and customs duties in the ordinary course of operating their business (collectively, the "Import and Customs Duties").  For example, the Debtors incur Import and Customs Duties when they import equipment such as Mining Rigs from another jurisdiction.  The Debtors generally pay Import and Customs Duties as they come due.  The Debtors did not pay any Import and Customs Duties in 2021.  As of the Petition Date, however, the Debtors estimate that approximately $1.5 million in Import and Customs Duties will have accrued and remain unpaid to the relevant Authorities and customs agents, all of which will become due and owing within the first 21 days of the chapter 11 cases (the "Interim Period").  However, to the extent that the accrued amount of Import and Customs Duties exceeds the Debtors' estimate, the Debtors seek authority to remit and pay such amount.

### IV.   Property Taxes.

16.    State and local laws in the jurisdictions where the Debtors operate generally grant Taxing Authorities the power to levy property taxes against the Debtors' real and personal property (collectively, the "Property Taxes").  The Debtors anticipate that they may acquire certain real and personal property in the future.  Out of an abundance of caution, to avoid the imposition of statutory liens on their real and personal property, the Debtors expect to pay the Property Taxes in the ordinary course of business on a monthly, quarterly, or annual basis, depending on the specific

8

Taxes or Fees.  This includes Property Taxes collected from certain third parties and paid to the applicable Taxing Authorities.  As of the Petition Date, the Debtors do not owe any outstanding amounts related to Property Taxes; however, out of an abundance of caution, the Debtors request authority, but not direction, to satisfy any amounts owed on account of such Property Taxes that may become due and owing in the ordinary course of business during their chapter 11 cases.

**V.    Regulatory and Other Taxes and Fees**.

17.    The Debtors incur, in the ordinary course of business, certain regulatory assessments, permitting, licensing, and other operational fees, including fees related to certain regulations, franchise taxes, and other miscellaneous taxes and fees (collectively, "Regulatory and Other Taxes and Fees").

18.    Notably, federal law classifies certain businesses that transmit or convert money, such as the Debtors' business, as "money transmitting businesses" ("MTBs").  MTBs are required to register with certain federal and state agencies and typically must obtain appropriate business licenses in each state to or from which money is transferred in order to operate their business in that state (the "Money Transmitter Licenses").

19.    The Debtors' Regulatory and Other Taxes and Fees cover the costs of obtaining Money Transmitter Licenses, which are indispensable to the Debtors' viability to operate.  Further, in order to be eligible to obtain a Money Transmitter License in the states in which the Debtors operate, the Debtors must be in good standing in those states through state registrations and related fees (the "State Registrations").  The Debtors incur certain fees in connection with renewing and otherwise maintaining good standing.

20.    The Debtors typically remit Regulatory and Other Taxes and Fees to the relevant Taxing Authorities on a monthly, quarterly, or annual basis.  As of the Petition Date, the Debtors estimate that approximately $7,200 in Regulatory and Other Taxes and Fees will have accrued and

remain unpaid to the relevant Taxing Authorities.  The Debtors request authority, but not direction, to satisfy any amounts owed on account of such Regulatory and Other Taxes and Fees that may become due and owing in the ordinary course of business during their chapter 11 cases.

### Basis for Relief

**I.      Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates**.

21.     Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  Certain of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Taxing Authorities and are held in trust by the Debtors.  *See, e.g.*, 26 U.S.C. § 7501 (stating that certain Taxes and Fees are held in trust); *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57–60 (1990) (holding that certain taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (holding that a sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge).  For example, all U.S. federal internal revenue tax withheld is considered to be held in a special fund in trust for the United States.  *Begier*, 496 U.S. at 60.  Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" Taxes and Fees, the Debtors should be permitted to pay those funds to the applicable Taxing Authorities as they become due.[8]

---

[8]    For clarity, the Debtors are requesting authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

**II.      Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code**.

22.      Claims for certain of the Taxes and Fees are, or may be, priority claims entitled to payment before general unsecured claims.  *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment).  Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Taxing Authorities may attempt to assess interest and penalties if such amounts are not paid.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").  Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.  Payment of such Taxes and Fees likely will give Taxing Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors the potential interest expense, legal expense, and penalties that might otherwise accrue on the Taxes and Fees during these chapter 11 cases.

