Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION**
**SEEKING ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.    The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

(i) authorizing the Debtors to (a) pay prepetition wages, salaries, other compensation, and reimbursable expenses and (b) continue to administer employee compensation and benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (ii) granting related relief.  In addition, the Debtors request that the Court (as defined herein) schedule a final hearing in approximately 21 days after the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and

provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius employs a global workforce of approximately 670 employees and has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6. On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration"), both filed contemporaneously with this Motion and incorporated by reference herein.[2] As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

7. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrent with the filing of this Motion, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**The Debtors' Workforce**

8.      As of the Petition Date, the Debtors employ approximately 370 employees and independent contractors in 14 countries (collectively, the "Employees"), approximately 285 of which are based in the United States (the "U.S. Employees"). The remaining Employees are located in, among others, Australia, Canada, and the United Kingdom (the "Non-U.S. Employees"). Of the approximately 370 Employees, approximately 35 are independent contractors (the "Independent Contractors") who supplement the Debtors' workforce in roles including marketing, mining, engineering, and compliance. Additionally, the Debtors' non-Debtor affiliates employ approximately 330 employees and independent contractors who support the Debtors' global operations (the "Non-Debtor Employees") including in engineering, finance, and information technology.

9.      None of the Employees are represented by a union or collective bargaining agreement.

10.     The Employees include personnel who are intimately familiar with the Debtors' business, processes, and systems, and possess unique skills and experience with respect to the Debtors' business. Without the continued, uninterrupted services of the Employees, the Debtors' business operations will be severely affected and the administration of the estates materially impaired.

11.     The vast majority of the Employees rely on their compensation and benefits to pay their daily living expenses. These workers will be unfairly harmed if the Debtors are not permitted to continue paying compensation and providing health insurance and other benefits during these

chapter 11 cases.  Consequently, the Debtors respectfully submit that the relief requested herein is necessary and appropriate under the facts and circumstances of these chapter 11 cases.

### Compensation and Benefits

12.     To minimize the personal hardship that the Employees would suffer if prepetition Employee-related obligations remain unpaid during these chapter 11 cases, the Debtors seek authority to:   (a) pay and honor certain prepetition claims relating to, among other things, Wage/Pay Obligations, Withholding Obligations, Reimbursable Expenses, the Insperity Benefits Obligations, Unpaid Payroll Processing Fees, Paid Leave Benefits, a Non-Insider Severance Program and Non-Insider Severance Benefits, and certain other benefits that the Debtors have historically provided in the ordinary course (each as defined herein, and collectively, the "Compensation and Benefits"); and (b) pay all costs related to or on account of the Compensation and Benefits.[3]

13.     Subject to the Court's approval, the Debtors intend to continue their prepetition Compensation and Benefits in the ordinary course of business.  Out of an abundance of caution, the Debtors further request confirmation of their right to modify, change, and/or discontinue any of their Compensation and Benefits and/or to implement new programs, policies, and benefits in the Debtors' sole discretion and in the ordinary course during these chapter 11 cases (subject in all respects to the terms of the Interim Order or Final Order, as applicable) and without the need for further Court approval, subject to applicable law.

14.     As of the Petition Date, the Debtors estimate that the total amount outstanding on account of the Compensation and Benefits is approximately $1.094 million.  During the first 21

---

[3]     The Debtors have provided details regarding certain administrative costs where applicable, but, for the avoidance of doubt, request authority to pay all administrative costs associated with the Compensation and Benefits, regardless of whether such costs are specifically described herein.

days of these chapter 11 cases the Debtors estimate that $686,000 will become due and owing. While certain of the Employees are owed prepetition amounts in excess of the $15,150 priority cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Statutory Cap"), the Debtors seek to pay amounts above the Statutory Cap pursuant to the Final Order only.

15.    Specifically, by this Motion, the Debtors seek authority, but not direction, to pay the following aggregate prepetition amounts on account of the Compensation and Benefits programs:

| RELIEF SOUGHT | INTERIM AMOUNT | FINAL AMOUNT |
|---|---|---|
| **Compensation** | | |
| Unpaid Employee Compensation Obligations | $160,000 | $160,000 |
| Unpaid Independent Contractor Obligations | 139,000 | 139,000 |
| Non-Employee Director Compensation *(Final Order Only)* | - | - |
| Withholding Obligations | 162,000 | 162,000 |
| Unpaid Payroll Processing Fees | 16,000 | 16,000 |
| Reimbursable Expenses | 36,000 | 36,000 |
| Abacus Labs Fees | - | - |
| Corporate Cards | 90,000 | 90,000 |
| ***Compensation Total*** | **502,000** | **502,000** |
| **Benefits and Other Programs** | | |
| Insperity Benefits Obligations | 47,000 | 47,000 |
| Unpaid Smart Pension Obligations | 36,000 | 36,000 |
| Non-Insider Severance Benefits *(Final Order Only)* | - | 409,000 |
| Non-Insider Ad Hoc Bonuses *(Final Order Only)* | - | - |
| ***Benefits and Other Programs Total*** | **83,000** | **492,000** |
| **Total Compensation and Benefits** | **668,000** | **1,095,000** |

I.    **Compensation, Withholding Obligations, Payroll Processing, and Reimbursable Expenses.**

    A.    **Wage/Pay Obligations.**

16.    In the ordinary course of business, the Debtors incur obligations to their Employees for Employee Compensation, Independent Contractor Obligations, and the Non-Debtor Employee Compensation (each as defined herein, and collectively, the "Wage/Pay Obligations").  As of the Petition Date, the Debtors estimate that they owe approximately $298,000 on account of accrued but unpaid Wage/Pay Obligations.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor the Wage/Pay Obligations and to pay any prepetition claims with respect thereto in the ordinary course of business.

