7/18/2022


Re:     Case Number: 22-10964 (MG)
Southern District of New York


Honorable Martin Glenn;

I am writing today to request that <u>Celsius clients with digital assets in *Custody* accounts be allowed to transfer their funds to another custodian as soon as possible</u>. I believe that by not making this a priority early in the proceedings, the court is subjecting users to sizable market risk. I hope to illustrate below that Custody accounts are clearly delineated in both the Celsius Network Terms of Service and on the balance sheet.

**Ownership**
Ownership and title of digital assets in Custody accounts is clear.  The documents submitted to the courts on 7/14/2022 highlight the difference in account types. First on Page 3 **(See Fig. 1)**, where it is made clear that Custody accounts have different terms of use. This is later reinforced on Page 19 when it stated that Custody assets "shall at all times remain with the [user] **(See Fig. 1).** Based on these statements it is clear that if the Custody assets remain unable to be withdrawn, Celsius is in clear violation with its own terms. In addition to this, the First Day Presentation it states that [for Custody accounts] "Title remains with customer and Celsius cannot use coins without instructions from the customer." **(See Fig. 2)**
We can see a clear demarcation in account types. I believe that in order to honor the verbiage in the terms of service and submitted court documents, assets in Custody should be allowed to be withdrawn and users should be able to choose another custodian.

**Balance Sheet**
Celsius has clearly made an effort to delineate assets on it's balance sheet and highlight Custody Assets as their own separate line item. **(Fig. 3).**  As opposed to every other Assets and Liabilities on the balance sheet, please note that Custody accounts show a net zero balance for Celsius Network. These amounts each are listed as $180 MM which indicates that customers should be made whole and reinforce the company's stated terms that Celsius did not have the right to "transfer, sell, loan or otherwise rehypothecate" digital assets in custody" **(Fig. 1)**

<u>My hope is that you will consider allowing customers to withdraw 100% of their funds in Celsius Custody accounts in an expedited manner</u>. I believe it is within our rights and pursuant to the court documents filed those customers own the title to the Custody assets and we should be able to therefore choose with custodian to store them.

Thank you for your consideration,

David Little
davidalittle@davidalittle.com
817.550.7328

---

3   A small percentage of digital assets transferred to Celsius came in through the no yield "Custody Service," which has different terms of use (as discussed in Part II of this Declaration).

### iv. Custody Service

58.   In April 2022, the Company began providing a new type of service marketed to its users located in the U.S. called the Celsius Custody Service. For eligible users, "Custody Service" serves as the central hub of their digital asset account at Celsius, enabling the user to navigate from Celsius' "Custody Wallet" to various Celsius products (based on the availability of those products in the user's jurisdiction). For example, an eligible customer could elect to transfer their cryptocurrency from the "Custody Service" program to the Earn program to earn rewards. For clarity, crypto assets held solely in "Custody Service" do not earn rewards from the Earn program as crypto assets held in custody shall "at all times remain with the [user]" and "Celsius will not transfer, sell, loan or otherwise rehypothecate" digital assets in custody unless "specifically instructed by [users], except as required by valid court order, competent regulatory agency, government agency or applicable law."[10] Pursuant to the "Terms of Use," the Company is, however, entitled to set-off any obligations owed by a user to the Company against the user's

---

10   See paragraph 4.B., Celsius' "Terms of Use," as of April 14, 2022.

19

**Fig. 1 – Pages 3 & 19 of 'Main Document,' document filed 7/14/2022**



Fig. 2 – Page 9 of 'First Day Presentation' document filed 7/18/2022



Fig. 3 – Page 7 of 'Main Document,' document filed 7/14/2022