Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' EX PARTE MOTION PURSUANT TO SECTION 107 OF THE BANKRUPTCY CODE SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION FROM THE CREDITOR MATRIX, SCHEDULES AND STATEMENTS, AND RELATED DOCUMENTS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), in

connection with, and in further support of, the Creditor Matrix Motion,[2] seek entry of an order,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    See *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Prepare a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying the Creditors of*

substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):  (a) authorizing the

Debtors to redact certain personally identifiable information (the "Confidential Information") in

connection with the Debtors' Creditor Matrix,[3] Schedules and Statements,[4] petitions, affidavits of

service, and any other documents filed publicly on the docket; and (b) granting related relief.[5] In

support of this motion (this "Motion"), the Debtors also respectfully submit the *Declaration of*

*Holden Bixler, Managing Director of the North American Commercial Restructuring practice of*

*Alvarez & Marsal North America, LLC, In Support of the Debtor's Ex Parte Motion Pursuant to*

*Section 107 of the Bankruptcy Code Seeking Entry of an Order (I) Authorizing the Debtors to*

*Redact Certain Personally Identifiable Information from the Creditor Matrix, Schedules and*

*Statements and Related Documents and (II) Granting Related Relief*, attached hereto as **Exhibit F**

(the "Bixler Declaration") and respectfully state the following in support of this Motion:

---

*Commencement, and (V) Granting Related Relief* [Docket No. 18] filed on July 14, 2022 (the "Creditor Matrix Motion").

[3]    "Creditor Matrix" has the meaning assigned to it in the *Order (I) Authorizing the Debtors to Prepare a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying Creditors Of Commencement Of these Chapter 11 Cases, and (V) Granting Related Relief* [Docket No. 55] (the "Creditor Matrix Order").

[4]    "Schedules and Statements" has the meaning assigned to it in the *Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, Statements of Financial Affairs, (II) Extending Time to File Rule 2015.3 Financial Reports, and (III) Granting Related Relief* [Docket No. 57] (the "Schedules and Statements Order").

[5]    Additional evidence in support of the relief requested herein may be presented at the hearing on this Motion to the extent requested, and the Debtors will make reasonable efforts to share such evidence, if any, with the U.S. Trustee (as defined herein) in advance of the hearing.

**Preliminary Statement**

1.       There are certain fundamental public policy considerations that form the underpinnings of the Bankruptcy Code (as defined herein) and the chapter 11 process.  Most notably, there is a strong public policy interest in public access to court records to ensure transparency and the efficient administration of the bankruptcy process.  Courts in this and other jurisdictions, however, have rejected the premise that public access reigns supreme over all other concerns, including the legitimate and legally protected privacy interests of individuals and potentially applicable state and foreign privacy laws.

2.       These courts recognize that disclosure of personally identifiable information can render individuals more susceptible to identity theft and could jeopardize the safety of those who, unbeknownst to the Debtors or their respective agents, may be survivors of intimate partner violence or stalking.  In these circumstances, courts have permitted debtors to redact names and/or addresses contained in a creditor matrix, schedules and statements, and other court filings under section 107(c) of title 11 of the United States Code (the "Bankruptcy Code") and other applicable privacy laws, most notably, the United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), the European General Data Protection Regulation (the "EU GDPR").

3.       There is no dispute that public access to court records is a cornerstone of the law. Public access, however, does not mandate that an individual's personal information be published on the worldwide web.  Here, the Debtors seek authority to redact from any paper filed with the Court (as defined herein), (a) the home addresses and email addresses of any citizens of the United States located in the United States, including the Debtors' employees, individual shareholders, and individual customers, and (b) the names, home addresses, and email addresses of any citizens of

the United Kingdom or European Economic Area member countries and any individual whose citizenship is unknown. The Debtors are seeking narrow and tailored relief that maintains public access to Court records while protecting the privacy of individual creditors, interest holders, and employees, and protecting over 600,000 individuals from having, home addresses, email addresses, and names (where applicable) published without their consent on the internet, in a format easy to "data-mine" and readily accessible from anywhere in the world at a keystroke.

4.    To be clear, the Debtors are not seeking to seal the entire Creditor Matrix, Schedules and Statements, and related documents. Rather, the Debtors seek to maintain a fully populated Creditor Matrix and fully populated Schedules and Statements, but to file on the docket (both on PACER and the case website on the platform of Stretto, Inc. ("Stretto"), the Debtors' claims and noticing agent) a version that replaces individuals' home addresses, email addresses, and names (where applicable) with the notation "Address on File." The Debtors have provided, and/or will provide, an unredacted Creditor Matrix, Schedules and Statements, and related documents to the Court, to the United States Trustee for the Southern District of New York (the "U.S. Trustee") (by electronic mail), and counsel to the Committee (as defined herein). As the "Address on File" notation suggests and the Proposed Order states, any other party in interest may make a request to the Debtors or to the Court to obtain the unredacted Creditor Matrix, Schedules and Statements, and related documents for a purpose related to these chapter 11 cases.

5.    The Debtors respectfully submit that this approach to public access is a rational solution and is warranted because of (a) the serious risk that publishing the home addresses, email addresses, and names (where applicable) of unknowing individuals creates and (b) the limited role that publicly filing those home addresses, email addresses, and names (where applicable) play in these chapter 11 cases. Granting access to, rather than publication of, home addresses, email

addresses, and names (where applicable) further avoids exacerbating any potential threats faced by the Debtors' employees, or other individuals, and aligns with the requirements of the UK GDPR and the EU GDPR.

## Jurisdiction and Venue

6.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.     The bases for the relief requested herein are sections 105(a), 107(b), and 107(c) of the Bankruptcy Code, rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1, 9018-1, and 9037-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

9.     The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius

has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

10.    On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[6]  As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

11.    The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53].  On July 27, 2022, the U.S. Trustee appointed an

---

[6]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

official committee of unsecured creditors [Docket No. 241] (the "<u>Committee</u>").  No request for the

appointment of a trustee or examiner has been made in these chapter 11 cases.

### <u>The Personal Identifiable Information</u>

12.     The majority of the Debtors' creditors are also their customers—these customers

are the Debtors' most valuable assets.  Living in the United States and around the world, these

customers use the Debtors' secure platform to buy, sell, trade, and store cryptocurrency.  Thus, the

Debtors' competitors do not have access to the personally identifiable information, including the

names, home addresses, and email addresses of the Debtors' customers, unless volunteered by a

customer themself.  Therefore, if the Debtors' customer home addresses, email addresses, and

names, where applicable, are made publicly available in a filed pleading, the Debtors' competitors

could strategically target and pursue the Debtors' customers, which would, in turn, negatively

impact the Debtors' business and ability to maximize the value of their estates.

13.     Furthermore, like many individuals who invest in cryptocurrencies, the Debtors'

customers are particularly concerned with the security and privacy of their personally identifiable

information because disclosure of such information could potentially result in a customer

becoming the target of identity theft, blackmail, harassment, stalking, and doxing.[7]  To protect

customers' assets and personally identifiable information, all information the Debtors collect in

connection with customer accounts are subject to the Debtors' privacy policy, attached hereto as

**<u>Exhibit E</u>**.  The Debtors' privacy policy provides, among other things, physical, electronic, and

procedural safeguards that comply with state and federal regulations to protect customers' personal

---

[7]     Doxing is a form of cyberbullying and is the term used for the harassment technique of finding and then posting
a user's sensitive personal information, including addresses, phone numbers, and even social security numbers.
*See Dox*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/dox (last visited July 27, 2022).

information.  The Debtors' ability to continue to protect customers' personal information is critical to maintaining their customers' continued safety, loyalty, and business.

14.    Many of the Debtors' customers, employees, and directors and officers (collectively, the "<u>Protected Parties</u>") also fear for their safety and their families' safety if their home addresses, email addresses, or names (where applicable) are published on the docket.  Social media and internet communities, such as Twitter and Reddit, have already shown an interest in these cases and the related court filings.  *See* **Exhibits B** and **C**. If the home addresses, email addresses, and names (where applicable) of all individuals involved, whether employees, customers, or directors and officers, are immediately available on Stretto's website or PACER, they are likely to be disseminated widely across the internet, putting people at risk of identity theft or other serious harm.

15.    On July 19, 2022, the Court entered the Creditor Matrix Order, authorizing the Debtors to redact on the Creditor Matrix, Schedules and Statements, and other documents filed with the Court individuals' personally identifiable information on an interim basis.  Further, on July 19, 2022, the Court entered the Schedules and Statements Order, extending the Debtors' time within which they must file with Schedules and Statements to August 12, 2022.  As of the date of this Motion, the Debtors have not yet filed the Schedules and Statements.

16.    Unredacted versions of the Creditor Matrix and Schedules and Statements will be provided to the Clerk of the Court in accordance with Local Rule 9037-1(c).  The Debtors will also provide the U.S. Trustee and counsel to the Committee with an unredacted version of the Creditor Matrix prior to any hearing scheduled on this Motion, and will provide to the U.S. Trustee and counsel to the Committee an unredacted version of the Schedules and Statements on the date upon which the Schedules and Statements are filed with the Court.

## Basis for Relief

### I.   Redacting the Confidential Information Related to Customers Is Warranted Under Section 107(b) of the Bankruptcy Code.

17.   Section 107(b) of the Bankruptcy Code provides bankruptcy courts with authority to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information.  This section provides, in relevant part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may:
>
> (1)   protect an entity with respect to a trade secret or confidential research, development, or ***commercial information***; or
>
> (2)   protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b) (emphasis added).  Pursuant to Bankruptcy Rule 9018, upon motion, "the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information."  Fed. R. Bankr. P. 9018.

18.   If the material sought to be protected satisfies one of the categories identified in section 107(b) of the Bankruptcy Code, "the court is *required* to protect a requesting party and has no discretion to deny the application."  *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original).  Stated differently, section 107(b) of the Bankruptcy Code does not require a party seeking its protections to demonstrate "good cause."  *Id*. at 28.  "Courts have supervisory power over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose."  *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005).  Courts typically deny public access to records and files "where open inspection may be used as a vehicle for improper purposes."  *Orion Pictures*, 21 F.3d at 27.  Indeed, the

"authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003). The policy considerations support "making public as much information as possible while still preserving confidentiality of protectable information." *See In re Borders Group, Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y 2011).

19.     Confidential commercial information "has been defined as information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *In re Faucett*, 438 B.R. 564, 567–68 (Bankr. W.D. Tex. 2010) (quoting *Orion Pictures*, 21 F.3d at 27). Commercial information need not rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code.[8] Courts have also held that the resulting sealing order should be broad (*i.e.*, "any order which justice requires"). *See, e.g.*, *Glob. Crossing*, 295 B.R. at 724 (citing Fed. R. Bankr. P. 9018).

20.     Courts in this jurisdiction and others have found that confidential commercial information includes information related to a debtor's contractual non-disclosure agreements and customer lists. *See In re Voyager Digital Holdings, Inc.* No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 20, 2022) (sealing the names of customers in connection with a retention application filed by certain of the debtors' proposed retained professionals); *In re Carlson Travel, Inc.*, No. 21-90017 (MI) (Bankr. S.D. Tex. Jan. 10, 2022) (authorizing the debtors to seal identities of certain confidential parties pursuant to non-disclosure agreements); *In re Washington Prime Group, Inc.*,

---

[8]     *See In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004) ("A bankruptcy court is required to seal 'documentary information filed in court that does not rise to the level of a trade secret but that is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors.'"); *see also Orion Pictures*, 21 F.3d at 27–28 (holding that section 107(b)(1) creates an exception to the general rule that court records are open to examination by the public and, under this exception, an interested party must show only that the information it wishes to seal is "confidential" and "commercial" in nature).

