**Hearing Date and Time:  September 1, 2022, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 25, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Mitchell Hurley
Dean Chapman
Michael Chen
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Special Litigation Counsel to the*
*Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### NOTICE OF HEARING ON
### DEBTORS' APPLICATION FOR ENTRY
### OF AN ORDER AUTHORIZING THE RETENTION
### AND EMPLOYMENT OF AKIN GUMP STRAUSS HAUER & FELD LLP AS
### SPECIAL LITIGATION COUNSEL FOR THE DEBTORS AND
### DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Application for Entry of an*

*Order Authorizing the Retention and Employment of Akin Gump Strauss Hauer & Feld LLP as*

*Special Litigation Counsel for the Debtors and Debtors in Possession Effective as of the Petition*

*Date* (the "Application") will be held on **September 1, 2022, at 10:00 a.m., prevailing Eastern**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**Time** (the "Hearing").  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Application shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **August 25, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/celsius.    You may also obtain copies of the Application and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York                          /s/ Mitchell Hurley
Dated: August 8, 2022                       **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                            Mitchell Hurley
                                            Dean Chapman
                                            Michael Chen
                                            One Bryant Park
                                            New York, NY 10036-6745
                                            Telephone: (212) 872-1000
                                            Facsimile: (212) 872-1002

                                            *Proposed Special Litigation Counsel to the Debtors and Debtors in Possession*

3

**Hearing Date and Time:  September 1, 2022, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: August 25, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Mitchell Hurley
Dean Chapman
Michael Chen
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Special Litigation Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**AKIN GUMP STRAUSS HAUER & FELD LLP AS**
**SPECIAL LITIGATION COUNSEL FOR THE DEBTORS AND**
**DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

Celsius Network LLC ("Celsius Network") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully represent as follows in support of this application (the "Application"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

## Relief Requested

1.      By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), pursuant to sections 327(e) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), Rules 2014(a), 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), authorizing the employment and retention of Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>") as special litigation counsel to the Debtors effective as of the Petition Date (defined below) in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Akin Gump effective as of  the Petition Date (the "<u>Engagement Letter</u>"), a copy of which is attached as <u>Exhibit 1</u> to the Proposed Order and granting related relief.

2.      In support of this Application, the Debtors submit the declaration of Mitchell Hurley, a partner at Akin Gump (the "<u>Hurley Declaration</u>"), which is attached hereto as <u>Exhibit B</u> and the declaration of Chris Ferraro, the Chief Financial Officer of Celsius Network LLC, which is attached hereto as <u>Exhibit C</u> (the "<u>Ferraro Declaration</u>" and, together with the Hurley Declaration, the "<u>Declarations</u>").

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157 and the Debtors confirm their consent to the Court entering a final

order in connection with this Motion to the extent that it is later determined that the Court, absent

consent of the parties, cannot enter final orders or judgments in connection herewith consistent

with Article III of the United States Constitution.

4.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The bases for the relief requested herein are Bankruptcy Code sections 327(e) and

328(a), Bankruptcy Rules 2014(a), 2016 and 5002 and Local Rules 2014-1 and 2016-1.

### Background

6.       The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are

one of the largest and most sophisticated cryptocurrency based finance platforms in the world and

provide financial services to institutional, corporate, and retail clients across more than

100 countries.  Celsius was created in 2017 to be one of the first cryptocurrency platforms to which

users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans

using those transferred crypto assets as collateral.  Headquartered in Hoboken, New Jersey, Celsius

has more than 1.7 million registered users and approximately 300,000 active users with account

balances greater than $100.

7.       On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the facts

and circumstances of these Chapter 11 Cases is set forth in the *Declaration of Alex Mashinsky,*

*Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day*

*Motions* [Docket No. 23] (the "Mashinsky First Day Declaration") and the *Declaration of Robert*

*Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter*

*11 Petitions and First Day Motions* [Docket No. 22] (the "Campagna Declaration").[2]  As described

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky First Day Declaration or the Campagna Declaration, as applicable.

in more detail in the Mashinsky First Day Declaration, the Debtors commenced these Chapter 11

Cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive

restructuring transaction that maximizes value for stakeholders.

8.      The Debtors are operating their business and managing their property as debtors in

possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These Chapter 11 Cases have

been consolidated for procedural purposes only and are jointly administered pursuant to

Bankruptcy Rule 1015(b) [Docket No. 53].   On July 27, 2022, the United States Trustee for the

Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured

creditors [Docket No. 241] (the "Committee").  No request for the appointment of a trustee or

examiner has been made in these Chapter 11 Cases.

## Services to be Provided

9.      Since March 2021, Akin Gump has performed legal work for Celsius Network and

certain of its affiliates.  As further described herein, the Debtors are seeking to retain Akin Gump

in connection with the Specified Litigation Matters (defined below) for which Akin Gump was

advising the Debtors prior to the Petition Date.  Specifically, beginning in March 2021, Akin Gump

began performing legal work for certain Debtors in connection with Celsius' claims against Jason

Stone ("Stone") and his company KeyFi, Inc. ("KeyFi") with respect to certain breaches of duty

by Stone and KeyFi relating to staking and decentralized finance activities (the "Stone Dispute").

In addition, beginning in June 2021, Akin Gump began performing legal work for certain Debtors

in connection with a dispute with Prime Trust LLC concerning assets held by Prime Trust LLC

(the "Prime Trust Dispute" and, together with the Stone Dispute, the "Specified Litigation

Matters"). Akin Gump has continued to represent the relevant Debtors in connection with the Specified Litigation Matters since the Petition Date.[3]

10. Akin Gump is being retained as special litigation counsel to continue to provide services in connection with the Specified Litigation Matters, including any such matters that may arise out of or in connection with the Specified Litigation Matters. Specifically, Akin Gump has provided and will continue to provide the following services to the Debtors during these Chapter 11 Cases:

a. representing the Debtors in connection with the Specified Litigation Matters;

b. conducting investigations and analyses sufficient to advise the Debtors regarding the Specified Litigation Matters;

c. rendering services to the Debtors including, but not limited to, fact investigation, legal research, briefing, argument, discovery, negotiation, litigation, participating in meetings with the Debtors, their management and board of directors, appearance and participation in hearings and communications and meetings with parties in interest, in each case as it relates to the Specified Litigation Matters; and

d. performing all other necessary or requested litigation services in connection with the Specified Litigation Matters.

11. The Debtors believe that it would be inefficient to replace Akin Gump after Akin Gump has represented the Debtors for over a year on the Specified Litigation Matters and given the vast knowledge that Akin Gump has acquired with respect to the Specified Litigation Matters, and to the Debtors and their operations. As such, the Debtors have determined it is appropriate to seek to employ Akin Gump to serve as its special litigation counsel with respect to the Specified Litigation Matters.

---

[3] Days before the Petition Date, KeyFi purported to file, but did not serve before the Petition Date, a complaint against Celsius Network and Celsius KeyFi LLC in New York State Supreme Court. *See KeyFi, Inc. v. Celsius Network Limited and Celsius KeyFi LLC,* No. 652367/2022.

12.     While the Debtors are currently seeking to employ Akin Gump, at this time, only in connection with the Specified Litigation Matters, the Debtors may determine that it is appropriate and in the best interests of the estates to expand the scope of Akin Gump's employment to include representation of the Debtors with respect to additional litigation or other matters. To the extent the Debtors wish to expand the scope of Akin Gump's employment beyond those services set forth in this Application (and Akin Gump agrees), the Debtors will seek further approval from this Court. Specifically, the Debtors will file notice of any proposed additional services (the "Proposed Additional Services") and, to the extent necessary, a supplemental declaration, with the Court and serve such notice on the U.S. Trustee, the Committee and any party requesting notice under Bankruptcy Rule 2002. If no such party files an objection within ten (10) days of the Debtors filing such notice, the Proposed Additional Services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

## **Akin Gump's Qualifications**

13.     As discussed above, the Debtors have determined that it is necessary and in the best interests of the Debtors and their estates to engage Akin Gump to represent them in connection with the Specified Litigation Matters. The Debtors seek to retain Akin Gump in connection with the Specified Litigation Matters due to Akin Gump's (i) extensive experience and expertise with respect to, among other things, the Specified Litigation Matters as well as general litigation matters and (ii) familiarity with, and general knowledge regarding, the Debtors and their business, operations, debt and financing structure as a result of Akin Gump's prepetition service to Celsius.

14.     Akin Gump is a full-service law firm with extensive experience handling a broad range of legal issues in a wide range of industries.  Further, Akin Gump has extensive experience representing companies in litigation matters, both in and out of chapter 11 cases.

15.     Moreover, in addition to representing Celsius in litigation matters, Akin Gump has represented Celsius in numerous corporate, transactional, restructuring, tax and other matters since March 2021.  As noted, Celsius has relied on Akin Gump to provide litigation counsel to it with respect to the Specified Litigation Matters for more than a year.  By virtue of Akin Gump's prior work for Celsius, Akin Gump has extensive familiarity with the facts and history of the Debtors' business.  As such, the retention of Akin Gump by the Debtors as special litigation counsel with respect to the Specified Litigation Matters will promote the efficient administration of these Chapter 11 Cases.  Conversely, if required to retain different counsel to provide services with respect to the Specified Litigation Matters, the Debtors will be forced to expend significant resources and expense to make such new counsel familiar with the Debtors' business and to familiarize such counsel with the legal issues and status of the Specified Litigation Matters.

16.     In light of the foregoing, Akin Gump is well qualified and uniquely able to represent the Debtors as special litigation counsel pursuant to Bankruptcy Code section 327(e) and Akin Gump's retention would be in the best interests of the Debtors, their estates, creditors and other parties in interest.

