**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
         kwofford@whitecase.com
         sam.hershey@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admission *pro hac vice* pending)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
         gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
JOINDER TO DEBTORS' *EX PARTE* MOTION PURSUANT
TO SECTION 107 OF THE BANKRUPTCY CODE SEEKING
ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO
REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION
FROM THE CREDITOR MATRIX, SCHEDULES AND STATEMENTS,
AND RELATED DOCUMENTS AND (II) GRANTING RELATED RELIEF**

---

[1]  The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are the following: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

AMERICAS 116643812

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 bankruptcy cases of Celsius Network LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**" or "**Celsius**") states as follows in support of this joinder to the *Debtors' Ex Parte Motion Pursuant to Section 107 of the Bankruptcy Code Seeking Entry of an Order (I) Authorizing the Debtors to Redact Certain Personally Identifiable Information from the Creditor Matrix, Schedules and Statements, and Related Documents and (II) Granting Related Relief* [Docket No. 344] (the "**Motion to Seal**"):

### Preliminary Statement

1. The Court should grant the Motion to Seal. On July 29, 2022, the United States Trustee formed the Committee, which is the only fiduciary focused on protecting the interests of account holders and unsecured creditors in these cases. As described in *The Official Committee of Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Docket No. 390], the Committee's primary objective is maximizing value for the benefit of account holders and unsecured creditors, and the Committee intends to pursue various initiatives in furtherance of that objective. One important area of focus for the Committee is to do what can be done to minimize the effect of these proceedings on the day-to-day lives of Celsius' approximately 1.7 million registered account holders.

2. Account holders and unsecured creditors had no expectation that their personally identifying information or financial information could become part of the public record in these cases. Nor should this information be made public. Disclosure of their personally identifiable information would pose a severe and unusual risk to account holders, the largest—and most vulnerable—constituency in these cases. If account holders' names, addresses, and involvement with Celsius were publicized, those account holders would face harassing calls and various

potential threats, such as identity theft, physical and verbal harassment, and robbery. These concerns have already been described in numerous letters filed with the Court.

3. The relief requested is also necessary to protect the Debtors' enterprise value. Account holders are the lifeblood of Celsius, particularly its lending platform. But the potential disclosure of account holders' personally identifiable information to competitors, claims traders, and other interest parties would likely erode the trust of account holders. That, in turn, could make Celsius and its assets less attractive to potentially interested parties, impairing value that may be realized through a sale, new equity investment, or other restructuring transaction. Accordingly, the Court should grant the requested relief.

**Joinder**

4. The Court should grant the requested relief for at least three independent reasons. *First*, the requested relief is necessary to protect "confidential commercial information" that is integral to preserving stakeholder value. Specifically, Bankruptcy Code section 107(b) **mandates** that a bankruptcy court protect confidential commercial information upon request of a party in interest. *See* 11 U.S.C. § 107(b) ("On request of a party in interest, *the bankruptcy court shall . . . protect an entity with respect to confidential . . . commercial information*) (emphasis added); *see also In re Anthracite Capital, Inc.,* 492 B.R. 162, 177–78 (Bankr. S.D.N.Y. 2013) (noting that "the Code mandates that a bankruptcy court grant the requested relief if the information is 'confidential commercial information.'"). This provision "protects parties from the release of information"—such as account holders' and unsecured creditors' personally identifiable information—"that could cause [entities] harm or give competitors an unfair advantage." *Anthracite Capital,* 492 B.R. at 178 (quoting *Gowan v. Westford Asset Mgmt. LLC* (*In re Dreier, LLP*)*,* 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013)); *see also In re Borders Grp., Inc.,* 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011)

("Commercial information need not rise to the level of a trade secret to qualify for protection under section 107(b)"). As described in the Motion to Seal, it is necessary for the Court to seal the names and other personally identifying information of account holders to preserve the value of the Celsius platform for potentially interest investors. The potential disclosure of account holders' personally identifiable information to competitors, claims traders, and other interested parties would likely erode the trust of account holders. The further erosion of account holder goodwill would likely chill market interest in, or the amount of value provided to account holders through, a potential sale, new equity investment, or sponsorship of another restructuring transaction.

5. ***Second***, section 107(c) of the Bankruptcy Code provides that the Court "for cause, may protect an individual, with respect to" certain types of information "to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." The types of information subject to section 107(c) of the Bankruptcy Code include "[a]ny means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title" and "[o]ther information contained in a paper described in subparagraph (A)." "Means of identification" means "any name or number that may be used, along or in conjunction with any other information, to identify a specific individual[.]" 18 U.S.C. § 1028(d)(7).

