**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
           sam.hershey@whitecase.com
           kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admission *pro hac vice* pending)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
           gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

# THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OBJECTION TO THE DEBTORS' CASH MANAGEMENT MOTION

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above captioned debtors and debtors-in-possession (collectively the "**Debtors**") states as follows in support of this limited objection (the "**Limited Objection**") to approval of the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 21] (the "**Cash Management Motion**") on a further interim basis and/or a final basis:

### Preliminary Statement

1.     In the short time since the Committee was formed and retained professional advisors, the Committee's professionals have been working nearly around the clock to get up to speed on the complex issues arising in these cases. These efforts have led to a constructive dialogue with the Debtors' advisors regarding certain topics, which has allowed the Committee and its advisors to reach consensual resolutions of certain matters raised by the broad first day relief the Debtors seek. The Committee expects to have ongoing engagement with the Debtors in an effort to reach consensual resolutions of additional matters. Nonetheless, the Committee is filing this Limited Objection to raise certain concerns that it has regarding the relief requested in the Cash Management Motion.

2.     The Cash Management Motion—like the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 187] (the "**Mined Bitcoin Motion**") and the de minimis asset sale procedures motion [Docket No. 189]—raises important questions about how the Debtors

propose to dispose of estate property and how the proceeds of those transactions may be used to fund the administration of these cases as a whole. These concerns are of great importance to the Committee because, while the Debtors have acknowledged that account holders may have claims against multiple Debtor entities,[1] the Court has not yet adjudicated the matter, and the Committee expects that the preferred equity of Celsius Network Limited (UK) ("**CNL**") will contest the matter.

3. The Committee does not presently oppose all intercompany transactions and acknowledges that intercompany funding may be more cost-efficient and value-maximizing for account holders than other potential options; however, the Committee has concerns regarding the Debtors' request to effectuate intercompany transactions under the Cash Management Motion. These concerns are heightened by the fact that the Debtors have acknowledged that management's "poor asset deployment decisions" resulted in "disproportional liabilities" and "other unanticipated losses"[2] that played a part in the commencement of these cases. The Debtors have not published a cash forecast (similar to what a debtor would file in a traditional cash collateral or DIP financing motion). The Debtors have also provided insufficient due diligence regarding the cash management system, including due diligence that is provided on a "professionals eyes only" basis. Furthermore, the Committee's professionals have outstanding due diligence requests regarding proposed intercompany transactions involving the capital-intensive operations of Celsius Mining LLC (the "**Mining Debtor**"), the Debtors' Bitcoin mining venture that requires further construction.

---

[1] *See* First Day Hr'g Tr. [Docket No. 77], at 31:1-32:5 (noting that the "*primary* customer facing" Debtor entities were Celsius Network LLC and Celsius Network Limited (UK)) (emphasis added).

[2] *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23], ¶ 10.

4. The Committee understands that the Debtors are evaluating whether to seek entry of a final order or a further interim order approving the Cash Management Motion. Accordingly, at this time, the Committee requests that the Court condition entry of either a final order or a further interim order on certain modifications to the order to (i) afford appropriate notice and consent rights to the Committee, (ii) permit the Committee to effectively conduct its investigation into the proposed intercompany transactions, and (iii) preserve the opportunity for the Committee to seek relief from the Court on an emergency basis if it believes the Debtors are exercising the wide discretion they seek here in a manner that is harmful to account holders and unsecured creditors.

### Limited Objection

5. Prior to filing this objection, the Committee requested that the Debtors revise the proposed final order—or, in the absence of a final order, a further interim order—to include appropriate guardrails to protect account holders and general unsecured creditors.[3]

6. As of the time of filing this Limited Objection, the Committee and the Debtors remain in discussions regarding the Committee's requested modifications to the cash management order. To the extent an agreement cannot be reached, the Committee reserves the right to file a modified proposed cash management order and respectfully requests that the Court direct the inclusion of the Committee's proposed modifications.

**I.    The Court Should Prohibit Transfers Between Debtors and Non-Debtors.**

7. The Cash Management Motion asserts that transfers to non-Debtor affiliates are "crucial to the Debtors' overall global business operations." Cash Management Motion, ¶ 36. At this time, the Committee's advisors have not received sufficient due diligence regarding the nature

---

[3] The Committee submits that its proposed changes should be included in any future order entered with respect to the Cash Management Motion, including any order that is entered on a further interim, but not final, basis.

3

and scope of the proposed intercompany transfers between certain Debtors and their non-Debtor affiliates to evaluate the propriety of such transfers. Furthermore, the Debtors have only provided certain information on a professionals' eyes only basis and thus the Committee's advisors have thus far been unable to share that information with their clients. For example, the Debtors have not yet disclosed which specific Debtor entities are expected to make transfers to non-Debtor affiliates going forward, the consideration that the applicable Debtor entities will receive on account of intercompany transfers, whether account holders will be adversely affected by transfers to Debtors and/or non-Debtor affiliates, and the extent to which intercompany transfers represent a continuation of the Debtors' ordinary course prepetition practices.

