**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
           sam.hershey@whitecase.com
           kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admission *pro hac vice* pending)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
           gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED OMNIBUS
OBJECTION TO CERTAIN OF DEBTORS' FIRST AND SECOND DAY MOTIONS**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

of the above captioned debtors and debtors-in-possession (collectively the "**Debtors**") states as follows in support of this limited omnibus objection (the "**Limited Omnibus Objection**") to the following motions:

(a) *Debtors Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Expenses and (b) Continue Employee Benefits Program, and (II) Granting Related Relief* [Docket No. 19] (the "**Wages Motion**");

(b) *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* [Docket No. 20] (the "**Critical Vendors Motion**"); and

(c) *Debtors' Motion Seeking Entry of an Order (I) Authorizing and Approving Procedures to Reject, Assume, or Assume and Assign Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 185] (the "**Contract Motion**" and, collectively with the Wages Motion and Critical Vendors Motion, the "**Contested Motions**").[2]

**Preliminary Statement**

1. Although the Debtors commenced these chapter 11 cases on July 13, 2022 (the "**Petition Date**"), the Committee was not formed until July 27, 2022. The Committee's proposed counsel and other advisors were selected shortly thereafter. Over the last ten days, the Committee, with the assistance of its advisors, has reviewed and analyzed of the Contested Motions and has requested significant due diligence from the Debtors' "first day motions," including the Contested Motions. Although the Committee's advisors have obtained access to some diligence items, much of the Committee's requested diligence remains outstanding. Moreover, a good deal of the information provided by the Debtors thus far has been done on a Professionals' Eyes Only basis such that the Committee's advisors have not been able to share such information with the

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Contested Motions.

Committee members.

2.  As a general matter, the Committee is supportive of the Debtors' efforts to transition into chapter 11 with as minimal disruption to their business as possible. However, the Committee has concerns related to, among other things, (a) the lack of information provided with respect to certain prepetition payments and the reasons for those payments, (b) the potential movement of cash and cryptocurrency from Debtor to non-Debtor entities, and (c) the preservation of estate assets for the benefit of account holders and unsecured creditors. The Committee has attempted to address these concerns in its proposed comments to the Debtors' requested first day relief by requesting certain limitations on the use and transfer of estate assets and establishing notice, reporting, and consent requirements for the Committee under certain circumstances.

3.  This is not a typical chapter 11 case. There are serious concerns and allegations regarding the management of the business prior to the Petition Date and novel legal issues are likely to affect the rights of various parties in interest. The Committee is a fiduciary for account holders and unsecured creditors in these cases. The Committee's limited objection seeks to preserve the status quo and curb potentially inappropriate spending, while ensuring that the Debtors' business can operate in Chapter 11 as needed to maximize value.

4.  Although the Debtors and the Committee have not been able to reach final agreements with respect to all of the Committee's concerns, the Committee is hopeful that a consensual resolution can be reached prior to the August 16, 2022 hearing. To the extent there is no agreement, the Committee requests that the Court sustain this limited objection and require certain modifications described in greater detail below.

<strong><u>Proposed Modifications</u></strong>

**I.   Wages Motion**

5.  The Committee agrees that paying Employee Compensation and Benefits is

important to a debtor's business and does not seek to deny the Debtors' current employees their promised wages or benefits, as appropriate. The Bankruptcy Code, likewise, understands the importance of employees and treats certain prepetition compensation and benefit claims as priority claims. *See* 11 U.S.C. §§ 507(a)(4); 507(a)(5); and 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims, given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, for (a) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). However, the Debtors have requested authority to make certain payments in excess of that statutory cap. Those requests should not be approved until the Committee is provided full and complete information on the true amount of the payments requested in excess of the cap and which of those payments are owed to current employees, as opposed to former employees or independent contractors.

6. According to the Wages Motion, nineteen former employees are entitled to $409,000 in Non-Insider Severance Benefits as of the Petition Date. *See* Wages Mot. ¶ 54. Twelve of those nineteen former employees are owed amounts in excess of the priority cap. *Id.* The Committee, through its advisors, has requested diligence from the Debtors to support the payment of these amounts. To date, the Committee has received only limited information and the information provided is seemingly at odds with the description contained in the Wages Motion. Specifically, the total amount owed under the Non-Insider Severance appears to be more than $409,000 and at least one employee in the executive department, who may be an insider, is included in the proposed prepetition payments requested to be made under the Non-Insider Severance Program. The Committee objects to the payment of Non-Insider Severance Benefits in excess of the statutory cap unless and until complete and accurate information is provided to

validate how much is owed to whom and the Debtors provide a clear justification as to how paying severed employees is necessary to "protect and preserve the business." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The Committee also objects to paying any prepetition severance to Insiders at this time.

