**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: david.turetsky@whitecase.com
       sam.hershey@whitecase.com
       kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: mandolina@whitecase.com
       gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**OBJECTION TO THE DEBTORS' DE MINIMIS SALES MOTION**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above captioned debtors and debtors-in-possession (collectively the "**Debtors**") states as follows in support of this objection (the "**Objection**") to the *Debtors' Motion to Approve Procedures for De Minimis Asset Transactions* [Docket No. 189] (the "**De Minimis Sales Motion**" or the "**Motion**"):

## Preliminary Statement

1. The Court should deny the De Minimis Sales Motion. The Debtors seek authority to sell assets that they claim are "de minimis" and "non-core" without complying with the normal procedures applicable to non-ordinary course asset sales in bankruptcy. De Minimis Sales Motion, ¶¶ 1, 8. But the De Minimis Sales Motion does not identify any assets that the Debtors will actually attempt to sell under this authority or why their proposed de minimis thresholds are appropriate. The Motion does not disclose how the Debtors will value the assets that are to be sold, or how the Debtors will determine what constitutes an appropriate sale price. And the Motion does not explain how the Debtors will use the proceeds of any sale, including by disclosing whether Debtor entities selling assets will retain the sale proceeds for the benefit of their creditors or whether they might transfer the proceeds to an affiliate to fund that affiliate's expenses.

2. The De Minimis Sales Motion raises important questions about how the Debtors intend to dispose of estate property. But it answers none of them. The Committee needs more information—particularly regarding which assets the Debtors expect to sell, how they will be valued, and how sale proceeds will be used—before the Committee can evaluate the Motion on a fully informed basis and discharge its statutory duties to protect the interests of all account holders and unsecured creditors. Until the Debtors place this information into the record, there is no basis to grant the Motion.

2

## Background

**A.    The Chapter 11 Cases.**

3.     On July 13, 2022, the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. On July 27, 2022, the United States Trustee appointed the Committee. [Docket No. 241].

**B.    Overview of the De Minimis Sales Motion.**

4.     Through the De Minimis Sales Motion, the Debtors request approval of expedited procedures (the "**De Minimis Sales Procedures**") that will apply to the use, sale, or transfer of "certain assets, collections of assets, or business lines" outside the ordinary course of business, which the Debtors value in their "reasonable discretion" as less than or equal to $5,000,000 (the "**De Minimis Sales**"). De Minimis Sales Motion, ¶ 1. If the Debtors value the relevant assets as less than or equal to $1,000,000, they request authority to sell such assets without notice to any party, including the Committee. *Id.*, Ex. A, ¶ 2(a). If the Debtors value the relevant assets as greater than $1,000,000 but less than or equal to $5,000,000, they request authority to sell such assets if they provide seven calendar days' advance notice to the Committee, the United States Trustee, any lienholder, and any other party that has requested notice in these cases (collectively, the "**Transaction Notice Parties**"), and no party objects to the proposed sale. *Id.* ¶ 2(b). The Debtors' proposed procedures do not require the Debtors to consult with the Committee on—much less obtain the Committee's consent to—the valuation of these assets or whether a proposed sale price is fair and appropriate. *See id.* ¶¶ 2(a)-(b). Finally, the Debtors request authority to abandon assets of *any* value if they provide ten calendar days' advance notice to the Transaction Notice Parties and do not receive any objection to abandonment (the "**De Minimis Abandonment**

3

Procedures"). *Id.* ¶ 3.

## Objection

I. **The Court Should Deny the De Minimis Sales Motion.**

    A. **Legal Standard.**

5. Under section 363(b)(1) of the Bankruptcy Code, a debtor may, after notice and a hearing, use property of the estate outside the ordinary course of business if there is a sound business reason to do so. 11 U.S.C. § 363(b) (1). Before the court may approve a debtor's request under section 363(b)(1), the debtor "must articulate" a specific "business justification" for the use of estate property, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989), and support that business justification with "evidence presented" in the record, *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

