**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**FINAL ORDER
(I) AUTHORIZING THE
DEBTORS TO PAY PREPETITION
CLAIMS OF CERTAIN CRITICAL VENDORS,
FOREIGN VENDORS, 503(B)(9) CLAIMANTS, AND
LIEN CLAIMANTS, (II) GRANTING ADMINISTRATIVE
EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS ON
ACCOUNT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of: (i) Critical Vendor Claims; (ii) Foreign Vendor Claims; (iii) Lien Claims; and (iv) 503(b)(9) Claims; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT.

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, in the reasonable exercise of their business judgment, to continue their prepetition business operations, policies, and programs and pay any accrued but unpaid prepetition Trade Claims, on a postpetition basis in the ordinary course of business on Customary Trade Terms or as may be necessary to secure a Vendor's agreement to continue business with the Debtors on Customary Trade Terms, up to the amount set forth in the table attached hereto as **Exhibit 1**. Notwithstanding anything to the contrary in the Motion or this Order, the Debtors shall not (i) designate any insider or any entity affiliated with any insider as a Vendor, (ii) enter into any Customary Trade Terms with any insider or any entity affiliated with any insider, and/or (iii) pay any Trade Claim of any insider or any entity affiliated with any insider, in each case, without the prior written consent of the counsel to the committee of unsecured creditors (the "Committee") (email shall suffice) or further order of the Court after notice and a hearing. For

purposes of this Order, the term "insider" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

3.  The Debtors will provide the Court, the U.S. Trustee, counsel to the Committee, and counsel to any other statutory committee appointed in these chapter 11 cases, via email, with a list of holders of each category of Trade Claim set forth in the Motion and the amounts owed as of the Petition Date and any amended lists, as applicable.  Prior to any change in the characterization of a Trade Claim holder or amounts owed on the list of holders of each category of Trade Claim and amounts owed, the Debtors shall provide one (1) business day's notice of the amendments or revisions to such list to the U.S. Trustee and counsel to the Committee, via email. If the Debtors are unable to reach an agreement with the U.S. Trustee and counsel to the Committee on any amendments to the list of holders or amounts owed, the Debtors may request a hearing before the Court to determine the appropriateness of any such amendments.

4.  The Debtors shall maintain a matrix of (i) all payments made in satisfaction of prepetition Trade Claims, including a brief explanation of why each payment is critical; (ii) all Vendors that have contacted the Debtors regarding payment of their prepetition Trade Claims from the prior week and a brief status of any ongoing discussions; and (iii) all prospective payments contemplated to be made in the next week in satisfaction of prepetition Trade Claims.  Such matrix will be provided every week following the entry of this Final Order to the U.S. Trustee and counsel to the Committee; *provided* that counsel to the Committee may share the matrix with the other advisors to the Committee that have been, or will be, retained pursuant to an order of the Court (the "<u>Committee Advisors</u>"); *provided, further,* that the matrix shall not be filed publicly and the U.S. Trustee and the Committee Advisors shall not disclose any of the information in the matrix to any party; *provided, further, however*, that the Debtors shall provide the matrix, if requested, to

any member of any statutory committee subject to any agreed confidentiality protocol or as ordered by the Court after notice and a hearing.

5. The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to make payments to Vendors upon such terms and in the manner provided in this Final Order and in the Motion, provided that the Debtors shall receive prior written consent from counsel to the Committee, with notice to the U.S. Trustee, prior to making any payments with respect to prepetition Trade Claims in excess of $50,000 in the aggregate (inclusive of any amounts already paid) to any Vendor; *provided* that the Debtors shall not be required to seek retroactive consent for amounts paid pursuant to the Interim Order and prior to entry of this Final Order. If the Debtors are unable to receive prior written consent from counsel to the Committee within one (1) business day prior to making any such payments, the Debtors may request an emergency hearing before the Court to determine the appropriateness of any such payments.

6. The form of Trade Agreement, substantially in the form attached hereto as **Exhibit 2**, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements and will provide copies of all executed Trade Agreements to the counsel to the Committee and counsel to the Committee may share such executed Trade Agreements with the Committee Advisors; *provided* that such Trade Agreements will not be disclosed to any other party and will only be provided to a member of the Committee upon request and subject to any agreed confidentiality protocol or as ordered by the Court after notice and a hearing. The Debtors shall condition payment of Critical Vendor Claims upon the execution of a Trade Agreement.

7. Notwithstanding anything to the contrary in the Motion, the Interim Order, or paragraph 6 of this Final Order, the Debtors may (a) in their reasonable business judgment, in consultation with the Committee, with notice to the U.S. Trustee, negotiate, amend, or modify the

4

form of Trade Agreement, and (b) decline to condition payment of Critical Vendor Claims upon the execution of a Trade Agreement, *provided, however*, that, notwithstanding anything to the contrary in the Motion, the Interim Order, or this Final Order, the Debtors are not authorized, nor shall the Debtors be deemed authorized, to include any obligation to support confirmation of a chapter 11 plan, approval of a disclosure statement, or approval of a sale of all or substantially all of the Debtors' assets in any Trade Agreement, and the inclusion of any such obligation shall be void *ab initio*.

8.  Regardless of whether a Trade Agreement has been executed, if any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' discretion, in consultation with counsel to the Committee, with notice to the U.S. Trustee, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

9.  The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

11. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission by the Debtors or the Committee as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' or the Committee's respective rights to dispute any particular claim on any grounds; (c) a promise or requirement by the Debtors or any third party (including any member of the Committee) to pay any particular claim; (d) an implication or admission by the Debtors or the Committee that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization by any Debtor to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or the Committee's respective rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or the Committee that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and the Committee each expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission by the Debtors or the Committee as the validity of any particular claim or a waiver of the Debtors' and the Committee's respective rights to subsequently dispute such claim.

12. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized

6

to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

13. Any Critical Vendor that accepts payment from the Debtors on account of all or a portion of a Critical Vendor Claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order, and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority, against the Debtors, their assets, and properties.

14. Notwithstanding anything to the contrary in the Motion, the Interim Order, this Final Order, or any findings announced at the Hearing, nothing in the Motion, the Interim Order, this Final Order, or announced at the Hearing constitutes a finding under the federal securities laws as to whether crypto tokens or transactions involving crypto tokens are securities, and the right of the United States Securities and Exchange Commission to challenge transactions involving crypto tokens on any basis are explicitly reserved.

15. Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

16. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

17. The Debtors and their affiliates are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the terms hereof.

[*Remainder of page intentionally left blank*]

18. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**IT IS SO ORDERED.**

Dated:  August 17, 2022
         New York, New York

  /s/ **Martin Glenn**
MARTIN GLENN
Chief United States Bankruptcy Judge

# Exhibit 1

## Summary of Relief Requested

| Summary of Relief Requested | | | |
|---|---|---|---|
| **Category** | **Description of Claims** | **Estimated Amount Due Within Interim Period** | **Estimated Total Amount Outstanding as of the Petition Date** |
| Critical Vendor Claims | Claims of certain trade creditors that are essential to maintaining the going-concern value of the Debtors' enterprise. | $1.51 million | $3.23 million |
| Foreign Vendor Claims | Claims of foreign vendors who supply products and services that are crucial to the Debtors' ongoing operations. | $351,597 | $753,422 |
| 503(b)(9) Claims | Claims entitled to statutory priority section 503(b)(9) of the Bankruptcy Code. | $944,531 | $1.26 million |
| Lien Claims | Claims of third parties who may assert various statutory liens, including mechanics' liens, shipping liens, and warehouse liens. | $956,250 | $1.28 million |
| | **Total Trade Claims** | **$3.76 million** | **$6.52 million** |

## **Exhibit 2**

**Trade Agreement**

## Trade Agreement

[Company Entity] (the "Company"), on the one hand, and the supplier identified in the signature block below (the "Supplier"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the date in the Supplier's signature block below.

### Recitals

WHEREAS on July 13, 2022 (the "Petition Date"), the Company and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Court").

WHEREAS on July 21, 2022, the Court entered the *Interim Order (I) Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, and (II) Granting Related Relief* [Docket No. 80] and

WHEREAS on August [●], 2022, the Court entered the *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, and (II) Granting Related Relief* (the "Critical Vendors Order") [Docket No. [●]] authorizing the Debtors, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Supplier delivered goods or services to the Company, and the Company paid Supplier for such goods or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims Supplier may hold against the Company.

### Agreement

1.   Recitals.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.   Supplier Payment.  Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[●] (the "Agreed Supplier Claim").  Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim, pay Supplier $[●] on account of its prepetition claim (the "Supplier Payment") (without interest, penalties, or other charges), as such invoices become due and payable.

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendors Order.

3.  Agreement to Supply.

a.  Supplier shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or service from Supplier, for the duration of the Debtors' chapter 11 cases based on the following "Customary Trade Terms": trade terms (including practices and programs, credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) that are at least as favorable to the Company as those in place in the 120 days prior to the Petition Date or are otherwise acceptable to the Company in light of customary industry practices.

b.  Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

c.  Supplier shall continue to supply goods and/or perform services in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to the Customary Trade Terms.

d.  The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

4.  Other Matters.

a.  Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 case on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect. The Supplier Payment will be made concurrently with payment of other outstanding administrative claims as provided in a confirmed plan.

b.  Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

c.  Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising from prepetition agreements or transactions. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Supplier will promptly take all necessary actions to remove such liens.

d.  The Debtors and their successors and assigns agree to waive any claim or cause of action against Supplier and its successors and assigns regarding any payments received by Supplier and any of its affiliates and subsidiaries from the Debtors during the ninety-day period before the Petition Date; *provided* that such claim or cause of action shall be automatically

2

reinstated upon the occurrence of Supplier Breach (as defined herein) by Supplier and its successors and assigns.

5. <u>Supplier Breach</u>.

a. In the event that Supplier fails to satisfy its undisputed obligations arising under this Trade Agreement (a "<u>Supplier Breach</u>"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b. In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

c. Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief, and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

6. <u>Notice</u>.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Celsius Network LLC
121 River Street, PH05
Hoboken, New Jersey 07030
Attention:  Ron Deutsch
Title:  General Counsel
E-mail address:  ron.deutsch@celsius.network

and

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn:  Tricia Schwallier Collins and Alison J. Wirtz

3

and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York
Attn: Elizabeth H. Jones

7. **Representations and Acknowledgements**. The Parties agree, acknowledge, and represent that:

a. the Parties have reviewed the terms and provisions of the Critical Vendors Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendors Order;

b. any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Vendors Order;

c. if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Vendors Order, the Bankruptcy Code, or applicable law; and

d. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8. **Confidentiality**. In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that, if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order, or any other available remedy to prevent such disclosure; *provided*, *further*, that, if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9. **Miscellaneous**.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

4

    b.  This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties.

    c.  Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

    d.  This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

    e.  The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

    f.  This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[Signature Page Follows]

5

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

| **[COMPANY ENTITY]** | **[SUPPLIER]** |
|---|---|
| By: | By: |
| Title: | Title: |
| Address: 121 River Street, PH05 | Address: |
| Hoboken, New Jersey 07030 | Date: |
| Date: | |