**Hearing Date: September 14, 2022, at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: September 7, 2022, at 4:00 p.m. (prevailing Eastern Time)**

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:   david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email:   aaron.colodny@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:   mandolina@whitecase.com
        gregory.pesce@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF HEARING ON THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE
EMPLOYMENT AND RETENTION OF PERELLA WEINBERG PARTNERS
LP AS INVESTMENT BANKER TO THE COMMITTEE EFFECTIVE
AS OF AUGUST 2, 2022, (II) APPROVING THE TERMS OF THE PERELLA
ENGAGEMENT LETTER, (III) WAIVING CERTAIN REPORTING REQUIREMENTS
PURSUANT TO LOCAL RULE 2016, AND (IV) GRANTING RELATED RELIEF**

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417);

AMERICAS 116644669 v11

PLEASE TAKE NOTICE that a hearing on the *Official Committee of Unsecured Creditors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Perella Weinberg Partners LP as Investment Banker to the Committee Effective as of August 2, 2022, (II) Approving the Terms of the Perella Engagement Letter, (III) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016, and (IV) Granting Related Relief* (the "**Application**") will be held on **September 14, 2022, at 2:00 p.m., prevailing Eastern Time** (the "**Hearing**"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the relief requested in the Application shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Interim Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 63]; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC,* No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **September 7,**

---

Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

**2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "**Debtors**") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Application.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Application as requested by the Committee.

**PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in these Chapter 11 Cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Application and other pleadings filed in these Chapter 11 Cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

AMERICAS 116644669 v11

Dated:  August 24, 2022
        New York, New York

/s/ Gregory F. Pesce

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

– and –

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors*

AMERICAS 116644669 v11

**WHITE & CASE LLP**
David M. Turetsky
Samuel P. Hershey
Keith H. Wofford
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
        sam.hershey@whitecase.com
        kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile:  (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[2] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER TO THE COMMITTEE EFFECTIVE AS OF AUGUST 2, 2022, (II) APPROVING THE TERMS OF THE PERELLA ENGAGEMENT LETTER, (III) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016, AND (IV) GRANTING RELATED RELIEF**

---

[2]     The Debtors in these Chapter 11 cases and the last four digits of their federal tax identification number are as follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

AMERICAS 116644669 v11

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively the "**Debtors**") submits this application (the "**Application**") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing the Committee to employ and retain Perella Weinberg Partners LP ("**PWP**") as its investment banker effective as of August 2, 2022. In support of this Application, the Committee relies upon and incorporates by reference the *Declaration of Kevin Cofsky in Support of the Official Committee of Unsecured Creditors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Perella Weinberg Partners LP as Investment Banker Effective as of August 2, 2022, (II) Approving the Terms of the Perella Engagement Letter, (III) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016, and (IV) Granting Related Relief* (the "**Cofsky Declaration**"), attached hereto as **Exhibit B**. In further support of the Application, the Committee respectfully states the following:

## Relief Requested

1.      By this Application, pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), the Committee seeks authority to retain and employ PWP as its investment banker in connection with these Chapter 11 Cases and all related matters, effective as of August 2, 2022, the date on which PWP was selected, in accordance with the terms, and subject to the conditions, of that certain engagement letter, dated as of August 24, 2022, attached hereto as **Exhibit C** (the "**Engagement Letter**"). The Committee also seeks approval of the terms of PWP's employment and retention including, without limitation, the proposed Fee Structure (as defined below) and the indemnity,

exculpation, contribution, and related provisions (the "**Indemnity Provisions**") set forth in the Engagement Letter, subject to the standards set forth in section 328(a) of the Bankruptcy Code.

### Jurisdiction, Venue and Predicates for Relief

2.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, entered February 1, 2012.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).   The Committee confirms its consent to the Court entering a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicates for the relief requested by this Application are sections 328(a) and 1103(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules, and Rule 2014-1 and 2016-1 of the Local Rules.

### Background

5.      On July 13, 2022, the Debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code.   The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.   However, on August 18, 2022, the U.S. Trustee filed a motion requesting appointment of an examiner [Docket No. 546]. On July 27, 2022, the U.S. Trustee appointed the Committee, which is comprised of seven members, each of whom holds crypto (or digital) assets through the Celsius platform [Docket No.

AMERICAS 116644669 v11

241].  The Committee's goal is to maximize the recoveries of account holders and unsecured creditors, as more fully stated in *The Official Committee of Unsecured Creditors' Statement Regarding These Chapter 11 Cases* [Docket No. 390].

6.     On August 2, 2022, the Committee voted to retain PWP as its investment banker, subject to Court approval.

## PWP's Qualifications

7.     In light of the size and complexity of these Chapter 11 Cases, the Committee requires a qualified and experienced investment banker with PWP's resources, capabilities, and experience.

8.     PWP is a leading global independent advisory firm that provides strategic and financial advice to clients across a range of the most active industry sectors and international markets, with offices in Calgary, Chicago, Denver, Houston, London, Los Angeles, Munich, New York, Paris, and San Francisco.  PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings.  PWP's mergers and acquisitions practice advises both public and private companies.  Its financial restructuring practice works with companies, creditors, investors, and other parties in interest in turn-around and distressed situations.

9.     PWP and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in Chapter 11 cases.  Major in-court restructurings in which PWP has been involved include: *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re TPC Group Inc.,* Case No. 22-10493 (Bankr. D. Del.); *In re Ion Geophysical Corp., et al.*, Case No. 22-30987 (MI) (Bankr. S.D. Tex.); *In re Ector County Energy Center LLC*, Case No. 22-10320 (JTD)

4

(Bankr. D. Del.); *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del.); *In re HighPoint Resources Corp.*, No. 21-10565 (CSS) (Bankr. D. Del.); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re California Resources Corporation,* Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re The Commonwealth of Puerto Rico*, Case No. 17-3283 (LTS) (Bankr. D.P.R.); *In re Bristow Group, Inc.*, Case No. 19-32713 (DRJ) (Bankr. S.D. Tex.); *In re Halcón Resources Corporation*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex.); *In re CARBO Ceramics Inc.*, Case No. 20-31973 (MI) (Bankr. S.D. Tex.); *In re Hartshorne Holdings, LLC*, Case No. 20-40133 (Bankr. W.D. Ky.); *In re Alta Mesa Resources, Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex.); *In re Approach Resources Inc.*, Case No. 19-36444 (MI) (Bankr. S.D. Tex.); *In re Legacy Reserves Inc.*, Case No. 19-33395 (MI) (Bankr. S.D. Tex.); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y.); *In re PG&E Corporation and Pacific Gas and Electric Company*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex.); *In re Gastar Exploration Inc.*, Case No. 18-36057 (MI) (Bankr. S.D. Tex.); *In re Hexion Holdings LLC*, Case No. 19-10684 (Bankr. D. Del.); *In re R.E. Gas Dev., LLC*, Case No. 18-22032 (Bankr. W.D. Pa.); *In re EV Energy Partners, LP*, Case No. 18-10814 (CSS) (Bankr. D. Del.); *In re Fieldwood Energy LLC,* Case No. 18-30648 (Bankr. S.D. Tex.); *In re Memorial Production Partners LP*, Case No. 17-30262 (MI) (Bankr. S.D. Tex.); *In re Pacific Drilling S.A.*, Case No. 17- 13193 (Bankr. S.D.N.Y.); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex.); *In re Ocean Rig UDW Inc.*, Case No. 17-10736 (Bankr. S.D.N.Y.); *In re Bonanza Creek Energy, Inc.*, Case No. 17-10015 (Bankr. D. Del.); *In re Breitburn Energy Partners LP*, Case No. 16-11390 (Bankr. S.D.N.Y.); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del.); *In re Stone Energy Corp.*, Case No. 16-36390 (Bankr. S.D. Tex.); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (Bankr.

5

S.D.N.Y); *In re Pac. Sunwear of California*, Case No. 16-10882 (Bankr. D. Del.); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del.); *In re ATD Corporation*, Case No. 18-12221 (Bankr. D. Del.); *In re Remington Outdoor Company, Inc.,* Case No. 18-10684 (Bankr. D. Del.); *In re Hermitage Offshore Services Ltd.,* Case No. 20-11850 (Bankr. S.D.N.Y.); *In re Sears Holdings Corporation,* Case No. 18-23538 (Bankr. S.D.N.Y.); *In re LATAM Airlines Group S.A.,* Case No. 20-11254 (Bankr. S.D.N.Y.); and *In re EB Holdings II, Inc.,* Case No. 19-16364 (Bankr. D. Nev.).  PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including: Algeco Group; Blackhawk Mining; Danaos Corporation; International Automotive Components Group; Jack Cooper; Key Energy Services; Ligado Networks; Medical Depot Holdings; Pernix Therapeutics; Proserv; Salt Creek Midstream; Savers; SM Energy Company; Sprint Industrial Holdings; Titan Energy; and WeWork Companies.

10.     The Committee submits this Application because of its need to retain an investment banker to assist it in the critical tasks associated with guiding the Committee through the Debtors' restructuring efforts.  The Committee respectfully submits that the services of an investment banker are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Chapter 11 Cases and to effectively fulfill its statutory duties.

11.     The Committee reviewed materials submitted by PWP prior to selecting it as the Committee's investment banker.  Such selection was based on the Committee's determination that PWP is the best candidate for the services to be provided and that its proposed fee structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases.  The Committee further selected PWP to act as its investment banker in

AMERICAS 116644669 v11

the Chapter 11 Cases because of PWP's significant expertise in providing investment banking

services to debtors and creditors in restructurings and distressed situations.

12.     Pursuant to section 1103(a) of the Bankruptcy Code, a committee may retain

advisors to assist in the Chapter 11 case.  *See* 11 U.S.C. § 1103(a).  In these Chapter 11 Cases, the

Committee requires qualified professionals to render these essential investment banking services.

As set forth above, PWP has substantial expertise as an investment banker in complex Chapter 11

cases and is well qualified to perform these services and to assist the Committee in the Chapter 11

Cases.

## Services To Be Rendered

13.     PWP has agreed to provide services to the Committee in accordance with the terms

and conditions of the Engagement Letter.  The terms of the Engagement Letter reflect the mutual

agreement between the Committee and PWP as to the substantial efforts that will be required of

PWP in this engagement.  The Engagement Letter provides, in consideration for the compensation

contemplated thereby, that PWP will, to the extent requested by the Committee, render the

following investment banking services[3]:

> a.  review and analyze the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Company (as defined in the Engagement Letter);
>
> b.  review, analyze and report to the Committee with respect to the Company's financial condition and outlook;
>
> c.  evaluate the Company's debt capacity in light of its projected cash flows;
>
> d.  review and provide an analysis of any valuation of the Company or its assets;

---

[3]     This Application summarizes the terms of the Engagement Letter.  To the extent there is a conflict between the Application and the Engagement Letter, the Engagement Letter will govern.

 e. review and provide an analysis of any proposed capital structure for the Company;

 f. advise and attend meetings with the Committee related to the Company as well as due diligence meetings with the Company or other third parties as appropriate;

 g. advise and assist the Committee's evaluation of the Company's near-term liquidity including various financing alternatives;

 h. review, analyze and advise the Committee with respect to the existing debt structure of the Company, and refinancing alternatives to existing debt;

 i. explore alternative strategies for the Company as a stand-alone business;

 j. develop, evaluate and assess the financial issues and options concerning any proposed Transaction (as defined below);

 k. analyze and explain any Transaction to the Committee;

 l. assist and participate in negotiations with the Company on the Committee's behalf;

 m. participate in hearings before the Court with respect to the matters upon which PWP has provided advice and/or analysis, including, as relevant, coordinating with the Committee's counsel with respect to any fact or expert testimony in connection therewith; and

 n. provide such other financial advisory services in connection with this matter as the Committee from time to time reasonably request and which are customarily provided by investment bankers in similar situations.

As defined in the Engagement Letter, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

 i. a confirmed Chapter 11 plan of reorganization going effective or conversion to Chapter 7 or any other liquidation of the Debtors in connection with the Chapter 11 Cases under the Bankruptcy Code;

 ii. any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which any of the Debtors is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (any of the foregoing, a "Purchaser");

 iii. the acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or

8

otherwise) outside the ordinary course of the Debtors' business, in a single transaction or a series of transactions, of (x) all or substantially all of the assets or operations of the Debtors; or (y) all or substantially all of outstanding or newly issued shares of the Debtors' capital stock (or any securities convertible into, or options, warrants or other rights to acquire such capital stock);

iv.     any other sale, transfer and assumption of all or substantially all of the assets or liabilities of the Debtors (including, without limitation, any consolidation or merger involving the Debtors); and/or

v.      the issuance, (a) whether public or private, of debt and/or equity securities for the Debtors or (b) of such other financing of any type raised to complete any transaction, to the extent that the proceeds from any such financing(s) are used to repay or refinance (in full or in part) the Debtors' unsecured claims.

**Professional Compensation and Expense Reimbursement**

14.     PWP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the Court, the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "**U.S. Trustee Guidelines**") and the Court's orders (collectively, the "**Fee Guidelines**"), consistent with the proposed compensation and reimbursement arrangements set forth in the Engagement Letter and the Proposed Order.

15.     Investment bankers such as PWP do not typically charge for their services on an hourly basis. Instead, they customarily charge periodic retainer fees plus additional fees that are contingent upon the occurrence of a specified type of transaction. The compensation arrangements that have been negotiated between PWP and the Committee are highly beneficial to the Committee as they provide certainty and induce PWP to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Committee is seeking to retain

9

PWP under section 328(a) of the Bankruptcy Code, the Committee believes that PWP's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

16.    Subject to the Court's approval and, except as otherwise modified by order of the Court, the Committee seeks the following consideration for PWP's services pursuant to, and as set forth more fully in, the Engagement Letter (the "**Fee Structure**"):

(a)    **Monthly Advisory Fee**.  An advisory fee of $100,000 for each month of the engagement ("**Monthly Fee**"), prorated for any partial month, due and payable commencing on the Engagement Date (as defined in the Engagement Letter); plus

(b)    **Transaction Fee**.  A transaction fee (the "**Transaction Fee**") of $5,750,000, payable promptly upon consummation of a Transaction.

17.    In addition to any fees that may be payable to PWP, and regardless of whether any Transaction occurs, the Debtors shall promptly reimburse PWP for all reasonable and documented expenses incurred by PWP (including travel and lodging, data processing and communications charges, courier services, and other expenditures) and the reasonable fees and expenses of outside counsel, if any, retained by PWP in connection with its engagement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not waived) and the order approving this Application.

18.    In addition, PWP will maintain records in support of any expenses incurred in connection with rendering its services in these Chapter 11 Cases.  It is not the general practice of financial advisory and investment banking firms, including PWP, to keep detailed time records similar to those customarily kept by attorneys.  Because PWP does not ordinarily maintain contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals, and because of the nature of the Fee Structure, the Committee seeks a waiver of the timekeeping requirements set forth in the Fee Guidelines to

10

maintain records in the one-tenth (0.1) of an hour requirement. PWP will nonetheless maintain summary time records, in half-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed. Courts in other large Chapter 11 cases have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022); *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y. July 1, 2020); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commcn's, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

19.    The terms and conditions of the Engagement Letter were negotiated by the Committee at arm's length and in good faith. After discussions and arm's length negotiations, the Committee believes that the Fee Structure and the expense reimbursement provisions described above and in the Engagement Letter are consistent with, and typical of, compensation arrangements entered into by PWP and other comparable firms in connection with rendering of similar services under similar circumstances and is reasonable, market based and merited by PWP's restructuring expertise.

