**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Deborah Kovsky-Apap
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Email:   deborah.kovsky@troutman.com
*Counsel to the Ad Hoc Group of*
*Withhold Account Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' STATEMENT
IN SUPPORT OF THE DEBTORS' MOTION PURSUANT TO SECTION 107
OF THE BANKRUPTCY CODE SEEKING ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY
IDENTIFIABLE INFORMATION FROM THE CREDITOR MATRIX, SCHEDULES
<u>AND STATEMENTS, AND RELATED DOCUMENTS</u>**

The Ad Hoc Group of Withhold Account Holders (the "**Ad Hoc Group**"), a group of individual retail customers of Celsius Network LLC and its affiliated debtors and debtors-in-possession (collectively, "**Celsius**" or the "**Debtors**"), by and through its undersigned counsel, files this statement (the "**Statement**") in support of the Debtors' *Motion Pursuant to Section 107 of the Bankruptcy Code Seeking Entry of an Order Authorizing the Debtors to Redact Certain Personally Identifiable Information from the Creditor Matrix, Schedules and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*Statements, and Related Documents* [Docket No. 344] (the "**Motion**"). In support of the Statement, the Ad Hoc Group respectfully states as follows:

1. The Ad Hoc Group recognizes the presumption of public access to judicial records, and appreciates the critical importance of transparency in a chapter 11 case. However, as the Debtors correctly point out, that presumption gives way in some circumstances to the need to protect the financial and physical safety of private individuals. This case presents just such circumstances.

2. The Debtors' public disclosure of customers' email addresses—which, necessarily, must be the email addresses associated with customers' Celsius accounts—would put customer accounts at greater risk from hackers. It would also make customers all-too-easy targets for identity theft, phishing attacks and other scams.

3. The Debtors' public disclosure of customers' home addresses would be even worse, potentially putting their physical safety at risk. As has been well-documented in the news and social media, many Celsius depositors who were able to withdraw some of their coins before Celsius froze all transactions, or who had other digital assets, have turned to hardware wallets in order to self-custody their cryptocurrency. *See, e.g.,* Ornella Hernandez, "Celsius' Woes Spark Book in Ledger Sales," *Blockworks* (June 23, 2022), *available at* https://blockworks.co/celsius-woes-spark-boom-in-ledger-sales/ ("Ian Rogers, Ledger's chief experience officer, told Blockworks in an email that sales 'jumped 4.5x day-over-day on the Celsius news, and continue to be strong to this day.'"); *see also* https://www.reddit.com/r/CelsiusNetwork/comments/w5fkna/learned_my_lesson_going_forwardcold_storage_from/, *Reddit* (July 2022) ("I hope that everyone who held/holds crypto held all over the board like me

(celsius, Coinbase, kraken etc etc) knows that this . . . can and will happen again. I picked up a ledger nano to make sure this never happens again, and moved everything I own to it.").

4. A hardware wallet, such as those made by the company Ledger, is a physical device used to store crypto assets. If the Debtors publish the home addresses of Celsius customers, they will in effect be broadcasting to the world the precise locations where it is likely that tens or hundreds of thousands of dollars' worth of cryptocurrency are being stored on small and highly portable devices. Every Celsius customer—whether or not they are actually self-custodying coins—will immediately become a potential target for home invasion and theft.

5. Section 107(c) is intended to protect individuals from this kind of unwarranted and unnecessary risk. That section allows the Court to limit disclosure of certain types of information that "would create undue risk of identity theft or other unlawful injury to the individual or the individual's property," including "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." *See* 11 U.S.C § 107(c)(1); 18 U.S.C. § 1028(d). Commentators have observed that the addition of § 107(c) to the Bankruptcy Code in 2005 "broadened the situations in which the court could protect individuals from disclosure of sensitive information in light of the emerging problem of identity theft and also the possible need to protect individuals from domestic violence or other injury."
2 COLLIER ON BANKRUPTCY ¶ 107.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