**III.      Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment**.

23.      Courts in this jurisdiction and others generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In doing so, these courts acknowledge that several legal theories rooted in

sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

24.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also In re James A. Phillips*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. at 497.

25.    In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *See* 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See In re C.A.F. Bindery, Inc*., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *In re Ionosphere Clubs*, 98 B.R. at 176.

26.    Several courts apply the doctrine of necessity where payment of a prepetition claim (a) is "necessary for the successful reorganization of the debtor," (b) falls within "the sound business judgment of the debtor," and (c) will not "prejudice other unsecured creditors." *In re United Am. Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005); *see also In re Ionosphere Clubs*, 98 B.R. at 176. A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175. That is because the rehabilitation of a debtor in reorganization cases remains "the paramount policy and goal of Chapter 11." *Id.* at 175-76; *see also In re Just for Feet*, 242 B.R. 821, 826 (D. Del 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization").

27.    Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going concern value." *See also In re CoServ*, 273 B.R. at 497. Some courts note that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id.* Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175.

28.    These standards are clearly satisfied here. The Debtors' ability to pay the Taxes and Fees is critical to the efficient and value-maximizing administration of the Debtors' estates. If certain Taxes and Fees remain unpaid, certain Taxing Authorities may seek to impose penalties

on the Debtors' directors, officers, and/or employees, thereby distracting them from the administration of the Debtors' chapter 11 cases.  *See, e.g.*, N.Y. Tax Law § 1133 ("[E]very person required to collect any tax imposed by this article shall be personally liable for the tax imposed, collected or required to be collected under this article."); *Schmehl v. Helton*, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes); *see also In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding a director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)).  Any collection action on account of such penalties, and any ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest.  The dedicated and active participation of the Debtors' officers and employees is essential to the orderly administration of these chapter 11 cases and maximizing the value of the Debtors' estates for the benefit of their stakeholders.

29.    Furthermore, the Debtors' obligations to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the tax claims. As priority claims, pursuant to section 507(a)(8)(C) of the Bankruptcy Code, the Debtors must pay these obligations in full in cash before any general unsecured obligations may be satisfied.  Thus, the Debtors' failure to pay the prepetition Taxes and Fees as they come due may ultimately increase the amount of priority claims held by the Taxing Authorities against the Debtors' estates, to the detriment of the Debtors' general unsecured creditors and other stakeholders.  *See* 11 U.S.C. § 507(a)(8)(C), (G).  Accordingly, the Court should grant the Debtors' authority to pay, in their sole discretion, the prepetition Taxes and Fees as provided herein.

30.     Courts in this jurisdiction have often authorized payment of prepetition taxes under section 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) (authorizing the debtors to pay certain taxes and fees); *In re GTT Comm., Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 30, 2021) (same); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Nov. 17, 2021) (same); *In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Aug. 13, 2020) (same); *In re Jason Industries, Inc.*, No. 20-22766 (Bankr. S.D.N.Y. July 27, 2020) (same); *In re Frontier Comm. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same).[9]

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

31.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business.   In addition, under the Debtors' existing cash management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

32.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."

---

[9]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm.  Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

33.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Reservation of Rights**

34.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants

16

the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **Motion Practice**

35.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## **Notice**

36.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; (g) the Taxing Authorities; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

37.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and

Final Order granting the relief requested herein and such other relief as the Court deems

appropriate under the circumstances.