17.    The Debtors have a co-employment relationship with Insperity PEO Services, L.P. ("Insperity"), which is set forth in the Client Service Agreement (collectively, with all related agreements, amendments, and modifications, the "Insperity CSA").  Under the Insperity CSA, Insperity serves as the legal co-employer of the U.S. Employees and handles certain administrative responsibilities for human resources-related functions, including payroll, processing, offer of employee health and welfare benefits, and withholding, remittance, and reporting of payroll taxes (including the employer-paid portion of payroll taxes) for the U.S. Employees.  The Debtors handle the day-to-day management of the U.S. Employees and their activities related to the Debtors' core business, while Insperity supports the Debtors in the administration of many critical personnel issues for the U.S. Employees.

18.    The Debtors' relationship with Insperity is vital to the Debtors' progress moving forward as a company.  As previously noted, the relationship with Insperity allows the Debtors to (a) realize substantial cost savings with respect to the administration of their employee payroll and benefits by not having to employ additional human resources professionals and administer payroll

and benefit programs in several states, and (b) allows the Debtors to offer better and broader benefits to their employees at significantly reduced rates relative to the costs of participating in those programs without a third-party intermediary like Insperity.

19.     The Debtors pay Insperity for the cost of the U.S. Employee wages and benefits, as well as Insperity's fees for these services.  The Debtors intend to continue to perform under the Insperity CSA during the course of these chapter 11 cases, and, as such, Insperity will continue to administer various benefits programs (as described below), and seek authority to pay all amounts owed to Insperity under the Insperity CSA that arise in the ordinary course of business, consistent with historical practice.

### i.     Unpaid Employee Compensation.

20.     In the ordinary course of business, the Debtors incur obligations to their Employees for wages, overtime, and similar obligations (the "Employee Compensation").   Because Employees are generally paid in arrears, certain Employees are owed accrued but unpaid Employee Compensation as of the Petition Date (the "Unpaid Employee Compensation"). Employee Compensation may also be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe they should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees.

21.     U.S. Employees are paid once every two weeks, while Non-U.S. Employees are generally paid once every month.  Historically, fourteen days before Employee Compensation for the U.S. Employees is due, the Debtors fund accounts held by Insperity.  Two days prior to the end of a pay period, Insperity generates an invoice showing the actual amount due and owing for Employee Compensation for the U.S. Employees.  The Debtors then fund any remaining amounts due.  The payroll processors for Non-U.S. Employees include PayCircle and Globalization

Partners, Inc.  As of the Petition Date, the Debtors estimate that they owe approximately $160,000 on account of Unpaid Employee Compensation.

### ii.    Unpaid Independent Contractor Obligations.

22.    In the ordinary course of business, the Debtors incur payment obligations to their Independent Contractors for services rendered to the Debtors (the "Independent Contractor Obligations").  The Debtors generally pay their Independent Contractors once a month at an agreed hourly rate or day rate.  The Independent Contractors perform critical services that support the Debtors' Employees and operations, including marketing, mining, engineering, and compliance. The Debtors believe the authority to continue paying their Independent Contractors is critical to maintaining and administering their estates.

23.    On average, the Debtors spend approximately $528,000 per month on Independent Contractor Obligations.  As of the Petition Date, the Debtors estimate that they owe approximately $139,000 in accrued but unpaid Independent Contractor Obligations (the "Unpaid Independent Contractor Obligations").

### iii.    Non-Debtor Employees.

24.    Historically, certain Non-Debtor Employees have been paid by Debtor entities.  The Non-Debtor Employees include engineering staff who develop the technology that is vital to the Debtors' business, among other important roles such as customer service, development, and GK8 entities' business functions.   As of the Petition Date, the Debtors do not believe they owe any prepetition compensation to Non-Debtor Employees (the "Non-Debtor Employee Compensation").  Accordingly, the Debtors request authorization to continue paying Non-Debtor Employee Compensation on a postpetition basis in the ordinary course of business, consistent with their prepetition practices.

### iv. Non-Employee Director Compensation (Final Order Only).

25. Debtor Celsius Network Limited's board of directors includes two non-Employee directors (the "Non-Employee Directors"). The Non-Employee Directors' fees are generally paid monthly in advance, though their per diem compensation and expense reimbursement are paid in arrears. Non-Employee Directors are also entitled to expense reimbursement for reasonable out-of-pocket expenses in connection with travel and other business-related expenses arising from their Non-Employee Director duties and a per diem for days they devote more than four hours to their duties (the "Non-Employee Director Compensation").

26. The Debtors do not believe they owe any prepetition amounts on account of the Non-Employee Director Compensation. As such, the Debtors seek authority to pay any prepetition amounts solely out of an abundance of caution, and to continue to pay the Non-Employee Director Compensation on a postpetition basis in the ordinary course of business and consistent with past practices, pursuant to the Final Order only.

### v. Cryptocurrency Compensation.

27. The Debtors have previously compensated certain of their Employees with their proprietary cryptocurrency token (the "CEL Token") in addition to the cash payments described above. As of the Petition Date, the Debtors have suspended this practice.

### B. Withholding Obligations.

28. In the ordinary course of business, the Debtors incur obligations on account of Payroll Deductions and Payroll Taxes (each as defined below and collectively, the "Withholding Obligations"). In June 2022, the Debtors accumulated approximately $1.75 million on account of the Withholding Obligations. As of the Petition Date, the Debtors estimate that they owe approximately $162,000 of Withholding Obligations. The Debtors respectfully request that the Court authorize the Debtors to continue to honor their Withholding Obligations

and to pay any prepetition claims with respect thereto in the ordinary course of business. In addition, without duplication, the Debtors further request that the Court authorize the Debtors to satisfy any Withholding Obligations that arise as a result of a taxing authority's claim for a prepetition tax period.