No. 21-31948 (MI) (Bankr. S.D. Tex. July 23, 2021) (same); *In re Cred, Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) (sealing confidential information, including names, mailing addresses, and email addresses of customers in connection with the creditor matrix and schedules and statements); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. Feb. 25, 2019) (sealing confidential information in connection with a retention application filed by certain of the debtors' proposed retained professionals); *In re Faucett*, 428 B.R. 564 (Bankr. W.D. Tex. Oct. 12, 2010) (authorizing the debtors to seal certain exhibits that included screenshots of customer lists).

21.    Recently, in the first cryptocurrency chapter 11 case, *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020), the Honorable John T. Dorsey entered an order, over the objection of the United States Trustee for the District of Delaware (the "Delaware U.S. Trustee"), permitting the debtors to "redact the names, mailing addresses, and email addresses of their customers, as well as the well as the mailing and email addresses of their individual creditors on any documents it files or makes publicly available in connection with" the cases, including the creditor matrix and schedules and statements.  *See Order Authorizing Debtors to Redact or Withhold Publication of Certain Personal Identification Information on a Final Basis and File Such Information Under Seal*, *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) [Docket No. 264].

22.    Notably, in *Cred*, the Delaware U.S. Trustee did not object to the Debtors' request to redact the home addresses of individual creditors, stating:  "[t]he U.S. Trustee does not oppose redaction of the residential addresses of the Debtors' individual creditors, but the creditor names must be disclosed.  The majority of the Debtors' customers are individuals and disclosure of a name without any other identifying information would alleviate the noted concerns of (i) disclosing

the customer list with customer data or (ii) creating an undue risk of identity theft." *See Objection*

*of the United States Trustee to Motion of the Debtors for Entry of an Order Authorizing the Debtors*

*to Redact or Withhold Information* at ¶ 4, *In re Cred*, No. 20-12836 (JTD) (Bankr. D. Del.

Dec. 4, 2020) [Docket No. 132].  The Delaware U.S. Trustee did, however, oppose the redaction

of the names and addresses of creditors that were entities.  *Id.*  In overruling the Delaware U.S.

Trustee's objection, Judge Dorsey stated:

> [B]ased on the evidence, I think there is at least some credible
> argument that the creditor list – which his [sic], also, in this case, the
> customer list of the – of the debtors is – has some intrinsic value,
> and that disclosure of that list could affect the ability of the debtors
> to market and sell that list as a part of their going toward a plan of
> reorganization here.  So I will overrule the objection, so long as the
> U.S. Trustee is provided with all of the information regarding every
> single one of the Bitcoin holders, and that there is a mechanism in
> the final order that allows for someone who can come forward and
> seek to obtain that list for a legitimate purpose can do so. . . . And
> so I want to make sure there's a way for someone who has a
> legitimate reason to get it, can get it.

*See* Hr'g Tr. at 113:20–25; 114:1–16, *In re Cred Inc.*, No. 20-12836 (JTD) (Bankr. D. Del.

Dec. 18, 2020) [Docket No. 277]. The cited portions of the transcript are attached hereto as

**Exhibit G**.

23.     By this Motion, the Debtors are only seeking authority to redact from any document

filed with the Court, (a) the home addresses and email addresses of any individual citizens of the

United States located in the United States and (b) the names, home addresses, and email addresses

of any citizens of the United Kingdom or European Economic Area member countries and any

individual whose citizenship is unknown, so as not to violate either the UK GDPR or EU GDPR.

By this Motion, the Debtors are not seeking to redact the names and addresses of corporate entities.

24.     The home addresses and email addresses of the Debtors' customers constitute

confidential commercial information under section 107(b) of the Bankruptcy Code.  The Debtors

operate in a highly competitive market and the publication of the home addresses and email addresses of the Protected Parties will enable competitors to target the Debtors' customers and undermine the Debtors' ability to reorganize.  The significant investments required to build a customer base, such as the Debtors' customer base, make it a valuable asset of a financial platform like that of the Debtors.  Therefore, competitors of the Debtors would obtain a significant competitive advantage by having access to the complete list of the Debtors' worldwide customer base, which would significantly decrease the value of the customer list as an asset in any future potential asset sale.

25.    The Debtors have recognized (and been responsive to) their disclosure obligations under the Bankruptcy Code and have narrowly tailored the request set forth in this Motion to protect only the kind of commercially sensitive information that is entitled to be protected under section 107 of the Bankruptcy Code.  The Debtors request authority to maintain the confidentiality of a limited number of Protected Parties at this time, together with any future customers or parties who (a) have executed nondisclosure agreements requiring the Debtors to maintain the confidentiality of their identities and/or (b) did not otherwise consent to the public disclosure of their identities.

26.    Redacting the home addresses and email addresses of the Protected Parties, while still providing access to such information, is the best method to ensure transparency with respect to information disclosure while still preventing the negative implications of public disclosure.

II.    **Redacting the Home Addresses, Email Addresses, and Names (Where Applicable) of the Protected Parties is also Warranted Under Section 107(c) of the Bankruptcy Code and Required by Privacy and Data Protection Regulations.**

27.    Section 107(c) of the Bankruptcy Code provides:

> The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court

finds that disclosure of such information would create undue risk of
identity theft or other unlawful injury to the individual[:]

    (A)    *Any* means of identification (as defined in section
1028(d) of title 18) contained in a paper filed, or to
be filed, in a case under this title.

    (B)    *Other information* contained in a paper described in
subparagraph (A).

11 U.S.C. § 107(c)(1) (emphases added). Therefore, if a debtor can show that disclosure of some

"other information" (a plainly broad term) creates "undue risk" of "identity theft or other unlawful

injury," courts may intervene to curtail disclosure of that information.

    28.    Section 107(c) of the Bankruptcy Code authorizes courts to issue orders that will

protect information that would create "undue risk of identity theft or unlawful injury to the

individual or the individual's property." 11 U.S.C. § 107(c)(1). Section 107(c) of the Bankruptcy

Code protects "means of identification" from being publicly disclosed. 11 U.S.C. § 107(c)(1)(A).

Means of identification includes "any name or number that may be used, along or in conjunction

with any other information, to identify a specific individual[.]" 18 U.S.C. § 1028(d)(7).

    29.    As noted by Collier on Bankruptcy, "[s]ection 107(c) gives the court broad

discretion to protect an individual with respect to any information, including identifying

information, in a paper filed or to be filed with the court to the extent that the court finds that

disclosure of the information would create an undue risk of identity theft or unlawful injury to the

individual or the individual's property." 2 COLLIER ON BANKRUPTCY ¶ 107.04 (16th ed.). Stated

differently, "[t]he types of information that can be protected by the court are unlimited" and go

beyond the types of identification referenced in Bankruptcy Code section 107(c)(1)(A), especially

in light of the broad language in Bankruptcy Code section 107(c)(1)(B) authorizing protection of

"other information." *Id.*

30.    Further, the UK GDPR and EU GDPR require a legal basis for any processing (which includes the transferring or disclosing) of information relating to identified or identifiable individuals (which includes names, home addresses, and email addresses of individuals and individual business contacts) of Personal Data.  The only possible legal basis that may apply for disclosing the Personal Data in this instance would be the "legitimate interests" ground (Article 6(1)(f) UK GDPR and EU GDPR).  This ground, however, will only apply where the processing is necessary for the relevant purpose.  Such processing will not be necessary where there is a less intrusive way of achieving that purpose.  This ground will also not apply if, when balanced against each other, the rights and freedoms of the relevant individuals override the legitimate interest in question.  The legal basis of "compliance with a legal obligation" (Article 6(1)(c) UK GDPR and EU GDPR) would not be applicable in this situation because the legal obligation must exist under UK or EU law, which is not the case in the context of these chapter 11 cases.

31.    In addition, processing, disclosure, or sale of information relating to identified or identifiable individuals under the UK GDPR and EU GDPR must comply with certain key principles, including the principle of data minimization, which requires that any processing must be necessary in relation to its purpose.  The Debtors will provide to the Court, the U.S. Trustee, and counsel to the Committee unredacted versions of the Creditor Matrix, Schedules and Statements, and other redacted documents filed on the docket.  The right of individual customers to have their home addresses, email addresses, and names redacted on the public docket also overrides the legitimate interest of publicly disclosing such information in connection with the Creditor Matrix and Schedules and Statements.  Disclosure of such information in an unredacted

form therefore risks breaching the UK GDPR and EU GDPR on account of (a) having no legal

basis and (b) breaching the minimization principle.

32.     Violators of the UK GDPR and EU GDPR also risk severe penalties.  If an

organization is found to have processed information in breach of the UK GDPR, the organization

may be fined up to the higher of £17,500,000 or 4 percent of worldwide annual turnover—*i.e.*,

total annual revenues—of the preceding financial year.  *See* United Kingdom Data Protection

Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic

Communications (Amendments etc.) (EU Exit) Regulations 2019).  Similarly, for a breach of the

EU GDPR, the organization may be fined up to the higher of €20,000,000 or 4 percent of

worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year.

*See* General Data Protection Regulation (EU) 2016/679, art. 83(5).

33.     The Debtors submit that the home addresses, email addresses, and names (where

applicable) of the Protected Parties contained in the Creditor Matrix and Schedules and Statements

constitutes personal information that may be protected under section 107(c)(1) of the Bankruptcy

Code.  The privacy and security of personally identifiable information in the crypto industry is

particularly important given the extreme high-risk and high-upside common in this sector.  The

public disclosure of any personal information regarding the Protected Parties, including the

Protected Parties' home addresses, can put the Debtors' customers at a real risk of becoming the

target of identity theft, blackmail, harassment, doxing, and stalking.  Furthermore, because many

of the Debtors' customers reside in jurisdictions all over the world, disclosing their names as well

as their addresses and other Personal Data risks violating the UK GDPR and the EU GDPR and

exposing the Debtors to potential civil liability and significant financial penalties.

34.     In addition, individuals' names (where applicable), home addresses, and email addresses constitute vital information to perpetrators of identity theft, stalking, doxing, and intimate partner violence alike.  In 2018, over 23 million people experienced an incident of identity theft and monetary losses resulting from identity theft totaled $15.1 billion.[9]  Over 48 million people have experienced identity theft in their lifetime.[10]  There are over 600,000 individual creditors on the Creditor Matrix, and releasing all of their individual addresses and/or names to the public puts each one of them at risk of becoming a victim of identity theft.  The Creditor Matrix and Schedules and Statements in these chapter 11 cases is, or will be, in the form of a text-recognized and text searchable pdf, a format that makes it very easy to extract addresses quickly.  While many forms of identity theft can be swiftly and painlessly resolved, many cannot and the results can be catastrophic to a person's financial stability.  *See* **Exhibit D** (including an email from a customer expressing concern for potential identify theft if his or her personal information is made public).

35.     Even more serious are the statistics on stalking and intimate partner violence. A report issued in November 2018 by the Centers for Disease Control found that approximately 16 percent of women and 5.8 percent of men are victims of stalking at some point in their lifetime and approximately 1 in 3 people have experienced violence and/or stalking by an intimate partner during their lifetime.[11]  Due to the perils faced by survivors of stalking and intimate partner

---

[9]   Erika Harrell, *Victims of Identity Theft, 2018*, BUREAU OF JUSTICE STATISTICS 1 (Apr. 2021); https://bjs.ojp.gov/content/pub/pdf/vit18.pdf.

[10]   *Id.*

[11]   Sharon G. Smith et al., *The National Intimate Partner and Sexual Violence Survey: 2015 Data Brief - Updated Release*, CENTERS FOR DISEASE CONTROL AND PREVENTION 18 (Nov. 2018); https://www.cdc.gov/violenceprevention/pdf/2015data-brief508.pdf.

violence, any uncertainty that survivors may be among the Protected Parties weighs in favor of protection, rather than disclosure.