### Professional Compensation

17.     Subject to this Court's approval and in accordance with the *Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals M-412, dated December 21, 2010*, the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases M-447*, dated January 29, 2013 (the "Amended

7

Guidelines"), Bankruptcy Code sections 330 and 331, the applicable Bankruptcy Rules, the Local

Rules, any order establishing interim compensation procedures in these Chapter 11 Cases and any

other procedures that may be fixed by the Court, the Debtors request that Akin Gump be

compensated on an hourly basis and that Akin Gump receive reimbursement of actual and

necessary expenses incurred in connection with its representation of the Debtors in these Chapter

11 Cass.  In accordance with the terms of the Engagement Letter, the Debtors have agreed to

compensate Akin Gump for the work performed as special litigation counsel.

18.    Akin Gump has agreed that, subject to this Court's approval, it will apply a 10%

discount on its standard billing rates for all timekeepers with respect to the Specified Litigation

Matters, which will be applied to the total fees in each invoice.  Applying the 10% discount, Akin

Gump's billing rates for professionals and paraprofessionals employed in its domestic offices are:

$1,013.00 to $1,796.00 for partners; $761.00 to $1,274.00 for senior counsel; $891.00 to $1,103.00

for counsel; $545.00 to $941.00 for associates; and $194.00 to $428.00 for paraprofessionals.

19.    Akin Gump operates in a national marketplace for legal services in which rates are

driven by multiple factors relating to the individual lawyer, his or her area of specialization, the

firm's expertise, performance and reputation, the nature of the work involved and other factors.

Akin Gump's hourly rates are set at a level designed to compensate Akin Gump fairly for the work

of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary

with the experience and seniority of the individuals assigned.  These hourly rates are subject to

periodic adjustments (typically on January 1st of each year) to reflect economic and other

conditions.[4]  Akin Gump will provide ten (10) business days' notice of any rate increases to the Debtors, the U.S. Trustee and the Committee.

20.      Akin Gump will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services it provides to the Debtors.  The Debtors understand that Akin Gump is customarily reimbursed for all expenses incurred in connection with the representation of a client in a given matter, including, but not limited to, photocopying services, printing, delivery charges, filing fees, postage, "working" meals and computer research.

21.      It is Akin Gump's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of the client.  It is also Akin Gump's policy to charge its clients only the amount actually incurred by Akin Gump in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals and lodging.

22.      To ensure compliance with all applicable deadlines in connection with the Specified Litigation Matters, from time to time Akin Gump may be required to utilize the services of overtime secretaries.  Akin Gump charges fees for these and may bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Akin Gump professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with the Amended Guidelines and the Local Rules.

---

[4] For example, like many of its peer law firms, Akin Gump typically increases the hourly billing rate of attorneys and paraprofessionals periodically in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing in seniority and promotion; and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the Amended Guidelines.  While the rate ranges provided for in this Application may change if an individual leaves or joins Akin Gump, and if any such individual's billing rate falls outside the ranges disclosed above, Akin Gump does not intend to update the ranges for such circumstances.

## Compensation Received by Akin Gump from Celsius

23.    As set forth in the Hurley Declaration, in the 90-days prior to the Petition Date, Akin Gump received payments, including advance payments, from Celsius in the aggregate amount of $3,782,587.82 for services rendered and expenses incurred collectively for all matters on which Akin Gump had been advising Celsius. Of this amount, Akin Gump currently holds an advance payment balance of $247,704.37.

24.    As of the Petition Date, the Debtors did not owe Akin Gump any amounts for legal services rendered before the Petition Date. Although certain prepetition fees and expenses may have been incurred but not yet applied to Akin Gump's advance payment balance, the amount of the Debtors' advance payment balance exceeds any amounts listed or to be listed on invoices describing such services rendered and expenses incurred prior to the Petition Date. The balance that remains after application of the above advance payments against additional accrued and unpaid prepetition expenses, if any, will be applied to Akin Gump's postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Akin Gump in connection with its final fee application.

25.    Akin Gump has not shared or agreed to share (i) any of its compensation from the Debtors with any other persons, other than employees and members of Akin Gump or (ii) any compensation any other persons have received or may receive.

## No Duplication of Services

26.    Due to Akin Gump's limited role as special litigation counsel, the Debtors believe and intend that the services with respect to the Specified Litigation Matters will complement, and not be duplicative of, the services being rendered by any other professional retained in these Chapter 11 Cases. Akin Gump understands that the Debtors have retained, and may retain,

additional professionals during the terms of their engagement and will work cooperatively with such professionals to avoid any duplication of services.

## **No Adverse Interest**

27.    As proposed special litigation counsel for the purpose of advising, assisting and representing the Debtor in connection with the Specified Litigation Matters, Akin Gump need only demonstrate that it does not hold any interest adverse to the Debtors or their estates with respect to the matters on which Akin Gump to be employed.  *See Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 406 (D. Del. 2005) (citations omitted); *see also In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994); *In re Carla Leather, Inc.*, 44 B.R. 457, 474 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985) ("[section] 327(e) bars engagement of special counsel only in the presence of an actual conflict of interest concerning the subject matter of the engagement.").

28.    The Hurley Declaration discloses Akin Gump's connections with the Debtors and certain parties in interest in the Chapter 11 Cases and is incorporated herein by reference.  As set forth in the Hurley Declaration, Akin Gump has represented Celsius with regard to the Specified Litigation Matters as well as other matters prior to these Chapter 11 Cases.  In addition, as set forth in the Hurley Declaration, Akin Gump has in the past represented, currently represents and likely in the future will represent certain parties in interest in these Chapter 11 Cases (or related parties) on matters unrelated to the Debtors, the Chapter 11 Cases and/or the Specified Litigation Matters.

29.    Based on the foregoing, Akin Gump does not hold or represent any interest adverse to the Debtors or the estates with respect to the Specified Litigation Matters, and may be employed under Bankruptcy Code section 327(e) for the services described herein.

## **Supporting Authority**

30.     The Debtors submit that the retention of Akin Gump under the terms described herein is appropriate under Bankruptcy Code sections 327(e), 328(a) and 1107.  Bankruptcy Code section 327(e), in relevant part, as follows:

> The Trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

31.     Furthermore, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed R. Bankr. P. 2014.

32.     Retention of an attorney under Bankruptcy Code section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under Bankruptcy Code section 327(a).  *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 848 (D. Del. 1996) (Special counsel employed under section 327(e) must establish that they have "no conflict of interest concerning the matter at hand.")

33.     In considering whether to appoint special counsel, courts generally consider whether (i) the representation is in the best interest of the estate, (i) the attorney represented the debtor in the past, (iii) the attorney is for a specific purpose approved by the court, other than to represent the debtor in conducting the case and (iv) the attorney does not represent or hold an

interest adverse to the debtor or the debtor's estate with respect to the matter on which such attorney

is to be employed. *Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse,*

*Inc.)*, 323 B.R. 403, 406 (Bankr. D. Del. 2005) (citations omitted); *see also In re AroChem Corp.*,

176 F.3d 610, 622 (2d Cir. 1999) ("where the interest of the special counsel and the interest of

the estate are identical with respect to the matter for which special counsel is retained, there is no

conflict and the representation can stand").

34.     Further, Bankruptcy Code section 1107(b) provides that "a [firm] is not disqualified

for employment under section 327 of this title by a debtor in possession solely because of such

[firm's] employment by or representation of the debtor before the commencement of the case." 11

U.S.C. § 1107(b).

35.     The Debtors submit that for all the reasons stated above and in the Declarations,

the retention and employment of Akin Gump as special litigation counsel to the Debtors with

respect to the Specified Litigation Matters is necessary and in the best interests of the Debtors and

their estates.

## **Notice**

36.     The Debtors have provided notice of this Application to the following parties: (a)

the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims

against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the

Southern District of New York; (e) the Internal Revenue Service; (f) the offices of the attorneys

general in the states in which the Debtors operate; (g) the Securities and Exchange Commission;

and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this

Application is also available on the website of the Debtors' notice and claims agent at

https://cases.stretto.com/celsius.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

37.    No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  August 8, 2022                    */s/ Chris Ferraro*
       New York, New York                    Chris Ferraro
                                       Chief Financial Officer
                                       Celsius Network LLC

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER AUTHORIZING THE RETENTION AND
## EMPLOYMENT OF AKIN GUMP STRAUSS HAUER & FELD LLP
## AS SPECIAL LITIGATION  COUNSEL FOR THE DEBTORS AND
## DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the debtors and debtors in possession

(collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for

entry of an order (this "Order") pursuant to Bankruptcy Code sections 327(e), 328(a) and 1107(b),

authorizing the Debtors to retain and employ Akin Gump Strauss Hauer & Feld LLP as special

litigation counsel effective as of the Petition Date and granting related relief, all as further

described in the Application; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §1334; and this proceeding being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and

venue of this proceeding and the Application in this Court being proper pursuant to 28 U.S.C. §§

1408 and 1409; and due and proper notice of the Application having been given; and the Court

having found that no other or further notice is necessary; and the Court having reviewed the

Application and the Declarations and having heard statements in support of the Application at a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

hearing held before the Court (the "Hearing"); and the Court having determined that the legal and

factual bases set forth in the Application and at the Hearing establish just cause for the relief

granted herein; and any objections to the relief requested in the Application having been withdrawn

or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is

hereby ORDERED that:

1.        The Application is granted as set forth herein.

2.        Pursuant to Bankruptcy Code sections 327(e), 328(a) and 1107(b), the Debtors are

authorized to retain and employ Akin Gump as their special litigation counsel effective as of the

Petition Date in accordance with the terms and conditions set forth in the Application and in the

Engagement Letter attached hereto as Exhibit 1.