6. Here, absent the requested relief, the "means of identification" of individual account holders, including their names (where applicable), e-mail addresses, home or work addresses, and the fact such account holders used the Celsius platform, would become a matter of public record. *See* 18 U.S.C. § 1028(d)(7) (A), (C). Those types of disclosures likely "would create undue risk of identity theft or other unlawful injury to the individual or the individual's property." Unless certain individual account holders' personally identifying information is sealed,

potential wrongdoers would have a roadmap for seeking to steal the identities or assets of Celsius account holders.  Such tactics include phishing and account spoofing, which are some of the more common ways that hackers break into online accounts.  The risk posed to individual account holders by the broad release of their names (where applicable), addresses, and other personally identifiable information is not speculation—it is a fact.  Last year, "[h]ackers stole cryptocurrency from about 6,000 Coinbase accounts." *See, e.g.,* Scott Ikeda, *Coinbase Hack Attributed to a Multi-factor Authentication Flaw that Allowed Scammers to Steal Cryptocurrency from 6,000 Accounts*, CPO Magazine (Oct. 14, 2021) (linking to the official letter that Coinbase sent to its account holders regarding the hack).  The malicious actors "needed to know the email addresses, passwords and phone numbers linked to the affected Coinbase accounts" as well as have access to "personal emails," which they could have obtained through phishing or a social engineering campaign.  *Id.*; *see also* Reuters, *Coinbase says hackers stole cryptocurrency from at least 6,000 customers* (Oct. 1, 2021).  Public disclosure of personally identifiable information makes individual account holders more vulnerable to such attacks.  This Court should make it harder—not easier—for similar types of criminal activity to occur in light of the immense personal hardships already faced by individual account holders.  Potential types of theft and other types of criminal activity that may affect Celsius include:

(a) **Stealing an Online Wallet.**  The most common way to steal digital assets is by stealing a digital wallet.  If a criminal knows or suspects that a person holds a wallet on a crypto exchange, as they would correctly know or suspect of most of the Debtors' creditors, they will try a variety of means to access that wallet and steal the assets.

(b) **Theft of Private Keys.**  A slightly more sophisticated consumer can manage the private keys necessary to transact their cryptocurrency on the related blockchain in "hardware wallets."  If the private keys are stolen, the wallet's contents can be emptied.  A would-be thief can use the personal information and correlated additional information in variety of ways to trick a user into surrendering their private keys, including phishing emails, phone calls, and phony donation request.

(c) **Physical Robbery.** Cryptocurrency holders have also been the victims of physical robbery. Holders can be forced to surrender hardware wallets, passwords, and other access credentials to online wallets. Sophisticated thieves can easily determine the addresses of creditors with all but the most common of names merely by the disclosure of those names. Targeting of known holders of cryptocurrency to steal their wallets or keys is becoming increasingly common.

(d) **SIM Swapping.** "SIM swapping" is when a criminal gains access to a victim's cell phone account through an accomplice at a wireless provider. A criminal who has obtained a SIM-swapped device can effortlessly take over any such online wallet because most providers of online wallets rely upon text messaging for security in password resets. The only "defense" is that hiring an accomplice can be expensive. However, the cost of paying an accomplice will be justified with the pre-qualification that being a creditor of the Debtors constitutes.

The fact that the Celsius accounts of certain individual account holders are presently frozen is of no moment; identity thieves and other criminals could use the information that would ordinarily become part of the public record to lay in wait to illegally access those account holders' accounts after their respective accounts become unfrozen and/or to otherwise harass or steal from account holders during the pendency of these cases.

7.    *Finally*, the proposed order includes sufficient protections to permit appropriate parties with a "need to know" to access the relevant information. For example, the Debtors have agreed to provide the information with the U.S. Trustee, the Committee, and other parties in interest when the sharing is "reasonably related to these chapter 11 cases; *provided, further*, that any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request."[2]

8.    Accordingly, the Court should grant the Motion to Seal.

---

[2]    Motion to Seal, Ex. A, ¶ 2.

WHEREFORE, this Court should grant the Motion to Seal and overrule any objection thereto and grant related relief.

Dated: August 9, 2022
       New York, New York

Respectfully submitted,

/s/ *Gregory F. Pesce*
**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
       kwofford@whitecase.com
       sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admission *pro hac vice* pending)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
       gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*