8. Approval of the Cash Management Motion requires an evidentiary record that the requested relief represents an appropriate exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates and creditors. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (reversing bankruptcy court's approval of sale where there was insufficient "evidence presented" to the bankruptcy court to justify that sale); *Mission Iowa Wind Co. v. Enron Corp. (In re Enron Corp.)*, 291 B.R. 39, 43 (S.D.N.Y. 2003) (explaining that a court should not "defer in conclusory fashion to the debtors' business judgment").

9. Moreover, the Debtors' prepetition cash management practices—whatever they may have been—are of little reassurance to the Committee. As described herein and in the *Official Committee of Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Docket No. 390], the Committee has significant concerns regarding the manner in which the Debtors conducted their business operations prepetition. Furthermore, while the Debtors' estates are jointly administered for procedural purposes, the estates are not substantively consolidated. As such, the account holders and general unsecured creditors of each Debtor estate are legally entitled

to assurance that the particular value upon which they rely is not improperly diverted. *In re Enron Corp.*, 291 B.R. at 43 (noting that bankruptcy courts have a "duty" to "preserve the integrity of separate estates"). Authorizing intercompany transfers to non-Debtor affiliates—absent appropriate guardrails—creates the risk that one Debtor's creditors may benefit at the expense of another Debtor's creditors.

10. These risks are particularly salient with respect to the Debtors' proposed transfers with non-Debtor affiliates. Absent an appropriate evidentiary record—which does not exist at this time—the Court should not accept the Debtors' conclusory assertion that these transfers are necessary and appropriate. To the contrary, in cases involving significant questions about the debtors' prepetition conduct, courts have either prohibited or significantly restricted debtors from transferring assets to their non-debtor affiliates. *See, e.g., In re Firestar Diamond, Inc.*, No. 18-10509 (SHL) (Bankr. S.D.N.Y. Mar. 29, 2018) [Docket No. 79], ¶ 7 (cash management order prohibiting transfers to non-debtor affiliates in case precipitated by debtors' bank fraud); *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 25, 2019) [Docket No. 540], ¶ 4 (cash management order prohibiting debtors from transferring funds to non-debtor affiliates outside the ordinary course of business and in excess of amounts historically paid to affiliates in case involving allegations that insiders siphoned value from debtors prepetition). These concerns are all the more acute in light of the significant disputes that are likely to arise regarding the ownership of the crypto and digital assets and whether such assets are property of the Debtors' estates under section 541 of the Bankruptcy Code held by the Debtors. *See Debtors' First Day Hearing Presentation* [Docket No. 45], at pg. 3.

11. Accordingly, any order approving the Cash Management Motion should: (i) require that any transfers with non-Debtor affiliates conform to a budget approved by the Committee or,

5

alternatively, by the Court after notice and a hearing; (ii) grant the Committee consent and notice rights over transfers to non-Debtor affiliates; and (iii) permit the Committee to be heard by the Court on an emergency basis on three calendar days' notice if the Committee believes that the Debtors are not complying with any terms of the Proposed Cash Management Order.

**II.    The Court Should Restrict Intercompany Transactions Between Debtors.**

12.    In a similar vein, the Debtors seek broad authority to effectuate intercompany transfers between Debtor entities. *See* Cash Management Motion, ¶ 35. As noted herein, the Debtors have not disclosed with sufficient particularity anticipated cash transfers among Debtor entities. There is similarly no basis to permit unfettered inter-Debtor transfers without further disclosure to the Court and the Committee and its professionals.

13.    Accordingly, to ensure that value is not wrongfully diverted from account holders, the Debtors should only be permitted to make inter-Debtor transfers in amounts that conform to a budget approved by the Committee or the Court after notice and a hearing. Any such transfers should also be deemed to create superpriority administrative expense claims by the Debtor-transferor against the Debtor-transferee, which is necessary to ensure that the transferor and its creditors are not funding the operations of the transferee without a reasonable assurance of repayment.[4] Finally, the Committee should be permitted to schedule an emergency hearing with

---

[4] Courts in this district have granted similar relief in other cases. *See, e.g., In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 4, 2022) [Docket No. 237], ¶ 17 ("All postpetition transfers and payments from the Debtors to another Debtor under any postpetition Intercompany Transactions authorized hereunder are hereby accorded superpriority administrative expense status under section 503(b) of the Bankruptcy Code"); *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022) [Docket No. 266], ¶ 14(c) ("All inter-Debtor Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded superpriority administrative expense status under sections 503(b) and 364(c)(1) of the Bankruptcy Code"); *In re Purdue Pharma L.P.*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Nov. 25, 2019) [Docket No. 540], ¶ 5 ("Any Debtor that makes a Post-Petition Transfer to or for the benefit of another Debtor shall be granted a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code"); *In re MF Global Holdings, Inc.*, No. 11-15059 (Bankr. S.D.N.Y. Jan. 19, 2012) [Docket No. 373], ¶ 14(a) ("[P]ursuant to Bankruptcy Code sections 364(c)(1) and 507(b), the intercompany transfer shall constitute an allowed superpriority claim of the applicable affiliate against the applicable Beneficiary Debtor . . . .").

6

the Court on three business days' notice if the Debtors fail to comply with any of these conditions.