7. Further, the Wages Motion requests that the Debtors be authorized to continue their Non-Insider Ad Hoc Bonus Program and Equity Incentive Program. The Debtors have not articulated a sufficient factual basis to support the necessity of either the Non-Insider Ad Hoc Bonus Program or the Equity Incentive Program. No information has been provided in the Wages Motion as to, among other things (a) who receives payments under the programs, (b) the average amount that is paid per Employee under the Ad Hoc Bonus Program, (c) whether bonuses are ever paid in cryptocurrency and, if so, what is the coin type and the source of the coin used to make such payment, (d) the existence of any controls, policies, or procedures to determine when payments under the program are permissible, and (e) how frequently such bonus payments are made to Employees. The Wages Motion also fails to explain why there is a need to continue to the Equity Incentive Program under the circumstances. The Committee has requested diligence with respect to each of these questions, but not yet received all responsive information. Until the Committee can reach a resolution with the Debtors, the Committee requests that this Court deny the Debtors' request to (1) pay Non-Insider Severance Benefits or any other prepetition payments in excess of the statutory priority cap and (2) continue the Non-Insider Ad Hoc Bonus Program and Equity Incentive Program.

8. The Committee requests that this Court also include the following notice and consent requirements in the wages final order:

    (a)    the Debtors should provide notice to the Committee of any material modifications to the Employee Compensation and Benefits currently existing or of any new material Employee Compensation and Benefit Plan;

    (b)    the Debtors should provide the Committee with monthly summaries of the claims asserted under the Workers' Compensation Program; and

    (c)    the Committee should be provided with prior notice and an opportunity to object to the payment of any amounts under the Wages Motion that exceed a specified capped amount.[3]

## II. Critical Vendors Motion

9. The Committee does not object in principle to paying vendors that qualify as critical vendors under applicable law. Critical Vendors Motion ¶ 35 (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989)). However, there must be a sound business purpose for doing so and a sufficient record reflecting the need to pay certain Vendors ahead of account holders and unsecured creditors. By the Critical Vendors Motion, the Debtors request authority to pay, in the ordinary course of business, certain prepetition Trade Claims to Vendors, in an amount not to exceed a total of $6.52 million. The Trade Claims and respective caps are further broken down into Critical Vendor Claims ($3.23 million), Foreign Vendor Claims ($753,422), Lien Claims ($1.28 million), and 503(b)(9) Claims ($1.26 million). Critical Vendors Motion ¶ 11.

10. The Committee's professionals have not received sufficient diligence regarding the prepetition Trade Claims that the Debtors are seeking to pay in the Critical Vendors Motion and why it is critical to pay such claims ahead of other account holders and unsecured creditors. The Debtors cannot rely on the fact that similar relief is "routinely" granted. *Id.* at ¶ 41. The Debtors' business practices are unlike other industries for which there is precedent supporting the requested relief. Without full transparency into amounts owed and expected payments, the Committee is

---

[3] The Committee is currently without sufficient information to propose such a cap, but intends to work with the Debtors to arrive at an appropriate number.

unable to adequately analyze whether the requested relief is proper or necessary for the Debtors' ongoing business needs. In the interim, the Committee's advisors are engaged in discussions with the Debtors and its advisors regarding the relief sought in the Critical Vendors Motion in hopes of reaching a resolution that both protects the Debtors' business needs and the interests of the estate. Absent such a resolution, the Committee requests that the Court deny the Debtors' requested relief.

11. If the Court considers granting the relief requested without a complete record, the Committee requests that such relief is conditioned on the following: (a) the Debtors receiving prior written consent from the Committee before making any payments above $10,000 in the aggregate to any Vendor, and (b) the Debtors maintaining a matrix of all payments made in satisfaction of prepetition Trade Claims, which must be regularly updated and provided to the U.S. Trustee and counsel to the Committee.

### III. Contract Assumption/Rejection Procedures Motion

12. The Committee does not dispute the benefits of having a streamlined process for assuming, assuming and assigning, and rejecting contracts. However, expediency does not give the Debtors unfettered license to create a process that significantly limits the due process rights of contract counterparties, including, potentially, individual account holders. The Debtors must show that the procedures are "necessary or appropriate" to justify entry of an order under section 105(a) of the Bankruptcy Code. Here, the Debtors have requested an extremely truncated process and have not shown that process it is necessary. Account holders and unsecured creditors would also be required to file formal objections to assumption, which could be burdensome to those unfamiliar with the bankruptcy court process or those without access to an attorney. Accordingly, the Committee asks this Court to deny the Contract Motion or, in the alternative, condition any approval on the following:

(a) account holder agreements should be explicitly carved out of the procedures;

(b) twenty-one days' notice should be provided with respect to a determination to assume or reject an executory contract; and

(c) a procedure should be established for contract counterparties to informally resolve issues with the Debtors' advisors while reserving their rights before a formal objection is required

## Reservation of Rights

13. The Committee hereby reserves the right to amend, modify, or supplement this Limited Omnibus Objection at the August 16, 2022 hearing to the extent any of the issues related to the Contested Motions remain unresolved.

[*Remainder of Page Left Intentionally Blank*]

**WHEREFORE**, the Committee respectfully requests that Court grant this Limited Omnibus Objection and any such other and further relief as may be just and proper.

Dated: August 9, 2022
      New York, New York

Respectfully submitted,

/s/ *David M. Turetsky*
**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
      sam.hershey@whitecase.com
      kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admission *pro hac vice* pending)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
      gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*