6. If a debtor fails to offer that evidentiary support, courts refuse to approve the proposed use of estate property. *See, e.g., Mission Iowa Wind Co. v. Enron Corp.* (*In re Enron Corp.*), 291 B.R. 39, 43 (S.D.N.Y. 2003) (explaining that a court should not "defer in conclusory fashion to the debtors' business judgment" but should make "findings of fact" on the question of whether the price proposed for a sale of estate assets is "fair"); *In re Au Nat. Rest., Inc.*, 63 B.R. 575, 580 (Bankr. S.D.N.Y. 1986) ("Debtor's failure to produce a sufficient evidentiary record upon which the relief sought can be granted, coupled with the unclear and inconsistent terms contained in the transaction, is sufficient grounds for this court to deny its motion"); *In re Flour City Bagels, LLC*, 557 B.R. 53, 84 (Bankr. W.D.N.Y. 2016) (denying proposed sale of estate property because "[t]here is no evidence before the Court to prove the business justification for the sale by a preponderance of the evidence"); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008) (denying proposed sale of estate property because there was "no evidence upon which the Court can make an informed decision"). The same is true when a debtor attempts to justify using estate

property, or establishing truncated procedures to use estate property, with nothing more than conclusory assertions that the debtor has appropriately exercised its business judgment. *See In re Residential Capital, LLC*, 478 B.R. 154, 172 (Bankr. S.D.N.Y. 2012) (denying approval of use of estate property where debtors' arguments in favor of use were "generally conclusory").

> **B. The Debtors Have Not Articulated a Sufficient Business Justification for the De Minimis Sales.**

7.  The Court should deny the De Minimis Sales Motion because the Debtors have not articulated any non-conclusory business justification, supported by record evidence, for the De Minimis Sales. To support their requested relief, the Debtors simply repeat the applicable standard, asserting that the proposed De Minimis Sales Procedures "reflect a reasonable exercise of their business judgment." De Minimis Sales Motion, ¶ 15. They further assert that these expedited procedures are appropriate because the Bankruptcy Code's requirement that the Debtors "file a motion with the Court each time the Debtors seek to dispose of certain De Minimis Assets would distract from their restructuring efforts and force the Debtors to incur unnecessary costs." *Id.* And they cavalierly note that they "*expect*"—but do not guarantee—that "the value of the proceeds from [any De Minimis Sales] will fairly reflect the value of the property sold." *Id.* ¶ 17 (emphasis added).

8.  That is inadequate. The Debtors must provide additional information so that the Court, the Committee, and other interested parties can determine whether the Debtors' proposed De Minimis Sales are actually an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors' estates and creditors. In particular, the Debtors should provide the following:

- The basis for selecting a $5 million upper threshold for De Minimis Sales;

5

- What specific assets the Debtors propose or expect to sell or abandon if the De Minimis Sales Motion is granted;

- The proposed sale price for each individual asset or group of assets expected to be sold;

- Whether that sale price is consistent with the assets' fair market value; and

- How the Debtors will treat the proceeds of any sales, including whether the Debtor entity selling assets anticipates transferring the proceeds to any affiliate following the sale.

9. The Committee's advisors sent diligence requests to the Debtors on July 30 and August 3, 2022, which sought information regarding the Debtors' alternative investments and other assets that might be sold under the De Minimis Sales Procedures and details on the Debtors' communications with potential purchasers. On August 5, 2022, the Committee's advisors conferred with the Debtors' advisors and asked the Debtors to identify specific assets they anticipated selling through the De Minimis Sales Procedures, and to describe how the Debtors selected $5 million as the upper threshold for De Minimis Sales. On August 8, 2022, the Committee's advisors again conferred with the Debtors' advisors, requested this information once more, and sought clarity on how the Debtors would value any assets to be sold through the De Minimis Sales Procedures. To date, the Debtors have not provided sufficient information for the Committee to be able to determine what assets the Debtors might realistically attempt to sell through the De Minimis Sales Procedures and the realistic value of those assets. Until these disclosures are made, there is no basis in the record to approve the De Minimis Sales Motion.

10. Moreover, there is a material risk that the Debtors' proposed procedures for the De Minimis Sales do not ensure that any sales will be priced appropriately. If the Court enters the form of order appended to the De Minimis Sales Motion, the Debtors will be authorized to sell assets with no notice to parties in interest if the "total transaction value" is less than or equal to

$1,000,000, and with only minimal notice to parties in interest if the "total transaction value" is between $1,000,000 and $5,000,000. De Minimis Sales Motion, Ex. A, ¶¶ 10(a)-(b). "Total transaction value" is not book value. It is not fair market value. It is simply the price that a proposed buyer offers to the Debtors that the Debtors decide to accept. There is no assurance that these transaction values will reflect the assets' market or highest value, especially since the Debtors are not required to consult with the Committee regarding the terms of any proposed De Minimis Sale. The Debtors should not be permitted to sell purportedly de minimis assets through expedited procedures that fail to ensure that sales are only consummated if they are in the best interests of each seller's estate.

11. Given the Debtors' insufficient disclosures to date and the deficiencies in the De Minimis Sales Procedures, the Court should deny the De Minimis Sales Motion. If the Debtors wish to sell estate property outside of the ordinary course of business, they should comply with the normal procedures under the Bankruptcy Code and Bankruptcy Rules, which exist to protect the interests of account holders and unsecured creditors in these cases.

**II.     If the Court Grants the De Minimis Sales Motion, It Should Provide the Committee With Consent Rights.**

12. To the extent the Court is inclined to grant the De Minimis Sales Motion, the Committee requests that the Court require that the Debtors comply with more robust procedural requirements so that the Committee, parties in interest, and the Court can adequately scrutinize whether a proposed sale or abandonment is in the best interests of the Debtors' estates.

13. Specifically, the Committee requests that the Court direct that the following revisions be made to any order granting the Motion:

- "**De Minimis Assets**" shall be defined as "property of the estate, whether an individual asset or group of assets and including any rights or interests therein, that the Debtors' advisors determine, with the consent of the Committee's

7

advisors, to have a fair market value less than or equal $250,000";

- No De Minimis Assets shall be sold under the De Minimis Sales Procedures unless (a) the Debtors have obtained the prior written consent of the Committee's advisors, or (b) the Court has authorized the sale after notice and a hearing;

- No De Minimis Assets shall be abandoned under the De Minimis Abandonment Procedures unless (a) the Debtors have obtained the prior written consent of the Committee's advisors, or (b) the Court has authorized the abandonment after notice and a hearing;

- No De Minimis Assets shall be "swapped" under the De Minimis Sales Procedures;

- No cryptocurrency assets shall be sold under the De Minimis Sale Procedures or abandoned under the De Minimis Abandonment Procedures.

- No De Minimis Assets shall be sold or abandoned in favor of any nonstatutory insider of the Debtors, in addition to any insider within the definition of section 101(31) of the Bankruptcy Code;

- The De Minimis Sales Procedures and De Minimis Abandonment Procedures shall require that the Debtors file a notice of any sale or abandonment on the docket in these cases (as opposed to only providing written notice to the Transaction Notice Parties);

- The Debtors shall file a written report on a weekly basis disclosing all De Minimis Assets sold or abandoned in the prior seven days, including (as applicable) the name of the Debtor entity selling or abandoning assets, the name of the purchaser, the sale price, and/or the fair market value of any abandoned asset;

- The Debtors shall not transfer any proceeds of any sale or abandonment of De Minimis Assets to any other Debtor entity or non-Debtor affiliate without the prior written consent of the Committee's advisors; and

- The Committee shall be permitted to be heard by the Court on an emergency basis on three calendar days' notice if the Committee believes that the Debtors are not complying with the terms of any order granting the De Minimis Sales Motion.

### **Reservation of Rights**

14. The Committee reserves all of its rights to supplement or amend this Objection and to raise additional issues with the De Minimis Sales Motion at the hearing, and to present evidence at the hearing.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court deny the relief requested in the De Minimis Sales Motion, or, alternatively, direct that the order granting the De Minimis Sales Motion be modified in accordance with this Objection, and grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

Dated: August 11, 2022
       New York, New York

Respectfully submitted,

/s/ *David M. Turetsky*
**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
       sam.hershey@whitecase.com
       kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
       gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*