## **Indemnification**

20.    A material provision of the Engagement Letter is the Debtors' agreement to indemnify, reimburse and provide contribution to PWP and its affiliates, and any of their respective directors, officers, members, employees, agents, or controlling persons, as detailed in the

11

Engagement Letter. Investment bankers seek indemnification for a variety of reasons. The performance of PWP's responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. PWP intends to rely on the accuracy and completeness of the financial information and other information to be provided by the Debtors. The Committee notes that, in the event an Indemnified Person (as defined in the Engagement Letter) acts with gross negligence or willful misconduct, the Debtors' estates will be entitled to recover amounts paid pursuant to the Indemnification Provisions.

21.     The Committee respectfully submits that the Indemnity Provisions contained in the Engagement Letter are a customary and reasonable term of consideration for investment bankers such as PWP for proceedings both out of court and in Chapter 11. Such provisions, viewed in conjunction with the other terms of PWP's proposed retention, are reasonable and in the best interests of the Committee, the Debtors, their estates and other creditors, in light of the fact that the Committee requires PWP's services. The Indemnity Provisions include qualifications and limits on the indemnification and limitation on liability provisions that are customary in Chapter 11 cases. Accordingly, as part of the Application, the Committee requests that the Court approve the Indemnity Provisions and the obligations contained therein.

22.     The Committee and PWP believe that the proposed Indemnity Provisions are customary and reasonable for investment banking engagements, both in out-of-court and in Chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in other large Chapter 11 cases. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022); *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr.

12

S.D.N.Y. July 1, 2020); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commcn's, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

## Efforts To Avoid Duplication Of Services

23.     The Committee has also selected M3 Partners, LP ("M3") to provide restructuring and financial advisory services to the Committee.  The investment banking services that PWP will provide to the Committee are separate and distinct from the restructuring and advisory services to be performed by M3.  PWP and M3 will coordinate with one another on the services provided to the Committee to avoid unnecessary duplication of services by either professional during the pendency of these Chapter 11 Cases; provided, however, that PWP shall not be responsible for and shall not incur any liability from the services performed by M3.

24.     PWP's services are intended to complement, and not unnecessarily duplicate, the services to be rendered by any other professional retained by the Committee in these Chapter 11 Cases.  PWP has informed the Committee that it understands that the Committee has retained and may retain additional professionals during the term of the engagement and will use its reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Committee.

## PWP's Disinterestedness

25.     In connection with its proposed retention by the Committee in these Chapter 11 Cases, PWP has received a list of parties in interest from the Debtors, along with the names of

AMERICAS 116644669 v11

certain supplemental parties in interest suggested by counsel to the Committee attached to the Cofsky Declaration as **Schedule 1**.

26.     PWP has informed the Committee that, except as set forth in the Cofsky Declaration, PWP: (a) has no material connections with the Debtors, their creditors, their equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee in any matter related to the Debtors and their estates; (b) does not hold or represent any interest adverse to the Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  If any new material facts or relationships are discovered or arise, PWP will promptly inform the Court as required by Bankruptcy Rule 2014(a).

27.     Given the large number of parties-in-interest in these Chapter 11 Cases, and despite the efforts to identify and disclose PWP's relationships with parties in interest in these Chapter 11 Cases, PWP is unable to state with certainty that every client relationship or other connection has been disclosed in the Cofsky Declaration.  If any new material facts or relationships bearing on the matters described herein are discovered or otherwise arise during the pendency of these Chapter 11 Cases, PWP will use reasonable efforts to provide the Court with a supplemental declaration disclosing such new material facts or relationships pursuant to Bankruptcy Rule 2014(a).

28.     PWP will not share any compensation paid to PWP in connection with these Chapter 11 Cases by the Debtors, with any other person, other than principals and employees of PWP, to the extent required by section 504 of the Bankruptcy Code.

AMERICAS 116644669 v11

**<u>Basis For Relief Requested</u>**

I.   **The Bankruptcy Code Permits the Employment and Retention of PWP on the Terms of the Engagement Letter Pursuant to Section 328 of the Bankruptcy Code**

29.   The Committee seeks approval of the retention and employment of PWP pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) provides, in relevant, part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.

30.   As recognized by numerous courts, Congress intended section 328(a) of the Bankruptcy Code to enable debtors and official committees to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (in re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

31.   The Committee believes the Fee Structure is fair and reasonable and consistent with and typical of compensation arrangements entered into by PWP and other comparable firms in connection with rendering similar services under similar circumstances.  PWP's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring

AMERICAS 116644669 v11

capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Committee during the term of PWP's engagement, were all important factors in determining the Fee Structure. The Committee believes that the ultimate benefit of PWP's services cannot be measured by reference to the number of hours to be expended by PWP's professionals in the performance of such services. Indeed, the Committee and PWP have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of PWP and its professionals in connection with these Chapter 11 Cases and in light of the fact that: (a) such commitment may foreclose other opportunities for PWP; and (b) the actual time and commitment required of PWP and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month.

32.    The Fee Structure is also consistent with the fee structures typically utilized by leading investment bankers that do not bill their clients on an hourly basis. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large Chapter 11 cases. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022); *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y. July 1, 2020); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commcn's, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

33.    In light of the foregoing and given the numerous issues that PWP may be required to address in the performance of its services hereunder, PWP's commitment to the variable level

16

of time and effort necessary to address all such issues as they arise and the market prices for PWP's services for engagements of this nature in both in-court and out-of-court proceedings, the Committee believes that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

## II. Granting Relief Effective as of the Date of PWP's Selection by the Committee Is Appropriate Under the Circumstances

34.     The Committee respectfully requests that the Court authorize PWP's employment and retention effective as of August 2, 2022 – the date on which the Committee selected PWP as its investment banker in these Chapter 11 Cases.  Immediately upon its selection by the Committee, PWP commenced work on several matters and promptly devoted substantial resources to these Chapter 11 Cases pending submission and approval of this Application.  Therefore, the Committee asserts that PWP should be compensated for work performed prior to and after the entry of the Proposed Order authorizing its retention.

35.     Based on the foregoing, the Committee submits that it has satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules to support entry of the Proposed Order authorizing the Committee to retain and employ PWP in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## Notice

36.     Notice of this Application has been provided to: (a) the Debtors; (b) the Office of the U.S. Trustee; (c) counsel to the Committee; (d) the holders of the 50 largest unsecured claims against Debtors (on a consolidated basis); (e) the United States Attorney for the Southern District of New York; (f) the Internal Revenue Service; (g) the officers of the attorneys general in the states in which the Debtors operate; (h) the Securities and Exchange Commission; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  The

AMERICAS 116644669 v11

Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

37.    No previous application for the relief sought herein has been made by the Committee to this Court or any other court.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court enter the Proposed Order granting the relief requested in this Application and such other and further relief as the Court deems appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

18

Dated:  August 24, 2022

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:

_Scott Duffy_____

Scott Duffy
Authorized Signatory, ICB Solutions Inc.
Co-Chair, Official Committee of Unsecured Creditors

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS EFFECTIVE AS OF AUGUST 2, 2022, (II) APPROVING THE TERMS OF THE PERELLA ENGAGEMENT LETTER, (III) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016, AND (IV) GRANTING RELATED RELIEF**

Upon the application (the "**Application**")[2] of the Committee for entry of an order (this "**Order**"): (i) authorizing the Committee to employ and retain Perella Weinberg Partners LP ("**PWP**") as its investment banker in these Chapter 11 Cases and all related matters effective as of August 2, 2022, in accordance with the terms and conditions set forth in that certain engagement letter between PWP and the Committee, dated as of August 24, 2022, attached as **Exhibit C** to the Application (the "**Engagement Letter**") pursuant to section 328(a) and 1103 of the Bankruptcy Code; (ii) approving the terms and conditions of the Engagement Letter, including without limitation, the compensation and reimbursement arrangements set forth in the Engagement Letter, as well as the Indemnity Provisions set forth in the Engagement Letter; (iii) modifying certain timekeeping requirements of Bankruptcy Rule 2016(a), Local Rule 2016(a), and the Fee

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

Guidelines, and any other applicable procedures and orders of the Court in connection with PWP's

engagement; and (iv) granting such other relief as is just and proper; and this Court having

jurisdiction to consider the Application and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334; and the *Amended Standing Order of Reference from the United States*

*District Court for the Southern District of New York*, entered February 1, 2012; and this Court

having the power to enter a final order consistent with Article III of the United States Constitution;

and consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A); and venue being proper before this Court pursuant to 28

U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Application having been

provided under the circumstances and in accordance with the Bankruptcy Rules and the Local

Rules, and it appearing that no other or further notice need be provided; and a hearing having been

held, if necessary, to consider the relief requested in the Application (the "**Hearing**"); and upon

consideration of the Cofsky Declaration attached to the Application, and the record of the Hearing,

if any, and all of the proceedings had before the Court; and the Court having found and determined

that the terms and conditions of PWP's employment, including the Fee Structure set forth in the

Engagement Letter are reasonable as required by section 328(a) of the Bankruptcy Code; and the

Court having found and determined that PWP does not represent or hold any interest adverse to

the Debtors' estates under section 1103 of the Bankruptcy Code and is a "disinterested person" as

that term is defined under section 101(14) of the Bankruptcy Code, that the relief sought in the

Application is necessary and in the best interests of the Committee, the Debtors, their estates, their

creditors, and all parties in interest, and that the legal and factual bases set forth in the Application

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Application is GRANTED as set forth herein, and the provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved.  Any objections or reservations of rights filed in respect of the Application are overruled, with prejudice.

2.      The Committee is authorized to employ and retain PWP as its investment banker in the Chapter 11 Cases, effective as of August 2, 2022, for the purposes set forth and upon the terms and conditions of the Engagement Letter.

3.      The Engagement Letter, including, without limitation, the Monthly Fee, the Transaction Fee, and the Indemnity Provisions (each as defined in the Engagement Letter), is incorporated by reference and is approved in all respects pursuant to section 328(a) of the Bankruptcy Code.

4.      In accordance with the terms of the Engagement Letter and the terms of this Order, the Debtors shall pay PWP's fees (including the Monthly Fee and Transaction Fee) and reimburse PWP for all reasonable and documented out-of-pocket expenses incurred by PWP, including all reasonable and documented fees and expenses of outside counsel, if any, retained by PWP without the need for such legal counsel to be retained as professionals in these Chapter 11 Cases.

5.      If PWP seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys (which may be redacted to protect confidential information and applicable privileges) shall be included in PWP's own interim and final fee applications (as applicable), and such invoices and time records shall be subject to (a) the U.S. Trustee Guidelines and (b) approval by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained

3

under section 328 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

6.      PWP shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines, and any other applicable procedures and orders of the Court; *provided, however*, all fees and expense reimbursements to be paid to PWP, including without limitation the Monthly Fee and Transaction Fee, shall be subject to section 328(a) of the Bankruptcy Code, and PWP's fees and expense reimbursement shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code.  None of the fees payable to PWP shall constitute a "bonus" or fee enhancement under applicable law.  PWP's expenses may include reasonable expenses incurred by PWP and the reasonable fees and expenses of outside counsel, if any, retained by PWP, without the need for such legal counsel to be retained as professionals in these Chapter 11 Cases.

7.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, PWP and its professionals shall be excused from: (a) the requirement to maintain or provide detailed time records for services rendered postpetition in accordance with the Fee Guidelines and (b) providing or conforming to any schedule of hourly rates.  Instead, notwithstanding that PWP does not charge for its services on an hourly basis, PWP shall be required only to maintain time records (in summary format) of its services rendered for the Committee in half-hour (0.50) increments, not tenth-hour (0.10) increments, setting forth, in summary format, a description of the services rendered and the

professionals rendering such services, and will present such records together with its fee applications filed with this Court.

8.     The Indemnity Provisions set forth in the Engagement Letter are approved, subject to the following conditions during the pendency of these Chapter 11 Cases:

a.   All requests for payment of indemnity, contribution, or otherwise pursuant to the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the orders of this Court, and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought; provided that in no event shall any person be indemnified or receive contribution to the extent that any claim arose or expense has resulted from any such losses finally judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Persons;

b.   In no event shall any Indemnified Person be indemnified or receive contribution or other payment under the Indemnity Provisions to the extent the Debtors or a representative of the estate asserts a claim for, and the Court determines by final order that such claim primarily arose out of, such Indemnified Person's bad-faith, self-dealing or breach of fiduciary duty (if any), gross negligence, or willful misconduct; and

c.   In the event that any Indemnified Person seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the Engagement Letter, the invoices and supporting time records from such attorneys shall be annexed to PWP's own applications, both interim and final, and such invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code.

9.     To the extent that the Application is inconsistent with this Order, the terms of this Order shall govern.

10.    Notice of the Application as provided therein shall be deemed good and sufficient notice of the Application.

AMERICAS 116644669 v11

11.    PWP, the Committee and the Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

12.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.    Notwithstanding any provision to the contrary in the Application or the Engagement Letter, this Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order, including without limitation, the Transaction Fee.

Dated: _____, 2022
          New York, New York


_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

AMERICAS 116644669 v11

**<u>EXHIBIT B</u>**

**Cofsky Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF KEVIN COFSKY IN**
**SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF PERELLA WEINBERG PARTNERS**
**LP AS INVESTMENT BANKER TO THE COMMITTEE EFFECTIVE**
**AS OF AUGUST 2, 2022, (II) APPROVING THE TERMS OF THE PERELLA**
**ENGAGEMENT LETTER, (III) WAIVING CERTAIN REPORTING REQUIREMENTS**
**PURSUANT TO LOCAL RULE 2016, AND (IV) GRANTING RELATED RELIEF**

I, Kevin Cofsky, pursuant to 28 U.S.C. § 1746, hereby declare that the following is

true and correct to the best of my knowledge, information, and belief:

1.      I am a Partner of the firm of Perella Weinberg Partners LP ("**PWP**"), which has its

principal office at 767 Fifth Avenue, New York, New York 10153.  PWP is part of a global

financial services firm that provides corporate advisory services.  I am authorized to execute this

declaration on behalf of PWP.

2.      I submit this declaration (the "**Declaration**") pursuant to sections 328(a) and 1103

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) and Rule 2016 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1, 2016

and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the Southern

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these Chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

District of New York (the "**Local Rules**") in support of *The Official Committee of Unsecured Creditors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Perella Weinberg Partners LP as Investment Banker to the Committee Effective as of August 2, 2022, (II) Approving the Terms of the Perella Engagement Letter, (III) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016, and (IV) Granting Related Relief* (the "**Application**"), filed contemporaneously herewith by the Committee.[2]    To the extent that any information disclosed herein requires amendment or modification upon PWP's completion of further analysis or as additional information becomes available to it, a supplemental declaration will be submitted to the Court reflecting the same.

3.    The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, or upon client matter records kept in the ordinary course of business that were reviewed either by me or by employees of PWP under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

## <u>Qualifications</u>

4.    PWP was retained by the Committee as of August 2, 2022.  PWP is a leading global independent advisory firm that provides strategic and financial advice to clients across a range of the most active industry sectors and international markets, with offices in Calgary, Chicago, Denver, Houston, London, Los Angeles, Munich, New York, Paris, and San Francisco.  PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings.  PWP's mergers and acquisitions practice advises both

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

AMERICAS 116644669 v11

public and private companies.  Its financial restructuring practice works with companies, investors, and other parties in interest in turn-around and distressed situations.

5.       PWP and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in Chapter 11 cases.  Major in-court restructurings in which PWP has been involved include: *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re TPC Group Inc.,* Case No. 22-10493 (Bankr. D. Del.); *In re Ion Geophysical Corp., et al.*, Case No. 22-30987 (MI) (Bankr. S.D. Tex); *In re Ector County Energy Center LLC*, Case No. 22-10320 (JTD) (Bankr. D. Del.); *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del.); *In re HighPoint Resources Corp.*, No. 21-10565 (CSS) (Bankr. D. Del.); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re California Resources Corporation,* Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re The Commonwealth of Puerto Rico*, Case No. 17-3283 (LTS) (Bankr. D.P.R.); *In re Bristow Group, Inc.*, Case No. 19-32713 (DRJ) (Bankr. S.D. Tex.); *In re Halcón Resources Corporation*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex.); *In re CARBO Ceramics Inc.*, Case No. 20-31973 (MI) (Bankr. S.D. Tex.); *In re Hartshorne Holdings, LLC*, Case No. 20-40133 (Bankr. W.D. Ky.); *In re Alta Mesa Resources, Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex.); *In re Approach Resources Inc.*, Case No. 19-36444 (MI) (Bankr. S.D. Tex.); *In re Legacy Reserves Inc.*, Case No. 19-33395 (MI) (Bankr. S.D. Tex.); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y.); *In re PG&E Corporation and Pacific Gas and Electric Company*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex.); *In re Gastar Exploration Inc.*, Case No. 18-36057 (MI) (Bankr. S.D. Tex.); *In re Hexion Holdings LLC*, Case No. 19-10684 (Bankr. D. Del.); *In re R.E. Gas Dev., LLC*, Case No. 18-22032 (Bankr. W.D. Pa.);

3

*In re EV Energy Partners, LP*, Case No. 18-10814 (CSS) (Bankr. D. Del.); *In re Fieldwood Energy LLC,* Case No. 18-30648 (Bankr. S.D. Tex.); *In re Memorial Production Partners LP*, Case No. 17-30262 (MI) (Bankr. S.D. Tex.); *In re Pacific Drilling S.A.*, Case No. 17- 13193 (Bankr. S.D.N.Y.); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex.); *In re Ocean Rig UDW Inc.*, Case No. 17-10736 (Bankr. S.D.N.Y.); *In re Bonanza Creek Energy, Inc.*, Case No. 17-10015 (Bankr. D. Del.); *In re Breitburn Energy Partners LP*, Case No. 16-11390 (Bankr. S.D.N.Y.); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (Bankr. D. Del.); *In re Stone Energy Corp.*, Case No. 16-36390 (Bankr. S.D. Tex.); *In re Atlas Resource Partners, L.P.*, Case No. 16-12149 (Bankr. S.D.N.Y); *In re Pac. Sunwear of California*, Case No. 16-10882 (Bankr. D. Del.); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del.); *In re ATD Corporation*, Case No. 18-12221 (Bankr. D. Del.); *In re Remington Outdoor Company, Inc.,* Case No. 18-10684 (Bankr. D. Del.); *In re Hermitage Offshore Services Ltd.,* Case No. 20-11850 (Bankr. S.D.N.Y.); *In re Sears Holdings Corporation,* Case No. 18-23538 (Bankr. S.D.N.Y.); *In re LATAM Airlines Group S.A.,* Case No. 20-11254 (Bankr. S.D.N.Y.); and *In re EB Holdings II, Inc.,* Case No. 19-16364 (Bankr. D. Nev.). PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including: Algeco Group; Blackhawk Mining; Danaos Corporation; International Automotive Components Group; Jack Cooper; Key Energy Services; Ligado Networks; Medical Depot Holdings; Pernix Therapeutics; Proserv; Salt Creek Midstream; Savers; SM Energy Company; Sprint Industrial Holdings; Titan Energy; and WeWork Companies.

## Services to be Rendered

6.      PWP has agreed to provide services to the Committee in accordance with the terms and conditions of the Engagement Letter. The terms of the Engagement Letter reflect the mutual

AMERICAS 116644669 v11

agreement between the Committee and PWP as to the substantial efforts that may be required of

PWP in this engagement.  The Engagement Letter provides, in consideration for the compensation

contemplated thereby, that PWP will, to the extent requested by the Committee, render the

following investment banking services[3]:

    a.   review and analyze the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Company (as defined in the Engagement Letter);

    b.   review, analyze and report to the Committee with respect to the Company's financial condition and outlook;

    c.   evaluate the Company's debt capacity in light of its projected cash flows;

    d.   review and provide an analysis of any valuation of the Company or its assets;

    e.   review and provide an analysis of any proposed capital structure for the Company;

    f.   advise and attend meetings with the Committee related to the Company as well as due diligence meetings with the Company or other third parties as appropriate;

    g.   advise and assist the Committee's evaluation of the Company's near-term liquidity including various financing alternatives;

    h.   review, analyze and advise the Committee with respect to the existing debt structure of the Company, and refinancing alternatives to existing debt;

    i.   explore alternative strategies for the Company as a stand-alone business;

    j.   develop, evaluate and assess the financial issues and options concerning any proposed Transaction (as defined below);

    k.   analyze and explain any Transaction to the Committee;

    l.   assist and participate in negotiations with the Company on the Committee's behalf;

    m.   participate in hearings before the Court with respect to the matters upon which PWP has provided advice and/or analysis, including, as relevant,

---

[3]    This Declaration summarizes the terms of the Engagement Letter.  To the extent there is a conflict between this Declaration and the Engagement Letter, the Engagement Letter will govern.

AMERICAS 116644669 v11

coordinating with the Committee's counsel with respect to any fact or expert testimony in connection therewith; and

n.  provide such other financial advisory services in connection with this matter as the Committee from time to time reasonably request and which are customarily provided by investment bankers in similar situations.

As defined in the Engagement Letter, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

i.   a confirmed Chapter 11 plan of reorganization going effective or conversion to Chapter 7 or any other liquidation of the Debtors in connection with the Chapter 11 Cases under the Bankruptcy Code;

ii.  any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which any of the Debtors is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (any of the foregoing, a "Purchaser");

iii. the acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) outside the ordinary course of the Debtors' business, in a single transaction or a series of transactions, of (x) all or substantially all of the assets or operations of the Debtors; or (y) all or substantially all of outstanding or newly issued shares of the Debtors' capital stock (or any securities convertible into, or options, warrants or other rights to acquire such capital stock);

iv.  any other sale, transfer and assumption of all or substantially all of the assets or liabilities of the Debtors (including, without limitation, any consolidation or merger involving the Debtors); and/or

v.   the issuance, (a) whether public or private, of debt and/or equity securities for the Debtors or (b) of such other financing of any type raised to complete any transaction, to the extent that the proceeds from any such financing(s) are used to repay or refinance (in full or in part) the Debtors' unsecured claims.

## Professional Compensation and Expense Reimbursement

7.     PWP intends to apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the

Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the

6

Bankruptcy Rules, the Local Rules, the guidelines established by the Court, the U.S. Trustee Guidelines, and the Court's orders (collectively, the "**Fee Guidelines**"), consistent with the proposed compensation and reimbursement arrangements set forth in the Engagement Letter and the Proposed Order.

8.      Investment bankers such as PWP do not typically charge for their services on an hourly basis.  Instead, they customarily charge periodic retainer fees plus additional fees that are contingent upon the occurrence of a specified type of transaction.  The compensation arrangements that have been negotiated between PWP and the Committee are highly beneficial to the Committee as they provide certainty and induce PWP to act expeditiously and prudently with respect to the matters for which it will be employed.  Accordingly, because the Committee is seeking to retain PWP under section 328(a) of the Bankruptcy Code, the Committee believes that PWP's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

9.      Subject to the Court's approval and, except as otherwise modified by order of the Court, the Committee seeks the following consideration for PWP's services pursuant to, and as set forth more fully in, the Engagement Letter (the "**Fee Structure**"):

(a)      **Monthly Advisory Fee**.  An advisory fee of $100,000 for each month of the engagement ("**Monthly Fee**"), prorated for any partial month, due and payable commencing on the Engagement Date (as defined in the Engagement Letter); plus

(b)      **Transaction Fee**.  A transaction fee (the "**Transaction Fee**") of $5,750,000, payable promptly upon consummation of a Transaction.

10.      In addition to any fees that may be payable to PWP, and regardless of whether any Transaction occurs, the Debtors shall promptly reimburse PWP for all reasonable and documented expenses incurred by PWP (including travel and lodging, data processing and communications charges, courier services, and other expenditures) and the reasonable fees and expenses of outside

7

counsel, if any, retained by PWP in connection with its engagement, subject to the procedures set

forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not

waived).

11.    In addition, PWP will maintain records in support of any expenses incurred in

connection with rendering its services in these Chapter 11 Cases.  It is not the general practice of

financial advisory and investment banking firms, including PWP, to keep detailed time records

similar to those customarily kept by attorneys.  Because PWP does not ordinarily maintain

contemporaneous time records in one-tenth (0.1) of an hour increments, or provide or conform to

a schedule of hourly rates for its professionals, and because of the nature of the Fee Structure, the

Committee seeks a waiver of the timekeeping requirements set forth in the Fee Guidelines to

maintain records in the one-tenth (0.1) of an hour requirement.  PWP will nonetheless maintain

summary time records, in half-hour increments, which records shall indicate the total hours

incurred by each professional for each day and provide a brief description of the nature of the work

performed.  Courts in other large Chapter 11 cases have excused flat-fee professionals from

timekeeping requirements under similar circumstances.  *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760

(DSJ) (Bankr. S.D.N.Y. July 21, 2022); *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW)

(Bankr. S.D.N.Y. Aug. 16, 2022); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr.

S.D.N.Y. July 1, 2020); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y.

June 29, 2020); *In re LSC Commc'ns, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020);

*In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re

McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma

L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

12.    The terms and conditions of the Engagement Letter were negotiated by the Committee at arm's length and in good faith. After discussions and arm's length negotiations, the Committee believes that the Fee Structure and the expense reimbursement provisions described above and in the Engagement Letter are consistent with, and typical of, compensation arrangements entered into by PWP and other comparable firms in connection with rendering similar services under similar circumstances and is reasonable, market based and merited by PWP's restructuring expertise.

## **Indemnification**

13.    A material provision of the Engagement Letter is the Debtors' agreement to indemnify, reimburse and provide contribution to PWP and its affiliates, and any of their respective directors, officers, members, employees, agents, or controlling persons, as detailed in the Engagement Letter. Investment bankers seek indemnification for a variety of reasons. The performance of PWP's responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. PWP intends to rely on the accuracy and completeness of the financial information and other information to be provided by the Debtors. The Committee notes that, in the event an Indemnified Person (as defined in the Engagement Letter) acts with gross negligence or willful misconduct, the Debtors' estates will be entitled to recover amounts paid pursuant to the Indemnification Provisions.

14.    The Committee respectfully submits that the Indemnity Provisions contained in the Engagement Letter are a customary and reasonable term of consideration for investment bankers such as PWP for proceedings both out of court and in Chapter 11. Such provisions, viewed in conjunction with the other terms of PWP's proposed retention, are reasonable and in the best

9

interests of the Committee, the Debtors, their estates and other creditors, in light of the fact that the Committee requires PWP's services. The Indemnity Provisions include qualifications and limits on the indemnification and limitation on liability provisions that are customary in Chapter 11 cases. Accordingly, as part of the Application, the Committee requests that the Court approve the Indemnity Provisions and the obligations contained therein.

15. The Committee and PWP believe that the proposed Indemnity Provisions are customary and reasonable for investment banking engagements, both out-of-court and in Chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in other large Chapter 11 cases. *See, e.g.*, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. July 21, 2022); *In re Voyager Digital Holdings Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Aug. 16, 2022); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y. July 1, 2020); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commc'n's, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

## PWP's Disinterestedness

16. The following disclosures provide a summary of the Firm's businesses and structure:

a. The Firm provides corporate advisory, research, and sales, and trading services to clients and investors around the world (collectively, the "**Clients**"). The corporate advisory practice (the "**Advisory Practice**") provides Clients with M&A advisory services, debt advisory services, capital markets advisory services, restructuring advisory services, private placement services, and underwriting, as applicable which are collectively referred to herein as the "**Advisory Services**." The Firm does not engage in proprietary sales and trading activities. As described more fully below, the Firm also has a specialized (i) research business ("**Research**") and

10

(ii) sales and trading business ("**Sales and Trading**") primarily for energy related industries.  PWP is an indirect investor in PWP Forward Sponsor I LLC, a Delaware limited liability company and the sponsor of PWP Forward Acquisition Corp. I, a special purpose acquisition vehicle.  In addition, a company related to the Firm provides asset management services offering multiple investment vehicles to Clients (the "**Investment Services**").

b.  The Firm maintains internal procedures designed to preclude the dissemination of material non-public, confidential and proprietary information from PWP's principals, partners, members, or professionals (collectively, the "**Professionals**") who are providing Advisory Services on the one hand, to Professionals providing services for the Firm's other businesses (the "**Confidentiality Procedures**").  The Confidentiality Procedures include the following protections: the Investment Services, Research and Sales and Trading business units are separate legal entities from the Advisory Services business unit that will provide services to the Committee in these Chapter 11 Cases.  No Professionals who provide services to the Committee in these Chapter 11 Cases are or will be involved in any of the activities of the Investment Services, Research and Sales and Trading businesses.  For the avoidance of doubt, since the commencement of the engagement, no Professionals who have directly provided services to the Committee in these Chapter 11 Cases (collectively, the "**Deal Team**") have provided services to the Investment Services, Research and Sales and Trading businesses.  Perella Weinberg Partners Group LP ("**PWP Group**") is the parent company of PWP, and PWP Group's Global Policies on Use of Confidential Information (the "Information Barrier Policies") apply equally to each subsidiary of PWP Group, including PWP.  Pursuant to the Information Barrier Policies, PWP has established and maintains internal information barrier policies and procedures between its Advisory Practice and its other business units.  All Professionals, including those advising the Committee (i) receive training with respect to the Information Barrier Policies and are required to certify annually that they have read, understood and complied with the Information Barrier Policies; (ii) may not directly or indirectly share any material, non-public, confidential and proprietary information generated by, received from or relating to any Advisory Services Clients, including the Chapter 11 Cases, with any employees, representatives or agents solely involved in the Investment Services, Research and Sales and Trading businesses, and (iii) work in offices that are physically separated from and restricted by key card access to the Investment Services, Research and Sales and Trading business.  Furthermore, PWP Group's Legal and Compliance Department regularly reviews investment, sales and trading transactions in monitoring the Information Barrier Policies and maintains confidential records of such reviews; and periodically monitors a sampling of emails (including those of Professionals advising the Committee in these Chapter 11 Cases) for, among other things, compliance with the Information Barrier Policies.  The

11

Information Barrier Policies are designed to prevent the sharing of information between the Deal Team and Professionals of the Investment Services, Research and Sales and Trading businesses. Accordingly, pursuant to U.S. securities law, no material non-public, confidential, and proprietary information concerning the Debtors or the Committee will be used by the Firm in trading securities.

c. Notwithstanding the foregoing, the Professionals advising the Committee in these Chapter 11 Cases may share information with (i) certain senior management of the Firm who, due to their duties and responsibilities, have a legitimate need to know such information such as in the case of clearing conflicts for a new matter, provided that such individuals (y) otherwise comply with the Information Barrier Policies described in the previous paragraph of this Declaration and (z) use such information solely in connection with their managerial responsibilities, (ii) regulatory and other similar authorities, and (iii) Legal, Compliance, Finance, Accounting and other shared internal control functions within PWP Group that need to know such information for purposes of carrying out their functions. Such information sharing is conducted at all times in accordance with the Information Barrier Policies which are designed to ensure that use of the information is limited to the narrowly tailored reasons for which it was shared.

d. In connection with Investment Services, parties related to PWP may currently or in the future serve as general partners for and manage a number of investment vehicles (collectively, the "**PWP Funds**"). The investors in the PWP Funds invest as limited partners. The limited partners in the PWP Funds will be principally unrelated third parties (and may include Parties in Interest), but also may include affiliates of PWP and various of its Professionals. PWP Professionals, and affiliates, in the aggregate, currently hold less than 2.5% of the interests in the PWP Funds and the remaining over 97.5% is held by unrelated third parties. None of the PWP Professionals directly involved in this engagement are investors in the PWP Funds. Among other things, the PWP Funds may, directly or indirectly, be (i) passive investors in other investment vehicles, or (ii) active, direct investors in various securities, financial instruments (including options, derivatives, and debt instruments), and businesses or assets (including real estate) (collectively, the "**Equity Funds**"). It is possible that companies in which the PWP Funds may, directly or indirectly, own securities, or which the PWP Funds may, directly or indirectly, engage in discussions regarding a possible investment or transaction in connection with the PWP Funds, may have a relationship with the Debtors or otherwise be a Party in Interest. These relationships are unrelated to the services PWP intends to provide in these Chapter 11 Cases. As would be the case with respect to a mutual fund investment, none of PWP, its affiliates, the PWP Funds, or the Professionals advising the Committee in these Chapter 11 Cases will have any control over the investments made by the funds in which the PWP Funds are

12

invested passively, including purchases, sales, and the timing of such activities, nor will they have day-to-day knowledge of investment decisions of the PWP Funds. Moreover, none of PWP, its affiliates or the Professionals advising the Committee in these cases will have any control over the investments made by the PWP Funds. The company that operates the Investment Services business and maintains investment control over the PWP Funds and the Equity Funds is related to, but not affiliated with, PWP. The historical investments of the PWP Funds are periodically reported in public filings. Typically, such filings disclose the investments of the PWP Funds for the prior quarter. However, such historical investments may have no bearing on the current investments of the PWP Funds. This is because the PWP Funds trade on a day-to-day basis and therefore the historical investments that are reported on a quarterly basis in public filings may differ from the current investments of the PWP Funds. The Professionals directly involved in this engagement have no knowledge of the current investments of the PWP Funds. As of the last public filing covering the period ending June 30, 2022, the PWP Funds held no more than 0.1% of any single Party in Interest listed on **Schedule 1**.

e. As a result of a Business Combination (defined below), Perella Weinberg Partners is a publicly traded company (Nasdaq: PWP) and is required to file periodic reports with the SEC. On June 24, 2021, Perella Weinberg Partners (formerly known as FinTech Acquisition Corp. IV ("**FTIV**")) consummated its previously announced business combination pursuant to that certain Business Combination Agreement, dated as of December 29, 2020 (the "**Business Combination Agreement**"). As contemplated by the Business Combination Agreement, (i) FTIV acquired certain partnership interests in PWP Holdings LP ("**PWP OpCo**"), (ii) PWP OpCo became jointly-owned by Perella Weinberg Partners, PWP Professional Partners LP and certain existing partners of PWP OpCo, and (iii) PWP OpCo serves as Perella Weinberg Partners operating partnership as part of an umbrella limited partnership C-corporation (Up-C) structure (collectively with the other transactions contemplated by the Business Combination Agreement, the "**Business Combination**"). The combined company now operates as Perella Weinberg Partners. Perella Weinberg Partners' shares trade on a day-to-day basis, and the Professionals directly involved in this engagement have no knowledge of the current investments of Perella Weinberg Partners' stockholders or those stockholders' potential connections with any of the Parties in Interest listed on **Schedule 1**.

17. In connection with its proposed retention by the Committee in these Chapter 11 Cases, PWP obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases and additional names provided by counsel to the Committee (collectively, the "**Potential Parties in Interest**"), which parties are

13

listed on **Schedule 1** annexed hereto. PWP reviewed connections between both PWP and its affiliates relating to its Advisory Practice (*i.e.,* PWP Group and its subsidiaries, including PWP, Perella Weinberg UK Limited, Perella Weinberg GmbH, Perella Weinberg Partners France S.A.S., Tudor, Pickering, Holt & Co. Securities LLP and Tudor, Pickering, Holt & Co. Securities-Canada, ULC and their respective predecessors) and the Parties in Interest listed on **Schedule 1**.

18.    Specifically, PWP performed the following research and inquiries to determine whether it, or any of its Professionals or affiliates relating to its Advisory Practice, had any present or former connections with Parties in Interest:

a.    **Database**. PWP searched its databases (consisting of entities for which it has in the recent past been or is currently engaged to provide Advisory Services and entities that are currently or have in the recent past provided goods or services to PWP or its affiliates) against the list of Parties in Interest looking back a period of at least three years. The results of that search are reflected on Schedule 2 hereto. Where PWP's search of its databases identified connections with entities with names similar to names of Parties in Interest, PWP investigated whether such entities were related to such Parties in Interest and, if so, reflected such connection on Schedule 2 hereto. PWP has disclosed any known connections to the Parties in Interest, including de minimis connections. To the best of my knowledge based on the information received in PWP's connections check performed for the purposes of the Application, except as otherwise set forth herein, no relationships identified in such searches constitute interests materially adverse to the Debtors in matters upon which PWP is to be engaged in the Chapter 11 Cases.

b.    **Employee Database**. PWP searched its databases of current directorships held by its Professionals against the list of Parties in Interest. Except as otherwise disclosed herein, PWP's search of directorships indicated no relationship between any such directorships and the Parties in Interest.

c.    **Confidentiality Agreements**. PWP searched its databases of executed confidentiality agreements with third parties (other than confidentiality agreements with vendors to PWP executed in the ordinary course of business). To the best of my knowledge based on the information received in PWP's connection check performed for the purposes of the Application, no confidentiality agreement business relationship constitutes an interest materially adverse to the Debtors' estates in matters upon which PWP is to be engaged in the Chapter 11 Cases.

AMERICAS 116644669 v11

    d. **Professionals Inquiry**.  PWP inquired among Professionals in PWP's Advisory Practice whether they were aware of any actual conflict that would arise as a result of this engagement as restructuring investment banker for the Debtors, and sought information regarding other potential connections with the Debtors and the Chapter 11 Cases.  This inquiry was in the form of a firm-wide email which sought information regarding any connections or relationships with the Debtors, the Bankruptcy Judges for the Southern District of New York, or the United States Trustee or any person employed by the Office of the United States Trustee for the Southern District of New York.  As of August 24, 2022, no person contacted responded with any information regarding any such connections or conflicts, except as otherwise described in paragraphs 21-22 herein.  In addition, PWP made an additional inquiry in the form of an email to the Deal Team which sought information regarding any known connections or relationships with any of the Parties in Interest.  As of August 24, 2022, no member of the Deal Team responded with any information regarding any such connections or conflicts.  PWP will file an amended declaration if any member of the Deal Team or any other Professional responds with information regarding any such connections or conflicts.

    e. **PWP Professional Investments**.  PWP searched its databases of current direct investments held by Professionals in PWP's Advisory Practice against the list of Parties in Interest to identify any known investments by such Professionals in any Parties in Interest.  PWP's search of direct investments held by such Professionals indicated the following Parties in Interest and/or their affiliates: Adobe Inc.; Air France; AirFrance-KLM SA; Amazon; American Airlines; Atlassian Corp. plc; AT&T; Best Buy; Bill.com Holdings Inc.; Comcast; Corsair Gamin, Inc.; Costco; Costco Wholesale Corp; Dell;; Etsy Inc.; Facebook; FedEx Corp.; Home Depot; Hyatt Hotels; Intuit QuickBooks; Kohl's; Lumen; Lumen Technologies; Lyft; Microsoft; Oracle Corporation UK Limited; Party City; Ring Central Inc.; Southwest Airlines; Snowflake Inc.; Starbucks; Target Corp.; Twilio Inc.; Twitter; Uber; Udemy; United Airlines; UPS; Walgreens; Walgreens Boots Alliance Inc.; Walmart; Wyndham Hotels & Resorts Inc.; Zendesk, Inc.; and Zoom Video Communications Inc.  All such investments were in amounts representing less than 0.1% of any Party in Interest and no such investments were held by any Deal Team members.

19.    Based on the results of PWP's connections check performed for the purpose of the Application, to date, to the best of my knowledge insofar as I have been able to ascertain based on the procedures employed in PWP's review, none of myself, PWP, nor any of PWP's Professionals (a) have any material connection with the Debtors, any of the Parties in Interest, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee, or (b) holds or represents an

AMERICAS 116644669 v11

interest that is materially adverse to the interest of the Debtors' estates or any class of creditors or

equity security holders in the Chapter 11 Cases by reason of any direct or indirect relationship to,

connection with, or interest in, the Debtors, or for any other reason of which I know or about which

I have been informed, with respect to the services to be performed pursuant to the Engagement

Letter, except as disclosed or otherwise described herein.

20.     To the best of my knowledge, and based on the information received in PWP's

connections check performed for the purposes of the Application, PWP is a "disinterested person"

within the meaning of section 101(14) of the Bankruptcy Code in that, except as otherwise set

forth herein, PWP and its Professionals: (a) are not creditors of the Debtors, equity security holders

of the Debtors, or "insiders" of the Debtors, as that term is defined in section 101(31) of the

Bankruptcy Code; (b) are not and have not been, within two years before the date of the filing of

the Debtors' Chapter 11 petitions, a director, officer, or employee of the Debtors; and (c) do not

have an interest materially adverse to the interest of the Committee or the Debtors' estates, by

reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for

any other reason.

21.     In late 2021, a team of Professionals at PWP sought to be retained by Celsius

Network Limited to act as its financial advisor in connection with a potential financing transaction.

In November 2021, PWP and Celsius Network Limited executed a confidentiality agreement in

furtherance of a potential engagement.  By the middle part of 2022, third-party interest in the

transaction had faded, and PWP ceased work.  No fees were paid to, or earned by, PWP in

connection with the transaction, and no amounts are owed to PWP by Celsius Network Limited or

any other Debtor in connection with the transaction.  No Professional at PWP who worked on the

potential financing transaction is part of the team of Professionals at PWP who will provide

services to the Committee in these Chapter 11 Cases.  Out of an abundance of caution, PWP has

established a conflict wall to ensure the confidentiality of information and documentation, and to

prevent the sharing of information and documentation between the two respective teams at PWP.

22.     In response to the firm-wide inquiry described above, two Professionals in PWP's

Advisory Practice identified that they have an account with the Debtors.   One of these

Professionals has an account with a zero balance and was never funded.  The other Professional in

PWP's Advisory Practice identified that he has an account under the Debtors' "Earn" program.

Neither such Professional is a member of the Deal Team providing services to the Committee in

these Chapter 11 Cases.

23.     Some Professionals, in connection with their employment before joining PWP,

appeared or were engaged in cases, proceedings, and transactions involving attorneys, accountants,

investment bankers, financial consultants, and claimants and Parties in Interest in these Chapter

11 Cases.  To the best of my knowledge, none of these relationships relate to the Debtors or these

Chapter 11 Cases nor constitute interests materially adverse to the Debtors in matters upon which

PWP is to be engaged in these Chapter 11 Cases.

24.     As part of PWP's diverse business, PWP appears or may appear in cases,

proceedings, and transactions involving attorneys, accountants, investment bankers, and financial

consultants, some of whom may represent claimants and Parties in Interest in these Chapter 11

Cases.  Further, PWP (including its Professionals prior to their employment with the Firm) has in

the past, and may in the future, be represented by several attorneys and law firms in the legal

community, some of whom may be involved in these Chapter 11 Cases.   In addition, PWP

(including its Professionals prior to their employment with the Firm) has in the past and will likely

in the future be working with or against other professionals involved in these Chapter 11 Cases in

matters unrelated to these Chapter 11 Cases.  To the best of my knowledge, none of these relationships relate to the Debtors or these Chapter 11 Case nor constitute interests materially adverse to the Debtors in matters upon which PWP is to be engaged in these Chapter 11 Cases.

25.     Except as otherwise disclosed herein, PWP has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, the Chapter 11 Cases.  If the Court approves the proposed retention and employment of PWP by the Committee, PWP will not accept any engagement or perform any services in relation to the Chapter 11 Cases for any entity or person other than the Committee.  PWP will, however, continue to provide professional services to entities or persons that may be creditors of the Debtors or Parties in Interest in the Chapter 11 Cases or their affiliates; provided, however, that such services do not directly relate to, or have any direct connection with, the Committee, Debtors and the Chapter 11 Cases. If any new relevant facts or relationships are discovered or arise in the future, PWP will use reasonable efforts to identify such further relevant facts or relationships and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014.

26.     In light of the extensive number of the Debtors' creditors, Parties in Interest, and potential unknown additional parties in interest, neither I nor PWP are able conclusively to identify all potential relationships at this time, and we reserve the right to supplement this disclosure as additional relevant relationships come to our attention.  In particular, among other things, the Firm may have relationships with persons who are beneficial owners of Parties in Interest and persons whose beneficial owners include Parties in Interest or persons who otherwise have relationships with Parties in Interest.  Moreover, PWP employees may have relationships with Parties in Interest, persons that may become parties in interest in the Chapter 11 Cases, or persons that have business relationships with the Debtors, are competitors of the Debtors, or are customers of the Debtors.  If

18

any new material facts or relationships bearing on the matters described herein are discovered or otherwise arise during the pendency of these Chapter 11 Cases, PWP will use reasonable efforts to provide the Court with a supplemental declaration disclosing such new material facts or relationships pursuant to Bankruptcy Rule 2014(a).

*[Remainder of page intentionally left blank]*

19

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information, and belief.


Dated: August 24, 2022
New York, New York


                                              /s/  Kevin Cofsky
                                              Kevin Cofsky
                                              Partner
                                              Perella Weinberg Partners LP

AMERICAS 116644669 v11

# SCHEDULE 1

## Potential Parties in Interest

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Current and Recent Former Entities Affiliated with the Debtors |
| 1(b) | Directors/Officers |
| 1(c) | Equity Holders |
| 1(d) | Bankruptcy Professionals |
| 1(e) | Institutional Customers |
| 1(f) | Insurance |
| 1(g) | Landlords |
| 1(h) | Legal Matters and Litigants |
| 1(i) | Non-Bankruptcy Advisors and Ordinary Course Professionals |
| 1(j) | Retail Customers |
| 1(k) | Top 50 Unsecured Creditors |
| 1(l) | Taxing Authority/Governmental/Regulatory Agencies |
| 1(m) | Utilities |
| 1(n) | Vendors |
| 1(o) | U.S. Trustee Personnel, Judges, and Court contacts for the Southern District of New York |

# SCHEDULE 1(a)

## Current and Recent Former Entities Affiliated with the Debtors

Celsius (AUS) Pty Ltd. (Australia)
Celsius EU UAB (Lithuania)
Celsius KeyFi LLC
Celsius Lending LLC
Celsius Management Corp.
Celsius Mining IL Ltd.
Celsius Mining LLC
Celsius Network Europe d.o.o. Beograd (Serbia)
Celsius Network (Gibraltar) Ltd.
Celsius Network IL Ltd. – Bulgaria Branch
Celsius Network IL Ltd. (Israel)
Celsius Network Inc.
Celsius Network LLC
Celsius Network Ltd. (UK)
Celsius Networks Lending LLC
Celsius Operations LLC
Celsius Services CY Ltd. (Cyprus)
Celsius US Holding LLC
Celsius US LLC (Formerly Celsius Money)
GK8 Ltd (Israel)
GK8 UK Ltd.
GK8 USA LLC
KN Media Manager LLC

## SCHEDULE 1(b)

### Directors/Officers

Ayalor, Amir
Barse, David
Bentov, Tal
Blonstein, Oren
Bodnar, Guillermo
Bolger, Rod
Carr, Alan Jeffrey
Cohen-Pavin, Roni
Denizkurdu, Aslihan
Deutsch, Ron
Dubel, John Stephen
Goldstein, Nuke
Kleiderman, Shiran
Leon, S. Daniel
Mashinsky, Alex
Nadkarni, Tushar
Nathan, Gilbert
Ramos, Trunshedda W.
Sunada-Wong, Rodney
Tosi, Laurence Anthony

## SCHEDULE 1(c)

### Equity Holders

Advanced Technology Fund XXI LLC
Altshuler Shaham Trusts Ltd.
Andersen Invest Luxembourg SA SPF
Artus Capital GmbH & Co. KGaA
██████████████

██████████
BNK to the Future
██████████
BullPerks (BVI) Corp.
█████████████████
Caisse de dépôt et placement du Québec
█████████████████████
CDP Investissements Inc.
█████████████████
Craig Barrett Andersen Invest Luxembourg SA SPF
European Media Finance Ltd.
Fabric Ventures Group SARL
█████████████
Gumi Cryptos Capital LLC
Heliad Equity Partners GmbH & Co. KGaA
█████████████
Intership Ltd.
█████████████
JR Investment Trust



Tether International Ltd.
tokentus Investment AG
█████████████████
WestCap Celsius Co-Invest 2021 LLC
WestCap Group
WestCap SOF Celsius 2021 Aggregator LP

WestCap SOF II IEQ 2021 Co-Invest LP

## SCHEDULE 1(d)

### Bankruptcy Professionals

Akin Gump Strauss Hauer & Feld LLP
Alvarez & Marsal Holdings LLC
Centerview Partners LLC
Deloitte & Touche LLP
Ernst & Young
Latham & Watkins LLP
Stretto
White & Case LLP

# SCHEDULE 1(e)

## Institutional Customers

168 Trading Ltd.
Akuna Digital Assets LLC
Alameda Research Ltd.
Amber - Maple
Amber Technologies Ltd.
Anchorage Hold LLC
Anchorage Lending CA LLC
Antalpha Technologies Ltd.
AP Capital Absolute Return Fund
AP Capital Investment Ltd.
Auros Tech Ltd.
B2C2 Ltd.
Babel Holding Ltd.
B-Brick Inc.
BCB Prime Services Ltd.
BCRS2 LLC
Belleway Ltd.
BK Coin Capital LP
Blockchain Access UK Ltd.
Blue Fire Capital Europe Cooperatief UA
CEX IO Ltd.
CMS Holdings LLC
Coinbase Credit
Core Scientific Inc.
Cumberland DRW LLC
Dexterity Capital LLC
Digital Asset Funds Management Pty. Ltd.
Digital Treasures Management Pte. Ltd.
Diversified Alpha SP
Druk Holding & Investments Ltd.
Dunamis Trading (Bahamas) Ltd.
Dunamis Trading III Ltd
DV Chain LLC
Enigma Securities Ltd.
Equities First Holdings LLC
FalconX Ltd.
Fasanara Investments Master Fund
Flow Traders BV
Folkvang SRL
Fractal
Future Technology Investment Ltd.
Galaxy

Galaxy Digital LP
Gemini Trust Co. LLC
Genesis Global Capital LLC
Grapefruit Trading LLC
GSR Markets Ltd.
Harrison Opportunity III Inc.
HAS Futures LLC
Hehmeyer LLC
Hehmeyer Trading AG
████████████
Hodlnaut Pte. Ltd.
HRTJ Ltd.
Intership Ltd.
Iterative OTC LLC
JKL Digital Capital Ltd.
JSCT Hong Kong Ltd.
JST Systems LLC
Jump Trading LLC
Keyrock SA
Komaransky, Mike
Kronos Holdings Ltd.
LedgerPrime Digital Asset Opportunities
    Master Fund LP
Liquibit USD Market Neutral Arbitrage
    Fund
Liquidity Technologies Ltd.
LUOJI2017 Ltd.
Marquette Digital
Matrix Port Technologies Ltd.
Memetic Capital LP
Menai Markets Ltd.
Mountain Cloud Global Ltd.
Nascent GP Inc.
Nascent LP
New World Holdings SA
Nickel Digital Asset Fund SPC Digital Asset
    Arbitrage SPC Institutional
Nickel Digital Asset Master Fund SPC -
    Digital Factors Fund SP
Niederhoffer, Roy
NYDIG Funding LLC
Oiltrading.com Pte. Ltd.

Onchain Custodian Pte. Ltd.
Optimal Alpha Master Fund Ltd.
OSL SG Pte. Ltd.
Outremont Alpha Master Fund LP
Parallel Capital Management Ltd.
Pharos Fund BTC SP
Pharos Fund Eth SP
Pharos Fund SP
Pharos Fund SPC
Pharos USD Fund SP
Plutus21 Crypto Fund I LP
Point95 Global
Power Block Coin LLC
Prime Trust
Profluent Trading Inc.
Profluent Trading UK Ltd.
QCP Capital Pte Ltd.
Radkl LLC
Red River Digital Trading LLC
Reliz Ltd.
S&P Solutions Inc.
Scrypt Asset Management AG
SEBA Bank AG
Siafu Capital
Simplex
Symbolic Capital Partners Ltd.
Tagomi Trading LLC
TDX SG Pte. Ltd.
Tether International Ltd.
Three Arrows Capital Ltd.
Tower BC Ltd.
Tower Research Capital
Transfero Brasil Pagamentos SA
Trigon Trading Pty. Ltd.
TrueFi
Trustoken Inc.
Ultimate Coin
Vexil Capital Ltd.
Waterloo Maple Inc.
Weave Markets LP
Wincent Investment Fund PCC Ltd.
Wintermute - Maple
Wintermute Trading Ltd.
Wyre Payments Inc.
ZeroCap Ltd.

# SCHEDULE 1(f)

## **Insurance**

AmTrust Underwriters Inc.
ANV Insurance
Associated Industries Insurance Co. Inc.
Atlantic Insurance
Ayalon Insurance Co.
Crum & Forster Specialty Insurance Co.
Falvey Insurance Group
Hudson Insurance Group
Indian Harbor Insurance Co.
Lloyd's of London
Markel Insurance
Marsh
Migdal Insurance Co.
Relm Insurance Ltd.
Republic Vanguard Insurance Co.
Sentinel Insurance Co.
StarStone Insurance
United States Fire Insurance Co.
Zurich Insurance Group AG

# SCHEDULE 1(g)

## **Landlords**

Algo Adtech Ltd.
Desks & More
Industrious LLC
New Spanish Ridge LLC
Regus
SJP Properties

# SCHEDULE 1(h)

### Legal Matters & Litigants

BitBoy Crypto
Bofur Capital
MS SD IRA LLC
Pharos Fund
Symbolic Capital Partners Ltd.
Vexil Capital Ltd.

# SCHEDULE 1(i)

## Non-Bankruptcy Advisors and Ordinary Course Professionals

A. Georgiou & Co. LLC
Advokatu Kontora Sorainen IR Partneriai
Buckley LLP
CMS Cameron McKenna Nabarro Olswang LLP
Cryptos Capital
Finnegan Henderson Farabow Garrett & Dunner LLP
Holley Nethercote Pty. Ltd.
Jackson Lewis PC
Matsumura, Miko
McCarthy Tetrault LLP
Taylor Wessing LLP
Uría Menéndez Abogados SLP
Wilson Sonsini Goodrich & Rosati PC

## SCHEDULE 1(j)

### Retail Customers

Abeliuk, Eduardo
Abuvala, Ravi Ryan
Adams, Darryl Thomas
Al Khoori, Mohamed Yousif Ahmed H.
Alexander, Alena
Ali, Khaleef
Ali, Yanush
AltCoinTrader Pty Ltd.
████████████
Andari Co. Ltd.
Ankeney, John Charles
Ashizaki, Yuki
████████████
Baer, Matthew David
████████████
Baslaib, Mohamed Ali Mohamed Naser
Bauman, Simon
Bennett, Danyal
Berg, Henry Guyer
Berrada, Amin
BJ Investment Holdings LLC
BNK to the Future
Boroff, Dustin Charles
Boskovski, Nikola
████████████
Bressler, David Jason
Brian T. Slater Revocable Living Trust
Bright, Nicolas John
Broad Reach Consulting LLC
████████████
Bru Textiles NV
Burkgren, Eric Alan
CAEN Group LLC, The
Campos, John Jr.
Carolyn Vincent Superannuation Fund
Carter, Luke Armstrong
Champigny, Edward William
████████████
Chiu, James Lee
Chiu, Yee Lai
Choi, Linda Yi
Choi, Luke Kyung Goo

Christiansen, Robert Nathan
Chu, Cindy
Chulamorkodt, Natakom
Chung, Ting Kong Terence
Cipolloni, Mark J.
████████████
Cohen Pavon, Roni
Coinmerce BV
████████████
Conklin, Jennifer Walter
Covario AG
Crypto10 SP
████████████
Damp, Steven Charles
████████████
Davis, Otis
Deferred 1031 Exchange LLC
████████████
Delargy, Colin C.
████████████
DGL Investments LLC
Dhiraj, Mandeep
DiFiore ASA Irrevocable GST Trust
Dixon, James
████████████
Donofrio, John
████████████
Druk Project Fund
Duprex, Jeffrey Paul
Ecko, Marc
Eller, Phillip Brian
Ellington, Brian
Elshafei, Ashraf
Eng Chuan, Liew
Eriks, Dennis
████████████
████████████
Fertik, Michael Benjamin Selkowe
████████████
Fletcher, Brett
Floatzen Doo
Garner, Phillip Wayne Jr.

███████

Gatt, Raymond
Gilmer, George Hudson
Goh, Jian Kai
Gray, Jill Marie
Guljaš, Janoš
H Trussell Investments Pty. Ltd.
Halikias, Thomas T.
Hamilton, Nathan
Harrell, Ashley Anne
Hartley, James
███████
Herring, Stephen Ashley
███████

Ho, Quoc Tri
███████
Holt, Jonathon James
HOME 007 LLC
███████
Hughes, Stephen
Humphreys, Steven C.
Hunt, Bryan J.
ICB Solutions
InfoObjects Inc.
Invictus Capital Financial Technologies SPC
███████
Jahizi, Oliver
Jensen, Joseph
Jonas, Leah Nicole
Joseph, Sebastian
Juiris, Peter Casimir
Kalynovskyi, Dmytro
Kap, Ethan Garet
Keiser, Marc Vito
Kelly, James Patrick
Kevin Batteh Trust, The
Kim, Sungyoun
King, Christopher Scott
Koala 1 LLC
███████
Koyama, Osamu
Ku, Yuehsu
Labenek, Andrew
Lamplough, Howard

Langslet, Robert
Lehrfeld, Joseph S.
Lewis Davies, Ryan Wynn
Lewis, Howard
Liao, Guoping
Lim, Jane
Liu, Nanxi Nanqian
Luo, Edward
███████
Mahoney, Justin Michael
Manea, Mircea
Manzke, Holger
Marchioni, John P.
███████
Mastropieri, Bengi
Matsumura, Fumihiko
███████
Mattina, Christopher W.
McCarty, John Edward
███████
McGarry, Brian Thomas
McIntyre, Deverick
McKeon, Brian Joseph
███████
McNeil, James W.
Meehan, Kristine M.
Mellein, John Gabriel
Mercola, Joseph Michael
Messall, Patrick
MHT Super Pty. Ltd.
Miller, Samuel Garfield, Jr.
Mohan, Arun
Moon, Wang Sik
Moser, Christopher M.
███████
MSL Family Trust, The
███████
Musumeci, Antonio
Narayanan, Swathi Lakshmi Tirupattur
Neiman, Gary
Neste, Bradley
Nguyen, Phuc
███████
Pae, Mitchell Chon

Pagnanelli, Victor Carl
Palm, Travis John
████████████████
Paris Castle IV LLC
██████████
Patel, Shilla Natvarbhai
Patil, Abhitabh Aneel
████████████████
████████████████
Pham, Khai Trinh
Phonamenon Management Group LLC
Pierce, James
Pierson, Justin T.
██████████
Plutus21 Blockchain Opportunities II SP
Plutus21 Blockchain Yield I SP
Pomeranz, Alex Aaron
████████████
Pundisto, Lalana
Pusnei, Alexandru
████████████████
██████████
Reitz, Spencer Mcdowell
RHMP Properties Inc.
Ritter, David
Ritter, Linda J.
Ritter, Paul
Robert, Joseph Murdoch
Robinson, Andrew Douglas
Salera, Manuel
Schroeder, Jesse
Sese LLC
Shar, Stephen Phillip
Sidibe, Aissata
████████████████
Slater, Glen Brian
Sleeping1 LLC
Smith, David Silva
Smith, Nelson Courtney
Sondhi, Tarun
Souders, Jack Trayes
Stapleton, Paul
Steinborn, Steven Harold
Stevens, Daron Robert

████████████████
Stringer, Douglas Ross
Strobilus LLC
Sun, Siqi
Sutton, Sebastian
Swyftx Pty. Ltd.
Sypniewski, Christian
████████████
Tap Root LP
Thayer, Craig William
Thomas DiFiore Childrens GST Investment
    Irrevocable Trust
Tincher, Steven Jess
Tobias, Scott Jeffrey
████████████████
Trebtow, Jens
Tremann, Christopher Ernest
Tuganov, Ignat
████████████████
Tyler, Craig Edward
Ubuntu Love Pty. Ltd.
Valkenberg, Renaud
████████████████
Vendrow, Vlad
████████████████████
Vivas, Rafael
Wagner, Thomas Nichols
Walcott, Robert
Walkey, Thomas
Wang, Yidi
████████████████
Wierman, Duncan Craig
████████████████
Williams, Charles W.
Williams, Robert, II
Williamson, Hiram
Wiseman, Timothy
Wolf, Cody Lee
████████████████████
Woodward, Laurie
████████████████
Wu, Xinhan
Yao, Mark

Yeung, Tak H.

Young, John Martin
Yu, Byung Deok
Zhang, Xi
Zhong, Jimmy
Ziglu Ltd.
Zipmex Asia Pte. Ltd.
Zwick, Matthew James

# SCHEDULE 1(k)

## Top 50 Unsecured Creditors

Alameda Research Ltd.
AltCoinTrader Pty. Ltd.
B2C2 Ltd.

CAEN Group LLC, The

Covario AG
Crypto10 SP - Segregated Portfolio of
    Invictus Capital Financial Technologies
    SPC

Deferred 1031 Exchange LLC

ICB Solutions
Invictus Capital Financial Technologies SPC

Pharos Fund SP
Pharos USD Fund SP

Strobilus LLC

Ziglu Ltd



# SCHEDULE 1(l)

## Taxing Authority/Governmental/Regulatory Agencies

Alabama, State of, Securities Commission
Kentucky, Commonwealth of, Department of Financial Institutions
New Jersey, State of, Bureau of Securities
Texas, State of, Securities Board
United States, Government of the, Department of Justice
United States, Government of the, Securities & Exchange Commission
Washington, State of, Division of Securities

## SCHEDULE 1(m)

### <u>Utilities</u>

AT&T Inc.
Comcast Corp.
Cox Business Services LLC
EE Ltd.
Giffgaff Ltd.
Google Fiber Inc.
Hypercore Networks Inc.
Lightpath Fiber Enterprise Business Unit of Altice USA Inc.
Lumen Technologies Inc.
RingCentral Inc.
Spectrum Enterprises Inc.
Verizon Wireless Telecom Inc.

## SCHEDULE 1(n)

### Vendors

1-800 Flowers.com Inc.
1-800-GOT-JUNK? LLC
192 Business Experian
192 Business Ltd.
221B Partners
3 Verulam Buildings Barristers
4imprint Group plc
9Beach Latin American Restaurant LLC
A. Georgiou & Co. LLC
A1 Express Ltd.
A23 Boutique Hotel
A24 Ltd.
A2E
Abacus
Abacus Labs Inc.
ABF Freight System Inc.
Accretive Capital LLC
Acrion Group Inc.
Ada Support Inc.
Adobe Inc.
ADTRAV Corp.
Agile Freaks SRL-D
AgileEngine LLC
AGS Exposition Services Inc.
Ahrefs Pte. Ltd.
Ainsworth Inc.
Air Essentials Inc.
Air France-KLM SA
Air Serbia
Airspeed18 Ltd.
Akerman LLP
Akin Gump Strauss Hauer & Feld LLP
Alaric Flower Design
Alaska Air Group Inc.
Alba Invest Doo
ALCHEMIQ Catering
Alex Fasulo LLC
Algo Adtech Ltd.
AlgoExpert
Alitalia Compagnia Aerea Italiana SpA
AlixPartners LLP
Allianz Global Assistance SAS

Aloft Hotel Management Inc.
ALPHA Events Ltd.
AlphaGraphics Inc.
Amazon.com Inc.
American Airlines Group Inc.
American Family Connect Property &
    Casualty Insurance Co.
American Lock & Key Inc.
Amon Card Ltd.
Amon OU
Amplicy Ltd.
Amsalem Tours & Travel Ltd.
Andersen LLP
Any.Do Ltd.
Appbot
Apple Search Ads
Apple Search Advertisements
Apple Store
AppsFlyer Inc.
Aqua Kyoto Ltd.
Arlo SoHo Hotel
Arocon Consulting LLC
ArtDesigna
Ashby & Geddes
Aston Limo Service
AT&T Inc.
Athlonutrition S.S
Atlassian Corp. plc
Atom Exterminators Ltd.
August LLC
Auth0 Inc.
AutomationEdge Technologies Inc.
Avaya Inc.
AVL Services LLC
Azmi & Associates
B&C Camera
B&H Foto & Electronic Corp.
BambooHR LLC
Bamboozle Café
BCAS Malta Ltd.
BCL Search Inc.
Bellwood Global Transportation

Benjamin, The
Best Buy Co. Inc.
Best Name Badges
Big Cartel LLC
Bill.com Holdings Inc.
BIND Infosec Ltd.
Bionic Electronics HT Ltd.
BirchamsArt
BitBoy Crypto
Bitfinex
Bitfly Ltd.
Bitfo Inc.
BitGo Inc.
Bitmain Technologies Ltd.
Bittrex Global GmbH
Bitwave
Blacklane GmbH
Blackpeak Inc.
Blake & Co.
Block Solutions Sdn Bhd
Blockchair Ltd.
Blockdaemon Ltd.
BlockWorks Group LLC
Bloomberg Finance LP
Bloomberg Industry Group
Blue Edge Bulgaria EOOD
Blue Moon Consultants International Ltd.
Blue Rock Search LLC
BlueVoyant Israel Ltd.
Board Game Designs
Bob Group Ltd.
Bolt Food
Bookyourcovidtest.com
Boston Coach Corp.
Brave Software International
Brazen Head Irish Pub
Brendan Gunn Consulting Group
British Airways plc
Brooklyn's Down South
BrowserStack Inc.
BTC 2022 Conference
BTC Media LLC
Budget Rent A Car Ltd.
Bulwerks LLC
Bulwerks Security
██████████████

Buzzsprout
C Street Advisory Group
Cablevision Lightpath LLC
Calendly LLC
California, State of, Department of Financial
   Protection and Innovation
CAN Mouzouras Electrical Contractors
Canva Inc.
Caola Co. Inc.
Capitol Hill Hotel
Caplinked Inc.
Carey Executive Transport
Carithers Flowers
Carmo Cos.
Carta Inc.
Caspian Holdings Ltd.
CAYO Rafał Molak
CDPQ US Inc.
CDW Corp.
Chain of Events SAS
Chainalysis Inc.
Chamber of Digital Commerce, The
Chick-fil-A Inc.
Chief
██████████████
Cision US Inc.
CitizenM Operations Holding BV
Cleverbridge AG
Click and Play - Conteudos Digitais Lda
ClubCorp Holdings Inc.
CMS CMNO LLP
CoderPad Inc.
Coffee Distributing Corp.
Cogency Global Inc.
CoinDesk Inc.
Coinfirm Ltd.
Coinlend GmbH
CoinMarketCap OpCo LLC
CoinRoutes Inc.
College Investor LLC, The
Comcast Corp.
Compliance Risk Concepts LLC
Concorde Hotel Ltd., The
Consensus Sales Inc.
ConsenSys AG
Constantinou, Elpida

Consumer Technology Association
Contentful Inc.
Cooper Global Ltd.
Coppell FC
Core Club, The
Core Scientific Inc.
Corsair Gaming Inc.
Costco Wholesale Corp.
Coursera Inc.
Cox Business Services LLC
Creative Video Productions Ltd.
Creditor Group Corp.
Creel, Garcia-Cuellar, Aiza y Enriquez SC
Crelin Peck Consulting LLC
CRP Security Systems Ltd.
Crypto Fiend
Crypto Love
CryptoDailyYT Ltd.
CryptoRecruit Pty. Ltd.
CryptoWendyO
CSC
CT Corp.
C-Tech Constandinos Telecommunication
    Ltd. Co.
████████████████
Curb Mobility LLC
CVS Pharmacy Inc.
Cyesec Ltd.
CYTA Ltd.
D'Albert, Matthew
Dalvey & Co.
Dan Hotels Ltd.
Daniel J. Edelman Inc.
Data Dash Inc.
Data4U Ltd.
Datapoint Surveying & Mapping
David Meltzer Enterprises
David Rabbi Law Firm
DBeaver
Dealex Moving LLC
Dearson Levi & Pantz PLLC
Decentral Media Inc.
DeepL SE
Del Friscos Grille
Delaware, State of Division of Corporations
Dell

Deloitte Tax LLP
Delta Air Lines Inc.
Demetriou, Adonis
Derriere's Gentleman's Club
Desk doo
Dezenhall Resources Ltd.
DHL
Digital Asset News LLC
Diplomat Resort, The
DNSFilter Inc.
Do Not Sit On The Furniture
Docker Inc.
DoiT International
DoiT International UK & I Ltd.
DoorDash Inc.
Dow Jones & Co. Inc.
Dragos DLT Consulting Ltd.
DRB Hosting Ltd. (Deribit)
Dream Hotels
Dribbble Holdings Ltd.
DSV AS
Dune Analytics AS
Dynasty Partners Ltd.
E.R. Bradleys Saloon
Eagle County Regional Airport
Ecrime Management Strategies Inc.
Edgewater Advisory LLC
EE Ltd.
Egon Zehnder International Inc.
El Al Israel Airlines Ltd.
Elements Massage Ltd.
Elite Marketing Group LLC
Elmwood Design Ltd.
Emanuel Clodeanu Consultancy SRL
Embassy Suites Hotels
Emirates Group, The
Enginuity on Call
EnjoyMaloy Trade Party
Enlightium Ltd.
ENSafrica
Enterprise Digital Resources Ltd.
Enterprise Rent-A-Car Co. Inc.
Epitome Capital Management Pty. Ltd.
████████████████
Estate of Edward W. Price, Jr.
Etsy Inc.

Eversheds Sutherland
EXDO Events Center
Expedia Group Inc.
Expo Group Inc, The
Exquisite Sounds Entertainment
EY
ezCater Inc.
Facebook
Fairmont Austin Lodging
FalbaSoft Cezary Falba
Falkensteiner Hotels & Residences
Fatal Ltd.
FatCat Coders
Fattal Hotels Ltd.
FedEx Corp.
Female Quotient LLC, The
Fibermode Ltd.
Filmsupply LLC
Financial Times Group Ltd.
FiNext Conference
FingerprintJS Inc.
Finnegan Henderson Farabow Garrett
    Dunner LLP
First Class Vending Inc.
Fixer.io
Flixel Inc.
Flonights Ltd.
Flowroute LLC
FluXPO Media
Flyday Consultancy
Forkast Ltd.
Forter Inc.
Frame.io Inc.
Freeman
Fromday-One BV
Frontend Masters
FSCom Ltd.
Fusion Bowls
G&TP Sweden AB
Gandi SAS
Gartner Inc.
GEA Ltd.
Gecko Labs Pte. Ltd.
Gecko Technology Partners Ltd.
GEM
Gett Inc.

Giftagram USA Inc.
Gila Dishy Life Coach LLC
Gilbert + Tobin
GitBook SAS
GitHub Inc.
GitKraken
GK8 Ltd.
Glovo
GoDaddy.com
Gogo Air International SARL
Goin' Postal
Google Ads
Google Cloud
Google Fi
Google Fiber
Google LLC
Google Play
Google Workspace
GoToAssist
Grammarly Inc.
GreyScaleGorilla
Grit Daily News
GrubHub Inc.
GuardianArc International LLC
H2Prod
Halborn Inc.
Hampton Inn
HanaHaus
Handel Group LLC
Harris-Harris Group LLC, The
Haruko Ltd.
Hattricks Tavern
Headway Workforce Solutions Inc.
Healthy Horizons Ltd.
Heathrow Express Operating Co. Ltd.
Hedgeguard
HeleCloud Ltd.
HelpSystems LLC
Henriksen-Butler Nevada LLC
Hertz Corp., The
Herzog Fox & Neeman
Highlight Films Ltd.
Hilton Worldwide Holdings Inc.
HireRight LLC
HMRC Shipley
Holland & Knight LLP

Home Depot Inc., The
Hootsuite Inc.
Horasis
Hotel Da Baixa Prata Lda.
Hotel Majestic
Hotel Midtown Atlanta
Hotels.com
Hudson Standard, The
Hyatt Hotels Corp.
Hysolate Ltd.
I.A.M.L Ltd.
Ideal Communications Inc.
Idemia Group SAS
Illumiti Corp.
Incorporating Services Ltd.
Indian Eagle
Information, The
Infura Inc.
InGenie Ltd.
Innovatica LLC
Inside.com Inc.
Insider Inc.
Insperity Inc.
Instacart
Integrated Security & Communications Inc.
Intelligo Group USA Corp.
Intercontinental Hotel Group plc
Intercontinental Miami
Intertrust NV
Intuit Inc.
InvestAnswers
ip-api
IPQualityScore
IST NY Inc.
Iterable Inc.
Ivan on Tech Academy
Jackson Lewis LLP
Jaffa Hotel, The
JAMS Inc.
Jarvis Ltd.
JB Hunt Transport Services Inc.
JetBlue Airways Corp.
JetBrains sro
Joberty Technologies
John Lewis & Partners
JSC Royal Flight Airlines

Juliet International Ltd.
Jumpcut 3D
Juniper Office
Junk Masterz LLC, The
Junkluggers LLC, The
JV Associates Inc.
K.F.6 Partners Ltd.
Kairon Labs BV
KALC LLC
Kanoo Pays
Keeper Security
Kenetic Trading Ltd.
Kerry Hotel HongKong
KeyFi Inc.
Kforce Inc.
Kif, Evgeni
Killian Firm PC, The
Kimpton Surfcomber Hotel
KINTSUGI, Unipessoal Lda.
Knobs BAC
Kohl's
Korn Ferry
Koutra Athos Sotiris
Krispy Kreme
Kroll Advisory Ltd.
L&L Moving Storage & Trucking LLC
La Maison Favart
████████████
Las Vegas Window Tinting
Latham
LaunchDarkly
Lawn Care
LawnStarter
Leaa
Left House, The
Lima, Esther
Line Group
LinkedIn Corp.
LinkedIn Ireland Unlimited Co.
Lithify Ltd.
Locate852
Loews Hotels
Logitech
Logshero Ltd.
Logz.io
LS Future Technology AB

Lucidchart
Lucille's Smokehouse Bar-B-Que
Lufthansa Deutsche
Lumen
Lunar Squares
LVC USA Inc.
Lyft
Madison Liquidators
MadRev LLC
Makarim & Taira S.
Maltego Technologies
Mambu Tech BV
Mammoth Growth LLC
Mandarin Oriental Hotel
Manhattan Bagel
Manzo's Suites
Maren Altman FZCO
Marios Locksmith Ltd.
Marriott Hotels & Resorts
Marsh USA
Maxon Corp.
Mayami Mexicantina
Mazars LLP
Mazars Ltd.
McCarthy Tetrault LLP
McLagan Partners Inc.
MCM 965
mDesign Holdings Ltd.
MediaOne Partners
Melio
Memorisely
Metropol Palace
MF Partners Ltd.
MFA Network
MGM Grand Hotel LLC
Miami Beach Convention Center
Michael Page International Inc.
Michaels Cos. Inc., The
Microsoft Azure Inc.
Microsoft Corp.
Million Roses, The
MINDS
Minuteman Press International Inc.
Mixed Analytics
Mixpanel Inc.
Momentum Media Group

Monarch Blockchain Corp.
Monday.com Ltd.
MOO Print Ltd.
Moralis Academy
Morris Manning & Martin LLP
Moschoulla Patatsou Christofi
Motion Array
Motion Design School Co.
Move 4 Less LLC
MTA SpA
Music 2 the Max
MVP Workshop
Myers-Briggs & Co. Inc.
MythX
Namecheap Inc.
National Office Interiors & Liquidators
National Railroad Passenger Corp.
Nationwide Multistate Licensing System &
   Registry
Navex Global Inc.
NBC Universal
Necter
Nevada Sign
New Spanish Ridge LLC
New York Times Co., The
Next Web Events BV, The
NextGenProtection
NICE Systems UK Ltd.
Nico Signs Ltd.
NordLayer
Nordlogic Software SRL
Nordstrom Inc.
Nossaman LLP
Notability Partners
Notarize
Nothing Bundt Cakes
Nuri
NuSources
Nyman Libson Paul LLP
OAKds Inc.
Ocean View Marketing Inc.
Office Depot
Office Movers Las Vegas
Office Star B2B Ltd.
OfficeSpace Software Inc.
OfficeVibe

OKEx
Onchain Custodian Pte. Ltd.
Onfido
Onfido Inc.
Onfido Ltd.
Optimizely Inc.
Oracle Corp. UK Ltd.
Otter.ai
OVF Customer.io LLC
PABXL
Pack & Send
Paddle
Pagliara Entertainment Enterprises LLC
Palantir Security Ltd.
Panasonic Avionics Corp.
Panera Bread
Panorays Ltd.
Papaya Global HK Ltd.
Park MGM Las Vegas
Park Plaza Hotels
Parklane Resort & Spa
Party City
Paxful Inc.
Payplus by Iris
Payplus Ltd.
Peas Recruitment Ltd.
Peninsula Business Services Ltd.
Phase II Block A South Waterfront Fee LLC
Photo Booth Vending
Plaid Inc.
Pluralsight Inc.
Polihouse Boutique Hotel
Polyrize Security Ltd.
Portswigger Ltd.
Postman Inc.
Postmates Inc.
Practising Law Institute Inc.
Premaratne, Inesha
Premier Due Diligence LLC
Premium Beat
Prescient
PRG U.S. Inc.
Print Hoboken LLC
Printful Inc.
Priority Power
Pro Blockchain Media LLP

Proof of Talent LLC
Protect Operations Ltd.
PSE Consulting Engineers Inc.
PSJ Kanaris Enterprises Ltd.
PTI Office Furniture
PubliBranco
Pure Marketing Group Corp.
Puressence Ltd.
Quality Inn & Suites Hotel
Quantstamp Inc.
Quoine Pte. Ltd.
RA Venues at Churchill War Rooms
Rails Tech Inc.
Real Vision Group
Rebecca Sweetman Consulting Ltd.
Reddit Inc.
Redk CRM Solutions Ltd.
Reflectiz Ltd.
Regus Management Group LLC
reMarkable AS
Residence Inn
Resources Global Professionals
Restream.io
Retool Inc.
Rever Networks Inc.
RFO Conferences Organizing LLC
RingCentral Inc.
Ritz-Carlton, The
Rosewood Hotel & Resorts LLC
Rothschild TLV
Royal Mail plc
Royalton Hotel
Sabana Labs SL
Saffron Indian Cuisine
Saint Bitts LLC
Sam's Club
Sam's Limousine & Transportation Inc.
SAP America Inc.
Schoen Legal Search
ScraperAPI
Seamless
SecureDocs Inc.
Securitas Security Services USA Inc.
Segment Inc.
Selfridges
SendSafely

Sentry
Sevio FZC
SewWhatAndWear
Sheraton Hotels
Shutters on the Beach
Shutterstock
Silhouette Building, The
Similarweb Inc.
SJP Properties General Construction
Sketch BV
Skew Ltd.
Slack Technologies LLC
SlideTeam
Small Pocket Video
Smart City Networks LP
Smartcontract Inc.
SMSF Association
Snowflake Inc.
So & Sato Law Office
Soho Beach House
SolarWinds
████████████████████
SonarSource
South City Kitchen
Southwest Airlines
Sovos Compliance
SP V1CE Ltd.
Spears Electric
Spectrum
Sponsor United
Sports1ternship LLC
SpotHero
Standard Restaurant Equipment Co.
Staples
Starbucks
Statusgator
Stephanos Greek & Mediterranean Grill
Stuart Tracte Photography
Studio ViDA
Sublime HQ Pty. Ltd.
SuperSonic Movers LLC
Surety Solutions
Swag.com
Swept Cleaning Service of Austin
Swiss International Air Lines Ltd.
SXSW LLC

Synapse Florida
Syndic Travel
TAAPI.IO sro
Tableau Software LLC
Talking Cocktails
Tampa Printer
Target Corp.
TaskRabbit
TaxBit Inc.
Taylor Wessing LLP
TCL Publishing Ltd.
Teamz Inc.
Tembo Embroidery & Custom Merchandise
Ten Manchester Street Hotel
Tenderly doo
Terra Panonica
TET Events LLC
Thimble Insurance
Thomson Reuters
Thunderclap LLC
Titan Office Furniture Ltd.
T-Mobile US Inc.
TokenTalk Ltd.
Toll Free Forwarding
Toolfarm
Towers Watson Ltd.
Trade Group Inc., The
TradingView Inc.
TransUnion
Trash Cans Warehouse
TRD Comm
Trello Inc.
Trovata Inc.
Trustpilot Inc.
TubeBuddy
Turkish Airlines
Twenty84 Solutions
Twilio Inc.
Twitter Inc.
Uber
Uber Eats
Udemy Inc.
Uline Inc.
Unbound Tech Ltd.
Unifire Extinguishers Ltd.
United Airlines

University Arms Hotel
Unstoppable Domains Inc.
UPS
Upstager Consulting Inc.
UrbanStems Inc.
USA Strong Inc.
UsabilityHub Pty. Ltd.
UsaStrong.io
USPS
V3 Digital Ltd.
Valere Capital
Vanguard Cleaning Systems of Las Vegas
Varonis Systems Inc.
VCU Blockchain
Vercel Inc.
Verified First LLC
VerifyInvestors.com
Verizon Wireless
Vert & Blanc Enterprises Ltd.
Viasat Inc.
Virtru Corp.
Virtual Business Source Ltd.
Virtually Here For You Ltd.
Vivid Edge Media Group
Volta Systems Group
VoskCoin LLC
VSECNOW Ltd.
Walgreens Boots Alliance Inc.
Wall Street Journal
Walmart Inc.
Warwick Hotel Ltd.
Wayfair Inc.
WCEF LLC
West Coast Pure Water LLC
WestCap Management LLC
Whirling Dervish Productions
Wilde Aparthotels
Wings Hotel, The
Wintermute Trading Ltd.
Wolf Theiss
Wolt
Wolters Kluwer NV
Workland
Workspace Management Ltd.
World Economic Forum
WP Engine Inc.

Wyndham Hotels & Resorts Inc.
Wynn Las Vegas
Yellowgrid
yellowHead Ltd.
Yohann
YouTube Premium
Zapier.com
Zegans Law Group Pllc, The
Zendesk Inc.
Zeplin Inc.
Zoho Corp.
Zoom Video Communications Inc.
Zubtitle LLC
Zuraz97 Ltd.

# SCHEDULE 1(o)

## U.S. Trustee Personnel, Judges, and Court Contacts for the Southern District of New York

Abriano, Victor
Arbeit, Susan
Beckerman, Lisa G.
Bruh, Mark
Chapman, Shelley C.
Cornell, Shara
Drain, Robert D.
Gannone, James
Garrity, James L., Jr.
Glenn, Martin
Harrington, William K.
Higgins, Benjamin J.
Higgins, David S.
Jones, David S.
Joseph, Nadkarni
Lane, Sean H.
Masumoto, Brian S.
Mendoza, Ercilia A.
Moroney, Mary V.
Morris, Cecelia G.
Morrissey, Richard C.
Ogunleye, Alaba
Riffkin, Linda A.
Rodriguez, Ilusion
Schwartz, Andrea B.
Schwartzberg, Paul K.
Scott, Shannon
Sharp, Sylvester
Tiantian, Tara
Velez-Rivera, Andy
Vescovacci, Madeleine
Wells, Annie
Wiles, Michael E.
Zipes, Greg M.

## <u>SCHEDULE 2</u>

**Engagements with Potential Parties in Interest**

| Party in Interest | Relationship to Debtors | Relationship to PWP Advisory Practice |
|---|---|---|
| Akin Gump Strauss Hauer Feld LLP | Bankruptcy Professionals | Vendor |
| AlphaGraphics Inc. | Vendor | Vendor |
| Alvarez & Marsal Holdings LLC | Bankruptcy Professionals | Vendor Affiliate |
| Amazon.com Inc. | Vendor | Vendor |
| AT&T Inc. | Vendor; Utilities | Vendor Affiliate |
| Atlassian Corp. plc | Vendor | Vendor Affiliate; Client |
| Cablevision Lightpath LLC | Vendor | Vendor Affiliate |
| CDW Corp. | Vendor | Vendor Affiliate |
| Cision US Inc. | Vendor | Vendor |
| Coffee Distributing Corp. | Vendor | Vendor |
| Cogency Global Inc. | Vendor | Vendor |
| Comcast Corp. | Vendor; Utilities | Vendor |
| CT Corp. | Vendor | Vendor |
| Dell | Vendor | Vendor |
| DHL | Vendor | Vendor |
| Deloitte Tax LLP | Vendor | Vendor Affiliate |
| Deloitte & Touche LLP | Bankruptcy Professionals | Vendor |
| Delta Air Lines Inc. | Vendor | Client |
| Dow Jones & Co. Inc. | Vendor | Vendor |
| Egon Zehnder International Inc. | Vendor | Vendor Affiliate |
| The Emirates Group | Vendor | Vendor Affiliate |
| Ernst & Young | Bankruptcy Professionals | Vendor Affiliate |

| FedEx Corp. | Vendor | Vendor Affiliate |
| Financial Times | Vendor | Vendor Affiliate |
| Gartner Inc. | Vendor | Vendor |
| Google Ads | Vendor | Client Affiliate |
| Google Cloud | Vendor | Client Affiliate |
| Google Fi | Vendor | Client Affiliate |
| Google Fiber Inc. | Vendor; Utilities | Client Affiliate |
| Google LLC | Vendor | Client Affiliate |
| Google Play | Vendor | Client Affiliate |
| Google Workspace | Vendor | Client Affiliate |
| GrubHub, Inc. | Vendor | Vendor |
| HelpSystems LLC | Vendor | Vendor Affiliate |
| HireRight LLC | Vendor | Vendor |
| HMRC Shipley | Vendor | Vendor |
| Holland & Knight LLP | Vendor | Vendor |
| Intertrust NV | Vendor | Vendor Affiliate |
| Keeper Security | Vendor | Client |
| Kirkland & Ellis LLP | Bankruptcy Professionals | Vendor |
| Korn Ferry | Vendor | Vendor |
| Latham & Watkins LLP | Bankruptcy Professionals | Vendor |
| LinkedIn Corporation | Vendor | Vendor |
| Lufthansa Deutsche | Vendor | Client |
| McLagan Partners Inc. | Vendor | Vendor |

| | | |
|---|---|---|
| Microsoft Corp. | Vendor | Vendor Affiliate |
| Navex Global Inc. | Vendor | Vendor |
| OfficeSpace Software Inc. | Vendor | Vendor |
| Office Depot | Vendor | Client Affiliate |
| Pluralsight Inc. | Vendor | Vendor |
| Practising Law Institute Inc. | Vendor | Vendor |
| Seamless | Vendor | Vendor Affiliate |
| SolarWinds | Vendor | Vendor |
| Staples | Vendor | Vendor |
| T-Mobile US Inc. | Vendor | Vendor; Client |
| Tableau Software, LLC | Vendor | Vendor |
| Texas State Securities Board | Taxing Authority/Governmental/ Regulatory Agencies | Vendor |
| Thomson Reuters | Vendor | Vendor Affiliate |
| Towers Watson Limited | Vendor | Vendor Affiliate |
| Uber | Vendor | Vendor Affiliate |
| Uber Eats | Vendor | Vendor Affiliate |
| Uline Inc. | Vendor | Vendor |
| UPS | Vendor | Vendor |
| Verizon Wireless | Utilities | Vendor |
| White & Case LLP | Bankruptcy Professionals | Vendor |
| Wolters Kluwer NV | Vendor | Vendor Affiliate |
| Young, John Martin | Retail Customer | Vendor |

| Zoho Corp. | Vendor | Vendor |
|---|---|---|
| Zurich Insurance Group AG | Insurance | Vendor Affiliate |

# EXHIBIT C

## Engagement Letter



767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

August 24, 2022

The Official Committee of Unsecured Creditors of Celsius Network LLC., *et al.*
c/o White & Case LLP
1221 Avenue of the Americas
New York, NY 10020

Dear Ladies and Gentlemen:

This letter agreement ("Agreement") confirms the terms under which Perella Weinberg Partners LP (together with its affiliates, "Perella Weinberg Partners," "we" or "us") has been engaged to provide investment banking services to the Official Committee of Unsecured Creditors (the "Committee," or "you") appointed in the Chapter 11 cases (the "Bankruptcy Cases") of Celsius Network LLC (together with its subsidiaries, the "Company", or the "Debtors"),[1] which Bankruptcy Cases are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

The matters referred to in this letter constitute our "Engagement." This Agreement shall be effective as of August 2, 2022 ("Engagement Date").

1.    Services to be Rendered.  If requested by you, we shall perform the following financial advisory services:

(a)    Familiarize ourselves with the business, operations, liquidity situation, assets and liabilities, financial condition and prospects of the Company;

(b)    Review, analyze and report to you with respect to the Company's financial condition and outlook;

(c)    Evaluate the Company's debt capacity in light of its projected cash flows;

(d)    Review and provide an analysis of any valuation of the Company or its assets;

---

[1]    It is expressly understood and agreed that all references to obligations of the Debtors under the terms of this Agreement, including all attachments hereto, shall be obligations of the Debtors pursuant to the terms of a Retention Order (as defined herein).

(e)    Review and provide an analysis of any proposed capital structure for the Company;

(f)    Advise and attend meetings with you related to the Company as well as due diligence meetings with the Company or other third parties as appropriate;

(g)    Advise and assist your evaluation of the Company's near-term liquidity including various financing alternatives;

(h)    Review, analyze and advise you with respect to the existing debt structure of the Company, and refinancing alternatives to existing debt;

(i)    Explore alternative strategies for the Company as a stand-alone business;

(j)    Develop, evaluate and assess the financial issues and options concerning any proposed Transaction (as defined below);

(k)    Analyze and explain any Transaction to you;

(l)    Assist and participate in negotiations with the Company on your behalf;

(m)    Participate in hearings before the Bankruptcy Court with respect to the matters upon which we have provided advice and/or analysis, including, as relevant, coordinating with the Committee's counsel with respect to any fact or expert testimony in connection therewith;

(n)    Provide such other financial advisory services in connection with this matter as you may from time to time reasonably request and which are customarily provided by investment bankers in similar situations.

As used herein, the term "Transaction" means the consummation of any of the following, whether through one transaction or a series of transactions:

(i)    A confirmed Chapter 11 plan of reorganization going effective or conversion to Chapter 7 or any other liquidation of the Debtors in connection with the Bankruptcy Cases under title 11 of the United States Code (the "Bankruptcy Code");

(ii)    Any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which any of the Debtors is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders) (any of the foregoing, a "Purchaser");

2

(iii)     The acquisition, directly or indirectly, by a Purchaser (or by one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise) outside the ordinary course of the Debtors' business, in a single transaction or a series of transactions, of (x) all or substantially all of the assets or operations of the Debtors; or (y) all or substantially all of outstanding or newly issued shares of the Debtors' capital stock (or any securities convertible into, or options, warrants or other rights to acquire such capital stock);

(iv)     Any other sale, transfer and assumption of all or substantially all of the assets or liabilities of the Debtors (including, without limitation, any consolidation or merger involving the Debtors); and/or

(v)     The issuance, (a) whether public or private, of debt and/or equity securities for the Debtors or (b) of such other financing of any type raised to complete any transaction, to the extent that the proceeds from any such financing(s) are used to repay or refinance (in full or in part) the Debtors' unsecured claims.

Notwithstanding anything contained in this Agreement to the contrary, we shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party.   We make no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Transaction.   We are retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement.   Our Engagement does not encompass providing "crises management."

The services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by us at the request of the Committee, as the case may be, or any other specific services not set forth in this Agreement.   The terms and conditions of such services, including compensation and arrangements, would be set forth in a separate written agreement between us and the Committee, as the case may be.

2.     <u>Compensation</u>.  As compensation for our services, we will be paid in cash, by wire transfer of immediately available funds when due, the following fees (individually or collectively, "<u>Fees</u>"):

(a)     <u>Monthly Advisory Fee</u>.  A monthly advisory fee of $100,000 for each month of the Engagement ("<u>Monthly Fee</u>"), prorated for any partial month, due and payable commencing on the Engagement Date; plus

(b)     <u>Transaction Fee</u>.  A transaction fee (the "<u>Transaction Fee</u>") of $5,750,000, payable promptly upon consummation of such Transaction.

3.      Expenses.   In addition to our Fees for professional services, we will be promptly reimbursed for all of our documented, out-of-pocket expenses ("Expenses"), including, but not limited to, professional and legal fees, charges and disbursements of our legal counsel, any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this letter, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services.   The Debtors' obligation to reimburse Expenses incurred by us in connection with the Engagement will survive the completion or termination of the Engagement.

4.      Payment.   We shall invoice the Debtors for fees and expenses under this Agreement in accordance with the fee procedures ordered by the Bankruptcy Court.   We acknowledge that all compensation to be paid under this Agreement will be subject to the Bankruptcy Court's review and approval, after notice and a hearing, and that none of the Committee, its individual members, its counsel or its other advisors will be liable for any such amounts.

The Committee acknowledges that in light of our experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by us in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the market rate for professionals of our stature in the restructuring market generally, the Fees are just and reasonable and fairly compensate us for our services performed hereunder.

5.      Indemnification.   The Committee acknowledges that we have been retained hereunder solely as an independent contractor and that nothing in this Agreement or the nature of our services shall be deemed to create a fiduciary or agency relationship between us and any of the Committee, the Debtors or their equity holder(s), employees or creditors.   In order to induce us to accept the Engagement, the Committee agrees to the exculpation provisions, and the Debtors shall or be deemed to agree to the indemnity, exculpation provisions and other matters set forth in Annex A hereto, which forms a part of and is incorporated by reference into the Agreement. Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations the Company set forth in Annex A, the Company will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in Annex A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case, in an amount and upon terms and conditions reasonably satisfactory to us and the Company. The terms and provisions of this paragraph 5 and of Annex A shall survive the completion or termination of the Engagement.

6.      Court Approval.   The Committee shall use commercially reasonable efforts to promptly apply to the Bankruptcy Court for the entry of an order approving, pursuant to sections 1103 and 328 of the Bankruptcy Code, (a) this Agreement and (b) Perella Weinberg Partners' retention by the Committee under the terms of this Agreement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other

standard of review, including under section 330 of the Bankruptcy Code. Perella Weinberg Partners shall have no obligation to provide any services under this Agreement unless Perella Weinberg Partners' retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Perella Weinberg Partners in all respects (the "Retention Order"). Perella Weinberg Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Committee, Perella Weinberg Partners' Fees and Expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and applicable fee and expense guideline orders. If the Retention Order authorizing the employment of Perella Weinberg Partners is not obtained, or is later reversed, modified or set aside for any reason, Perella Weinberg Partners may terminate this Agreement, and the Debtors' estates shall, to the full extent permitted by law, promptly reimburse Perella Weinberg Partners for all Fees and Expenses due hereunder, including any Fees due or that become due under the Tail Period (as defined below). The terms of this Section 6 are solely for the benefit of Perella Weinberg Partners, and may be waived, in whole or in part, only by Perella Weinberg Partners.

7.    Expertise.   The Committee acknowledges and agrees that Perella Weinberg Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of our Engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Committee of our services hereunder could not be measured merely by reference to the number of hours to be expended by our professionals in the performance of such services. The Committee also acknowledges and agrees that the various fees set forth herein have been agreed upon by the Committee and Perella Weinberg Partners in anticipation that a substantial commitment of professional time and effort will be required of us and our professionals hereunder over the life of the Engagement, and in light of the fact that such commitment may foreclose other opportunities for us and that the actual time and commitment required of us and our professionals to perform their services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which we may be required to address in the performance of our services hereunder, our commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for our services for engagements of this nature the Committee agrees that all of the fee arrangements specified herein are commercially reasonable.

8.    Information; Cooperation.   In connection with the Engagement, the Committee acknowledges that we will need the cooperation of the Debtors to provide us with access to the Debtors' officers, directors, employees, accountants, legal advisors, and other representatives (collectively, "Representatives"), and to furnish us and cause their Representatives to furnish us with such information as we believe appropriate for the Engagement (all such information so furnished, the "Information"). The Committee recognizes and confirms that we (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing its services without having independently verified the same and (b) do not assume responsibility for the accuracy or completeness of the Information and such other information. The Committee acknowledges and agrees that the Debtors and their Representatives will be solely responsible for ensuring that any

Information provided by the Debtors and their Representatives, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Committee will, as promptly as reasonably practicable, notify us if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to us.

9.    <u>Work Product</u>.    All documents, materials or information of any kind created by us in connection with the Engagement, including, without limitation, any written reports, memoranda, analyses, work papers or status summaries, whether or not delivered to the Committee, are work product (collectively, "<u>Work Product</u>"). All Work Product shall be owned and maintained by us. The Committee agrees not to use any Work Product except in connection with any transaction contemplated by this Agreement or otherwise within the scope of the Engagement, and not for any other purpose. Our Work Product may not be relied upon by any other person including, but not limited to, any security holder, the Debtors, or any of their employees or creditors, and may not be used or relied upon for any other purpose. The Committee may not publicly disclose, summarize, excerpt from or otherwise refer to any Work Product rendered by us, whether formal or informal, without our prior written consent.

10.    <u>Confidentiality</u>. The Committee may not publicly disclose, summarize, excerpt from or otherwise refer to any advice rendered by us, whether formal or informal, without our prior written consent; <u>provided</u>, <u>however</u>, that the foregoing shall not apply to any advice that becomes publicly available other than as a result of the breach by the Committee of the undertakings hereunder, or that the Committee or the Debtors are required to disclose by judicial or administrative process in connection with any action, suit, proceeding or claim including in connection with the Bankruptcy Cases. The Committee's obligations under this section will survive the completion or termination of the Engagement.

We will not be providing the Committee with, and the Committee will not look to us for, tax, legal, accounting or other similar advice and we agree that nothing in this Agreement is intended to impose any conditions of confidentiality within the meaning of Section 6111 of the Internal Revenue Code of 1986, as amended, or US Treasury Regulation Section 1.6011-4. The Committee may disclose to any and all persons, without limitation of any kind, the United States tax treatment (federal, state and local) and tax structure of any transaction and all materials of any kind relating to such tax treatment and tax structure.

11.    <u>Termination</u>. Our services hereunder may be terminated upon 30 days written notice with or without cause by the Committee or by us at any time and without liability or continuing obligation to you or to us (the date such termination becomes effective, the "<u>Termination Date</u>"). No termination of our Engagement or this Agreement shall modify or affect (a) the Debtors' obligations under Sections 2 and 3 of this Agreement to pay all Fees and to pay or reimburse all Expenses through the Termination Date and (b) the obligations under Sections 4, 5, 9, 10, 11, 12, 13, 15, 16, 17 and 18 of this Agreement, all of which shall survive the termination of our Engagement; <u>provided</u>, <u>however</u>, that in the case of termination by the Committee without cause, we shall be entitled to be paid the full amount of our Fees if, during the term or within twelve months of such termination (the "<u>Tail Period</u>") (x) a Transaction is effected, or (y) the Debtors agree to a Transaction which is subsequently effected.

12.   <u>Other Perella Weinberg Partners Activities</u>.  Perella Weinberg Partners is a financial services firm engaged directly and through its affiliates in investment banking, financial advisory services, investment management, asset management and other advisory services and sponsors special purpose acquisition vehicles.  The Committee understands and acknowledges that in performing the Engagement we will not be under any duty to disclose to the Committee or the Debtors, or use for the benefit of the Committee or the Debtors, any confidential or non-public information obtained by us or our affiliates in the course of providing services to any other person or engaging in any other transaction (including as principal) or business activities.  In the ordinary course of business activities, Perella Weinberg Partners LP or its affiliates or their respective personnel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its or their own accounts or the accounts of customers, in debt or equity or other securities (or related derivative securities) or financial instruments (including bank loans or other obligations) of the Debtors or any other party to a Transaction or any of their respective affiliates.

13.   <u>Governing Law</u>.  All aspects of the relationship created by this Agreement (including <u>Annex A</u> hereto) shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely in such State.  All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in the Bankruptcy Court; Perella Weinberg Partners and the Committee hereby irrevocably submit to the jurisdiction of the Bankruptcy Court and hereby irrevocably waive any defense or objection to the Bankruptcy Court as the designated forum .  In the event that the Bankruptcy Court lacks jurisdiction or otherwise does not hear such an action or proceeding arising out of or relating to this Agreement, then such action or proceeding shall be heard and determined exclusively in any federal or state court located in New York City; Perella Weinberg Partners and the Committee hereby irrevocably submit to the jurisdiction of such courts and hereby irrevocably waive any defense or objection to such courts as the designated forum.  The Committee and Perella Weinberg Partners waive all right to trial by jury in any action, suit, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Engagement or the performance by us of the services contemplated by this Agreement.

14.   <u>Assignment; Severability</u>.   No party hereto may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other parties, such consent not to be unreasonably withheld.  In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable by a court of competent jurisdiction (not subject to further appeal), then the remainder of this Agreement shall not be affected, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

15.   <u>Public Announcements</u>.  The Committee acknowledges that we may, at our option and expense and after public announcement of a Transaction, place announcements and advertisements or otherwise publicize such Transaction and our role in it (which may include the reproduction of the Debtors' logo and a hyperlink to the Debtors' website) on our internet website, social media, and in such financial and other newspapers and journals as we may choose, stating that we acted as investment banker as provided hereunder.

16.    <u>Regulation Relating to Client Identification</u>.    Federal law and regulations require financial institutions to obtain, verify and record information that identifies each person with whom they do business prior to doing such business and to provide reasonable notice to such persons that the financial institution is verifying such person's identity.    Accordingly, the Committee will provide us, as necessary and upon request, certain identifying information, including, but not limited to, a government-issued identification number (*e.g.,* a U.S. taxpayer identification number) and certain other information or documents necessary to verify identity, such as certified corporate documentation, partnership agreement or trust instrument.

17.    <u>Co-Advisors</u>.    It is understood that (a) no Indemnified Person (as defined in <u>Annex A</u> hereto) shall have any responsibility or liability to the Committee, its members, the Debtors, their affiliates or any other party in connection with the advice, opinions or actions of Committee counsel or any other advisor(s) engaged by the Committee or the Debtors, and (b) no Indemnified Person or any such other advisor shall have any responsibility or liability to each other in connection with the advice or opinions rendered by such party in connection with the Engagement.

18.    <u>Limitation on Actions</u>.    No action, regardless of form, arising out of or relating to this Engagement, may be brought by the Committee against us more than one year after the cause of action has accrued.

19.    <u>Entire Agreement; Amendments</u>.    This Agreement, including <u>Annex A</u> hereto, constitutes the entire agreement between us and the Committee with respect to the Engagement and supersedes all other oral and written representations, understandings or agreements relating to this Engagement but is subject in all respects to the terms of the Retention Order.    No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party and approved by the Bankruptcy Court.

20.    <u>Authorization</u>.    The Committee acknowledges its agreement with the terms set forth herein, and further acknowledges that it has reviewed and, subject to entry of the Retention Order, agreed to be bound by the terms hereof, and that it has all requisite power and authority to enter into this letter agreement on behalf of itself, and has been duly and validly authorized to do so, as evidenced by the signature(s) affixed hereto.    Facsimile and electronic signatures shall be deemed original, binding signatures.

[INTENTIONALLY LEFT BLANK – SIGNATURE PAGE FOLLOWS]

We are delighted to accept the Engagement and look forward to working with you on this assignment.  Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

PERELLA WEINBERG PARTNERS LP

By:_____
Kevin Cofsky
Partner

Agreed and Accepted as of
the date set forth above:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:    _____
Name:  Scott Duffy
Title:   Co-Chairperson

We are delighted to accept the Engagement and look forward to working with you on this assignment.  Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

PERELLA WEINBERG PARTNERS LP

By:_____
    Kevin Cofsky
    Partner

Agreed and Accepted as of
the date set forth above:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By:    *Scott Duffy*
Name:  Scott Duffy
Title:   Co-Chairperson

9

# Annex A

The Debtors agree to indemnify and hold harmless Perella Weinberg Partners and its affiliates and its and their respective officers, directors, partners, members, employees, consultants and agents and each other person, if any, controlling Perella Weinberg Partners or any of its affiliates (Perella Weinberg Partners and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with our engagement or any matter referred to in this letter (the "Engagement"), and will reimburse each Indemnified Person for all expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Debtors will not be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted primarily from the bad faith, gross negligence or willful misconduct of any Indemnified Person. Each of the Committee and the Debtors also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Committee or the Debtors, as applicable, for or in connection with the Engagement, except for any such liability for losses, claims, damages or liabilities incurred by the Committee or Debtors, as applicable, that are finally judicially determined to have resulted primarily from the bad faith, gross negligence or willful misconduct of such Indemnified Person.

None of the Debtors, or any of their affiliates, will, without Perella Weinberg Partners' prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto), nor will the Debtors or any of their affiliates participate in or facilitate any such settlement, compromise, consent or termination on behalf of the Debtors' board of directors (or similar governing body) unless such settlement, compromise, consent or termination includes a full release of each Indemnified Person from any and all liabilities arising out of such action, claim, suit, investigation or proceeding. No Indemnified Person seeking indemnification, reimbursement or contribution under this Annex A will, without the Debtors' prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

If the indemnification provided for in the first paragraph of this Annex A is, for any reason not available to an Indemnified Person or is insufficient to hold an Indemnified Person harmless in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, the Debtors shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to Perella Weinberg Partners, on the one hand, and the Committee, on the other hand, of the Engagement or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of Perella Weinberg Partners and the Debtors or the Committee, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall Perella Weinberg Partners' aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by Perella Weinberg Partners in connection with the Engagement. For the purposes of this Annex A, the relative benefits to Perella Weinberg Partners and the Debtors or the Committee of the Engagement shall be deemed to be in the same proportion as (i) the fees paid or to be paid to Perella Weinberg Partners under this letter, bears to (ii) the total value paid or contemplated to be paid to or received or contemplated to be received by the Debtors' unsecured creditors, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated. The indemnity, contribution, and other obligations and agreements of the Debtors set forth in this Annex A and the engagement letter to which it is attached shall apply to any services provided by Perella Weinberg Partners in connection with this Engagement prior to the date hereof.