6. In evaluating a redaction request under section 107(c), a court should "balance concerns for impairing . . . judicial efficiency against the privacy interests of the person resisting disclosure." *In re Avaya, Inc.*, No. 17-10089 (SMB), 2019 WL 1750908, at *5 (Bankr. S.D.N.Y. Mar. 28, 2019). "While a specific potential harm must be identified, the standard does

not require evidence of injury having occurred in the past or under similar circumstances." *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 751 (D. Del. 2018), *aff'd sub nom. In re A C & S Inc*, 775 F. App'x 78 (3d Cir. 2019) (noting that "[s]ection 107(c) references 'risk,' and assessment of risk is forward-looking").

7. Here, both the Debtors and the Ad Hoc Group have identified specific potential harms that may result from the broadcasting of home addresses and email addresses of customers who are known to hold crypto assets. The risk to individuals from such disclosure is unacceptably high.

8. Conversely, as noted in the Debtors' Motion, the personal contact information for individual depositors has been or will be provided to the Court, the United States Trustee ("**UST**") and the Official Committee of Unsecured Creditors, and may be made available, upon request to the Court, to anyone who needs it for a legitimate, case-related purpose. Motion ¶ 4. Under these circumstances, it seems clear that "judicial efficiency" will be minimally impaired, if at all, by the redaction of customers' home and email addresses—and that any such impairment is significantly outweighed by the potential harm to individuals that could result from the publication of their personal information.

9. The UST's arguments to the contrary are unavailing.[2] The UST, in its Objection to the Debtors' Motion, completely ignores the Debtors' argument that individual customers will be put at risk by the disclosure of their personally identifiable information. Instead, the UST asserts that "[d]isclosure is even more important in this case because it might help foster formal, concerted, and coordinated action by creditors," and warns that "[i]f the

---

[2] To be clear, the Ad Hoc Group takes no position with respect to any part of the UST's Objection that does not pertain to personally identifiable information of individual depositors.

Motion is granted, the ability of interested parties to evaluate the Debtors and their bankruptcy process and to communicate and find each other will be significantly curtailed." Objection [Docket No. 607], Preliminary Statement & ¶ 7. This position is disproven by the existence of not one but two ad hoc committees that have already formed in this case. The members of these groups plainly did not need schedules with depositors' home addresses or email addresses in order to find each other and take "formal, concerted, and coordinated action." Instead, they organized through existing, robust, online Celsius communities. Moreover, as the UST points out, "[t]o date, approximately 350 letters from creditors have been filed on the electronic docket." *Id.* at 2 n.2. Any depositor who wishes to be contacted by fellow depositors with similar claims can choose to include his or her contact information in such a letter (as, indeed, a handful have done). But the choice to take on the risk of public disclosure of personally identifiable information should be made by individual depositors, and not be thrust upon them unwillingly.

10. The UST also contends that because depositors' information can be shared with certain third parties pursuant to Celsius' Privacy Policy, that information is not protectable under section 107. Objection ¶ 19. This argument is disingenuous at best. The UST is surely aware that there is a world of difference between securely sharing information with a discrete set of business partners, and broadcasting it over the internet. The fact that Celsius' Privacy Policy allowed it to selectively share certain data in no way diminishes the potential harm to individuals if their personally identifiable information is made public to the entire world.

## CONCLUSION

For the foregoing reasons, the Ad Hoc Group requests that the Court grant the Debtors' Motion with respect to redaction of individual depositors' personally identifiable information.

| | |
|---|---|
| Dated: August 30, 2022<br>New York, New York | Respectfully submitted,<br><br>/s/ Deborah Kovsky-Apap<br>**TROUTMAN PEPPER HAMILTON SANDERS LLP**<br>Deborah Kovsky-Apap<br>875 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 704-6000<br>Facsimile: (212) 704-6288<br>Email: deborah.kovsky@troutman.com<br><br>*Counsel to the Ad Hoc Group of*<br>*Withhold Account Holders* |