New York, New York                          /s/ Joshua A. Sussberg
Dated: July 14, 2022                        **KIRKLAND & ELLIS LLP**
                                            **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                            Joshua A. Sussberg, P.C.
                                            601 Lexington Avenue
                                            New York, New York 10022
                                            Telephone:      (212) 446-4800
                                            Facsimile:      (212) 446-4900
                                            Email:          jsussberg@kirkland.com

                                             - and -

                                            Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
                                            Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
                                            300 North LaSalle Street
                                            Chicago, Illinois 60654
                                            Telephone:      (312) 862-2000
                                            Facsimile:      (312) 862-2200
                                            Email:          patrick.nash@kirkland.com
                                                            ross.kwasteniet@kirkland.com

                                            *Proposed Counsel to the Debtors and*
                                            *Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## INTERIM ORDER (I) AUTHORIZING THE PAYMENT
## OF CERTAIN TAXES AND FEES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing

the Debtors, in their sole discretion, to remit and pay certain accrued and outstanding Taxes and

Fees, (b) granting related relief, and (c) scheduling a final hearing to consider approval of the

Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day

Declarations; and this Court having jurisdiction over this matter pursuant to  28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

the Southern District of New York, entered February 1, 2012; and this Court having the power to

enter a final order consistent with Article III of the United States Constitution; and this Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2022, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2022, and shall be served on:  (a) the Debtors, Celsius Network LLC, 121 River Street, PH05, Hoboken, New Jersey 07030, Attn: Ron Deutsch; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., and 300 North LaSalle, Chicago, Illinois 60654, Patrick J. Nash, Jr., P.C. and Ross M. Kwasteniet, P.C.; (c) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn.  Shara Cornell, Mark Bruh, and Brian S. Masumoto; and (d) counsel to any statutory committee appointed in these chapter 11 cases.

3.      The Debtors are authorized to pay or remit (or use applicable credits to offset), in their sole discretion, the Taxes and Fees (including, for the avoidance of doubt, posting collateral or a letter of credit in connection with any dispute related to the Assessments), whether accrued prior to or after the Petition Date, that are payable during the pendency of these chapter 11 cases absent further order of this Court, on an interim basis, at such time when the Taxes and Fees are

3

payable in the ordinary course of business.  To the extent that the Debtors have overpaid any Taxes and Fees, the Debtors are authorized to seek a refund or credit on account of any such Taxes and Fees.

4.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

5.      The Debtors are authorized to honor any amounts owed on account of any audits conducted in connection with their Taxes and Fees in the ordinary course of business.

6.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts to owed in connection with the relief granted herein.

7.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Interim Order is not

intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

9.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

## **<u>Exhibit B</u>**

## **Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## FINAL ORDER (I) AUTHORIZING THE PAYMENT
## OF CERTAIN TAXES AND FEES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the

Debtors, in their sole discretion, to remit and pay certain accrued and outstanding Taxes and Fees;

and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day

Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

Southern District of New York, entered February 1, 2012; and this Court having the power to enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized to pay or remit (or use applicable credits to offset), in

their sole discretion, the Taxes and Fees (including, for the avoidance of doubt, posting collateral

or a letter of credit in connection with any dispute related to the Assessments), whether accrued

prior to or after the Petition Date, that are payable during the pendency of these chapter 11 cases,

on a final basis, at such time when the Taxes and Fees are payable in the ordinary course of

business.  To the extent that the Debtors have overpaid any Taxes and Fees, the Debtors are

authorized to seek a refund or credit on account of any such Taxes and Fees.

3.      The Debtors are authorized to honor any amounts owed on account of any audits

conducted in connection with their Taxes and Fees in the ordinary course of business.

4.      Notwithstanding the relief granted in this Final Order and any actions taken

pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the

validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;

(d) an implication or admission that any particular claim is of a type specified or defined in this

Final Order or the Motion; (e)  a request or authorization to assume any agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors'

rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion

are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection

or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended

and should not be construed as an admission as the validity of any particular claim or a waiver of

the Debtors' rights to subsequently dispute such claim.

5.      The Debtors are authorized to issue postpetition checks, or to effect postpetition

fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection

with any of the relief granted herein.

6.      The banks and financial institutions on which checks were drawn or electronic

payment requests made in payment of the prepetition obligations approved herein are authorized

and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on

the Debtors' designation of any particular check or electronic payment request as approved by this

Final Order.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice

of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied

by such notice.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final

Order are immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Final Order in accordance with the Motion.

3

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**Taxing Authorities**

**Taxing Authorities**

| TAXING AUTHORITY | ADDRESS |
|---|---|
| Arizona Department of Revenue | 1600 West Monroe Street<br>Phoenix, AZ 85007 |
| California Department of Financial Protection | 2101 Arena Boulevard<br>Sacramento, CA 95834 |
| Connecticut State Department of Revenue Services | 450 Columbus Blvd.<br>Suite 1<br>Hartford, CT 06103 |
| DC Office of Tax and Revenue | 1101 4th St SW #270<br>Washington, DC 20024 |
| Florida Department of Revenue | 5050 W Tennessee St<br>Tallahassee, FL 32399-0112 |
| Georgia Department of Revenue | 1800 Century Blvd NE<br>Atlanta, GA 30345 |
| HM Revenue and Customs | 100 Parliament Street<br>London, SW1A 2BQ<br>United Kingdom |
| Idaho Department of Finance | 11341 West Chinden Blvd. STE A300<br>Boise, ID 83714 |
| Internal Revenue Service | Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA 19101-7346 |
| Kansas Office of the State Bank Commissioner | 700 SW Jackson St # 300<br>Topeka, KS 66603 |
| Kentucky Department of Revenue | 501 High St<br>Frankfort, KY 40601 |
| Maine Bureau of Financial Institutions | 124 Northern Ave<br>Gardiner, ME 04345 |
| Massachusetts Department of Revenue | Executive Office for Administration and Finance<br>100 Cambridge Street<br>Boston, MA 02204 |
| Mississippi Department of Banking and Consumer Finance | 501 N. West St.<br>Suite A<br>Jackson, MS 39225 |
| Missouri Division of Finance | 301 W High St # 630<br>Jefferson City, MO 65101 |

| TAXING AUTHORITY | ADDRESS |
|---|---|
| New York City Department of Finance | Correspondence Unit<br>One Centre Street, 22nd Floor<br>New York, NY 10007 |
| New York Department of Taxation and Finance | Bankruptcy Section<br>PO Box 5300<br>Albany, NY 12205-0300 |
| North Carolina Department of Revenue | 501 North Wilmington Street<br>Raleigh, NC 27604 |
| North Dakota Department of Financial Institutions | 1200 Memorial Hwy<br>Bismarck, ND 58504 |
| Oklahoma Department of Consumer Credit | 629 NE 28th St.<br>Oklahoma City, OK 73105 |
| South Dakota Department of Labor and Regulation - Division of Banking | 1601 N Harrison Ave #1<br>Pierre, SD 57501 |
| State of California Franchise Tax Board | PO Box 942857<br>Sacramento, CA 94257- 0500 |
| State of New Jersey Department of the Treasury | Division of Taxation<br>50 Barrack Street<br>Trenton, NJ 08695 |
| State of Utah Department of Financial Institutions | 324 State St #201<br>Salt Lake City, UT 84111 |
| Tennessee Department of Revenue | 500 Deaderick Street<br>Nashville, TN 37242 |
| Texas Comptroller of Public Accounts | Lyndon B. Johnson State Office Building<br>111 East 17th Street<br>Austin, TX 78774 |
| U.S. Customs and Border Protection | 1300 Pennsylvania Ave. NW<br>Washington, DC 20229 |
| Virginia Department of Taxation | 1957 Westmoreland St<br>Richmond, VA 23230 |
| Washington State Department of Financial Institutions | 150 Israel Rd SW<br>Tumwater, WA 98501 |
| Wyoming Division of Banking | 2300 Capitol Ave 2nd floor<br>Cheyenne, WY 82002 |