### i.   Payroll Deductions.

29.     During each applicable payroll period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, child support, and similar deductions, as well as other pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, pension contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Payroll Deductions"), and forward the Payroll Deductions to various third-party recipients. As of the Petition Date, the Debtors estimate that they owe approximately $116,000 on account of the Payroll Deductions.

### ii.   Payroll Taxes.

30.     In addition to the Payroll Deductions, certain federal and state laws require that the Debtors withhold amounts from Employees' gross pay related to federal, state, and local income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authorities (the "Employee Payroll Taxes"). The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance and Social Security and Medicare taxes (the "Employer Payroll Taxes"). The Debtors have similar obligations under the laws of the foreign nations in which they operate, including, among others, the pay-as-you-earn taxes in the United Kingdom (the "Foreign Payroll Taxes" and, together with the Employee Payroll Taxes and Employer Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally

processed and forwarded to the appropriate federal, national, state, and local taxing authorities (both in the United States and in foreign jurisdictions) in accordance with remittance intervals and deadlines established by those taxing authorities.  As of the Petition Date, the Debtors estimate that they owe approximately $46,000 on account of the Payroll Taxes.

### C.    Payroll Processing.

31.    Certain Withholding Obligations for the Debtors' Employees are processed and administered by Insperity, a professional employer organization responsible for coordinating a number of the Debtors' Compensation and Benefits including, among other things, payment of salaries and wages and administering a number of the Health and Welfare Coverage and Benefits described herein.  Payroll processing for Non-U.S. Employees is provided by PayCircle and Globalization Partners, Inc. (together with Insperity, the "Payroll Processors").  In June 2022, the Debtors incurred approximately $81,000 on account of payroll processing and application hosting services by the Payroll Processors.  Additionally, as of the Petition Date, the Debtors estimate they owe approximately $16,000 on account of prepetition payroll processing services (the "Unpaid Payroll Processing Fees").  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their Unpaid Payroll Processing Fees and to pay any prepetition claims with respect thereto in the ordinary course of business.

### D.    Reimbursable Expenses.

32.    Prior to the Petition Date and in the ordinary course of business, the Debtors reimbursed certain Employees for pre-approved expenses incurred on behalf of the Debtors within the scope of their employment (the "Reimbursable Expenses") using the services of Abacus Labs Inc., the Debtors' Reimbursable Expenses reporting firm.  Reimbursable Expenses include, among other expenses, travel-related expenses such as air travel, meal allowances, car mileage allowances, and business-related entertainment expenses.  Employees who pay for their own

Reimbursable Expenses upfront apply for reimbursement of such expenses by submitting an expense report to the Debtors. Once they have determined that the charges are for allowable reimbursable business expenses, the Debtors reimburse such Employees for any such expenses.

33.  Employees incurred the Reimbursable Expenses as business expenses on the Debtors' behalf and with the understanding that such expenses would be reimbursed. The Debtors' inability to reimburse the Reimbursable Expenses would impose a hardship on the Employees where such individuals incurred obligations for the Debtors' benefit.

34.  During the second quarter of 2022, the Debtors incurred a monthly average of approximately $26,000 on account of Reimbursable Expenses. Additionally, as of the Petition Date, the Debtors estimate that they owe approximately $36,000 on account of Reimbursable Expenses. The Debtors will not seek to pay any outstanding Reimbursable Expenses or fees related thereto in advance of the date they come due. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their Reimbursable Expenses and to pay any prepetition claims with respect thereto in the ordinary course of business.

35.  The Debtors pay Abacus Labs Inc. approximately $7,200 per year for their services in connection with the Reimbursable Expenses (the "Abacus Labs Fees"). As of the Petition Date, the Debtors estimate that no amount is due on account of the Abacus Labs Fees but seek authority to continue to pay the Abacus Lab Fees on a postpetition basis in the ordinary course of business and consistent with past practices.

**E.    Corporate Card Program.**

36.  In addition to Reimbursable Expenses, the Debtors have historically provided certain Employees with credit cards (the "Corporate Cards") issued by Brex and Wells Fargo to cover legitimate business expenses, including certain travel expenses, incurred in the ordinary course of business in connection with their employment as well as certain vendor payments (the

"Corporate Card Program"). The costs incurred through use of the Corporate Cards are billed directly to the Debtors and do not pass through the applicable Employee's personal financial account.

37.    Historically, the Debtors accrued and paid approximately $1.8 million on average per month on account of the Corporate Cards. As of the Petition Date, the Debtors believe they owe approximately $90,000 on account of the Corporate Cards, all of which will become due and owing within the first 21 days of these chapter 11 cases. By this Motion, the Debtors request authorization to pay all outstanding prepetition amounts incurred on account of the Corporate Cards and to continue paying all outstanding amounts incurred on account of the Corporate Cards on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

**II.    Insperity Benefits Obligations.**

38.    As described further herein, Insperity administers the majority of the Debtors' Health and Welfare Coverage and Benefits, in addition to the Workers' Compensation Program, the 401(k) Plan, and many of the other Additional Benefit Programs (as defined below) and bills the Debtors for all of these programs on one consolidated invoice (the obligations related to the Health and Welfare Coverage and Benefits, Workers' Compensation Program, 401(k) Plan, and applicable Additional Benefit Programs together, the "Insperity Benefits Obligations"). In June 2022, the Debtors accumulated approximately $361,000 on account of the Insperity Benefits Obligations. Additionally, as of the Petition Date, the Debtors estimate that they owe approximately $47,000 on account of the Insperity Benefits Obligations.

**III.    Health and Welfare Coverage and Benefits.**

39.    The Debtors offer their Employees the ability to participate in a number of health insurance and other benefits programs, including, among other programs, medical, dental, and

vision coverage plans, life and accident insurance, disability insurance, savings and spending account programs, and other employee benefit plans (collectively, the "Health and Welfare Coverage and Benefits"). The Health and Welfare Coverage and Benefits are available to certain Employees depending in part on the jurisdiction the Employee is based out of (the "Eligible Employees").

40.     The Debtors' Health and Welfare Coverage and Benefits include:

(a).    **Medical and Prescription Coverage:**   The Debtors offer Eligible Employees medical and prescription coverage programs. Numerous plans are available to Eligible Employees and are administered by Insperity (the "Medical and Prescription Coverage"). Eligible Employees have the option to waive coverage if they are covered under another insurance plan. Non-U.S. Employees participate in similar medical and prescription programs through state-funded systems.

(b).    **Life and Disability Insurance Coverage:**   The Debtors offer Eligible Employees life insurance policies, basic accidental death and dismemberment insurance, long- and short-term disability insurance ("Life Insurance Coverage"), administered by Insperity. Non-U.S. Employees participate in similar programs through state-funded systems.

(c).    **Dental Insurance Coverage:**   The Debtors offer Eligible Employees various dental insurance plans administered by Insperity (the "Dental Insurance Coverage"). Non-U.S. Employees participate in similar programs through state-funded systems.

(d).    **Vision Insurance Coverage:**   The Debtors offer Eligible Employees various vision insurance plans administered by Insperity (the "Vision Insurance Coverage"). Non-U.S. Employees participate in similar programs through state-funded systems.

(e).    **COBRA Coverage:**   Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), certain Eligible Employees who are no longer employed by the Debtors (the "COBRA Employees") may continue Medical and Prescription Coverage, Dental Insurance Coverage, and Vision Insurance Coverage (the "COBRA Benefits"). COBRA Employees are entitled by law to continue to receive COBRA

Benefits for up to 18 months, and in some instances up to 36 months, following termination of employment.

**(f).**   **Flex Spending Accounts and Health Savings Accounts:** The Debtors offer Eligible Employees the opportunity to contribute to a flexible spending account (an "<u>FSA</u>") or a health savings account (an "<u>HSA</u>") to make pretax contributions through payroll deductions to pay for certain health and welfare needs. The Debtors do not contribute to Employees' FSAs and believe the FSA amounts are generally held in trust by the Debtors and are not property of their estates. As a result, the Debtors seek authority to pay any fees related to the FSAs and HSAs, and remit any accrued FSA funds and continue the FSAs and the HSAs in the ordinary course of business on a postpetition basis.

**(g).**   **Other Coverage and Benefits:** The Debtors offer Eligible Employees other voluntary benefits administered by Insperity, including access to various health and wellness programs. Non-U.S. Employees participate in other country specific programs administered by local companies, as relevant to their location.

41.    In addition, the Debtors provide for COBRA benefits as part of their usual expenditure on account of the Health and Welfare Coverage and do not believe they owe any prepetition amounts on account of COBRA Benefits. The Debtors seek authority (a) to pay any prepetition amounts outstanding on account of the COBRA Benefits, (b) to continue to offer the COBRA Benefits, including to those Employees who may be terminated after the Petition Date, and honor all obligations related thereto on a postpetition basis in the ordinary course of business and consistent with past practices, and (c) to continue to pay any fees related to the COBRA Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

42.    As described above, failure to continue the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult to retain the Debtors' workforce. Accordingly, the Debtors respectfully request that the Court authorize the

Debtors to continue to honor their Health and Welfare Coverage and Benefits and to pay any prepetition claims with respect thereto in the ordinary course of business.

**IV.    Workers' Compensation.[4]**

43.    The Debtors maintain a workers' compensation insurance policy administered by Insperity (the "Workers' Compensation Insurance Policy") for their U.S. Employees at the statutorily required level for each jurisdiction in which they have Employees (collectively, and as described herein, the "Workers' Compensation Program").

44.    The Debtors must continue claim assessment, determination, adjudication, and payment pursuant to the Workers' Compensation Program, without regard to whether such liabilities were outstanding before the Petition Date, to ensure that the Debtors comply with applicable workers' compensation laws and requirements.[5]   There are currently no active open claims under the Workers' Compensation Program.   To the extent any Employees assert claims arising under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with such claims.   This requested modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

45.    Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences

---

[4]    In addition to the Workers' Compensation Insurance Policy (as defined below), the Debtors maintain numerous other insurance policies, which are described in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Their Obligations Under Prepetition Insurance Policies, (B) Continue to Pay Certain Brokerage Fees, (C) Renew, Supplement, Modify, or Purchase Insurance Coverage, and (D) Maintain Their Surety Bond Program and (II) Granting Related Relief*, filed contemporaneously herewith and incorporated herein by reference.

[5]    The Debtors' Workers' Compensation Program may change postpetition in the ordinary course due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder.   By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any necessary modifications thereto.

that could potentially disrupt the reorganization process.  The Debtors request authority to (a) pay any prepetition amounts due on account of the Workers' Compensation Program as part of the Insperity Benefits Obligations and consistent with past practice, (b) continue the Workers' Compensation Program administered by Insperity in the ordinary course of business, and (c) to the extent applicable, modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.

**V.      The 401(k) Plan and Smart Pension.**

46.      The Debtors maintain a retirement savings plan for the benefit of certain of their U.S. Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "401(k) Plan").  The 401(k) Plan is administered by Insperity and allows for automatic pre-tax salary deductions of eligible compensation up to the limits set forth by the Internal Revenue Code.

47.      The Debtors match 100 percent of the Employee's contribution up to 3 percent of an Employee's eligible pay, and an additional  50 percent of any contributions on the next 2 percent of the Employee's eligible pay, for a maximum match of 4 percent,  subject to an annual matching cap in certain instances (the "401(k) Matching Contributions").   The 401(k) Matching Contributions are made in each pay period.  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their 401(k) Matching Contributions and to pay any prepetition claims with respect thereto as part of the Insperity Benefits Obligations in the ordinary course of business.

48.      The Debtors also offer certain Eligible Employees the opportunity to participate in the pension program administered by Smart Pension Ltd ("Smart Pension").  During the first quarter of 2022, the Debtors spent approximately $12,000 per month on obligations related to the Smart Pension program (the "Smart Pension Obligations").  As of the Petition Date, the Debtors estimate that they owe approximately $36,000 in accrued but unpaid Smart Pension Obligations.

Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to

honor the unpaid Smart Pension Obligations and to pay any prepetition claims with respect thereto

in the ordinary course of business.

## VI.    Paid Leave Benefits.

49.    The Debtors also provide Eligible Employees with paid time off (the "Paid Leave

Benefits") as well as other forms of paid and unpaid leave, including, for example, (a) paid

holidays, (b) leave under the Family and Medical Leave Act, and (c) other paid and unpaid leaves

of absence for personal reasons, including those required by law.    The Debtors' Paid Leave

Benefits program combines flexible time off, vacation, sick, holiday, voting, jury duty, military

service, parental leave, and bereavement leave.    When a U.S. Employee elects to use Paid Leave

Benefits, that U.S. Employee is paid his or her regular hourly or salaried rate.    Paid leave programs

in Non-U.S. locations are treated according to statutory requirements.    Importantly, these forms of

paid and unpaid leave do not involve incremental cash outlays beyond standard payroll obligations.

Upon an Employee's termination, the Debtors will cash out the Employee's Paid Leave Benefits

to the extent required by applicable law.

50.    The Debtors believe that the continuation of the Paid Leave Benefits policies in

accordance with prior practice is essential to maintaining Employee morale during these chapter 11

cases.    Further, the policies are broad-based programs upon which all Employees have come to

depend.    The Debtors respectfully request that the Court authorize the Debtors to continue to pay

amounts on account of Paid Leave Benefits if and when they come due in the ordinary course of

business, to the extent required by applicable law.

## VI.    Additional Benefit Programs.

51.    In addition to the foregoing, the Debtors offer their U.S. Employees the opportunity

to participate in a range of general, ancillary benefits, including, among others, an employee

assistance program, commuter benefits program, educational assistance program, and an adoption

assistance program, and Non-U.S. Employees the opportunity to participate in a range of general,

ancillary benefits, including, among others, a study fund program, a pension program, and a meals

voucher program (collectively, the "Additional Benefit Programs").  The aggregate cost of the

Additional Benefit Programs is *de minimis*.[6]  Nevertheless, the Debtors respectfully request that

the Court authorize the Debtors to continue to honor any amounts that come due on account of the

Additional Benefit Programs in the ordinary course of business.

**VII.    Non-Insider Severance Program (Final Order Only) and WARN Act Obligations.**

52.    In the ordinary course of business, the Debtors maintain a severance program for

the benefit of certain non-insider Employees (the "Non-Insider Severance Program").  Under the

Non-Insider Severance Program, certain full-time Employees may be eligible for payment of

severance if their employment is terminated due to a workforce adjustment or any not-for-cause

employer-initiated termination.  Such severance payments (the "Non-Insider Severance Benefits")

are calculated by reference to a terminated Employee's compensation level (based on the

Employee's job position) in accordance with standard Debtor-instituted guidelines.  These

guidelines provide that non-Insider Employees accrue Non-Insider Severance Benefits based on

length of service and seniority, subject to a maximum accrual period of sixty (60) days.

Non-Insider Severance Benefits are paid in a lump sum.

53.    The Debtors' maintenance of the Non-Insider Severance Program and payment of

Non-Insider Severance Benefits are critical to maintaining Employee morale and loyalty.  Current

Employees expect to rely on the Non-Insider Severance Program if they are separated from the

Debtors, and failure to maintain the Non-Insider Severance Program will result in increased

---

[6]    The Debtors estimate that the monthly cost of the Additional Benefit Programs is no more than $30,000.

instability in the Debtors' workforce, which will undermine the Debtors' ability to stabilize and operate their business.

54.     As of the Petition Date, the Debtors believe that approximately 19 former Employees are entitled to Non-Insider Severance Benefits.  The Debtors estimate that, as of the Petition Date, there is $409,000 outstanding under the Non-Insider Severance Program.   The Debtors estimate that 12 severed Employees are owed prepetition amounts in excess of the Statutory Cap and seek to pay any amounts above the Statutory Cap pursuant to the Final Order only.  The Debtors respectfully request that the Court authorize the Debtors to continue to pay amounts on account of the Non-Insider Severance Program in the ordinary course of business, consistent with past practices, and pursuant to the Final Order only.

55.     Under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), employees that are expected to be impacted by a qualified "mass layoff" are entitled to 60 days' advance notice prior to the implementation of a "mass layoff" (collectively, the "WARN Act Notices").  Although the Debtors do not admit that they have any liability under the WARN Act, by this Motion, the Debtors seek authority to comply with any obligations they may have under the WARN Act.[7]

---

[7]     The Debtors' position is that any claim under the WARN Act should be considered to be a prepetition claim.  *See In re Jamesway Corp.*, 235 B.R. 329, 348 (Bankr. S.D.N.Y. 1999) (finding WARN claims were general unsecured claims); *In re Powermate Holding Corp.*, 394 B.R. 765 (Bankr. D. Del. 2008) (finding that WARN Act claims vested prepetition where employees were terminated without prior notice under the WARN Act prior to bankruptcy filing); *In re Kitty Hawk, Inc.*, 255 B.R. 428, 438 (Bankr. N.D. Tex. 2000) (same).

## VIII.   Non-Insider Ad Hoc Bonuses (Final Order Only).

56.     The Debtors offer ad hoc bonuses to certain non-insider Employees (the "Non-Insider Ad Hoc Bonuses").  Non-Insider Ad Hoc Bonuses may be paid in connection with referrals, or as a sign-on bonus, among other things.

57.     As of the Petition Date, the Debtors do not believe they owe any prepetition amounts on account of Non-Insider Ad Hoc Bonuses.  The Debtors respectfully request that the Court authorize the Debtors to continue to pay Non-Insider Ad Hoc Bonuses in the ordinary course of business, consistent with past practices, and pursuant to the Final Order only.

## IX.   Equity Incentive Program (Final Order Only).

58.     Under the Debtors' equity incentive program (the "Equity Incentive Program"), the Debtors issued shares of restricted common stock to certain Employees to align the priorities of Employees with the Company.  The Debtors seek authority to continue the Equity Incentive Program on a postpetition basis in the ordinary course of business and consistent with past practices pursuant to the Final Order only.

## Basis for Relief

## I.   Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits Obligations.

### A.   Certain of the Compensation and Benefits Are Entitled to Priority Treatment.

59.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Compensation and Benefits to priority treatment.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.  *See* U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit

plan). To the extent that an Employee receives no more than $15,150 on account of claims entitled

to priority, the relief sought with respect to compensation only affects the timing of payments to

Employees and does not have any material negative impact on recoveries for general unsecured

creditors. To the extent an Employee is owed more than $15,150 on account of certain

Compensation and Benefits, the Debtors submit that the full payment of such obligations in the

ordinary course is warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of

necessity.

60.     The Debtors' Employees are essential to the Debtors' business, and payment of the

Compensation and Benefits at this time is necessary to avoid potential material disruption to the

Debtors' ordinary-course operations and maximize value of the Debtors' estates. Finding,

attracting, and training new qualified talent would be extremely difficult, particularly given current

labor market conditions. Such recruitment efforts would most likely require, among other things,

higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are

currently provided to Employees.

**B.      Payment of Certain Compensation and Benefits Is Required by Law.**

61.     As discussed above, the Debtors seek authority to pay the Withholding Obligations

to the appropriate third-party payees. These amounts principally represent Employee earnings that

governments, Employees, and judicial authorities have designated for deduction from

Employees' wages. Certain Withholding Obligations are not property of the Debtors' estates

because the Debtors have withheld such amounts from Employees' wages on another party's

behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the Debtors to

withhold certain tax payments from Employees' wages and to pay such amounts to the appropriate

taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*,

41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold

city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authorization to transmit the Withholding Obligations to the proper parties in the ordinary course of business. *See In re Dameron*, 155 F.3d 718, 722 (4th Cir. 1998) (finding that real estate lenders' funds held by the debtor-closing agent for benefit of third parties were not property of the estate).

62. The Debtors, therefore, respectfully request that the Court recognize that the Withholding Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business.

63. Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all obligations related to the Workers' Compensation Program is therefore crucial to the Debtors' continued operations and the success of these chapter 11 cases and the Debtors respectfully request that the Court authorize the Debtors to continue operating the Workers' Compensation Program administered by Insperity in the ordinary course of business and as required by law.

## II. Payment of the Compensation and Benefits Is Warranted Under Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

64. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages under the necessity of payment doctrine); *see also In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay

prepetition claims of suppliers who were potential lien claimants). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy Code.

65.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

66.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"); *see also In re James A. Phillips, Inc.*, 29 B.R. at 397 (considering section 363 in affirming decision allowing the debtor to pay prepetition claims of suppliers who were potential lien claimants). Specifically, the business

judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs*, 98 B.R. at 175.

67. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity") when essential to the continued operation of a debtor's business. *In re Ionosphere Clubs*, 98 B.R. at 176. A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition [sic] debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Id.* (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

68. These standards are satisfied here. The Debtors submit that the payment of the Compensation and Benefits in the ordinary course represents a sound exercise of the Debtors' business judgment and is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code. Paying the Compensation and Benefits in the ordinary course will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption. Indeed, the Debtors believe that without the relief requested herein, Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Debtors' workforce, thereby hindering the Debtors' ability to operate their business and, likely, diminishing stakeholder confidence in the Debtors' ability to successfully reorganize.

The loss of valuable Employees and the resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtors need to focus on stabilizing their business operations. Accordingly, the Debtors must do their utmost to retain their workforce by, among other things, paying Compensation and Benefits in the ordinary course.

69.    In addition, many Employees rely exclusively on the Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay Compensation and Benefits in the ordinary course. Moreover, failure to timely satisfy such obligations will jeopardize workforce morale and loyalty at this crucial time when needed most. Furthermore, if this Court does not grant the relief requested herein, Employees will not receive health coverage and, thus, may be obligated to pay certain health care claims that the Debtors have not satisfied. The loss of health care coverage will result in considerable anxiety for Employees (and likely attrition) at a time when the Debtors need all Employees to perform their best. Additionally, as set forth above, Employee attrition would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at this critical juncture.

70.    The importance of a debtor's workforce to its operations has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, *et al.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022) (order authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y. November 30, 2021) (same); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. Nov. 17, 2021) (same); *In re GBG USA Inc.*, No. 21-11369 (MEW) (Bankr. S.D.N.Y. September 1, 2021) (same);

*In re Lakeland Tours, LLC*, No. 20-11647 (JLG) (Bankr. S.D.N.Y. Aug. 13, 2020) (same);

*In re Jason Indus. Inc.*, No. 20-22766 (RDD) (Bankr. S.D.N.Y. July 27, 2020) (same);

*In re Frontier Commc'ns. Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. May 26, 2020) (same).[8]

71.     Accordingly, the Debtors respectfully request that the Court authorize the Debtors

to continue the Compensation and Benefits and pay related obligations in the ordinary course of

business.

**III.     The Debtors Seek a Waiver of the Automatic Stay to the Extent It Applies to Workers'
Compensation Claims.**

72.     Section 362(a) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action
> or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).  Section 362 of the Bankruptcy Code, however, permits a debtor or other

parties in interest to request a modification or termination of the automatic stay for "cause."

*Id.* at § 362(d)(1).

73.     If and to the extent that section 362(a) is applicable to claims under the Workers'

Compensation Programs, the Debtors seek authorization, under section 362(d) of the Bankruptcy

Code, to permit current and former employees to proceed with any claims under the Workers'

Compensation Program in the appropriate judicial or administrative forum.  Cause exists to modify

the automatic stay, if and to the extent applicable, because the Debtors have an obligation to

continue to abide by applicable workers' compensation laws and requirements and interrupting the

---

[8]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.
Copies of these orders are available upon request to the Debtors' proposed counsel.

administration of any claims under the Workers' Compensation Program could have a detrimental effect on the financial wellbeing and morale of certain Employees and lead to the departure of Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtors' business, which would be to the detriment of all parties in interest.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

74. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business. In addition, under the Debtors' existing cash management system, which is described in further detail in a separate motion, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests that are not related to authorized payments will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

75. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

76.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

77.      Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Motion Practice

78.      This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

**Notice**

79.    The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the United States Trustee for the Southern District of New York; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

80.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and

Final Order granting the relief requested herein and such other relief as the Court deems

appropriate under the circumstances.

New York, New York
Dated: July 14, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            jsussberg@kirkland.com

  - and -

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            patrick.nash@kirkland.com
                  ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS**
**TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER**
**COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing, but not directing, the Debtors to (a) pay certain prepetition wages, salaries, other compensation, and reimbursable expenses and (b) continue employee benefits programs, in each case in the ordinary course of business, including payment of certain undisputed prepetition obligations related thereto; (ii) granting related relief, and (iii) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to  28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2022, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2022,

and shall be served on:  (a)  the Debtors, Celsius Network LLC, 121 River Street, PH05, Hoboken,

New Jersey 07030, Attn: Ron Deutsch; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP,

601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., and 300

North LaSalle, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr., P.C. and Ross M. Kwasteniet,

P.C.; (c) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street,

Suite 1006, New York, New York 10014, Attn. Shara Cornell, Mark Bruh, and Brian S.

Masumoto; and (d) counsel to any statutory committee appointed in these chapter 11 cases.

3.      The Debtors are authorized, but not directed, to continue and/or modify, change, or

discontinue the Compensation and Benefits and to honor and pay, in the ordinary course of

business and in accordance with the Debtors' prepetition policies and practices, any obligations on

account of the Compensation and Benefits, irrespective of whether such obligations arose

prepetition or postpetition; *provided*, that, pending entry of a final order, the Debtors shall not pay

or honor any Compensation and Benefits obligations that exceed the priority cap set forth in

sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code; *provided*, *further*, that payments on

account of the Non-Employee Directors Compensation and Non-Insider Ad Hoc Bonuses shall not

be made by this Interim Order and shall be made solely pursuant to the Final Order; *provided*,

*further*, that the Debtors determine that in the absence of making payments on account of the

Unpaid Independent Contractor obligations, the Debtors would suffer a loss of value in excess of

such payment amount and the Debtors determine that there is a risk of immediate loss of value if

they do not make such payment.

4.     The Debtors are authorized, but not directed, to issue postpetition checks, or to

effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests

that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts

owed in connection with the relief granted herein.

5.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments

not otherwise due prior to the date of the Final Hearing.

6.     The Debtors shall not make any non-ordinary course bonus, incentive, or severance

payments to their Employees or any Insiders (as such term is defined in section 101(31) of the

Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus,

incentive, or severance payments shall be made to any Insider without further order of this Court.

Nothing in the Motion or this Interim Order shall constitute a determination by the Court as to

whether any individual seeking payment pursuant to this Interim Order is or is not an "insider" as

that term is defined in section 101(31) of the Bankruptcy Code.  Nothing in the Motion or this

Interim Order should be construed as approving any transfer pursuant to section 503(c) of the

Bankruptcy Code, and a separate motion will be filed for any requests that are governed by section

503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability

to seek approval for such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

7.    Pursuant to section 362(d) of the Bankruptcy Code: (a) Employees are authorized

to proceed with any claims under the Workers' Compensation Program in the appropriate judicial

or administrative forum and the Debtors are authorized, but not directed, to continue the Workers'

Compensation Program provided through Insperity and pay all prepetition amounts relating thereto

in the ordinary course of business and (b) the notice requirements pursuant to

Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  The modification of the automatic

stay set forth in this paragraph pertains solely to claims under the Workers' Compensation

Program.

8.    Nothing herein (a) alters or amends the terms and conditions of the Workers'

Compensation Program; (b) relieves the Debtors of any of their obligations under the Workers'

Compensation Program; (c) precludes or limits, in any way, the rights of any insurer to contest

and/or litigate the existence, primacy, and/or scope of available coverage under the Workers'

Compensation Program; or (d) creates a direct right of action against any insurers or third-party

administrators where such right of action does not already exist under non-bankruptcy law.

9.    The Debtors are authorized, but not directed, to forward any unpaid amounts on

account of Payroll Deductions or Payroll Taxes to the appropriate third-party recipients or taxing

authorities in the ordinary course of business and in accordance with the Debtors' prepetition

policies and practices, and are otherwise authorized, but not directed, to satisfy any Payroll

Deductions or Payroll Taxes that arise as a result of a taxing authority's claim for a prepetition tax period.

10.     The Debtors are authorized, but not directed, to pay in the ordinary course of business any costs and expenses incidental to payment of the Compensation and Benefits obligations, including the Unpaid Payroll Processing Fees, all administrative and processing costs, and necessary payments to outside professionals.

11.     Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

12.     Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Paid Leave Benefits except upon termination of an Employee, if applicable nonbankruptcy law requires such payment.

13.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

14.     Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or

lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts owed to their Employees.

15.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notices.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

18.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

19.     The Debtors are authorized but not directed, to renew the Insperity CSA or enter into replacements for the Insperity CSA on the same or better terms than existed as of the Petition Date and take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion. The Debtors will provide notice to the United States Trustee for the

Southern District of New York and any statutory committee appointed in these chapter 11 cases

of any changes to, or replacements for, the Insperity CSA.

20.      Insperity is authorized to make all such payments under the Insperity CSA as

directed by the Debtors or otherwise required under such agreements.

21.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Interim Order.

New York, New York
Dated: _____, 2022

 

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION EMPLOYEE WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (i) authorizing, but not directing, the Debtors to (a) pay certain prepetition wages, salaries, other compensation, and reimbursable expenses and (b) continue employee benefits programs, in each case in the ordinary course of business, including payment of certain undisputed prepetition obligations related thereto; and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

§§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue and/or modify, change, or discontinue the Compensation and Benefits and to honor and pay, in the ordinary course of business and in accordance with the Debtors' prepetition policies and practices, any obligations on account of the Compensation and Benefits, irrespective of whether such obligations arose prepetition or postpetition; *provided*, *further*, that the Debtors determine that in the absence of making payments on account of the Unpaid Independent Contractor obligations, the Debtors would suffer a loss of value in excess of such payment amount and the Debtors determine that there is a risk of immediate loss of value if they do not make such payment.

3.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

4.      The Debtors shall not make any non-ordinary course bonus, incentive, or severance payments to their Employees or any Insiders (as such term is defined in section 101(31) of the Bankruptcy Code) without further order of this Court.  For the avoidance of doubt, no bonus, incentive, or severance payments shall be made to any Insider without further order of this Court. Nothing in the Motion or this Final Order shall constitute a determination by the Court as to whether any individual seeking payment pursuant to this Final Order is or is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  Nothing in the Motion or this Final Order should be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code, and a separate motion will be filed for any requests that are governed by section 503(c) of the Bankruptcy Code; provided that nothing herein shall prejudice the Debtors' ability to seek approval for such relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

5.      Pursuant to section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with any claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

6.      Nothing herein (a) alters or amends the terms and conditions of the Workers' Compensation Program; (b) relieves the Debtors of any of their obligations under the Workers' Compensation Program; (c) precludes or limits, in any way, the rights of any insurer to contest and/or litigate the existence, primacy, and/or scope of available coverage under the Workers'

Compensation Program; or (d) creates a direct right of action against any insurers or third-party administrators where such right of action does not already exist under non-bankruptcy law.

7.    The Debtors are authorized, but not directed, to forward any unpaid amounts on account of Payroll Deductions or Payroll Taxes to the appropriate third-party recipients or taxing authorities in the ordinary course of business and in accordance with the Debtors' prepetition policies and practices, and are otherwise authorized, but not directed, to satisfy any Payroll Deductions or Payroll Taxes that arise as a result of a taxing authority's claim for a prepetition tax period.

8.    The Debtors are authorized, but not directed, to pay in the ordinary course of business any costs and expenses incidental to payment of the Compensation and Benefits obligations, including the Unpaid Payroll Processing Fees, all administrative and processing costs, and necessary payments to outside professionals.

9.    Nothing contained herein is intended or should be construed to create an administrative priority claim on account of the Compensation and Benefits obligations.

10.   Nothing herein shall be deemed to authorize the Debtors to cash out unpaid Paid Leave Benefits except upon termination of an Employee, if applicable nonbankruptcy law requires such payment.

11.   The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

12.     Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.  The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts owed to their Employees.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notices.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

5

16.     The Debtors are authorized but not directed, to renew the Insperity CSA or enter into replacements for the Insperity CSA on the same or better terms than existed as of the Petition Date and take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.  The Debtors will provide notice to United States Trustee for the Southern District of New York and any statutory committee appointed in these chapter 11 cases of any changes to, or replacements for, the Insperity CSA.

17.     Insperity is authorized to make all such payments under the Insperity CSA as directed by the Debtors or otherwise required under such agreements.

18.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE [●]
UNITED STATES BANKRUPTCY JUDGE