36.     The Debtors understand that there is a "strong presumption and public policy in favor of public access to court records" and that a judge must undergo careful and skeptical to ensure that "compelling or extraordinary circumstances exist" when granting a sealing motion. *See, e.g., In re Anthracite Capital Inc.*, 492 B.R. 162, 170 (Bankr. S.D.N.Y. 2013); *In re Oldco M. Corp.*, 466 B.R. 234, 237 (Bankr. S.D.N.Y. 2012).   Unlike in other cases, such as *Anthracite Capital*, where the court denied a motion to seal names of individual defendants listed in an adversary complaint because the public had too great an interest in evaluating the fairness of the settlement, here public disclosure of the names of customers who are individuals poses a real threat of an "unlawful injury." *Anthracite Capital*, 492 B.R. at 170.  The Debtors are not seeking to seal names of adversary proceeding defendants, of which the public has a right to know the identity, but rather the home addresses, email addresses, and names (where applicable) of their individual customers.

37.     The injury the Protected Parties may suffer is not merely speculative.   Certain customers and employees of the Debtors have already been threatened with physical harm in connection with these chapter 11 cases, as evidenced in **Exhibit B**, attached hereto, Reddit posts that threaten the life and physical safety of Chief Executive Officer Alex Mashinsky.[12]  Moreover, as evidenced in **Exhibits C** and **D**, attached hereto, creditors themselves are asking that their names, home addresses, and email addresses be redacted from any Court filings.  Finally, in at least one recent chapter 11 case, the abusive former partner of a debtor's employee used the

---

[12]   Certain of these posts were subsequently removed from Reddit.

publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new home address that had not been publicly available until then, forcing the employee to change home addresses again.[13]

38.    Collectively, these facts demonstrate that the home addresses and email addresses of all Protected Parties warrant redaction under section 107(c) of the Bankruptcy Code, as the risk of unlawful injury is so compelling in this case as to warrant the redaction necessary.  Moreover, for the same reasons, it is unlikely that disclosure of the names (where applicable), home addresses, and email addresses of the Protected Parties warrant redaction under section 107(c) of the Bankruptcy Code, as the risk of unlawful injury is so compelling in these cases as to warrant the redaction necessary.

### III.    The Court Should Authorize the Debtors to Redact the Home Addresses, Email Addresses, and Names (Where Applicable) of the Protected Parties from the Creditor Matrix, Schedules and Statements, and Other Documents Filed Publicly on the Docket.

39.    The Debtors request the authority to file redacted versions of the Creditor Matrix, Schedules and Statements, and other documents filed on the docket.  The redacted versions will redact the home addresses, email addresses, and names (where applicable) of the Protected Parties. The Debtors will provide the Court, the U.S. Trustee, and counsel to the Committee with unredacted versions of the Creditor Matrix, Schedules and Statements, and other redacted documents filed on the docket.  The Debtors further request that the Proposed Order authorizing such redactions remain in place for the duration of these chapter 11 cases so as not to frustrate the

---

[13]    The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *Charming Charlie Holdings Inc.*, Case No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019) [Docket No. 4].

purpose of the Proposed Order.  At the conclusion of these chapter 11 cases, the Debtors will request to retrieve and dispose of the Creditor Matrix, Schedules and Statements, and other documents in compliance with Local Rule 9018-1.

40.    This proposed format for disclosure is carefully tailored to provide appropriate levels of information in these cases while still maintaining confidentiality of "commercial information" where truly necessary.

## Notice

41. The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee;  (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

20

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order

granting the relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

New York, New York
Dated: August 3, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (I) AUTHORIZING THE DEBTORS TO REDACT
### CERTAIN PERSONALLY IDENTIFIABLE INFORMATION
### FROM THE CREDITOR MATRIX, SCHEDULES AND STATEMENTS,
### AND RELATED DOCUMENTS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (a) authorizing the Debtors to redact certain personally identifiable information from the Creditor Matrix, the Schedules and Statements, and related documents, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations and the Bixler Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of the cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing thereon were appropriate under the circumstances and no other notice

need be provided; and this Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a), 107(b), and 107(c) of

the Bankruptcy Code, to redact on the Creditor Matrix, Schedules and Statements, or any other

document filed with the Court (a) the home addresses and email addresses of all individuals who

are U.S. citizens residing in the United States and (b) the names, addresses, and other Personal

Data of any natural person whose personally identifiable information has been provided to an

organization with an establishment in the United Kingdom or a European Economic Area member

state, who resides in the United Kingdom or a European Economic Area member state, or any

natural person whose residence or citizenship is unknown, *provided* that the Debtors shall provide,

under seal, an unredacted version of the Creditor Matrix, Schedules and Statements, and any other

filings redacted pursuant to this Order to (i) the Court, the U.S. Trustee, and counsel to the

Committee and (ii) to any party in interest upon a request to the Debtors (email is sufficient) or to

the Court that is reasonably related to these chapter 11 cases; *provided*, *further*, that any receiving

party shall not transfer or otherwise provide such unredacted document to any person or entity not

party to the request.  The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Order.

3.      Any party authorized to receive the unredacted versions of the Creditor Matrix, Schedules and Statements, and/or any other documents shall be authorized and directed, subject to Local Rule 9037-1, to redact specific references to the information set forth therein from pleadings filed on the public docket maintained in these chapter 11 cases.

4.      Any party who receives the home addresses, email addresses, and names (where applicable) of the Protected Parties in accordance with this Order shall not disclose or otherwise disseminate this information to any other person or entity.

5.      The relief granted in this Order is without prejudice to rights of the U.S. Trustee and all other parties in interest to seek to unseal the information redacted by this Order.

6.      The Debtors shall retrieve from the Clerk of Court and dispose all documents redacting the home addresses, email addresses, and names (where applicable) of the Protected Parties at the conclusion of these chapter 11 cases.

7.      The requirements set forth in Local Rules 9013-1, 9018-1, and 9037-1 are satisfied by the contents of the Motion.

8.      Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

11.    This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Reddit Posts Threatening Alex Mashinsky**

On the #Celsius Chapter 11 AMA today hosted by @SimonDixonTwitt,
someone came on and proposed an attack on **@Mashinsky**'s **home** to steal
his belongings and make depositors whole, just as they would do in South
Africa.

## r/CelsiusNetwork

█████████ • 1m                                      **Join**   ...

# How hard would it be to kill Alex Machinsky?

1.7 million people and not a single person killed him yet?

What is making it so difficult to kill Alex? Is he in a super secret hiding place or something?

Does he have body guards/security? How come no one has bribed the body guards yet? Is his wife and kids hiding too?

How come the Machinskys are untouched?

⬆ Vote ⬇        📅        💬 0                            ⬆️

---

**0 Comments** sorted by **Best** ⌄

 Leave a comment

 **about reveddit**
⚙ | **F.A.Q.** | **add-ons** |



r/ `celsiusnetwork`   [go]

[+] show filters                                                          copy sharelink

---

1                   **[ Removed by Reddit ]**
                    submitted 1 day, 10 hours ago by ████████████████

            **[removed] by mod** ⍰  **[removed] by Reddit legal** ⍰

        **13 comments   reddit   other-discussions   subreddit-index   message mods   op-focus** ⟳

[−]  Really surprised to see everyone here wants Alex in jail.

I'm surprised you don't want to see him killed.

I absolutely want to see see Alex Machinsky get killed. IDC if fbi is tracking me. This man
needs to be murdered.

[−] view less

---

1 day, 9 hours ago
—
1 day, 10 hours ago
14 of 14

**Tip** Reveddit Real-Time can notify you when your content is removed.

archive status
    comments    18 hours, 47 minutes until overwrite

**Tip** Check if your account has any removed comments.
view my removed comments



[−] ██████████    **6 points** 1 day, 10 hours ago
You got us in the first half not gonna lie
**permalink   hide replies (1)   author-focus   as-of   preserve** ⟳   ⍰

> [−] ██████████   **3 points** 1 day, 10 hours ago
> But come on now, you are telling me that there are 1.7 million people that had a LOT of
> assets with Celsius, and not one single person wants to kill him? 1.7 million people, I
> really hope there is ONE person out of that 1.7 million that will actually kill him
> **permalink   parent   context   hide replies (1)   author-focus   as-of   preserve** ⟳   ⍰
>
>> [−] ██████████   **3 points** 1 day, 10 hours ago
>> wish in one hand, shit in the other, see which one gets filled first
>> **permalink   parent   context   author-focus   as-of   preserve** ⟳   ⍰

[−] ██████████    **3 points** 1 day, 10 hours ago

People that want him killed are worse than Alex and actually sick in the head. Maybe have some retrospection and think about how you shouldn't invest money you can't afford to lose because you were all hailing him when he gave you 'free' money.

permalink    hide replies (1)    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓▓▓    0 points  1 day, 10 hours ago

So you are saying, if someone steals your money, it's ABNORMAL to want that person dead?

permalink    parent    context    hide replies (2)    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓▓▓    2 points  1 day, 10 hours ago

yes. life is precious and you'll get PTSD if you kill someone unless you have issues already

permalink    parent    context    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓▓▓    2 points  1 day, 10 hours ago

He didn't steal your money. You invested in a high risk product and the company went bankrupt. Maybe think about your own actions also before you blame it all on one guy.

permalink    parent    context    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓    3 points  1 day, 10 hours ago

Cos he's a ▓▓▓ who let his ego get in the way of reality and lost billions as a result.

permalink    hide replies (1)    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓    -1 points  1 day, 10 hours ago

So why do you want him in jail instead of killed?

permalink    parent    context    hide replies (1)    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓▓▓    2 points  1 day, 9 hours ago

bro, you don't need your money you need a psychiatrist or psychologyst.

permalink    parent    context    author-focus    as-of    preserve ⟳    ?

[−] [deleted]  1 point  1 day, 10 hours ago

**[deleted] by user** ?

as-of    ?

[−] ▓▓▓▓▓▓    0 points  1 day, 10 hours ago

Someone should put a hit out on him

permalink    hide replies (1)    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓    1 point  1 day, 10 hours ago

Why is it that out of all 1.7 million people, not a single person out a hit on him? There is no way all 1.7 million people are okay with him still living. how hard is it to kill Alex Machinsky?

permalink    parent    context    hide replies (1)    author-focus    as-of    preserve ⟳    ?

[−] ▓▓▓▓▓▓    2 points  1 day, 10 hours ago

why dont you do it? talk is easy

permalink    parent    context    author-focus    as-of    preserve ⟳    ?

Seriously toying with the idea of creating a fund to send me to track down and question **@Mashinsky** . We deserve answers and he can hide from Twitter, but he can't hide from life. I would sit outside his **home** until he showed his face. We have questions that deserve answers.

I don't have a huge amount of money in your system, but I swear if this is an exit move and I get ████████, I will find members of your staff and murder their families...

pon 17:16

How about if something happen to people that decied to hold not your own money ?

15:50

Thank you for your message and we understand your concerns. Please note, the latest information from Celsius is listed below:

https://blog.celsius.network/a-memo-to-the-celsius-community-59532a06ecc6

We continually put the community first and the protection of its assets. We will share more info as it becomes available and your patience is truly appreciated. - IR

Not paying out peoples money when they want how is that protecting ?

You end up with bullet in your head bye

**<u>Exhibit C</u>**

**Reddit Threads of Customers Concerned with Privacy**

 · 3 hr. ago

I think with cases like this, with such personal info, the documents will still be uploaded to the docket for anyone to look at, but redacted and marked as 'Attorney Eyes Only' so (ideally) only the attorneys on both sides would have access to the sensitive parts to figure out claims, mailings, etc.

⬆ 3 ⬇ 💬 Reply  Share  Report  Save  Follow

 · 3 hr. ago

I don't think our info will be made as public as y'all making it out to be.

⬆ 1 ⬇ 💬 Reply  Share  Report  Save  Follow

**r/CelsiusNetwork** · Posted by [redacted] 8 days ago

Community Action: Contact Court to Hide Identity of Account Owners

I was wondering how we would be able to contact the court so when they file account info August 29 they will leave our names out. We should request for account numbers only not names for security reasons

Thanks

💬 10 Comments    ⊞ Award    Share    🔖 Save    ⋯

---

Sort By: Best ▾

[redacted] · 8 days ago

How did most of the Celsius top 50 depositors hide their names?

Things that make you say...

⬆ 4 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

[redacted] · 8 days ago

Seems more likely to me that those records would just have a protective order applied to them than for a court to care that you think crypto is anonymous despite using centralized services to interact with it.

⬆ 3 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

[redacted] · 7 days ago

There's concern that Mashinsky inner circle are majors creditors, perhaps in the top 50. Including his wife and others that we know Alex paid 20million to in Cel. These names need to be unmasked so that we can be sure that decisions are made knowing all relevant info.

⬆ 5 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

[redacted] · 8 days ago

Send them an anonymous email (if you put your real name/email address in there it will also be public)

⬆ 2 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

r/CelsiusNetwork · Posted by ▓▓▓▓▓▓▓▓   1 day ago

So if they are going to release our names publicly during the chapter 11 filing, should we just be wary of all mail/emails about crypto that reach us in case they are targeted scams?

Sort By: Best ▾

▓▓▓▓ · 1 day ago 獎

I'm more concerned about the release of phone numbers and email addresses.

⬆ 50 ⬇   💬 Reply  Give Award  Share  Report  Save  Follow

▓▓▓▓▓▓ · 1 day ago

Been there done that (with Ledger) and that included physical address too. Had to change phone numbers and email and until I moved I was getting shilled by shitcoins by letters (pulse chain, hex etc).

⬆ 18 ⬇   💬 Reply  Give Award  Share  Report  Save  Follow

▓▓▓▓ · 1 day ago

Emails and phone numbers are not getting released right?

⬆ 10 ⬇   💬 Reply  Give Award  Share  Report  Save  Follow

▓▓▓▓▓ · 22 hr. ago

Seems so. Emails, phone numbers, addresses and number of coins you have. That's the general consensus.

⬆ 5 ⬇   💬 Reply  Give Award  Share  Report  Save  Follow

▓▓▓ · 19 hr. ago

How can that be legal, damn. This is the gift that keeps on fucking giving.

⬆ 13 ⬇   💬 Reply  Give Award  Share  Report  Save  Follow

▓▓▓▓▓ · 14 hr. ago

I had the same question, specially because I'm based in Europe where privacy is key.



· 15 hr. ago

Is there a way to request to be excluded from the list? Surely there's millions of accounts with 0 balance, it would suck if their data was released anyway.

⬆ 2 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

· 6 hr. ago

Probably not.

⬆ 2 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

1 day ago · edited 1 day ago

Anyone who has their identity stolen or personal safety threatened May think about filing a class action lawsuit with others who are in similar situation against Kirkland lawyers, citing there was another cryptocurrency bankruptcy case where everyone's identity was protected but Kirkland did not care enough to do it for celsius customers. I ll provide a link of the other case after work. I am sure there are lawyers out there who wants to see Kirkland down

⬆ 28 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

■ ■ ■ · 1 day ago

I think with cases like this, with such personal info, the documents will still be uploaded to the docket for anyone to look at, but redacted and marked as 'Attorney Eyes Only' so (ideally) only the attorneys on both sides would have access to the sensitive parts to figure out claims, mailings, etc.

↑ 7 ↓ 💬 Reply Give Award Share Report Save Follow

r/CelsiusNetwork · Posted by ████████████████ 7 days ago

**Celsius list of US creditors will have our legal names listed on stretto website. Can we petition?**

There is one other crypto bankruptcy case where lawyers managed to conceal every one names and information. Why cannot Kirkland do the same?

Petition here: CelsiusCreditorQuestions@kirkland.com

I write to their lawyers at the email above.

Please write one too

💬 144 Comments    ➕ Award    Share    🔖 Save    ···

It says that they will "redact personal information" so see if that includes names. Hope so

⬆ 6 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

OP · 7 days ago

No. It does not include names! Only home address

⬆ 5 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

nice. bout to 5dollar wrench attack some people

⬆ 6 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

Curious, how do you know this? Is that in the document? Thanks

⬆ 2 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

OP · 7 days ago

See the link below docket 18

⬆ 0 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

I hope they don't list a dollar amount next to our names at least

⬆ 1 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

OP · 7 days ago

I don't see why they cannot do that! They have to list the dollar amount.

⬆ 3 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

Looking for it, and couldn't find it... sorry to ask, but could you point me in the direction of finding docket 18?

⬆ 0 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

OP · 6 days ago

See my link above

⬆ 1 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

what about phone number and email?

⬆ 0 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

OP · 7 days ago

Only home address will be hidden. Our name certainly will show. Phone and email will probably be shown too

⬆ 3 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

Why is everyone concerned about privacy so much? I just want the fucking tokens they are holding hostage back. That easily trumps anonymity for me.

⬆ -4 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

— 6 days ago

Because scammers will blow your shit up.

You will now get 20 emails a day from 'Stratto' that aren't from Stratto. Hopefully you don't respond to the phishing email by mistake.

⬆ 8 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

can't be serious ? does the court have any idea how much damage that could do.

⬆ 12 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

6 days ago

The same damage as on any other bankruptcy proceedings.

⬆ 1 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

7 days ago

god dammit. thats gonna be a nice little database creation to be passed around the grey market

⬆ 16 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

Did Voyager customers have their name made public? I see in the request you linked that Voyager did the same thing

⬆ -2 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

OP - 7 days ago

- 6 days ago

No, this hasn't been decided yet. All they've said is that customer's PII at MCB will follow privacy laws, basically meaning they won't release multiple forms of personal info like name and dob. But I believe releasing a name is ok.

⬆ 1 ⬇  💬 Reply  Give Award  Share  Report  Save  Follow

r/CelsiusNetwork · Posted by ██████████ 6 days ago

Celsius lawyer email to answer creditor questions
CelsiusCreditorQuestions@kirkland.com

💬 12 Comments  ⊞ Award  Share  🔖 Save  ···

Sort By: Best ▾

██████ · 5 days ago

I don't see why I'd want to get an answer from what is effectively the opposition that only cares about defending the company.

⬆ 7 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

██████ OP · 5 days ago

Ask them not to reveal our legal names in their schedule

⬆ 2 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

██████ · 5 days ago

That's if you send a message to the judge not stretto

⬆ 1 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

██████ OP · 5 days ago

Their lawyers will have to file a motion in court to protect our privacy. Judge can only approve it. Judge cannot file for us. The email address is Kirkland their lawyers. Their lawyers can do it if they really want

⬆ 1 ⬇ 💬 Reply  Give Award  Share  Report  Save  Follow

**<u>Exhibit D</u>**

**Email Correspondences Sent to
CelsiusCreditorInquiries@kirkland.com Regarding Personally Identifiable Information**

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Wednesday, July 27, 2022 11:30 AM
**To:** info@kirkland.com; #CelsiusCreditorQuestions <Celsiuscreditorquestions@kirkland.com>
**Subject:** Celsius Comments and Questions - Individual info - Robots.txt , GDPR

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

Dear Kirklnad and partners.

This email is confidential.. Do not reproduce or refer to it without my written consent.

A)
I would like to express my concern on the potential of individual data being published and made accessible. If there are no options, consider these damage limitations actions:

1) Limit the published information as much as possible, maybe display only the initials or a combination of the first characters of the name and surname
2) The data should not be indexable by search engines. This is a simple procedure done on the website by setting the right settings in robots.txt file. The site webmaster will surely know how to do this, it is not complicated.
3) GDPR rules apply to EU Citizens worldwide. There could be large consequences if anyone invokes this on the data of EU Citizens.

B)
If the publication of data takes place, can I file an individual motion not to publish my data? Will the motion itself be public (as that would defeat the purpose)?

C)
I am not sure if I should engage in a lawyer, do you have any advice on this? Would the cost justify the increase in returns?

Thanks for your efforts to save our money in Celsius.

██████████ (no authorisation to publish my name is given)

**From:** ████████████████████████████
**Date:** July 21, 2022 at 11:22:58 PM EDT
**To:** #CelsiusCreditorQuestions <Celsiuscreditorquestions@kirkland.com>
**Subject: Schedule**

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

When you do your debtors schedule, do not publish creditor's legal names online. Instead, use an account number. Or use initials. Many people will be very concerned with you exposing our identity to ID theft, threatening our personal safety during a recession (since people will see the claim amount), and making our personal life difficult.

Sent from my iPhone

**From:** ████████████████████████████████████

**Sent:** Wednesday, July 27, 2022 2:30 PM

**To:** #CelsiusCreditorQuestions <Celsiuscreditorquestions@kirkland.com>

**Subject:** publishing personal information?

**This message is from an EXTERNAL SENDER**

Be cautious, particularly with links and attachments.

I have seen in a few places the fact that a list of creditors will be published as part of the case record. Is there any way to make sure my personal identifying information (name, email, phone number, address) is redacted or anonymized (perhaps by using only Celsius account number). What type of information will be published in the list of creditors? Will I have any ability to decide how much of my information is listed? Thanks,

████████

**<u>Exhibit E</u>**

**Celsius' Privacy Policy**

# Celsius Privacy Policy

Introduction

Celsius Network LLC (**"us"**, **"we"** or **"Company"**), 121 River Street, PH05, Hoboken, NJ 07030 USA, respects the privacy of our users (each, **"you"** or **"User"**) and is committed to protecting the privacy of Users who access, download, install or register to our mobile or web application (the **"Application"**), our website or any other online services we provide (collectively: the **"Services"**). This Privacy Policy outlines our practices with respect to collecting, using and disclosing your information when you use the Services. We encourage you to read the Privacy Policy carefully and use it to make informed decisions. By using the Services, you agree to the terms of this Privacy Policy and your continued use of the Services constitutes your ongoing agreement to the Privacy Policy. The Privacy Policy is a part of the Terms of Service and is incorporated therein by reference.

This Privacy Policy contains information on our use of your personal information in accordance with relevant laws and regulations, including, where applicable, the EU General Data Protection Regulation (2016/679) (the **"EU GDPR"**), the EU GDPR such as it forms part of the laws of the United Kingdom (**"UK"**) by virtue of section 3 of the European Union (Withdrawal) Act 2018 and as amended by the Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019 (the **"UK GDPR"**), the UK Data Protection Act 2018 and the California Consumer Privacy Act of 2018 (**"CCPA"**). The rights discussed in certain sections of this Privacy Policy may be subject to exemptions or other limitations under applicable law.

For users who are located in the European Economic Area (**"EEA"**) and/or the UK and subject to the EU GDPR and/or the UK GDPR (together, the **"GDPR"**), please review this Privacy Policy and see the below Section, **"EU/UK Based Users and the GDPR"** for a description of your rights and other information related to the GDPR.

For users who are California residents and subject to the CCPA, please review this Privacy Policy and see the below Section, **"Additional Information for California Residents"** for a description of your rights with regard to your personal information (as defined by the CCPA), additional disclosures, and our notice at collection.

In this Privacy Policy you will read about, among other things:

What Type of Information We Collect

In general, we collect information, including Personal Information, when you communicate with us and when you use our Services. The information we request from you will be the minimum required to provide you with our services. When we use the term "**Personal Information**" we mean any information about an individual from which that person can be identified. Information that is anonymous, aggregated, or deidentified is generally not considered Personal Information.

There are instances where we invite or request individuals to provide us with their Personal Information through our Application, website or otherwise (e.g. by email), and we may also collect some information automatically. Through your use of our Services and your interactions with us, you may provide us with Personal Information including:

- **Identifiers and similar information** such as, name, address, date of birth, email address, social security number, driver's license number, passport number, online identifiers, or other similar identifiers;

- **Certain information protected under federal or state laws** such as a signature or bank account or other financial information;

- **Characteristics of protected classifications** under certain federal or state laws, including gender, national origin, or marital status;

- **Commercial information**, including records of products or services purchased, obtained, or considered, or other purchasing histories or tendencies;

- **Internet or other electronic network activity information**, including interactions with our website or use of certain online tools;

- **Geolocation data**, such as information about your location or the location of your device;

- **Audio, electronic, visual**, or similar information, which could be collected during audio or video calls (including video conferences and similar functions);

- **Biometric data**, such as images, which may constitute biometric data in certain jurisdictions. We may use such data for the purpose of identification for fraud and anti-money laundering checks;

- **Professional or employment-related information**, including occupation, compensation, employer, and title;

- **Inferences drawn from any of the information identified above** to create a profile reflecting your preferences or similar information; and

Sources of Personal Information

We collect Personal Information about you directly from you and/or your intermediaries through sources on our website, our Application, when you register or sign-in to the Services via your social network account, including when the following happens:

- **Signing up for an account**: When you sign-up and register for the Services, you will be asked to provide us certain details about yourself. You may register for the Services through your social network account or directly through the Application or our website (if applicable).

- **Registering through social network account**: When you register or sign-in to the Services via your social network account (e.g., Facebook, Twitter, etc.), we will have access to basic information from your social network account, such as your full name, home address, email address, birthdate, profile picture, friends list, personal description, as well as any other information you made publicly available on such account or agreed to share with us. At all times, we will abide by the terms, conditions and restrictions of the social network platform.

- **Registering through the Application or our website (if applicable)**: When you register for the Services through the Application or our website, we may collect from you the following information: full name, email address, home address, hometown, nationality, birthdate, phone number, as well as information required for our compliance with regulatory Know Your Customer requirements, such as passport or other identification number, and any other information you agreed to share with us.

- **Voluntarily provided information**: We may collect information which you provide us voluntarily. For instance, when you respond to communications from us, communicate with us via email or share additional information about yourself through your use of the Services. We may also collect the feedback, suggestions, complaints and reports which you send to us. Please note that we may also collect complaints about you from other Users, which may include your Personal Information.

- **Communication Recording**: We may record communications between you and any of our representatives and/or other participants, including recordings of audio, video and video conference calls, conversations or communications. We may collect this information for the purpose of resolving complaints, or for the purpose of improving the overall quality of the Services, for training and/or instructional purposes, record keeping or otherwise in order to comply with a legal or regulatory requirement to which we are subject.

- **Device information**: We may collect Personal Information from your device. Such information may include geolocation data, IP address, unique identifiers (e.g., MAC address and UUID) as well as other information which relates to your activity through the Services.

For the avoidance of doubt, if we combine Personal Information with non-personal information, the combined information will be treated as Personal Information as long as it remains combined.

In addition, we may collect Personal Information from different sources, such as: our affiliates, our service providers, or our affiliates' service providers; public websites or other publicly accessible directories and sources, including bankruptcy registers, tax authorities, governmental agencies and departments, and regulatory authorities; and/or from credit reporting agencies, sanctions screening databases, or from sources designed to detect and prevent fraud or financial crimes. The relevant source may be responsible for obtaining the relevant consents from you (where applicable) to ensure you are happy with the ways in which your Personal Information will be used.

How We Use the Information

We use and share Personal Information in the manners described in this Privacy Policy. In addition to the purposes listed above, the information we collect, which may include your Personal Information, is used for our business or commercial purposes such as:

- To set up your account and to provide the Services.

- To identify and authenticate your access to the Services.

- To authenticate your identity for the purpose of compliance with regulatory Know Your Customer requirements.

- To send you relevant push notifications, which are based on different activities offered by the Services.

- To communicate with you and to keep you informed of our latest updates and newsletters.

- To market our website, products, and the Services.

- To serve you personalized advertisements when you use the Services.

- To perform research or to conduct analytics in order to improve and customize the Services to your needs and interests.

- To support and troubleshoot the Services and to respond to your queries.

- To investigate and resolve disputes in connection with your use of the Services.

- To detect and prevent fraudulent and illegal activity or any other type of activity that may jeopardize or negatively affect the integrity of the Services; and

- To investigate violations and enforce our policies, and as required by law, regulation or other governmental authority, or to comply with a subpoena or similar legal process or respond to a government request.

With Whom We Share the Information and for What Purpose

We do not rent, sell, or share your Personal Information with third-parties except as described in this Privacy Policy. We may share Personal Information with the following recipients: (i) our subsidiaries; (ii) affiliated companies; (iii) subcontractors and other third-party service providers; (iv) business partners (such as GEM, Coinify, Simplex and Wyre); (v) auditors or advisers of our business processes; and (vi) any potential purchasers or third party acquirer(s) of all or any portion of our business or assets, or investors in the company.

In addition to the purposes listed in this Privacy Policy, we may share Personal Information with our recipients for any of the following purposes: (i) storing or processing Personal Information on our behalf (e.g., cloud computing service providers); (ii) processing such information to assist us with our business operations; (iii) carrying out your instructions or giving effect to your preferences in relation to the Services we provide (including if you wish to use services which our business partners provide); (iv) performing research, technical diagnostics, personalization and analytics. We may also disclose Personal Information or any information we may have about you if we have a good faith belief that disclosure of such information is helpful or reasonably necessary to: (i) comply with any applicable law, regulation, legal process or governmental request; (ii) enforce our policies, including investigations of potential violations thereof; (iii) investigate, detect, prevent, or take action regarding illegal activities or other wrongdoing, suspected fraud or security issues; (iv) to establish or exercise our rights to defend against legal claims; (v) prevent harm to the rights, property or safety of us, our affiliates, our Users, yourself or any third-party; (vi) for the purpose of collaborating with law enforcement agencies; and (vii) in case we find it necessary in order to enforce intellectual property or other legal rights.

Wherever possible, we will only disclose Personal Information to a third party in circumstances where that third party has agreed to respect the security and confidentiality of Personal Information and treat it in accordance with applicable law. We will seek to ensure that third parties to whom any Personal Information may be disclosed will not use Personal Information for their own purposes and only process Personal Information for specified purposes and otherwise in accordance with our instructions and/or with applicable laws.

We may also disclose Personal Information about you to a third party at your request or direction or with your consent.

Corporate Transactions

We may share information, including Personal Information, in the event of a corporate transaction (e.g., sale of a substantial part of our business, merger, consolidation or asset sale of an asset or transfer in the operation thereof) of the Company. In the event of the above, the acquiring company or transferee will assume the rights and obligations as described in this Privacy Policy.

Third-Party Collection of Information

Our policy only addresses the use and disclosure of information we obtain about you. To the extent that you disclose your information to other parties via the Services (e.g., by clicking on a link to any other website or location) or via other sites throughout the Internet, different rules may apply to their use or disclosure of the information you disclose to them. You acknowledge that we are not responsible for the products, services, or descriptions of products or services that you receive from third-party sites or to the content or privacy practices of those sites, and that this Privacy Policy does not apply to any such third-party products and services. You are knowingly and voluntarily assuming all risks of using third-party sites to purchase products and services. You agree that we shall have no liability whatsoever with respect to such third-party sites and your usage of them.

Cookies and Google Analytics

We may use cookies and other technologies or methods of web and mobile analysis to gather, store, and track certain information related with your access to and activity through the Services, including when you visit our website.

Below, we describe the types of cookies (as defined below) we use, and how you can control our use of cookies.

Types of Cookies We Use

As mentioned above, we will collect certain information about you when you visit our website. We collect such information through the following technologies (collectively, "cookies"):

- Cookies. Cookies are small pieces of information that a website assigns to your device while you are viewing a website. Cookies may be served by the entity that operates the website you are visiting ("first-party cookies") or by other companies ("third-party cookies"). Additionally, some cookies may be temporary and erase when you close your browser ("session cookies"), and others may remain for a set duration ("persistent cookies").

- Log Files. Tools that track actions occurring on the site, and collect data including your IP address, browser type, Internet service provider, referring/exit pages, and date/time stamps.

- Web Beacons. These "tags" and "pixels" are electronic files used to record information about how you browse our website.

- Social Media Widgets. These are tools that allow us to provide certain social media features such as links to Facebook, Instagram, and Twitter. These social features are either hosted by a third party or hosted directly on our website. Your interactions with these features are governed by the privacy policy of the company providing it.

Cookies are very helpful and may be used for various different purposes such as delivering personalised services. These purposes include, among other things, allowing you to navigate between pages efficiently, enabling automatic activation of certain features, remembering your preferences and making the interaction between you and the Services quicker, easier and smoother. Our website may use the following types of cookies:

- **Strictly Necessary Cookies**. These cookies are required for the operation of our website, and are essential to enable you to login, navigate around and use the features of a website, or to provide a service requested by you. We do not need to obtain your consent in order to use these cookies.

- **Functionality Cookies**. These cookies allow the website to remember choices you make (such as your user name, language, or the region you are in) and provide enhanced, more personal features. For instance, a website may be able to provide you with local weather reports or traffic news by using a cookie to store information about the region in which you are currently located, remember changes you have made to text size, fonts, and other parts of web pages that you can customize, and provide services you have asked for such as watching a video or commenting on a blog. The information these cookies collect remains anonymous and they cannot track your browsing activity on other websites.

- **Performance/Analytics Cookies**. These cookies allow us to recognize and count the number of visitors and to see how visitors use a website, for example which pages you go to most often, and record difficulties you may experience while using the Website, for example error messages. All information collected by these cookies is aggregated and therefore anonymous. It is only used to improve the efficiency of the website. We also use a tool called Google Analytics to collect information about your use of the Services. Google Analytics collects information such as how often users access the Services, what pages they visit when they do so, etc. We use the information we get from Google Analytics only to improve our Services. Google Analytics collects the IP address assigned to you on the date you visit sites, rather than your name or other identifying information. We do not combine the information collected through the use of Google Analytics with Personal Information. Google's ability to use and share information collected by Google Analytics about your visits to our website is restricted by the Google Analytics Terms of Service and the Google Privacy Policy.

- **Targeting/Advertising Cookies**. These cookies are used to deliver advertisements tailored to you and your interests. They are also used to limit the number of times you see an advertisement as well as help measure the effectiveness of the advertising campaign. They are usually placed by advertising networks with the website operator's permission. They remember that you have visited a website and this information is shared with other organizations such as advertisers. Quite often targeting or advertising cookies will be linked to site functionality provided by the other organization. For more information about online behavioral advertising cookies and online privacy, please see the guide produced by the internet advertising industry available at youronlinechoices.com.

How to Control Cookies

Your browser is likely set to accept cookies. However, if you would prefer not to receive them, you can alter the configuration of your browser to refuse cookies. If you choose to have your browser refuse cookies (as explained below), it is possible that some areas of our website will not function properly when you view them.

You can control our uses of cookies through your internet browser or through third party tools:

- **Internet Browser.** You can control cookies through most browsers by changing your cookie settings. These settings will typically be found in the "options" or "preferences" menu of your browser.

- **Third Party Tools.** You can also visit http://www.allaboutcookies.org/ where you will find comprehensive information on cookie management and blocking which pertains to a wide variety of cookies. As noted above, our website uses Google Analytics to collect information about how visitors are using our website. Google Analytics has its own cookies that it uses to track and aggregate this information. You can prevent the use of Google Analytics relating to your use of our website by downloading and installing the browser plugin available here.

Advertisements and Advertising Tools

Advertisements

We may use a third-party advertising technology to serve advertisements when you use the Services. This technology uses your information with regards to your use of the Services to serve advertisements to you (e.g., by placing third-party cookies on your web browser). We may also use our third-parties and share with them Users' information to assist us in evaluating the success of our advertising campaigns and help us retargeting our Users.

Advertising ID and Advertising Identifier

The Google Advertising ID is an anonymous identifier, provided by Google Play services. If your device has an Advertising ID, we may collect and use it for advertising and user analytics purposes. We may also use Apple's Advertising Identifier (IDFA), which is a non-permanent device identifier provided by Apple, and any information obtained through the use of the Advertising Identifier, for the purpose of advertising. By downloading or using the Application or the Services you explicitly agree that we may associate your Advertising ID and your Advertising Identifier with your applicable persistent device identifier. This will facilitate our ability to improve your personalized experience. Further, we may use other persistent identifiers for non-advertising purposes. If your device does not have Advertising ID or Advertising Identifier respectively, we will use other identifiers.

How to Control Certain Advertising Technology

You may opt-out of many third-party ad networks, including those operated by members of the Network Advertising Initiative ("NAI") and the Digital Advertising Alliance ("DAA"). For more information about this practice by NAI and DAA members, and your choices regarding having this information used by these companies, including how to opt-out of third-party ad networks operated by NAI and DAA members, please visit their respective websites: https://optout.networkadvertising.org or https://optout.aboutads.info [EU users may opt out of receiving targeted advertising through the European Interactive Digital Advertising Alliance] You may also control your advertising preferences or opt-out of certain Google advertising products by visiting the Google Ads Preferences Manager, currently available at https://google.com/ads/preferences.

Additionally, your mobile device operating system may provide mechanisms that allow users to opt out of the use of information about their usage of mobile apps to deliver targeted ads to their mobile device. For more information, or to opt out using these mechanisms, consult your device settings.

For How Long We Retain Your Information

How long we keep your Personal Information will vary depending on the type of Personal Information and our reasons for collecting it. The retention period will be determined by various criteria, including the purposes for which we are using it (as it will need to be kept for as long as is necessary for any of those purposes) and our legal obligations (as laws or regulations may set a minimum period for which we have to keep your Personal Information). In general, we will retain your Personal Information for as long as we require it to perform our contractual rights and obligations, resolve disputes and enforce our policies and agreements, or for periods required by our legal and regulatory obligations.

How We Protect Your Information

We take great care in implementing and maintaining the security of the Services and your information. We will take reasonable steps and use technical, administrative and physical security measures appropriate to the nature of the information and that comply with applicable laws to protect Personal Information against unauthorized access and exfiltration, acquisition, theft, or disclosure. Although we

take enhanced steps to safeguard information, given the nature of information security, there is no guarantee that such measures will always be successful. We cannot be responsible for the acts of those who gain unauthorized access or abuse the Services, and we make no warranty, express, implied or otherwise, that such access will be prevented. If you feel that your privacy was treated not in accordance with our policy, or if any person attempted to abuse the Services or acted in an inappropriate manner, please contact us directly at info@celsius.network.

Minors

The Services are not designated to individuals under the age of 18. If you are under 18 years old, you should not download the Application, use the Services, or provide any Personal Information to us. We reserve the right to access and verify any Personal Information collected from you. In the event that we become aware that an individual under the age of 18 has shared any information, we will delete such information within a reasonable time. If you have any reason to believe that an individual under the age of 18 has shared any information with us, please contact us at info@celsius.network.

EU/UK Based Users and the GDPR

If you are an EU or UK data subject and the processing of your Personal Information is subject to the GDPR, please review this section in addition to the entire Policy.

(I) Grounds for Processing

We will only process your Personal Information in circumstances where we have established a lawful basis to do so. Our lawful bases for processing that Personal Information include:

- *Legitimate Interests.* We process Personal Information for our legitimate business interest in managing and promoting our business, provided that our interest is not overridden by your interest. In identifying and relying on this basis for certain processing, we have weighed our legitimate interest as a business against your rights and freedoms and have determined that such processing will not unfairly impact your rights. If you would like further information on how we balanced these interests, you can contact us using the details below. Please note that you have a right to object to the processing of your Personal Information where that processing is carried on for our legitimate interest.

- *Legal Requirements.* We may need to process your Personal Information in order to comply with certain legal and regulatory requirements, including to establish, exercise or defend legal claims, respond to a judicial process, law enforcement or governmental agency.

- *Contract.* Depending on the circumstances, we may need to process your Personal Information for the performance of a contract to which you are a party, or related pre-contractual steps.

- *Consent.* We may process your Personal Information with your consent, as required by the GDPR. You have the right to withdraw this consent at any time where we are relying on consent to process your Personal Information. However, this will not affect the lawfulness of any processing carried out before you withdraw your consent.

(II) Your Rights under the GDPR

We respect your privacy rights and therefore you may contact us at any time and request:

• *Access.* You have the right to know we collect certain Personal Information about you and to ask us for copies of your Personal Information. Please use the contact details provided at the end of this

Policy.

• *Rectification.* You have the right to request that we correct your Personal Information you think is inaccurate or incomplete.

• *Objection to processing.* You have the right to object to processing in some circumstances, including where we are using your Personal Information for our legitimate interests and for direct marketing purposes, including by opting-out of marketing communications by contacting us using the contact details provided at the end of this Policy.

• *Erasure.* You have the right to request that we erase the Personal Information we have collected about you in certain circumstances. The right to erasure is not absolute, and only applies if we no longer need your Personal Information to carry out the purpose that we collected it for, whilst in compliance with laws applicable to us; you have withdrawn your consent to our use of your Personal Information; you have objected to our use of your Personal Information and your interests outweigh our interests in using it; you believe we have processed your Personal Information unlawfully; or we have a legal obligation to erase your data. Subject to our retention policies, we will consider any request to erase Personal Information for any of the above reasons and endeavour to comply with the request to the extent permitted by law, but we may not always be able to comply with your request. We may be required to retain the Personal Information for certain retention periods in order to comply with legal and regulatory requirements under applicable laws and regulations to which we are subject. If we are unable to comply with your request, we will contact you in writing. If you wish to exercise this right, please contact us at: app@celsius.network.

• *Restrict processing.* You have the right to ask us to restrict the processing of your Personal Information in certain circumstances, including if you have concerns regarding the accuracy of your Personal Information, where you have made an objection to our use of your personal data; or if you believe we processed your Personal Information unlawfully, but you do not want us to delete it.

• *Data portability.* You have the right to receive a copy of the Personal Information that we collect about you in a way that is accessible and in a machine-readable format where the processing is based on your consent, the performance of a contract with you, or carried out by automated means. You have the right to request that such Personal Information be transmitted directly from us to another data controller, where technically feasible.

• *Withdrawal of consent.* You can withdraw your consent at any time where we are relying on consent to process your Personal Information. However, this will not affect the lawfulness of any processing carried out before you withdraw your consent.

However, please note that these rights are not absolute, and may be subject to our own legitimate interests and regulatory requirements.

We will store your Personal Information only for as long as necessary for the purposes for which it was collected, including to provide the Services and to comply with our legal obligations, resolve disputes and enforce our policies and agreements. Retention periods will be determined taking into account the type of information that is collected and the purpose for which it is collected, bearing in mind the requirements applicable to the situation and the need to destroy outdated, unused information at the earliest reasonable time. Under applicable regulations, we will keep records containing client Personal Information, account opening documents, communications and anything else as required by applicable laws and regulations.

We may rectify, replenish or remove incomplete or inaccurate information, at any time and at our own discretion. If you wish to make a complaint regarding our handling of your Personal Information, you can contact us at info@celsius.network. You may also make a complaint to the relevant supervisory

authority for data protection issues. In the UK this is the Information Commissioner's Office ("**ICO**"). Contact details for the ICO may be found at www.ico.org.uk.

(III) Transfer of Information Outside the UK and/or the EEA

Please note that some data recipients may be located outside the EEA and/or the UK. In such cases we will seek to ensure a similar degree of protection is afforded to it by ensuring that, where possible, Personal Information is generally transferred only to persons in countries outside the EU or the UK in one of the following circumstances:

- transfers only to such countries as approved by the European Commission or the equivalent entity in the UK as providing adequate level of data protection;

- to persons and undertakings to whom the transfer of such Personal Information is made pursuant to a contract that is compliant with the model contracts for the transfer of Personal Information to third countries from time to time approved by the European Commission (as supplemented where and if required) or the equivalent body in the UK;

- to persons and undertakings outside of the EU or the UK pursuant to other appropriate safeguards for the transfer of Personal Information; and

- only on one of the conditions allowed under the GDPR in the absence of (i) a decision by the European Commission or the equivalent entity in the UK that has deemed a country to provide an adequate level of protection for Personal Information (i.e. an adequacy decision) or (ii) appropriate safeguards such as a contract that is compliant with the model contracts for the transfer of Personal Information to third countries approved by the European Commission or the equivalent entity in the UK.

You can contact us through the information provided below for further information on specific mechanisms we utilise for transferring Personal Information outside the EU or the UK and the countries to which such transfer may be made.

Additional Information for California Residents

The CCPA imposes certain obligations on us and grants certain rights to California residents ("California Resident," "you" or "your") with regard to "personal information" as defined by the CCPA. If you are a California Resident, please review the following information about our privacy practices surrounding how and why we collect, use, disclose, and share your personal information and your potential rights with regard to your personal information under the CCPA. The rights described in this section are subject to exemptions and other limitations under applicable law.

Terms used in this section have the meaning ascribed to them in the CCPA. We are a "business." "Personal information" as used in this section has the same meaning as in the CCPA. It does not include deidentified information, aggregate consumer information or publicly available information, as those terms are defined in the CCPA.

Notice at Collection and Use of Personal Information

*What Type of Information We Collect*

Depending on how you interact with us, we may collect the categories of personal information listed above in the section **"What Type of Information We Collect"** above.

*How We Use Collected Information*

We may use your personal information for the business or commercial purpose listed above in the section **"How We Use The Information"** and **"With Whom We Share The Information and For What Purpose"** above.

Our Collection, Use, Disclosure, and Sharing of Personal Information

*What Information We Have Collected and the Sources from Which We Collected It*

In the preceding 12 months, and depending on how you interact with us, we may have collected all or some of the personal information listed above in **"What Type of Information We Collect"** above. We may have collected personal information from all or some of the categories of sources listed in the above section, **"Sources of Personal Information"**

*Purposes for Collecting Personal Information*

We may collect the personal information for one or more of the following business or commercial purposes described in the above section, **"How We Use The Information"** and **"With Whom We Share The Information and For What Purpose"** above.

*Our Disclosure, Sharing of Personal Information*

We do not sell your personal information. We do not knowingly sell the personal information of California residents under 16 years old. We may disclose your personal information to certain third parties for a business purpose. In the preceding 12 months, we may have disclosed for a business purpose the following categories of personal information to the following categories of third parties:

| Category of Personal Information | Category of Third Party Information Disclosed to for a Business Purpose |
|---|---|
| Identifiers and Similar Information (such as name, email or IP address) | • Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation<br><br>• Providers or partners that support our business operations (such as banking partners; wallet providers; etc)<br><br>• Affiliates<br><br>• Marketing partners<br><br>• Providers or partners that support our business operations (such as payment services providers, etc.) |

| Category of Personal Information | Category of Third Party Information Disclosed to for a Business Purpose |
|---|---|
| Additional Information Protected by Certain Federal or State Laws (for example, financial information) | • Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation |
| Characteristics Information (such as age or gender) | • Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation |
| Commercial Information (for example, products purchased) | • Affiliates<br><br>• Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation |
| Internet and Electronic Network Activity Information (such as browsing history and your interactions with our website) | • Analytics providers |

| Category of Personal Information | Category of Third Party Information Disclosed to for a Business Purpose |
| --- | --- |
| Geolocation Information (such as device location) | • Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation |
| Audio, electronic, or visual information (for example, recordings of audio or video calls, conversations or communications) | • Providers or partners that support our business operations (such as telephone system providers and messaging systems)<br><br>• Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation |
| Inferences drawn from other information to create a profile reflecting a client's preferences or characteristics. | • Entities who assist with fraud prevention, detection and mitigation, including credit agencies and to assist with anti-money laundering or anti-terrorism checks<br><br>• Judicial courts, regulators, or other government agents purporting to have jurisdiction over the group or opposing counsel and parties to litigation |

We may share your personal information with our service providers, other entities that have agreed to limitations on the use of your personal information, or entities that fit within other exemptions or exceptions in or as otherwise permitted by the CCPA.

California Resident's Rights Under the CCPA

If your personal information is subject to the CCPA, you may have certain rights with regard to such personal information, including the right to:

- **Notice at Collection.** Be informed, at or before the point of collection, of the categories of personal information to be collected and the purposes for which the categories of personal

information shall be used.

- **Request to Delete.** Request that we delete any personal information about you that we have collected or maintained, subject to certain exceptions. For example, we may be required to retain the personal information for certain retention periods in order to comply with legal and regulatory requirements under applicable laws and regulations to which we are subject. If you wish to exercise this right, please contact us at: app@celsius.network.

- **Request to Know.** Request that we provide you with: (i) the categories of personal information we have collected about you; (ii) the categories of sources from which we collected the personal information; (iii) the business or commercial purpose for collecting or selling the personal information; (iv) the categories of third parties with whom we share personal information; (v) the specific pieces of personal information we have collected about you; and (vi) the categories of personal information about you we have disclosed for a business purpose.

- **Not to Be Discriminated Against.** Not be discriminated against because you exercised any of your rights under the CCPA.

- **Opt-Out of Sale.** Request that we not sell your personal information if a business sells your personal information (we do not).

The CCPA does not restrict our ability to do certain things like comply with other laws or comply with regulatory investigations. We also reserve the right to retain, and not to delete, certain personal information after receipt of a Request to Delete from you where permitted or required by the CCPA or another law or regulation.

How to Submit a CCPA Rights Request

You can submit a Request to Know or Request to Delete, as described above, by calling 800-654-9386, through our website www.celsius.network, or via email to info@celsius.network. When you submit a Request to Know, Request to Delete, or Request to Opt-Out, we may ask that you provide clarifying or identifying information to verify your request. Such information may include, at a minimum, depending on the sensitivity of the information you are requesting and the type of request you are making, your name, email address and a copy of government issued identification. Any information gathered as part of the verification for a Request to Know, Request to Delete, or Request to Opt-Out will be used for verification or opt-out purposes only.

If you would like to use an authorized agent to submit a Request to Know or a Request to Delete, we may request proof that they are authorized to act on your behalf, or have a power of attorney. We may also require that you directly verify your own identity with us and directly confirm with us that you provided the authorized agent permission to submit the request.

We will deliver responses to verifiable consumer requests, free of charge by mail or electronically, at your election.

We will try to respond to your Requests to Know or to Delete within forty-five (45) days of receipt of the request. If we require more time, we will try to inform you of our need for an extension. Even with an extension, we will try to provide a response within ninety (90) days of initial receipt of the request.

Keep in mind that we are not required to provide information in response to Requests to Know more than twice in a 12-month period. Any response to a Request to Know will only cover the 12-month period preceding the verifiable request.

Additional California Privacy Rights

You have the right to ask us one time each year if we have shared personal information with third parties for their direct marketing purposes. Please note, however, that we do not currently disclose any of your personal information to third parties for their direct marketing purposes.

Some web browsers have a "Do Not Track" feature. This feature lets you tell websites you visit that you do not want to have your online activity tracked. These features are not yet uniform across browsers. Our website is not currently set up to respond to those signals.

Updates or Amendments To The Privacy Policy

We may revise this Privacy Policy from time to time, in our sole discretion, and the most current version will always be posted on our website or Application (as reflected in the "Last Revised" heading). In the event of a material change to the Privacy Policy, we will notify you through the Services or via email, or you may be notified within the Application. We encourage you to review this Privacy Policy regularly for any changes. Your continued use of the Services, following the notification of such amendments, constitutes your acknowledgement and consent of such amendments to the Privacy Policy and your agreement to be bound by the terms of such amendments.

How To Contact Us

If you have any general questions regarding the Services or the information that we collect about you and how we use it, please contact us at info@celsius.network.

Last Revised: October, 2021

**Exhibit F**

**Declaration of Holden Bixler**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF HOLDEN BIXLER,**
**MANAGING DIRECTOR OF ALVAREZ &**
**MARSAL NORTH AMERICA, LLC, IN SUPPORT**
**OF THE DEBTORS' EX PARTE MOTION PURSUANT**
**TO SECTION 107 OF THE BANKRUPTCY CODE SEEKING**
**ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO**
**REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION**
**FROM THE CREDITOR MATRIX, SCHEDULES AND STATEMENTS,**
**AND RELATED DOCUMENTS AND (II) GRANTING RELATED RELIEF**

I, Holden Bixler, hereby declare under penalty of perjury:

1.      I am a Managing Director of Alvarez & Marsal North America, LLC ("A&M"), a

global restructuring advisory services firm and a restructuring advisor to the above-captioned

debtors and debtors in possession ("Debtors").  I submit this declaration in support of the *Debtors'*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius
Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks
Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's
principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05,
Hoboken, New Jersey 07030.

*Ex Parte Motion Pursuant to Section 107 of the Bankruptcy Code Seeking Entry of an Order (I) Authorizing the Debtors to Redact Certain Personally Identifiable Information from the Creditor Matrix, Schedules and Statements, and Related Documents and (II) Granting Related Relief* filed contemporaneously herewith.[2]  I am over the age of 18 years and authorized to submit this declaration on behalf of the Debtors.

2.      I am a Managing Director with Alvarez & Marsal North America, LLC (together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors, "A&M"), a restructuring advisory services firm with numerous offices throughout the country.

3.      I received my bachelor's degree from the University of Illinois.  I also received a law degree from Indiana University.  I have over 15 years of distressed company advisory experience.  I specialize in bankruptcy case administration, including the management and reconciliation of claims.  Amongst other topics, I advise clients with respect to schedule and statement preparation and other chapter 11 reporting requirements.

4.      The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, on information that I have received from the Debtors' employees or advisors, or employees of A&M working directly with me or under my supervision, direction, or control, or from the Debtors' books and records maintained in the ordinary course of their business.  Neither A&M nor I am being specifically compensated for this testimony, other than compensation to A&M as a professional services firm employed by the Debtors.  If I were

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning as set forth in the Motion or the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Prepare a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (II) Authorizing the Debtors to File a Consolidated List of the Debtors' Fifty Largest Unsecured Creditors, (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information, (IV) Approving the Form and Manner of Notifying the Creditors of Commencement, and (V) Granting Related Relief* [Docket No. 18], as applicable.

called upon to testify, I could and would competently testify to the facts set forth herein on that basis.

**A.      The Debtors' Customer List is a Valuable Asset.**

5.      The Debtors' customer list is one of the Debtors' key assets that will be necessary to maintain to maximize recoveries for stakeholders.  Because retaining anonymity is one of the key features of holding cryptocurrencies, there is limited to no public information available as to which individuals or entities hold cryptocurrencies.  Thus, it is expensive and time consuming for companies that operate platforms like the Debtors' platform to identify potential customers, attract them, enroll them (including having them go through a strict KYC process) and ultimately activate them as customers.  The significant investments required to build a customer base make it a valuable asset of the Debtors.

**B.      The Protected Parties' Information Should Be Sealed.**

6.      The Creditor Matrix and Schedules and Statements will list over 600,000 creditors, including approximately 700 employees and approximately 600,000 individual creditors and interest holders.  Of these, approximately 375,000 are individuals whose addresses are unknown or are located in the United Kingdom or European Economic Area Union and, therefore, may be United Kingdom or European Economic Area citizens.

7.      Given the number of employees, individual creditors, and interest holders and the prevalence of identity theft, stalking, doxing, and intimate partner violence, the Debtors are concerned that publishing the home addresses, email addresses, and names (where applicable) of their employees and individual creditors and interest holders will jeopardize those employees' and individual creditors' and interest holders' data privacy and personal safety.  I understand that when papers are filed with the Court, they are filed as text-searchable ".pdf" files.  I further understand

that the Debtors' claims and noticing agent maintains a full docket on the case website, including

all papers filed with the Court, that is optimized for web searches.  Therefore, I understand that a

simple web search for an employee's, individual creditor's, or interest holder's name or address

(especially when the Debtors' name is included in the search terms) could bring up the Creditor

Matrix and/or Schedules and Statements in the first page or pages of search results.  Absent the

relief requested, therefore, parties wholly unconnected with and uninterested in the chapter 11

cases could readily find employees' home addresses, email addresses, and names (where

applicable).

8.      Out of respect for their employees' privacy (and, in many cases, in compliance with

privacy laws), the Debtors do not solicit or collect information regarding whether employees are

survivors or otherwise at risk.  Even if the Debtors were to request and collect such information,

doing so—particularly in the days leading up to the Petition Date as part of preparing the

Creditor Matrix—would be administratively burdensome, if not impossible.   Moreover, the

Debtors' filing preparations would have been materially harmed had they been required to inform

their employees of the impending chapter 11 filing days (or weeks) in advance so that the Debtors

could alert the employees that their home addresses were about to be published on a public website

and collect information about employees who needed to be excluded for safety reasons.

9.      I am not aware of any party seeking an unredacted version of the Creditor Matrix

and/or Schedules and Statements or requesting access to the home addresses, email addresses, or

names (where applicable) of any employees.

10.     Based on my experience, noting "Address on File" in lieu of an individual creditor's

home address, email address, and/or name (where applicable) on the version of the Creditor Matrix

and Schedules and Statements posted to the docket is a cost-effective and minimally burdensome

approach to addressing the risks associated with publishing home addresses on the internet as part

of the Creditor Matrix, the Schedules and Statements, or other filed papers.  The Debtors will

provide an unredacted copy of the Creditor Matrix and the Schedules and Statements to the Court,

the U.S. Trustee, and counsel to the Committee.  The Debtors will provide an unredacted copy of

the Creditor Matrix, the Schedules and Statements, or any other redacted paper, to parties in

interest who make a request reasonably related to the chapter 11 cases.  Nothing precludes a party

in interest from their right to file a motion requesting that the Court unseal the information redacted

by this Order.


[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  August 3, 2022
New York, New York

By:      */s/ Holden Bixler*
Name:   Holden Bixler
Title:   Managing Director
         Alvarez & Marsal North America, LLC

**<u>Exhibit G</u>**

**Excerpt from *In re Cred* Hearing Transcript**

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3                                    .    Chapter 11
      IN RE:                          .
 4                                    .    Case No. 20-12836 (JTD)
      CRED INC., et al.,              .
 5                                    .    Courtroom No. 5
                                      .    824 North Market Street
 6                                    .    Wilmington, Delaware 19801
                                      .
 7                      Debtors.      .    December 18, 2020
      . . . . . . . . . . . . . . . . .    9:30 A.M.
 8

 9            TRANSCRIPT OF TELEPHONIC SECOND DAY HEARING
                 BEFORE THE HONORABLE JOHN T. DORSEY
10                  UNITED STATES BANKRUPTCY JUDGE

11    TELEPHONIC APPEARANCES:

12    For the Debtors:          Scott Cousins, Esquire
                                COUSINS LAW LLC
13                              Brandywine Plaza West
                                1521 Concord Pike, Suite 301
14                              Wilmington, Delaware 19803

15                              - and -

16                              James Grogan, Esquire
                                Mack Wilson, Esquire
17                              PAUL HASTINGS LLP
                                600 Travis Street, Fifty-Eight Floor
18                              Houston, Texas 77002

19
      Audio Operator:          Jason Spencer
20
      Transcription Company:    Reliable
21                              1007 N. Orange Street
                                Wilmington, Delaware 19801
22                              (302)654-8080
                                Email: gmatthews@reliable-co.com
23
      Proceedings recorded by electronic sound recording, transcript
24    produced by transcription service.

25
```

```
 1  TELEPHONIC APPEARANCES (Continued):

 2  For the Debtors:         G. Alexander Bongartz, Esquire
                             Derek Cash, Esquire
 3                           PAUL HASTINGS LLP
                             200 Park Avenue
 4                           New York, New York 10166

 5                           - and -

 6
                             Austin Prouty, Esquire
 7                           PAUL HASTINGS LLP
                             1117 S. California Avenue
 8                           Palo Alto, California 94304

 9  For Jaime Shiller:       David Silver, Esquire
                             SILVER MILLER
10                           11780 W Sample Road
                             Coral Springs, Florida 33065
11

12  For the U.S. Trustee:    Hannah McCollum, Esquire
                             Joseph McMahon, Jr., Esquire
13                           John Schanne, Esquire
                             UNITED STATES DEPARTMENT OF JUSTICE
14                           OFFICE OF THE UNITED STATES TRUSTEE
                             844 King Street, Suite 2207
15                           Lock Box 35
                             Wilmington, Delaware 19801
16

17  For UpgradeYa:           Matthew Pierce, Esquire
                             LANDIS, RATH & COBB LLP
18                           919 Market Street, Suite 1800
                             Wilmington, Delaware 19801
19

20  For Krzysztof Majdak,    Joseph Sarachek, Esquire
    and Philippe Godineau:   THE SARACHEK LAW FIRM
                             101 Park Avenue, 27th Floor
21                           New York, New York 10178

22  For the Committee:       Joseph Evans, Esquire
                             Timothy Walsh, Esquire
23                           Darren Azman, Esquire
                             MCDERMOTT WILL & EMERY LLP
24                           340 Madison Avenue
                             New York, New York 10173
25
```

```
 1   TELEPHONIC APPEARANCES (Continued):

 2   For Thomas Arehart:        Hollace Cohen, Esquire
                                Carl Neff, Esquire
 3                              FISHERBROYLES LLP
                                445 Park Avenue, Ninth Floor
 4                              New York, New York 10022

 5
     For Maple Partners LLC:    Lucian Murley, Esquire
 6                              SAUL EWING ARNSTEIN & LEHR LLP
                                1201 North Market Street, Suite 2300
 7                              Wilmington, Delaware 19801

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1 | <u>MATTERS GOING FORWARD</u>:

2 | **Cash Management.** Motion to Debtors to (A) Continue to Operate
their Cash Management System, (B) Honor Certain Prepetition

3 | Obligations Related Thereto, (C) Maintain Existing Business
Forms, and (D) Continue to Perform Intercompany Transactions;

4 | (II) Granting Administrative Expense Status to Post Petition
Intercompany Balances; (III) Waiving Requirements of Section

5 | 345(b) of the Bankruptcy Code; and (IV) Granting Related
Relief [Docket No. 7, 11/08/20]

6 |

7 | **Ruling:  Order Entered**

**Employee Wages.** Motion of Debtors for Entry of Interim and

8 | Final Orders (I) Authorizing Debtors to (A) Pay Employee
Obligations and (B) Continue Employee Benefit Programs, and

9 | (II) Granting Related Relief [Docket No. 11, 11/08/20]

10 | **Ruling:  Order Entered**

11 | **Motion to Extend.** Debtors' Motion for Entry of Order
Extending Time to File Schedules and Statements of Financial

12 | Affairs [Docket No. 67, 11/18/20]

13 | **Ruling:  Order Entered**

14 | **Bar Date Motion.** Motion of Debtors, Pursuant to Bankruptcy
Code Sections 105(a), 502, and 503 and Bankruptcy Rule 2002,

15 | for Entry of an Order (I) Fixing Deadline for Filing Proofs of
Claim and (II) Approving Form and Manner of Notice Thereof

16 | [Docket No. 52, 11/17/20]

17 | **Ruling:  128**

18 | **Bid Procedures Motion.** Debtors' Motion for Entry of Orders
(I) (A) Approving Bidding Procedures, (B) Scheduling an

19 | Auction and Sale Hearing and Approving Form and Manner of
Notice Thereof, and (C) Approving Assumption and Assignment

20 | Procedures and Form and Manner of Notice Thereof; and (II)
Authorizing (A) the Sale(s), Free and Clear of all Liens,

21 | Claims, Interests, and Encumbrances, and (B) Assumption and
Assignment of Executory Contracts and Unexpired Leases [Docket

22 | No. 65, 11/18/20]

23 | **Ruling:  Order Entered**

24 | **MACCO Retention Application.** Debtors' Application for Entry
of an Order Authorizing Employment and Retention of MACCO

25 | Restructuring Group LLC as Financial Advisor for Debtors,
Effective Nunc Pro Tunc to Petition Date [Docket No. 57,
11/17/20]

1   **Ruling:  Order Entered**

2   **Teneo Retention Application.**  Debtors' Application for Entry
  of an Order Authorizing Employment and Retention of Teneo
3   Capital LLC as Investment Banker for Debtors, Effective Nunc
  Pro Tunc to November 16, 2020 [Docket No. 63, 11/18/20]
4
  **Ruling:  Order Entered**
5
  **Paul Hastings Retention Application.**  Debtors' Application for
6   Entry of an Order Authorizing Employment and Retention of Paul
  Hastings LLP as Counsel to Debtors, Effective as of Petition
7   Date [Docket No. 64, 11/18/20]

8   **Ruling:  Taken Under Advisement**

9   **Sonoran Capital Retention Application.**  Debtors' Motion for
  Entry of an Order (I) Authorizing Employment and Retention of
10   Sonoran Capital Advisors, LLC to Provide Debtors a Chief
  Restructuring Officers and Certain Additional Personnel and
11   (II) Designating Matthew Foster as Debtors' Chief
  Restructuring Officer [Docket No. 95, 12/1/20]
12
  **Ruling:  Taken Under Advisement**
13
  **Creditor List.**  Motion of Debtors for Entry of Interim and
14   Final Orders (I) Authorizing Debtors to File a Consolidated
  List of Debtors' 30 Largest Unsecured Creditors, (II)
15   Authorizing Debtors to Serve Certain Parties by E-Mail, (III)
  Authorizing Debtors to Redact or Withhold Publication of
16   Certain Personal Identification Information, and (IV) Granting
  Related Relief [Docket No. 6, 11/08/20]
17
  **Motion to Seal.**  Motion to File Under Seal Certain
18   Confidential Information Pursuant to Order (I) Authorizing
  Debtors to File A Consolidated List of Debtors 30 Largest
19   Unsecured Creditors, (II) Authorizing Debtors to Serve Certain
  Parties by E-Mail, (III) Authorizing Debtors to Redact or
20   Withhold Publication of Certain Personal Identification
  Information On An Interim Basis, And (IV) Granting Related
21   Relief [Docket No. 61, 11/18/20]

22   **Ruling:  Orders Entered**

23   **Motion to Convert.**  Motion of Krzysztof Majdak and Philippe
  Godineau for Entry of an Order Pursuant to 11 U.S.C. § 1112(b)
24   (I) Dismissing the Cases; (II) Converting the Cases to a
  Chapter 7 Liquidation; or (III) Appointing a Chapter 11
25   Trustee [Docket No. 62, 11/18/20]

  **Ruling:  94**

1    DEBTORS' WITNESS(s)

2    **CHRISTOPHER WU**

3         Direct examination by Mr. Grogan          10

4         Cross-examination by Mr. McMahon          15

5         Cross-examination by Mr. Sarachek        15

6         Cross-examination by Mr. Peirce          22

7         Redirect examination by Mr. Grogan        24

8

9    **PABLO BONJOUR**

10        Direct examination by Mr. Grogan          26

11        Cross-examination by Mr. McMahon          36

12        Cross-examination by Mr. Sarachek        41

13        Cross-examination by Mr. Pierce          43

14        Cross-examination by Mr. Silver          51

15        Redirect examination by Mr. Grogan        54

16   **MATTHEW FOSTER**

17        Direct examination by Mr. Grogan          57

18        Cross-examination by Mr. McMahon          61

19        Cross-examination by Mr. Pierce          63

20        Redirect examination by Mr. Grogan        65

21        Redirect examination by Mr. Cousins      66

22

23

24   EXHIBITS:                                    ID    Rec'd

     Declaration of Daniel Schatt                        10

25   Declaration of Christopher Wu                        15

| | | |
|---|---|---|
| 1 | Declaration of Pablo Bonjour | 35 |
| 2 | Debtor's Exhibit 38 - Thirteen Week Cash Forecast | 41 |
| 3 | Declaration of Matthew Foster | 56 |
| 4 | Declaration of Joshua Segall | 106 |
| 5 | Declaration of Mark Friedler | 106 |
| 6 | Trustee's Exhibit - Alexander Motion to Dismiss Alexander Complaint | 144 |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

 1 | then you're protected is not in the interest of protecting

 2 | customers, generally.  Thank you, Your Honor.

 3 |        THE COURT:  Okay.  Has the list of names been

 4 | disclosed to the trustee?

 5 |        MR. BONGARTZ:  I believe that it has.

 6 |        THE COURT:  Do you have all of the information

 7 | about the holders of the Bitcoin, Mr. Schanne?

 8 |        MR. SCHANNE:  Your Honor, we have been provided

 9 | the top 30 lists.  The schedules and statements have not been

10 | prepared, so we do not have that information yet.

11 |        THE COURT:  All right.  And is there -- I -- it's

12 | been a while since I took a look at this proposed order.  Is

13 | there anything in this proposed order that provides a

14 | mechanism that, if someone can come forward and have a

15 | legitimate reason why they need to have access to that list,

16 | they can seek to get it?

17 |        MR. BONGARTZ:  Yeah, that mechanism was in the

18 | interim order and we've carried it over into the proposed

19 | final order.

20 |        THE COURT:  Okay.  All right.  Then, based on the

21 | evidence, I think there is at least some credible argument

22 | that the creditor list -- which his, also, in this case, the

23 | customer list of the -- of the debtors is -- has some

24 | intrinsic value, and that disclosure of that list could

25 | affect the ability of the debtors to market and sell that

1   list as a part of their going toward a plan of reorganization
2   here.

3           So I will overrule the objection, so long as the
4   U.S. Trustee is provided with all of the information
5   regarding every single one of the Bitcoin holders, and that
6   there is a mechanism in the final order that allows for
7   someone who can come forward and seek to obtain that list for
8   a legitimate purpose can do so.

9           I think the goal here is to keep this out of the
10  hands of competitors. And so I would expect that, obviously,
11  someone -- or the competitor of the debtor and came forward
12  and said, well, we want to see the list, you're not going to
13  give it to them. But there may be others who have a
14  legitimate reason for why they need that information. And so
15  I want to make sure there's a way for someone who has a
16  legitimate reason to get it, can get it.

17          MR. BONGARTZ: Yes, understood, Your Honor. And
18  just to pinpoint the relevant paragraph, it's Paragraph 3 of
19  the proposed order. But we'll be submitting that --

20          THE COURT: All right.

21          MR. BONGARTZ: -- after the hearing.

22          THE COURT: Okay. Yeah, please confer with the
23  U.S. Trustee and come up with an order that you can submit
24  under COC.

25          MR. AZMAN: Thank you, Your Honor.