3.        Retention pursuant to Bankruptcy Code section 327(e) is appropriate given the

specific scope of the proposed retention.

4.        Akin Gump shall apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with these Chapter 11 Cases in compliance with

Bankruptcy Code sections 330 and 331 and applicable provisions of the Bankruptcy Rules, Local

Rules and any other applicable procedures and orders of the Court.  Akin Gump shall not seek,

without further order of the Court, reimbursement from the Debtors' estates for any fees incurred

in defending any of Akin Gump's fee applications in these Chapter 11 Cases.

5.        Akin Gump is authorized without further order of the Court to reserve and apply

amounts held on account against any outstanding fees and expenses incurred on or prior to the

Petition Date, consistent with its ordinary course billing practices.  Thereafter, Akin Gump may

apply any remaining amounts toward postpetition fees and expenses, after such postpetition fees

and expenses are approved pursuant to an order of the Court awarding fees and expenses to Akin Gump.

6.      Akin Gump shall file a notice with this Court and give not less than ten (10) business days' notice to the Debtors, the U.S. Trustee and the Committee prior to implementing any increases in its rates, other than as already set forth in the Hurley Declaration, in these Chapter 11 Cases.  The notice shall explain the basis for the requested rate increases in accordance with Bankruptcy Code section 330(a)(3)(F) and state whether the Debtors have consented to such rate increases.  Except with respect to the rates disclosed in the Hurley Declaration, the U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in Bankruptcy Code section 330, and the Court retains the right to review any rate increase pursuant to Bankruptcy Code section 330.

7.      To the extent the Debtors wishes to expand the scope of Akin Gump's services beyond those services set forth in the Application or this Order, the Debtors shall be required to seek further approval from this Court.  The Debtors shall file notice of any proposed additional services (the "Proposed Additional Services") and, to the extent necessary, any supplemental declaration in support thereof, and serve such notice on the U.S. Trustee, the Committee and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within ten (10) days of the Debtors filing such notice, the Proposed Additional Services and the underlying engagement agreement, if any, may be approved by the Court by further order without further notice or hearing.

8.      Akin Gump shall use its best efforts to avoid any unnecessary duplication of services provided by any of the Debtors' retained professionals in these Chapter 11 Cases.

9.      The Debtors and Akin Gump are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

10.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     To the extent the Application, the Declarations or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**



**MITCHELL P. HURLEY**
+1 212.872.1011/fax: +1 212.872.1002
mhurley@akingump.com

August 2, 2022

Chris Ferraro
Chief Financial Officer
Celsius Network Limited
221 River Street
9th Floor, Suite 9129
Hoboken, NJ USA

Re:     In re Celsius Network LLC, et al.

Dear Chris:

I am pleased to confirm our engagement by Celsius Network Inc. and its affiliated debtors and debtors in possession in the above referenced chapter 11 cases (collectively, "the Debtors) as special litigation counsel, including representing Debtors in connection with their disputes with Prime Trust LLC and their disputes with Jason Stone and KeyFi Inc. The purpose of this letter is to confirm the terms and conditions upon which Akin Gump will provide legal services as special litigation counsel to Celsius Network and certain of its affiliates as debtors and debtors in possessions pursuant to section 327(e) of the Bankruptcy Code, effective as of July 13, 2022 (the "Petition Date").

At the beginning of our representation of a client, the firm's policy is to describe the manner in which we will bill for legal services and disbursements. A clear understanding of those matters helps to maintain a harmonious professional relationship. I encourage you to consider the matters set forth in this letter carefully and to raise with us any question that you may have now or later about its contents.

We refer matters to those lawyers in this firm who in our judgment can perform the highest quality work, in a timely and efficient manner, and at the lowest cost. We also employ non-lawyer personnel in tasks where lawyers are not necessary, to facilitate the efficient performance of services.

The firm charges for my services at the hourly rate of USD 1,775.00. Other lawyers in the firm are charged at rates between USD 605.00 to USD 1,995.00 per hour. Hourly rates for paralegals range from USD 235.00 to USD 575.00. Please be aware that the firm adjusts rates as of the beginning of each year, in which case the new rates will apply to work done after any such adjustment. In addition, expenses advanced on your behalf or internal charges for administrative



Ron Deutsch
August 2, 2022
Page 2

services (which may exceed our direct costs) are added to the statement rendered for the month in which such expenses or charges are recorded in our billing system.

Our standard practice is to bill on a monthly basis. This allows our clients to monitor both current and cumulative fees and expenses. We require that payment of statements be made within 10 days of receipt, and we may suspend or terminate any work in progress if timely payment is not made. We may also withdraw from the representation in a manner consistent with applicable ethical standards.

New York State has established a Fee Dispute Resolution Program for the resolution of certain fee disputes between attorneys and clients. In some circumstances, [Insert Recipient Name] may be eligible to participate in this program if a fee dispute should arise. Attached as Exhibit "A" is an excerpt of the certain sections of Part 137 of the Rules of the Chief Administrator establishing the Fee Dispute Resolution Program.

Attached to this letter is our Statement of Firm Policies (the **"Statement"**) that will apply to our representation of you in the matter set forth above and in each matter agreed to from time to time. In the event of a conflict between the terms of the Statement and the terms of this letter, the terms of this letter shall control. Please review these policies and let me know if you have any questions concerning them.

If the terms described above and in the attached Statement are satisfactory, please sign the enclosed copy of this letter and return a signed copy. If you choose not to notify us in writing of any objection to these terms, then that will also serve as agreement to these terms, subject, of course, to your right to terminate our engagement at any time.

Regards,

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/ Mitchell P. Hurley
Mitchell P. Hurley



Ron Deutsch
August 2, 2022
Page 3


Enclosure

**AGREED**:

Celsius Network Limited and its
Affiliated Debtors and Debtors in Possession


By: _____
     Chris Ferraro

Date: 8/5/2022
     _____

## EXHIBIT A

### §137.0    Scope of Program

This Part establishes the New York State Fee Dispute Resolution Program, which provides for the informal and expeditious resolution of fee disputes between attorneys and clients through arbitration and mediation.  In accordance with the procedures for arbitration, arbitrators shall determine the reasonableness of fees for professional services, including costs, taking into account all relevant facts and circumstances.  Mediation of fee disputes, where available, is strongly encouraged.

### §137.1    Application

(a)    This Part shall apply where representation has commenced on or after January 1, 2002, to all attorneys admitted to the bar of the State of New York who undertake to represent a client in any civil matter.

(b)    This Part shall not apply to any of the following:

(1)    representation in criminal matters;

(2)    amounts in dispute involving a sum of less than $1000 or more than $50,000, except that an arbitral body may hear disputes involving other amounts if the parties have consented;

(3)    claims involving substantial legal questions, including professional malpractice or misconduct;

(4)    claims against an attorney for damages or affirmative relief other than adjustment of the fee;

(5)    disputes where the fee to be paid by the client has been determined pursuant to statute or rule and allowed as of right by a court; or where the fee has been determined pursuant to a court order;

(6)    disputes where no attorney's services have been rendered for more than two years;

(7)    disputes where the attorney is admitted to practice in another jurisdiction and maintains no office in the State of New York, or where no material portion of the services was rendered in New York;

(8)    disputes where the request for arbitration is made by a person who is not the client of the attorney or the legal representative of the client.

**§137.2      General**

(a)      In the event of a fee dispute between attorney and client, whether or not the attorney already has received some or all of the fee in dispute, the client may seek to resolve the dispute by arbitration under this Part.  Arbitration under this Part shall be mandatory for an attorney if requested by a client, and the arbitration award shall be final and binding unless de novo review is sought as provided in section 137.8.

(b)      The client may consent in advance to submit fee disputes to arbitration under this Part.  Such consent shall be stated in a retainer agreement or other writing that specifies that the client has read the official written instructions and procedures for Part 137; and that the client agrees to resolve fee disputes under this Part.

(c)      The attorney and client may consent in advance to arbitration pursuant to this Part that is final and binding upon the parties and not subject to de novo review.  Such consent shall be in writing in a form prescribed by the Board of Governors.

(d)      The attorney and client may consent in advance to submit fee disputes for final and binding arbitration to an arbitral forum other than an arbitral body created by this Part.  Such consent shall be in writing in a form prescribed by the Board of Governors.  Arbitration in that arbitral forum shall be governed by the rules and procedures of that forum and shall not be subject to this Part.

## STATEMENT OF FIRM POLICIES

We appreciate your decision to retain Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**") as your legal counsel and look forward to developing our relationship with you in the course of our representation. Except as may be modified by a separate written agreement, the following summarizes our billing practices and certain other terms that will apply to any engagement. If you provide us with outside counsel guidelines, billing requirements, or other similar policies, we will endeavor to abide by them to the extent reasonably practicable and consistent with our obligations to other clients and the applicable rules of professional conduct. However, the terms of our engagement letter together with this Statement cannot be modified in any material respect by the tender of such policies, without a writing signed by us.

1.    **Determination of Fees**

When establishing fees for services that we render, we are guided primarily by the time and labor required, although we also consider other appropriate factors, such as the novelty and difficulty of the legal issues involved; the legal skill required to perform the particular assignment; time-saving use of resources (including research, analysis, data and documentation) that we have previously developed and stored electronically or otherwise in quickly retrievable form; the fee customarily charged by comparable firms for similar legal services; the amount of money involved or at risk and the results obtained; and the time constraints imposed by either the client or the circumstances. The firm generally requires a retainer in an amount which is appropriate with respect to the proposed representation. Unless otherwise agreed, the retainer will be applied to statements rendered in connection with the representation, with any unused portion being returned to the client.

In determining a reasonable fee for the time and labor required for a particular matter, we consider the ability, experience, and reputation of the professionals in our firm who perform the services. To facilitate this determination, we internally assign to each professional an hourly rate based on these factors. When selecting professionals to perform services for a client, we generally seek to assign professionals having the lowest hourly rates consistent with the skills, time demands, and other factors influencing the professional responsibility required for each matter. Of course, our internal allocation of values for professional time changes periodically (at least annually) to account for increases in our cost of delivering legal service, other economic factors, and the augmentation of a particular professional's ability, experience and reputation. Any such changes in hourly rates are applied prospectively. We record and bill our time in one-tenth hour (six-minute) increments.

The time for which a client will be charged will include, but will not be limited to, telephone and office conferences between client and counsel, witnesses, consultants, court personnel and others; conferences among our legal personnel; factual investigation; legal research; responding to clients' requests for us to provide information to their auditors in connection with reviews or audits of financial invoices; drafting of agreements, contracts, letters, pleadings, briefs and other documents; travel time; waiting time in court; and time in depositions

and other discovery proceedings.  In an effort to reduce legal fees, we utilize paralegal personnel.  Time devoted by paralegals to client matters is charged at special billing rates, which also are subject to adjustment from time to time by the firm.

## 2.    Expenses

In addition to legal fees, our statements will include out-of-pocket expenses that we have advanced on behalf of the client and our internal charges (which may exceed direct costs) for certain support activities.  Advanced costs generally will include such items as travel expenses and fees for postage, filing, recording, certification, registration, and the like.  Our internal charges typically cover such items as long distance telephone calls, facsimile transmissions, messenger services, overnight courier services, terminal time for computer research and complex document production, secretarial and paralegal overtime and photocopying or printing materials sent to the client or third parties or required for our use.  We may request an advance cost deposit (in addition to the advance fee deposit) when we expect that we will be required to incur substantial costs on behalf of the client.

During the course of our representation, it may be appropriate or necessary to hire third parties to provide services on your behalf.  These services may include such things as consulting or testifying experts, investigators, providers of computerized litigation support, court reporters, providers of filing services and searches of governmental records and filings, and local counsel.  Because of the legal "work product" protection afforded to services that an attorney requests from third parties, in certain situations, our firm may assume responsibility for retaining the appropriate service providers.  If we do so, you will be responsible for paying all fees and expenses directly to the service providers or reimbursing us for these costs.

## 3.    Billing

We bill monthly throughout the engagement for a particular matter, and our monthly statements are due within ten days after your receipt thereof.  In instances in which we represent more than one person with respect to a matter, each person that we represent is jointly and severally liable for our fees with respect to the representation.  Our statements contain a concise summary of each matter for which legal services were rendered and a fee was charged.

We invite our clients to discuss freely with us any questions that they have concerning a fee charged for any matter.  We want our clients to be satisfied with both the quality of our services and the reasonableness of the fees that we charge for those services.  We will attempt to provide as much billing information as the client requires and in such customary form that it desires, and are willing to discuss with our clients any of the various billing formats we have available that best suits their needs.

If any monthly statement is not paid within 60 days after the original statement date, we reserve the right to discontinue services on all pending matters for you until all of your accounts with us have been brought current.  Additionally, if any statement is not paid within 60 days from

the date of the original statement, we may, by written notice to you on a subsequent statement or otherwise, declare the overdue account to be delinquent. We have no obligation to declare any account delinquent. If we declare an account to be delinquent, the amount owing on that account will accrue interest at a rate equal to one percent (1%) per month (a 12% annual percentage rate) from the date of our delinquency notice to you until the balance is paid in full, but in no event shall such rate exceed the maximum rate permitted by applicable law. Any payments made on past due statements are applied first to interest, if any, and then to the account balance, beginning with the oldest outstanding statement. In addition, we are entitled to attorneys' fees and costs if collection activities are necessary.

### 4.    Client and Scope of Engagement

Our engagement is limited to the specific party or parties and matter identified in an engagement letter or similar writing confirming our representation. As a result, our engagement with you does not create a lawyer-client relationship with any other persons or entities, including parents, subsidiaries, affiliates, joint venture entities, successors, acquirers, employees, officers, directors, shareholders, partners, members, or trustees, even if such persons or entities control, are controlled by, or are under common control with you. Nor does our engagement create a lawyer-client relationship with you for any other matter than that agreed to in the engagement letter or similar writing confirming our representation.

We will provide services of a strictly legal nature of the kind generally described in the engagement letter that accompanies this attachment. It is understood that you are not relying on us for business, investment, or accounting decisions, or to investigate the character or credit of persons with whom you may be dealing, or to advise you about changes in the law that might affect you unless otherwise specified in the letter. We will keep you advised of developments as necessary to perform our services and will consult with you as necessary to ensure the timely, effective, and efficient completion of our work. Professionals in the firm typically have several client matters pending and are required to coordinate the scheduling of activities required for each pending client matter.

### 5.    Necessary Information

It is anticipated that you and any other entities affiliated with you will furnish us promptly with all information that we deem to be required to perform the services described in our engagement letter, including financial statements from qualified accountants and auditors, as appropriate, and documents prepared by other legal counsel employed by you in connection with prior or other matters. You will make such business or technical decisions or determinations as are appropriate to carry out our engagement.

Our engagement is premised and conditioned upon your representation that you are not aware of any material facts or current or historical problem (involving without limitation such matters as court orders, injunctions, cease and desist orders, judgments, liabilities, litigation, administrative proceedings, crimes, prosecutions, bankruptcies or securities violations) on the

part of any person to be connected with you that you have not fully disclosed to us. You understand that the accuracy and completeness of any document (including securities disclosure documents, litigation pleadings and court filings) prepared by us is dependent upon your alertness to assure that it contains all material facts relating to the subject and purpose of such document and that such document must not contain any misrepresentation of a material fact nor omit information necessary to make the statements therein not misleading. To that end, you agree to review all documents prepared by us for their factual accuracy and completeness prior to any use thereof. You also acknowledge that this responsibility continues through our engagement in the event that such document becomes deficient in this regard. You hereby represent and warrant that any material, information, reports and financial statements, whether rendered orally or in writing, furnished to us by you will be accurate, and that we may rely upon the truth or accuracy of such information.

**6.      Confidentiality and Conflicts**

Akin Gump is a large law firm with multiple offices and a large number of clients around the world. Because of the firm's size and geographic scope, as well as the breadth and diversity of our practice, other present or future clients of the firm inevitably will have contacts with you. Accordingly, to prevent any future misunderstanding and to preserve the firm's ability to represent you and our other clients, we confirm the following understanding about certain conflicts of interest issues:

Unless we have your agreement that we may do so, we will not represent another client in a matter that is substantially related to a matter in which we represent you and in which the other client is adverse to you. We understand the term "matter" to refer to transactions, negotiations, proceedings and other representations involving specific parties.

To the extent permitted by applicable law (including rules) you agree that we may (i) continue to represent any existing client and (ii) undertake to represent any new or former client, in each case, in any matter that is not substantially related to a matter in which we represent you, even if we represent you in a matter in which the other client is adverse to you or we represent the other client in a matter in which you are adverse to the other client. By way of example, this would include assisting another client on various types of agreements, financings or restructurings and bankruptcies in which you may have an interest as a counterparty, or advancing another client's position on legislative or regulatory issues with which you may disagree. Additionally, we may be instructed to act for more than one client interested in the same objective, asset or financing target. You agree that if we are, for example, advising you in relation to an auction or bid we may also act for other bidders and/or financiers to other bidders in relation to that auction or bid, subject to implementation of reasonable safeguards to ensure that confidential information is kept within the relevant team (e.g. using separate teams of lawyers to advise each of you and any other bidders and finance providers to other bidders).

We do not view this advance consent to permit unauthorized disclosure or use of any client confidences. Under applicable rules of professional conduct, we are obligated to and shall

DocuSign Envelope ID: 7A8D9E1D-0950-4B0B-A728-88DB5DF5B5A5

preserve the confidentiality of any confidential information you provide to us. In this connection, we may obtain nonpublic information about you in the course of our representation. We maintain appropriate physical, electronic, and procedural safeguards to protect your nonpublic information. We do not disclose nonpublic information about our clients or former clients to anyone, except as permitted by law and applicable rules of professional conduct.

We will not disclose to you or use on your behalf any documents or information with respect to which we owe a duty of confidentiality to another client or person.

The fact that we may have your documents and/or information that may be relevant to another matter in which we are representing another client will not prevent us from representing that other client in that matter in reliance upon the foregoing advance waiver. We will maintain appropriate measures to ensure that the confidentiality of your documents and/or information is preserved.

Our professional obligations to you and to our other clients will require us to run a conflicts check if there is any change in the parties to the matter or any material change in its nature. We must also run a conflicts check before undertaking any new matters with you.

## 7.    Marketing Materials

To provide information about our expertise, the firm will often describe in materials prepared for marketing the firm's services (such as brochures, webpages, pitches, legal directory and industry awards submissions and the like) examples of its representative experience, including a sample of the clients it represents. Except where you notify us in writing to the contrary, you agree that the firm may, without identifying sensitive details about your affairs, recognize the fact that you are a client of the firm in such materials. You further agree that in such materials, we have your permission to use your name and logo and indicate the generic nature of our work, including non-sensitive details that have properly entered the public domain. For example, following the completion of a transaction that has been made public, the firm may share its involvement with the transaction via the issuance of a press release or other statement to trade publications, on its website or social media accounts, unless you instruct us not to do so.

## 8.    Termination of Engagement

Upon completion of any matter, or upon earlier termination of our relationship, the lawyer-client relationship arising from such matter will end unless you and we have expressly agreed to a continuation with respect to other matters. We hope, of course, that such a continuation will be the case. You have the right at any time to terminate our services and representation upon written notice to the firm. We reserve the right to withdraw from our representation if circumstances arise that under the applicable rules of professional conduct, allow or require us to.

5

9.      **Disagreements Regarding Fees**

In the event that you believe any statement for our services is erroneous for any reason, you shall notify us of the same within ten business days after receipt of such statement stating the basis for your belief.  If agreement cannot be reached with respect to the amount owed, you agree to promptly pay the non-disputed portion of our statement and submit the disputed portion for resolution by the appropriate committee of the organized bar of the city where our office rendering such services is located.  If no organized bar exists in that city, then you can submit to the Committee on Arbitration Relating to Fee Disputes (or similar committee) of the regulatory body governing the practice of law in the state or jurisdiction where our office rendering such services is located.

10.     **Governing Law**

OUR ENGAGEMENT SHALL BE GOVERNED BY THE LAWS OF THE JURISDICTION WHERE OUR OFFICE RENDERING OUR SERVICES IS LOCATED AND, EXCEPT FOR DISAGREEMENTS REGARDING FEES SUBMITTED TO ARBITRATION PURSUANT TO PARAGRAPH 8 ABOVE, VENUE FOR ANY OTHER ACTION HEREUNDER SHALL BE IN THE COUNTY WHERE OUR OFFICE RENDERING SUCH SERVICES IS LOCATED.

11.     **Record Retention**

Following termination of a matter, any otherwise nonpublic information you have supplied to us that is retained by us will be kept confidential in accordance with applicable rules of professional conduct.  Upon your request, we will return to you documents and materials that you provided to us in connection with our representation.  You hereby acknowledge and agree that if you do not instruct us to have your client file returned to you, we will retain it for a reasonable time period (presently ten years) pursuant to the Firm's then –current Record Retention Policy, after which, we will be free to destroy at our discretion, without further notice to you, any portion of the file left with us that we are not legally required to preserve.  Clients may be charged shipping costs for the return of client files.  The responsible lawyer should determine if it is appropriate depending upon the size of the matter and the extent of the likely cost to the firm.  If you instruct us to return your file to you, we reserve the right to retain materials pertaining to each matter, including without limitation administrative and accounting records, conflicts and new business intake materials, internal documents, lawyer notes, firm form files, communications, and other materials intended for our internal use or that we are prohibited from providing to you by law, court order or third party agreement.  By agreeing to and accepting our representation as described in this letter, you agree to keep us informed of your most current address during the stated retention period.

DocuSign Envelope ID: 79AD0610-0950-4608-A728-88DB5B5495A5

### 12.    Miscellaneous

The engagement letter together with this Statement of Firm Policies constitutes our entire understanding and agreement with respect to the terms of our engagement and supersedes any prior understandings and agreements, written or oral.  If any provision of our engagement letter is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect.  Our engagement letter may only be amended in writing by the parties hereto.

Your agreement to this engagement constitutes your acceptance of the foregoing terms and conditions.  If any of them is unacceptable to you, please advise us now so that we can resolve any differences and proceed with a clear, complete, and consistent understanding of our relationship.

**<u>Exhibit B</u>**

**Hurley Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF MITCHELL HURLEY**
**IN SUPPORT OF THE DEBTORS' APPLICATION AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF AKIN GUMP STRAUSS**
**HAUER & FELD LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

I, Mitchell Hurley, under penalty of perjury, declare as follows:

1.      I am an attorney admitted to practice in the State of New York, and I am a partner

with the firm of Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>").  Akin Gump maintains

offices at, among other places, One Bryant Park, New York, New York 10036.  There are no

disciplinary proceedings pending against me.

2.      I am duly authorized to make this declaration (the "<u>Declaration</u>") on behalf of Akin

Gump in support of the application (the "<u>Application</u>")[2] of the Debtors for authority to retain and

employ Akin Gump as special litigation counsel to the Debtors under the terms and conditions set

forth in the Application.  I submit this Declaration in accordance with Bankruptcy Code sections

327, 328 and 330, Bankruptcy Rules 2014 and 2016 and Bankruptcy Local Rules 2014-1 and 2016-

1.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

## Services to be Provided

3.       Since March 2021, Akin Gump has performed legal work for Celsius Network and certain of its affiliates.  As further described herein and in the Application, the Debtors are seeking to retain Akin Gump in connection with the Specified Litigation Matters (defined below) for which Akin Gump was advising the Debtors prior to the Petition Date.  Specifically, beginning in March 2021, Akin Gump began performing legal work for certain Debtors in connection with Celsius' claims against Jason Stone ("Stone") and his company KeyFi, Inc. ("KeyFi") with respect to certain breaches of duty by Stone and KeyFi relating to staking and decentralized finance activities (the "Stone Dispute").  In addition, beginning in June 2021, Akin Gump began performing legal work for certain Debtors in connection with a dispute with Prime Trust LLC concerning assets held by Prime Trust LLC (the "Prime Trust Dispute" and, together with the Stone Dispute, the "Specified Litigation Matters").  Akin Gump has continued to represent the relevant Debtors in connection with the Specified Litigation Matters since the Petition Date.[3]

4.       Akin Gump is being retained as special litigation counsel to continue to provide services in connection with the Specified Litigation Matters, including any such matters that may arise out of or in connection with the Specified Litigation Matters.  Specifically, Akin Gump has provided and will continue to provide the following services to the Debtors during these Chapter 11 Cases:

    a.       representing the Debtors in connection with the Specified Litigation Matters;

    b.       conducting investigations and analyses sufficient to advise the Debtors regarding the Specified Litigation Matters;

    c.       rendering services to the Debtors including, but not limited to, fact investigation, legal research, briefing, argument, discovery, negotiation, litigation, participating

---

[3] Days before the Petition Date, KeyFi purported to file, but did not serve, a complaint against Celsius Network and Celsius KeyFi LLC in New York State Supreme Court.  *See KeyFi, Inc. v. Celsius Network Limited and Celsius KeyFi LLC,* No. 652367/2022.

in meetings with the Debtors, their management and board of directors, appearance and participation in hearings and communications and meetings with parties in interest, in each case as it relates to the Specified Litigation Matters; and

d.  performing all other necessary or requested litigation services in connection with the Specified Litigation Matters.

5.      The Debtors believe that it would be inefficient to replace Akin Gump after Akin Gump has represented the Debtors for over a year on the Specified Litigation Matters and given the vast knowledge that Akin Gump has acquired regarding the Specified Litigation Matters.  As such, the Debtors have determined it is necessary and appropriate to seek to employ Akin Gump to serve as its special litigation counsel with respect to the Specified Litigation Matters.  Akin Gump has indicated its willingness to act as the Debtors' special litigation counsel to represent the Debtors in connection with the Specified Litigation Matters.

6.      While the Debtors are currently seeking to employ Akin Gump at this time, only in connection with the Specified Litigation Matters, the Debtors may determine that it is appropriate and in the best interests of the estates to expand the scope of Akin Gump's employment to include representation of the Debtors with respect to additional litigation or other matters.  To the extent the Debtors wish to expand the scope of Akin Gump's employment beyond those services set forth in this Application (and Akin Gump agrees), the Debtors will seek further approval from this Court.  Specifically, the Debtors will file notice of any proposed additional services (the "Proposed Additional Services") and, to the extent necessary, a supplemental declaration, with the Court and serve such notice on the U.S. Trustee, the Committee and any party requesting notice under Bankruptcy Rule 2002.  If no such party files an objection within ten (10) days of the Debtors filing such notice, the Proposed Additional Services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

**Akin Gump's Qualifications**

7.       Akin Gump has (i) extensive experience and expertise with respect to, among other things, the Specified Litigation Matters as well as general litigation matters and (ii) familiarity with, and general knowledge regarding, the Debtors and their business, operations, debt, and financing structure as a result of Akin Gump's prepetition service to Celsius.

8.       Akin Gump is a full-service law firm with extensive experience handling a broad range of legal issues in a wide range of industries.  Further, Akin Gump has extensive experience representing companies in litigation matters, both in and out of chapter 11 cases.

9.       Moreover, in addition to representing Celsius in litigation matters, Akin Gump has represented Celsius in numerous corporate, transactional, restructuring, tax and other matters since March 2021 and Celsius has relied on Akin Gump to provide litigation counsel to it with respect to the Specified Litigation Matters for more than a year.  By virtue of Akin Gump's prior work for Celsius, Akin Gump has extensive familiarity with the facts and history of the Debtors' business.  As such, I believe that the retention of Akin Gump by the Debtors as special litigation counsel with respect to the Specified Litigation Matters will promote the efficient administration of these Chapter 11 Cases.  Conversely, if required to retain different counsel to provide services with respect to the Specified Litigation Matters, I believe the Debtors will be forced to expend significant resources and expense to make such new counsel familiar with the Debtors' business and to familiarize such counsel with the legal issues and status of the Specified Litigation Matters.

10.       In light of the foregoing, I believe that Akin Gump is well qualified and uniquely able to represent the Debtors as special litigation counsel pursuant to Bankruptcy Code section 327(e) and Akin Gump's retention would be in the best interests of the Debtors, their estates, creditors and other parties in interest.

**Professional Compensation**

11.     Akin Gump intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of this Court.

12.     Akin Gump has agreed that, subject to this Court's approval, it will apply a 10% discount on its standard billing rates for all timekeepers with respect to the Specified Litigation Matters, which will be applied to the total fees in each invoice.  Applying the 10% discount, Akin Gump's billing rates for professionals and paraprofessionals employed in its domestic offices are: $1,013.00 to $1,796.00 for partners; $761.00 to $1,274.00 for senior counsel; $891.00 to $1,103.00 for counsel; $545.00 to $941.00 for associates; and $194.00 to $428.00 for paraprofessionals.

13.     Akin Gump operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance and reputation, the nature of the work involved and other factors. Akin Gump's hourly rates are set at a level designed to compensate Akin Gump fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments (typically on January 1st of each year) to reflect economic and other

conditions.[4]  Akin Gump will provide ten (10) business days' notice of any rate increases to the Debtors, the U.S. Trustee and the Committee.

14.     Akin Gump will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services it provides to the Debtors.  Akin Gump is customarily reimbursed for all expenses incurred in connection with the representation of a client in a given matter, including, but not limited to, photocopying services, printing, delivery charges, filing fees, postage, "working" meals and computer research.

15.     It is Akin Gump's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of the client.  It is also Akin Gump's policy to charge its clients only the amount actually incurred by Akin Gump in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals and lodging.

16.     To ensure compliance with all applicable deadlines in connection with the Specified Litigation Matters, from time to time Akin Gump may be required to utilize the services of overtime secretaries.  Akin Gump charges fees for these services and may bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Akin Gump professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with the Amended Guidelines and the Local Rules.

---

[4] For example, like many of its peer law firms, Akin Gump typically increases the hourly billing rate of attorneys and paraprofessionals periodically in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing in seniority and promotion; and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the Amended Guidelines.  While the rate ranges provided for in this Application may change if an individual leaves or joins Akin Gump, and if any such individual's billing rate falls outside the ranges disclosed above, Akin Gump does not intend to update the ranges for such circumstances.

**Compensation Received by Akin Gump from Celsius**

17.      In the 90-days prior to the Petition Date, Akin Gump received payments, including advance payments, from Celsius in the aggregate amount of $3,782,587.82 for services rendered and expenses incurred collectively for all matters on which Akin Gump had been advising Celsius. Of this amount, Akin Gump currently holds an advance payment balance of $247,704.37.

18.      As of the Petition Date, the Debtors did not owe Akin Gump any amounts for legal services rendered before the Petition Date.  Although certain prepetition fees and expenses may have been incurred but not yet applied to Akin Gump's advance payment balance, the amount of the Debtors' advance payment balance exceeds any amounts listed or to be listed on invoices describing such services rendered and expenses incurred prior to the Petition Date.  The balance that remains after application of the above advance payments against additional accrued and unpaid prepetition expenses, if any, will be applied to Akin Gump's postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Akin Gump.

19.      Akin Gump has not shared or agreed to share (i) any of its compensation from the Debtors with any other persons, other than employees and members of Akin Gump or (ii) any compensation any other persons have received or may receive.

**No Duplication of Services**

20.      Akin Gump believes the services it provides to the Debtors will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. Specifically, I believe that Akin Gump's limited role as special litigation counsel with respect to the Specified Litigation Matters will complement, and not be duplicative of, the services being rendered by any other professional retained in these Chapter 11 Cases.  Akin Gump understands

7

that the Debtors have retained, and may retain, additional professionals during the terms of their engagement and will work cooperatively with such professionals to avoid any duplication of services.

### Akin Gump's Disclosure Procedures

21.     In connection with its proposed retention by the Debtors in these Chapter 11 Cases, Akin Gump undertook a thorough review of its computerized database (the "Conflicts Database") to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors with respect to the Specified Litigation Matters.  The Conflicts Database is designed to include every matter on which Akin Gump is now and has been engaged and, in each instance, the identity of related parties, adverse parties and certain of the attorneys in the firm that are knowledgeable about the matter.  It is the policy of Akin Gump that no new matter may be accepted or opened within the firm without completing and submitting to those charged with maintaining the Conflicts Database the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter and the related and adverse parties.  Accordingly, Akin Gump maintains and systematically updates this system in the regular course of business of the firm, and it is the regular practice of the firm to make and maintain these records.

22.     In particular, and in connection with preparing this Declaration, Akin Gump requested and obtained from the Debtors extensive lists of interested parties and significant creditors.  From that list, Akin Gump identified the parties in interest that are related to its engagement in connection with the Specified Litigation Matters, as well as certain other parties in interest.  A copy of the list of the parties searched by Akin Gump is attached hereto as Schedule 1

(collectively, the "Searched Parties").[5]  Where an entity has a name similar to a party on Schedule 1 or is possibly related to such party in matters wholly unrelated to these Chapter 11 Cases, those parties have also been searched in the Conflicts Database.  The information listed on Schedule 1 may have changed without Akin Gump's knowledge and may change during the pendency of these chapter 11 cases.  Akin Gump will update or supplement this Declaration as necessary and when Akin Gump becomes aware of additional material information.

23.    As a result of the conflicts process conducted to date, I have thus far ascertained that, in each case, upon information and belief, Akin Gump has connections with certain of the Searched Parties.  Out of an abundance of caution, I am disclosing certain representations, which are not, to my understanding, disqualifying or problematic under either Bankruptcy Code section 327(e) or applicable standards of professional ethics.

### Representations of Parties in Interest

24.    Set forth on Schedule 2 attached hereto is a list of those Searched Parties from Schedule 1 that Akin Gump either (i) currently represents (or represents a related party thereto) (the "Current Clients") in matters wholly unrelated to these Chapter 11 Cases or (ii) has, in the past three calendar years, represented (or represented a related party thereto) in matters wholly

---

[5] Akin Gump's inclusion of parties in Schedule 1 (and the categorization thereof), which is based on information provided by the Debtors, is solely to illustrate Akin Gump's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs on Schedule 1 or has a claim or legal relationship to the Debtors of the nature described in any of the schedules.  In some instances, Schedule 1 does not disclose the full legal name of the relevant entity.  When the names of the entities reviewed were incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Akin Gump reviewed each entity in its Conflicts Database (defined herein) to the extent feasible.

unrelated to these Chapter 11 Cases (the "Former Clients").[6]  In connection with the services to be rendered to the Debtors, Akin Gump will not commence a cause of action against any Current Client with respect to these Chapter 11 Cases unless Akin Gump has an applicable waiver from the Debtors and the Current Client allowing Akin Gump to commence such an action.  To the extent that a waiver does not exist or is not obtained from the Debtors and such Current Client and it is necessary for the Debtors to commence an action against that Current Client, the Debtors will be represented in such particular matter by other counsel.

**Connections with Parties Representing
1% or More of Akin Gump's Revenues for 2021**

25.    At the inception of each engagement for which a declaration is required pursuant to Bankruptcy Rule 2014, Akin Gump reviews the information relating to the parties involved in a bankruptcy case to determine whether any such party, together with its known related entities, were clients of Akin Gump and, and, as a result, made payments to Akin Gump for services rendered in the calendar year prior to the date of review that in the aggregate for each such party exceeds 1% of Akin Gump's total revenues for such calendar year.

26.    Akin Gump's revenues for services rendered on behalf of each of the parties in interest identified in Schedule 1 make up, in the aggregate, with respect to each such party in interest, less than 1% of Akin Gump's annual revenue in calendar year 2021.

---

[6] For purposes of the disclosures set forth herein, Akin Gump has searched for connections with clients with whom time has been posted in the last three calendar years.  "Current Clients" are those clients (or related parties thereof) in which the Conflicts Database shows that one or more timekeepers have posted time to such client matters in the last 12 months and are not listed in the Conflicts Database as "closed" matters.  "Former Clients" are those clients in which the Conflict Database shows that Akin Gump has previously represented such clients (or related parties thereof) within the last three calendar years and (i) no time has been posted to such client matters in the last 12 months or (ii) such client matters are otherwise listed as "closed" within the Conflicts Database.  To the extent that a client (or related party thereof) is both a Current Client and a Former Client on separate matters, such client is only listed once on Schedule 2 as a Current Client.  Notwithstanding the foregoing, whether an actual client relationship exists can only be determined by reference to the documents governing Akin Gump's representation rather than its potential listing in the Conflicts Database.  As such, for purposes of the disclosures set forth herein, some of the disclosures set forth herein and on Schedule 2 may be over-inclusive.

10

### Connections with the Debtors

27.    As set forth in the Application and herein, in addition to representing Celsius in litigation matters, Akin Gump has represented Celsius in numerous corporate, transactional, restructuring, tax and other matters since March 2021.  Since the Petition Date, Akin Gump has continued to represent certain of the Debtors in connection with the Specified Litigation Matters.

### Relationships with Directors and Officers

28.    Akin Gump does not currently represent, and has not in the past represented, any of the Debtors' current and former directors and officers in their individual capacity.  However, given the broad range of Akin Gump's client representations, one or more directors or officers identified on Schedule 1 may serve or may have served as a director or on the board of directors (or board of managers) of an entity, or an affiliate of such entity, that Akin Gump currently represents or has in the past represented.  Specifically, Akin Gump currently represents an entity for which Alan Carr serves as a designee on matters unrelated to these Chapter 11 Cases.

### Bankruptcy Judges for the Southern District of New York

29.    Judge Lisa B. Beckerman, a bankruptcy judge with the United States Bankruptcy Court for the Southern District of New York, is a former partner at Akin Gump.  Judge Beckerman

was an attorney at Akin Gump from May 1999 to February 2021.  Judge Beckerman is not involved in these Chapter 11 Cases.

30.     Patrick Chen, a law clerk for Judge Beckerman, is a former associate at Akin Gump.  Mr. Chen was an attorney at Akin Gump from September 2017 to August 2021.  Mr. Chen is not involved in these Chapter 11 Cases.

## Searched Parties Which Currently Serve or Have, in the Past Three Years, Served on Informal and/or Official Creditors' Committees Represented by Akin Gump

31.     As part of its diverse restructuring practice, Akin Gump routinely represents informal and official creditors' committees.  In that regard, set forth on Schedule 3 attached hereto is a listing of those Searched Parties from Schedule 1 that currently serve or have served, within the last three calendar years, on informal or official creditors' committees represented by Akin Gump in other chapter 11 cases.  Akin Gump has not represented and will not represent these parties in connection with these Chapter 11 Cases.

## Other Connections and General Disclosures

32.     Akin Gump performed general diligence to determine any connections beyond what is disclosed in the attached schedules. Akin Gump may have represented in the past and/or may currently represent or in the future represent entities (other than parties in the attached schedules) not currently known to Akin Gump in matters unrelated to these Chapter 11 Cases who may be parties in interest in these Chapter 11 Cases.  In addition, Akin Gump regularly represents informal groups of creditors of companies that are facing financial distress, which financial distress may not have been publicly disclosed.  Some of these companies may be or become parties in interest in these Chapter 11 Cases.  Akin Gump will only represent such informal groups in matters unrelated to these Chapter 11 Cases.

33.    As part of its restructuring practice, Akin Gump appears in cases, proceedings and transactions involving many different professionals, including attorneys, accountants, financial consultants and investment bankers, some of which may represent claimants and parties in interest in these Chapter 11 Cases.  In addition, Akin Gump may have in the past or may currently be representing other professionals involved in these Chapter 11 Cases in matters unrelated to these Chapter 11 Cases.  Based on our current knowledge of the professionals involved, Akin Gump does not represent or have a relationship with any attorneys, accountants, financial consultants or investment bankers that would be materially adverse to the Debtors or their estates on matters upon which Akin Gump is to be employed.

34.    Akin Gump and certain of its partners, senior counsel, counsel and associates also may have in the past represented, may currently represent and likely in the future will represent creditors, equity security holders or other parties in interest in these Chapter 11 Cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these Chapter 11 Cases.  Akin Gump believes that its representation of such creditors, equity security holders or other parties in interest in such unrelated matters will not affect its representation of the Debtors in these proceedings.

35.    In addition, except as other described herein, to the best of my knowledge, I do not believe there is any connection between Akin Gump and the U.S. Trustee, any person employed with the U.S. Trustee or any bankruptcy judge currently serving on the United States Bankruptcy Court for the Southern District of New York.

36.    Neither I nor Akin Gump has represented or will represent any entity in connection with these Chapter 11 Cases, and neither I nor Akin Gump will accept any fee from any other party or parties in these Chapter 11 Cases, except as otherwise described herein.

37.     Based solely on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, Akin Gump (i) does not hold or represent an interest adverse to the Debtors' estates with respect to matters on which Akin Gump is employed and (ii) has no connection to the Debtors, their creditors or any other party in interest except as disclosed herein.

38.     Akin Gump will periodically review its Conflicts Database during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Akin Gump will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Statement Regarding U.S. Trustee Guidelines

The following information is provided in response to the request for additional information set forth in section D(1) of the U.S. Trustee Guidelines:

| | |
|---|---|
| **Question:** | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
| **Response:** | Yes.  Akin Gump agreed to provide a 10% discount to its standard billing rates for this engagement, which standard rates are consistent with (i) market rates for comparable services and (ii) the rates that Akin Gump charges and will charge other comparable chapter 11 clients, regardless of the location of the chapter 11 case. |
| **Question:** | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| **Response:** | No rate for any of the professionals included in this engagement varies based on the geographic location of the Chapter 11 Cases. |

14

**Question:**    If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and reasons for the difference.

**Response:**    As disclosed above, Akin Gump has represented Celsius on various matters since March 2021.  During that period, Akin Gump charged Celsius its standard rates in effect at that time, subject to certain discounts to Akin Gump's hourly rates.  With respect to certain prepetition work, from March 2021 through December 2021, Akin Gump agreed to discount hourly rates by 10%, except that my hourly rate was further discounted so that it was approximately equal to the discounted rate agreed for a senior corporate partner on transactional work being undertaken by Akin Gump prepetition.  From January 2021 forward, my rate no longer was subject to a unique discount.  Based on the assumption that Akin Gump would continue to perform work for Celsius across numerous practice groups, Akin Gump agreed to provide tiered discounts at 10%, 12.5% or 15% depending on aggregate fees received for all work per calendar year; *provided, however*, that Akin Gump did not agree to provide any discount to Celsius in connection with restructuring advice that Akin Gump provided to Celsius prior to the Petition Date.  In light of the revised scope of the work that Akin Gump will perform postpetition, Akin Gump and the Debtors agreed to a 10% discount to Akin Gump's standard billing rates for this engagement.

**Question:**    Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response:**    Akin Gump expects to develop a prospective budget and staffing plan to reasonably comply with the U.S. Trustee's request for information and additional disclosures, as to which Akin Gump reserves all rights.  The Debtors have approved Akin Gump's proposed hourly billing rates.

39.    Akin Gump intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines both in connection with this Application and fee applications to be filed in the Chapter 11 Cases.

40.     By reason of the foregoing, I believe Akin Gump is eligible for employment and retention by the Debtors pursuant to Bankruptcy Code sections 327(e), 328(a), 330, and 331 and the applicable Bankruptcy Rules and Local Rules.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August 8, 2022

/s/ *Mitchell Hurley*
Mitchell Hurley

## Schedule 1

### Schedule of Searched Parties

**Current and Recent Former Entities Affiliated with the Debtors**

Celsius (AUS) Pty Ltd. (Australia)
Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp.
Celsius Mining IL Ltd.
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd
    (Serbia)
Celsius Network (Gibraltar) Ltd.
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network IL Ltd. (Israel)

Celsius Network Inc.
Celsius Network LLC
Celsius Network Ltd. (UK)
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius Services CY Ltd (Cyprus)
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
GK8 Ltd (Israel)
GK8 UK Ltd.
GK8 USA LLC
KN Media Manager LLC

**Directors/Officers**

Ayalor, Amir
Barse, David
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen

Goldstein, Nuke
Kleiderman, Shiran
Leon, S. Daniel
Mashinsky, Alex
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.
Sunada-Wong, Rodney
Tosi, Laurence Anthony

**Bankruptcy Professionals**

Alvarez & Marsal
Centerview Parnters
Deloitte & Touche LLP
Ernst & Young

Kirkland & Ellis LLP
Latham & Watkins LLP
Stretto

**Institutional Customers**

168 Trading Ltd
Akuna Digital Assets LLC
Alameda Research Ltd
Amber - Maple
Amber Technologies Ltd
Anchorage Hold LLC
Anchorage Lending CA LLC
Antalpha Technologies Ltd
AP Capital Absolute Return Fund
AP Capital Investment Ltd
Auros Tech Ltd
B2C2 Ltd
Babel Holding Ltd
B-Brick Inc
BCB Prime Services Limited
BCRS2 LLC
Belleway Ltd
BK Coin Capital LP
Blockchain Access UK Ltd
Blue Fire Capital Europe Cooperatief
CEX IO Ltd
CMS Holdings LLC
Coinbase Credit
Core Scientific Inc.
Cumberland DRW LLC
Dexterity Capital LP
Digital Asset Funds Management Pty Ltd
Digital Treasures Management Pte Ltd
Diversified Alpha SP
Druk Holding & Investments Ltd.
Dunamis Trading (Bahamas) Ltd
Dunamis Trading III Ltd
DV Chain LLC
Enigma Securities Ltd
Equities First Holdings
FalconX Ltd
Fasanara Investments Master Fund
Flow Traders BV
Folkvang SRL
Fractal
Future Technology Investment Ltd
Galaxy
Galaxy Digital LP
Gemini Trust Co. LLC
Genesis Global Capital LLC

Grapefruit Trading LLC
GSR Markets Ltd
Harrison Opportunity III Inc.
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
Hodlnaut Pte. Ltd.
HRTJ Limited
Intership Ltd
Iterative OTC LLC
JKL Digital Capital Ltd
JSCT Hong Kong Ltd
JST Systems LLC
Jump Trading LLC
Keyrock SA
Komaransky, Mike
Kronos Holdings Ltd
LedgerPrime Digital Asset Opportunities
  Master Fund LP
Liquibit USD Market Neutral Arbitrage
  Fund
Liquidity Technologies Ltd
LUOJI 2017 Limited
Marquette Digital
Matrix Port Technologies Ltd
Memetic Capital LP
Menai Markets Ltd.
Mountain Cloud Global Ltd
Nascent GP Inc
Nascent LP
New World Holdings SA
Nickel Digital Asset Fund SPC Digital Asset
  Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC -
  Digital Factors Fund SP
NYDIG Funding LLC
Oiltrading.com Pte. Ltd
Onchain Custodian Pte Ltd
Optimal Alpha Master Fund Ltd
OSL SG Pte Ltd
Outremont Alpha Master Fund LP
Parallel Capital Management Limited
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP

Pharos Fund SPC
Pharos USD Fund SP
Plutus21 Crypto Fund I LP
Point95 Global
Power Block Coin LLC
Prime Trust
Profluent Trading Inc
Profluent Trading UK Ltd
QCP Capital Pte Ltd
Radkl LLC
Red River Digital Trading LLC
Reliz Ltd
Roy Niederhoffer
S&P Solutions Inc.
Scrypt Asset Management AG
SEBA Bank AG
Siafu Capital
Simplex
Symbolic Capital Partners Ltd

Tagomi Trading LLC
TDX SG Pte Ltd
Tether International Ltd.
Three Arrows Capital Ltd
Tower BC Ltd
Tower Research Capital
Transfero Brasil Pagamentos SA
Trigon Trading Pty Ltd
TrueFi
Trustoken Inc
Ultimate Coin
Vexil Capital Ltd
Waterloo Maple Inc.
Weave Markets LP
Wincent Investment Fund PCC Ltd
Wintermute - Maple
Wintermute Trading Ltd
Wyre Payments Inc
ZeroCap Ltd

**Equity Holders**

Advanced Technology Fund XXI LLC
Altshuler ShahamTrusts Ltd
Andersen Invest Luxembourg SA SPF
Artus Capital GmbH & Co. KGaA
██████████
BNK to the Future
████████
BullPerks BVI Corp
Caisse de dépôt et placement du Québec
████████████████
CDP Investissements Inc.
██████████████████
██████████████████████████████
████████████
European Media Finance Ltd
Fabric Ventures Group Sarl
████████████
Gumi Cryptos Capital LLC
Heliad Equity PartnersGmbH & Co. KGaA
████████████
Intership Ltd

████████████
JR Investment Trust
██████████
████████
███████████████████
███████████████████
██████████████
████████████████
███████████████████████
██████████████
████████████
████████████
Tether International Ltd
tokentus Investment AG
██████████████
WestCap Celsius Co-Invest 2021, LLC
WestCap Group
WestCap SOF Celsius 2021 Aggregator, LP
WestCap SOF II IEQ 2021 Co-Invest, LP

3

**Special Litigation Matters**

Jason Stone                                Prime Trust
KeyFi, Inc.

**Committee Members**

Andrew Yoon                                Keith Noyes
Caroline G. Warren                         Mark Robinson
Christopher Coco                           Scott Duffy
Covario AG                                 Thomas DiFiore
ICB Solutions

**Committee Professionals**

White & Case LLP

**Bankruptcy Judges for Southern District of New York**

Chief Judge Cecelia G. Morris              Michael E. Wiles
David S. Jones                             Robert D. Drain
James L. Garrity, Jr.                      Sean H. Lane
Judge Lisa G. Beckerman                    Shelley C. Chapman
Martin Glenn

**US Trustee Office**

Alaba Ogunleye                             Mary V. Moroney
Andrea B. Schwartz                         Nadkarni Joseph
Andy Velez-Rivera                          Paul K. Schwartzberg
Annie Wells                                Richard C. Morrissey
Benjamin J. Higgins                        Shannon Scott
Brian S. Masumoto                          Shara Cornell
Ercilia A. Mendoza                         Susan Arbeit
Greg M. Zipes                              Sylvester Sharp
Ilusion Rodriguez                          Tara Tiantian
James Gannone                              Victor Abriano
Linda A. Riffkin                           William K. Harrington
Madeleine Vescovacci
Mark Bruh

**Schedule 2**[1]

**Schedule of Parties from Schedule 1
and/or Certain Related Parties that Akin Gump
Currently Represents, or Has in the Past Three Years Represented**

## Current and Recent Former Entities Affiliated with the Debtors

*As set forth in the Application and the Hurley Declaration, Akin Gump has in the past represented Celsius in numerous corporate, transactional, restructuring, tax and other matters since March 2021.  In addition, Akin Gump currently represents certain of the Debtors in connection with the Specified Litigation Matters.*

## Directors/Officers

*Akin Gump has not represented in the past and currently does not represent these parties.*

## Bankruptcy Professionals

*Akin Gump currently represents the following entities and/or certain related parties of such entities on matters wholly unrelated to the Debtors' Chapter 11 Cases:*

Deloitte & Touche LLP                          Ernst & Young

*Akin Gump has represented in the past the following entities and/or certain related parties of such entities on matters wholly unrelated to the Debtors' Chapter 11 Cases:*

Alvarez & Marsal                               Latham & Watkins LLP

## Equity Holders

*Akin Gump has not represented in the past and currently does not represent these parties.*

## Institutional Customers

*Akin Gump currently represents the following entity and/or certain related parties of such entity on matters wholly unrelated to the Debtors' Chapter 11 Cases:*

Tower Research Capital

---

[1] As noted in the Hurley Declaration, in some instances, Schedule 1 does not disclose the full legal name of the relevant entity.  When the names of the entities reviewed were incomplete or ambiguous, the scope of the search was intentionally broad and inclusive.  As such, some of the disclosures set forth on this Schedule 2 may be over-inclusive.

*Akin Gump has represented in the past the following entities and/or certain related parties of such entities on matters wholly unrelated to the Debtors' Chapter 11 Cases:*

Core Scientific Inc.                              Iterative OTC LLS
                                                 Roy Niederhoffer

**Special Litigation Matters**

*Akin Gump has not represented in the past and currently does not represent these parties.*

**Committee Members**

*Akin Gump has not represented in the past and currently does not represent these parties.*

**Committee Professionals**

*Akin Gump currently represents the following entity and/or certain related parties of such entity on matters wholly unrelated to the Debtors' Chapter 11 Cases:*

White & Case LLP

**Bankruptcy Judges for Southern District of New York**

*Akin Gump has not represented in the past and currently does not represent these parties.*

**US Trustee Office**

*Akin Gump has not represented in the past and currently does not represent these parties.*

**<u>Schedule 3</u>**

**Schedule of Parties from Schedule 1 and/or Related Parties
that are Currently Serving, or Have in the Last Three Years Served, on
Informal and/or Official Creditors' Committees Represented by Akin Gump**

None.

## Exhibit B

**Ferraro Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|                                          |     |                           |
|------------------------------------------|-----|---------------------------|
| In re:                                   | )   | Chapter 11                |
|                                          | )   |                           |
| CELSIUS NETWORK LLC, *et al.*,[1]        | )   | Case No. 22-10964 (MG)    |
|                                          | )   |                           |
|       Debtors. | )   | (Jointly Administered)    |
|                                          | )   |                           |

_____

**DECLARATION OF CHRIS FERRARO**
**IN SUPPORT OF THE DEBTORS' APPLICATION AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF AKIN GUMP STRAUSS**
**HAUER & FELD LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS**
**AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

I, Chris Ferraro, Chief Financial Officer of Celsius Network LLC,[2] being duly sworn, state the following under penalty of perjury:

1.　　In my capacity as Chief Financial Officer of Celsius Network LLC, I am familiar with the Debtors' day-to-day operations, business, financial affairs, and books and records.  I am directly involved in supervising outside counsel and monitoring and controlling legal costs.

2.　　I submit this declaration (the "Declaration") in support of the Application of the Debtors for authority to employ and retain Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as special litigation counsel to the Debtors, with respect to the Specified Litigation Matters, under the terms and conditions set forth in the Application.  Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Application.

gathered from my review of relevant documents, and information supplied to me by other members of the Debtors' management and the Debtors' advisors.

## The Debtors' Selection of Akin Gump Special Litigation Counsel

3.      Akin Gump is proposed to serve as special litigation counsel to the Debtors.  I understand that a comprehensive review process is necessary when selecting and managing special counsel to ensure the bankruptcy professionals are subject to the same client-driven market forces, security, and accountability as professionals in nonbankruptcy engagements. The Debtors chose Akin Gump because of, among other factors, Akin Gump's significant experience in, among other areas, complex litigation and restructuring, and Akin Gump's relationship with the Debtors and its prepetition work on numerous matters, including the Specified Litigation Matters, since March 2021.  The Debtors thus believe that Akin Gump is well-qualified to render legal services to the Debtors in connection with the Specified Litigation Matters in an efficient and effective manner.

## Rate Structure

4.      Akin Gump has informed the Debtors that its rates and terms for bankruptcy representations are comparable to the rates and terms Akin Gump charges and agrees to for non-bankruptcy representations and comparable to the rates and terms of other comparably skilled professionals.  Moreover, Akin Gump has agreed to provide a 10% discount on its standard billing rates for all timekeepers, which will be applied to the total fees in each statement.  The Debtors have approved Akin Gump's proposed rates, as set forth in the Application and the Hurley Declaration.  Akin Gump has informed the Debtors that its hourly rates are subject to periodic adjustments (typically in January of each year) to reflect economic and other conditions.  The Debtors have consented to such ordinary course rate increases.

### Cost Supervision

5.      Akin Gump advises that it expects to develop a prospective budget and staffing plan to comply reasonably with the U.S. Trustee's request for information and additional disclosures, as to which Akin Gump reserves all rights.  In addition, the Debtors will review the monthly fee applications that Akin Gump regularly submits.  Akin Gump's fees and expenses will be subject to periodic review on a monthly, interim and final basis during the course of the Chapter 11 Cases by the Debtors, the U.S. Trustee, the Committee and other parties in interest and the Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing in true and correct to the best of my knowledge and belief.

Dated:  August 8, 2022
        New York, New York

*/s/ Chris Ferraro*
Chris Ferraro
Chief Financial Officer
Celsius Network LLC