### III. The Court Should Prohibit Cryptocurrency Transactions Absent Further Court Order.

14. The Debtors seek authority to continue operating their "cash *and cryptocurrency* management system" but do not disclose how they expect cryptocurrency to move through that system, or whether they expect to transfer cryptocurrency among Debtor entities or other parties outside of the ordinary course of business. Cash Management Motion, ¶ 8 (emphasis added). To protect account holders' rights, the Court should also prohibit the Debtors from engaging in any cryptocurrency transactions without further order of the Court, regardless of whether the counterparties to such transactions are other Debtor entities, non-Debtor affiliates, or third parties unaffiliated with the Debtors.[5] As indicated above, a key issue in these chapter 11 cases is whether the crypto and digital assets are property of the Debtors' estates or constitute property belonging to the Debtors' account holders. Given the likely disputes with respect to this issue, the Committee submits that it is appropriate to maintain the status quo and that, absent further order of the Court, the Debtors should not be permitted to transfer such assets. Moreover, the Committee is currently conducting an investigation into the Debtors' prepetition practices to determine if account holders' cryptocurrency was mismanaged or diverted prior to the commencement of these cases. Restricting the Debtors' ability to engage in any cryptocurrency transactions without the approval of this Court is necessary to assure account holders that the property they entrusted to the Debtors is being protected and managed prudently.

### IV. The Court Should Grant the Committee Notice and Consultation Rights for Transfers Under the Cash Management Order.

15. The Committee has requested certain critical information regarding the relief

---

[5] Absent a consensual resolution, the Committee intends to separately object to the Mined Bitcoin Motion.

requested in the Cash Management Motion. Specifically, on July 30 and August 3, 2022, the Committee sent diligence requests to the Debtors that sought, among other things:

- A detailed budget that may be shared with Committee members, including all material supporting details and assumptions;

- A detailed description and schedule of all intercompany transactions the Debtors envision moving forward;

- Consolidated monthly historical financial statements for fiscal year 2018 through year to date 2022; and

- A description of communications with third parties over the past 12 months regarding potential financings, asset purchases, partnerships, or other capital formation activities.

16. As of the date of this filing, the Debtors have either failed to provide this information to the Committee or certain gaps remain. Therefore, the Court should require the Debtors to satisfy the Committee's diligence requests before any intercompany transfers are authorized.

17. Furthermore, to the extent any intercompany transfers are authorized, the Court should also grant the Committee notice and consent rights with respect to such transfers. Any order approving the Cash Management Motion should require the following:

- The Debtors shall prepare a budget for intercompany transfers that is approved by the Committee or, alternatively, the Court after notice and a hearing;

- The Debtors shall provide the Committee with at least three business days' advance notice of any intercompany transfers between any of the Debtors and the Mining Debtor, which notice shall include (a) the amount of the transfer, (b) the entity making the transfer and receiving the transfer, and (c) the purpose of such transfer;

- The Debtors shall provide the Committee with a monthly matrix of payments and postpetition intercompany balances among Debtors by the 21st day of each month;

8

- The Debtors shall keep records of all intercompany transfers so that they may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

- The Debtors shall provide notice to the Committee of any material changes to the Cash Management System no less than five business days prior to making any such changes.

18. Finally, the Committee should be granted consultation rights with respect to the Debtors' management of the cryptocurrency they hold. The Committee is investigating how the Debtors historically secured cryptocurrency and accounted for uses, swaps, and transfers of cryptocurrency on their platform. The Committee will recommend best practices to the Debtors to the extent the Committee determines that the Debtors' prepetition practices were deficient. Requiring that the Debtors consult with the Committee with respect to their ongoing management of cryptocurrency assets will reduce the risk that the Debtors' potential prepetition failures to safeguard account holders' cryptocurrency will not persist during these cases.

## Reservation of Rights

19. The Committee reserves all of its rights to supplement or amend this Limited Objection and to raise additional issues with the Cash Management Motion at the hearing, and to present evidence at the hearing.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the order granting the Cash Management Motion be modified in accordance with this limited objection, or, alternatively, that the Court deny the relief requested in the Cash Management Motion, and grant such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: August 9, 2022<br>Chicago, Illinois | Respectfully submitted,<br><br>/s/ *Gregory F. Pesce*<br>**WHITE & CASE LLP**<br>David M. Turetsky<br>Samuel P. Hershey<br>Keith H. Wofford<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Facsimile:  (212) 354-8113<br>Email:   david.turetsky@whitecase.com<br>             sam.hershey@whitecase.com<br>             kwofford@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admission *pro hac vice* pending)<br>Gregory F. Pesce (admitted *pro hac vice*)<br>111 South Wacker Drive, Suite 5100<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Facsimile:  (312) 881-5450<br>Email:  mandolina@whitecase.com<br>            gregory.pesce@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Aaron E. Colodny (admitted *pro hac vice*)<br>555 South Flower Street, Suite 2700<br>Los Angeles, California 90071<br>Telephone: (213) 620-7700<br>Facsimile:  (213) 452-2329<br>Email:  aaron.colodny@whitecase.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |