Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING OF REVISED PROPOSED**
**ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN**
**ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022**

**PLEASE TAKE NOTICE** that on August 9, 2022, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the *Debtors' Application to Employ and*

*Retain Alvarez & Marsal North America, LLC as Financial Advisor to the Debtors and Debtors*

*in Possession Effective as of July 13, 2022* [Docket No. 410] (the "Application").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a revised proposed

*Order Authorizing Debtors to Employ and Retain Alvarez & Marsal North America, LLC as*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390);  and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*Financial Advisor to the Debtors and Debtors in Possession Effective as of July 13, 2022* attached hereto as **Exhibit A** (the "<u>Revised Proposed Order</u>").

      **PLEASE TAKE FURTHER NOTICE THAT** a comparison between the Revised Proposed Order and the order filed with the Application is attached hereto as **Exhibit B**.

      **PLEASE TAKE FURTHER NOTICE** that copies of the Application and other pleadings filed in the above-captioned chapter 11 cases may be obtained free of charge by visiting the website of Stretto at http://www.cases.stretto.com/celsius. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

New York, New York
Dated: August 31, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:             jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois  60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:             patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**Exhibit A**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN**
**ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022**

Upon the application (the "Application")[2] of the debtors in possession in the above-captioned case (collectively, the "Debtors") for an order pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to employ and retain Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M") as financial advisor, effective as of July 13, 2022 (the "Petition Date") on the terms set forth in the engagement letter (the "Engagement Letter") attached hereto as **Exhibit 1**; all as more fully set forth in the Application; and the Campagna Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

*Court for the Southern District of New York*, entered February 1, 2012; and that this Court may

enter a final order consistent with Article III of the United States Constitution; and the Court having

found that venue of this proceeding and the Application in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Application

is in the best interests of the Debtors' estates, its creditors, and other parties in interest; and the

Court having found that the Debtors' notice of the Application and opportunity for a hearing on

the Application were appropriate under the circumstances and no other notice need be provided;

and the Court being satisfied that A&M is a "disinterested person" as such term is defined under

section 101(14) of the Bankruptcy Code; and the Court having reviewed the Application and

having heard the statements in support of the relief requested therein at a hearing before this Court

(the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      Pursuant to section 327(a) of the Bankruptcy Code, the Debtors are hereby

authorized to retain A&M as financial advisor to the Debtors, effective as of July 13, 2022, on the

terms set forth in the Engagement Letter.

3.      A&M shall file interim and final fee applications for allowance of its compensation

and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with

the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules, the *Order Establishing Procedures for Monthly Compensation and*

*Reimbursement of Expenses of Professionals*, dated December 21, 2010 (General Order M-412),

2

the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases,* dated January 29, 2013 (General Order M-447), the applicable fee guidelines, this Order, and such other procedures as may be fixed by order of the Court.  For billing purposes, A&M shall keep its time records in one-tenth (1/10) hour increments.

4.    Except to the extent set forth herein, the terms of the Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions set forth therein, are reasonable terms and conditions of employment and are approved, as modified herein.

5.    The indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter are approved, subject, during the pendency of the chapter 11 cases, to the following:

> All requests by A&M for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided, however,* that in no event shall A&M be entitled to indemnification, contribution, or reimbursement to the extent a court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct on the part of A&M.
>
> For services rendered during these chapter 11 cases, the following language found at paragraph D of the indemnification and limitation on liability agreement attached to the Engagement Letter is of no further force and effect: "; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities, and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnification Parties pursuant to the Agreement."

6.    In the event that A&M seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Application

and/or Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in A&M's own applications, both interim and final, and these invoices and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, as the case may be, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.      A&M shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to A&M.

8.      The Debtors will coordinate with A&M and its other retained professionals to minimize any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

9.      In connection with any increase in A&M's rates for any individual retained by A&M and providing services in these cases, A&M shall file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, U.S. Trustee, and the Committee, prior to filing a fee statement or fee application reflecting such an increase.  The supplemental affidavit shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     Notwithstanding anything in the Application to the contrary, to the extent that A&M uses the services of subcontractors (collectively, the "Contractors") in these cases, A&M

4

shall (i) pass through the cost of such Contractors to the Debtors at the same rate that A&M pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for A&M; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

11.    A&M shall apply any remaining amounts of its prepetition retainer at the time of its final fee application in satisfaction of compensation and reimbursement, after such fees and expenses are approved pursuant to the order of the Court awarding final fees and expenses to A&M and promptly pay to the Debtors' estates any retainer remaining after such application.

12.    To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

13.    Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

14.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

15.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

16.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order and A&M's retention.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Engagement Letter**

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

**Alvarez & Marsal North America, LLC**
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

June 19, 2022

Alex Mashinsky
Chief Executive Officer
Celsius Network Limited
121 River Street, PH05
Hoboken, NJ 07030 USA

Dear Mr. Mashinsky:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and Celsius Network Limited and its subsidiaries and their respective assigns and successors (the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.     Description of Services

(a) A&M shall provide consulting services to the Company at the direction of the Special Committee of the Board of Directors of the Company and, if and once appointed, the Chief Restructuring Officer of the Company (each "Responsible Officer" or together the "Responsible Officers") in connection with their efforts to improve their financial performance and assist them in their reorganization efforts. We understand the Company has also engaged Akin Gump Strauss Hauer & Feld LLP ("Counsel") as part of their reorganization effort. It is anticipated that A&M's activities shall include the following:

(i)     assistance in the development and management of a 13-week cash flow forecast;

(ii)    assistance in evaluation of the Company's current business plan and in preparation of a revised operating plan if necessary;

(iii)   assistance with the Company's communications with lenders, and other creditors with respect to the Company's strategic, financial and operational matters;

(iv)    assistance to the Company and Counsel in the preparation of motions, pleadings and other activities and materials necessary to implement a Chapter 11 filing, if required;

(v)     assistance with the preparation of financial related disclosures required by the U.S. bankruptcy court having jurisdiction over the Company's

-1-

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

Chapter 11 case or cases (the "Bankruptcy Court"), including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(vi)     assistance with information and analyses required for the Company's potential Debtor-In-Possession financing ("DIP Financing") including, but not limited to, preparation of budgets and forecasts, sizing of a potential DIP Financing facility, and preparation for hearings regarding the use of cash collateral and/or DIP Financing;

(vii)    assistance with identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection/disclaimer of each;

(viii)   assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Bankruptcy Court approval is sought;

(ix)     attend meetings and assist in discussions with potential investors, banks and other lenders, the Creditors' Committee appointed in these Chapter 11 Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(x)      analyze creditor claims by type, entity and individual claim, including assistance with development of a database to track such claims if needed;

(xi)     assistance with evaluation and analysis of avoidance actions, including fraudulent conveyance and preferential transfers;

(xii)    provide testimony before the Bankruptcy Court with respect to financial and restructuring matters within the purview of A&M;

(xiii)   assistance to the Company and Counsel in preparing plans, disclosure statements and other Court materials and pleadings;

(xiv)    Assistance with regulatory, compliance, and BSA/AML, sanctions, and terrorist financing matters, including communications with regulators, and assistance with due diligence, as appropriate.

(xv)     Attend meetings and assist in discussions with Company representatives, counsel, regulators, creditors, debtors, and other parties in interest and professionals with respect to the impact of regulatory and compliance matters and potential claims; and

www.alvarezandmarsal.com

DocuSign Envelope ID: 930YE8E0B1A1493F83CB-0E1489F68DF

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

     (xvi)   other activities as are approved by you, the Responsible Officer(s) and agreed to by A&M.

In rendering its services to the Company, A&M will report directly to the Responsible Officer(s) and will make recommendations to and consult with the Responsible Officer(s), other senior officers, and Counsel as the Responsible Officer(s) directs.

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates and subsidiaries. Such affiliates are wholly owned by A&M's parent company and employees.

A&M personnel providing services to the Company may also work with other A&M clients in conjunction with unrelated matters.

2.    <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company. The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Responsible Officer(s) or counsel to do so.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.    <u>Limitation of Duties</u>

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Responsible Officer(s) will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring

-3-

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents.  Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction.  A&M shall be responsible for assistance with the implementation only of the restructuring proposal or strategic alternative approved by the Responsible Officer(s) and only to the extent and in the manner authorized by and directed by the Responsible Officer(s) and agreed to by A&M.

Depending on future developments the spread of the Coronavirus has the potential to affect the services provided under this Agreement.  Travel, work place and mobility restrictions (to include measures reasonably mandated by A&M with respect to its employees and personnel) may restrict travel to the Company and other work sites as well as limit access to facilities, infrastructure, information and personnel of A&M, the Company or others.  Such circumstances may adversely affect the timetable or content of A&M's deliverables and completion of the scope of services included in this Agreement.  A&M will discuss with the Company if A&M believes that the services may be impacted in this way.  The Company accepts and acknowledges that A&M employees and personnel may attend at the Company's locations or physically interact with the Company's employees and personnel in connection with the services, unless A&M or the Company decide that this should not be the case.

4.  <u>Compensation</u>

(a) A&M will receive fees based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $975-1,295 |
| Directors | $750-950 |
| Analysts/Associates | $425-750 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

(b) In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges.  A&M also charges a flat rate of 3% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services.  All fees and expenses will be billed on a weekly basis or, at A&M's discretion, more frequently.  Invoices are payable upon receipt.

(c) The Company shall promptly remit to A&M a retainer in the amount of $1,000,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

www.alvarezandmarsal.com

DocuSign Envelope ID: 03C78BE8-91A1-4834-83CB-CE1482F5B5EE

5.  Term

(a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

(b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

(c) On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.  Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this engagement letter.  Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of A&M are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges and agrees that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.  No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management) in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8.  Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE



Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained.

9.    Confidentiality / Non-Solicitation

A&M shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except:  (i) as requested by the Company or Counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement.  All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.  The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person").  Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision.  The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10.    Indemnification and Limitations on Liability

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11.    Data Protection.  In the provision of services under this Agreement, it is expected that the Company and third parties will provide to A&M certain personally identifiable information or other personal data regarding creditors, employees and other constituents, the processing or transfer of which may be subject to Data Protection Laws. "Data Protection Laws" means all applicable U.S. and foreign national, federal, state and/or local laws, rules, regulations or other binding instruments in relation to the processing or protection of personal data, including, but not limited to, the EU General Data Protection Regulation (GDPR).    In furtherance thereof, the Company acknowledges and agrees: it is expected that such information (and work product containing such information) will be transferred by A&M, on behalf of the Company, to third parties including other agents and professionals of the Company acting within

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

this matter (i.e., the Company's internal counsel, other advisors including Counsel, and claims agent) as well as, at the Company's direction, other constituents in the Company's case, including but not limited to creditors and their representatives as well as any applicable judicial, regulatory or governmental bodies; and, that A&M's transfer of such data directly to third parties (rather than by the Company to a third party) is for the Company's convenience and such transfers shall always be deemed to be on the Company's behalf. Without limiting the foregoing, each party agrees to comply with Data Protection Laws in connection with this Agreement.

12.    <u>Miscellaneous</u>

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction. The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Agreement.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. The Company agrees that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services. Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

-7-

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DB

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By:   _Robert Campagna_

Robert Campagna
Title:   Managing Director

Accepted and agreed:

Celsius Network Limited
on behalf of itself and its subsidiaries

By:   _____

Alex Mashinsky
Title: Chief Executive Officer

-8-

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated June 16, 2022 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and Celsius Network Limited together with its subsidiaries (jointly and severally, the "Company"), for services to be rendered to the Company by A&M.

A.      The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to (a) any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct, or (b) any claim by the Company against A&M as to A&M's breach of its express obligations under the Agreement.  The Company also agrees that (x) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (y) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE



Alvarez & Marsal North America, LLC
600 Madison Avenue, 8th Floor
New York, NY 10022
Phone: +1 212 759 4433
Fax: +1 212 759 5532

within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.        If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company within 14 calendar days of receiving notice of such action, proceeding or investigation; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.        In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any

www.alvarezandmarsal.com

DocuSign Envelope ID: C3C7E8E8-F1A1-4934-83CB-CE1182F7B5DE

person who is not also found liable for such fraudulent misrepresentation.

E.    In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.    Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.    The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

CELSIUS NETWORK LIMITED
on behalf of itself and its subsidiaries

ALVAREZ & MARSAL NORTH
AMERICA, LLC

By: _____
Name: Alex Mashinsky
Title:  Chief Executive Officer

By: _____
Name: Robert Campagna
Title:  Managing Director

**Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN**
**ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISOR TO**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF JULY 13, 2022**

Upon the application (the "Application")[2] of the debtors in possession in the
above-captioned case (collectively, the "Debtors") for an order pursuant to sections 327(a) and
328 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to
employ and retain Alvarez & Marsal North America, LLC, together with employees of its
affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned
subsidiaries, and independent contractors (collectively, "A&M") as financial advisor, effective as
of July 13, 2022 (the "Petition Date") on the terms set forth in the engagement letter (the
"Engagement Letter") attached hereto as **Exhibit 1**; all as more fully set forth in the Application;
and the Campagna Declaration; and this Court having jurisdiction over this matter pursuant to 28
U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC
(8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius
Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius
Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121
River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Application.

*District Court for the Southern District of New York*, entered February 1, 2012; and that this Court

may enter a final order consistent with Article III of the United States Constitution; and the Court

having found that venue of this proceeding and the Application in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the

Application is in the best interests of the Debtors' estates, its creditors, and other parties in interest;

and the Court having found that the Debtors' notice of the Application and opportunity for a

hearing on the Application were appropriate under the circumstances and no other notice need be

provided; and the Court being satisfied that A&M is a "disinterested person" as such term is

defined under section 101(14) of the Bankruptcy Code; and the Court having reviewed the

Application and having heard the statements in support of the relief requested therein at a hearing

before this Court (the "Hearing"); and the Court having determined that the legal and factual bases

set forth in the Application and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.    The Application is granted as set forth herein.

2.    Pursuant to section 327(a) of the Bankruptcy Code, the Debtors are hereby

authorized to retain A&M as financial advisor to the Debtors, effective as of July 13, 2022, on the

terms set forth in the Engagement Letter.

3.    A&M shall file interim and final fee applications for allowance of its compensation

and reimbursement of its expenses with respect to services rendered in these chapter 11 cases with

the Court, in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules,

the Local Rules, the *Order Establishing Procedures for Monthly Compensation and

Reimbursement of Expenses of Professionals*, dated December 21, 2010 (General Order M-412),

the *Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases,* dated January 29, 2013 (General Order M-447), the applicable ~~U.S. Trustee~~**fee** guidelines, this Order, and such other procedures as may be fixed by order of the Court. For billing purposes, A&M shall keep its time records in one-tenth (1/10) hour increments.

4.      Except to the extent set forth herein, the terms of the Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions set forth therein, are reasonable terms and conditions of employment and are approved, as modified herein.

5.      The indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter are approved, subject, during the pendency of the chapter 11 cases, to the following:

> All requests by A&M for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, *provided, however,* that in no event shall A&M be ~~indemnified~~**entitled to indemnification, contribution, or reimbursement** to the extent a court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct on the part of A&M. ¶
>
> **For services rendered during these chapter 11 cases, the following language found at paragraph D of the indemnification and limitation on liability agreement attached to the Engagement Letter is of no force and effect: "; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities, and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnification Parties pursuant to the Agreement."**

6.      In the event that A&M seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Application

**3**

and/or Engagement Letter, the invoices and supporting time records for the attorneys' fees and

expenses shall be included in A&M's own applications, both interim and final, and these invoices

and time records shall be subject to the approval of the Bankruptcy Court pursuant to sections 330

and 331 of the Bankruptcy Code, as the case may be, without regard to whether such attorneys

have been retained under section 327 of the Bankruptcy Code, and without regard to whether such

attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.¶

**7.     A&M shall apply any remaining amounts of its prepetition retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to the first order of the Court awarding fees and expenses to A&M.**

**8.**     ~~7.~~ The Debtors will coordinate with A&M and its other retained professionals to

minimize any unnecessary duplication of services provided by any of the Debtors' other retained

professionals in these chapter 11 cases.

**9.**     ~~8.~~ In connection with any increase in A&M's rates for any individual retained by

A&M and providing services in these cases, A&M shall file a supplemental affidavit with the

Court and provide ten business days' notice to the Debtors, U.S. Trustee, and the Committee, prior

to filing a fee statement or fee application reflecting such an increase.  The supplemental affidavit

shall explain the basis for the requested rate increases in accordance with Section 330(a)(3)(F) of

the Bankruptcy Code and state whether the Debtors have consented to the rate increase.  The U.S.

Trustee retains all rights to object to any rate increase on all grounds including, but not limited to,

the reasonableness standard provided for in section 330 of the Bankruptcy Code and the Court

retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

**10.**     ~~9.~~ Notwithstanding anything in the Application to the contrary, to the extent that

A&M uses the services of subcontractors (**collectively,** the "Contractors") in these cases, A&M

**4**

shall (i) pass through the cost of such Contractors to the Debtors at the same rate that A&M pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for A&M; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

**11.** ~~10.~~ A&M shall apply any remaining amounts of its prepetition retainer at the time of its final fee application in satisfaction of compensation and reimbursement, after such fees and expenses are approved pursuant to the order of the Court awarding final fees and expenses to A&M and promptly pay to the Debtors' estates any retainer remaining after such application.

**12.** ~~11.~~ To the extent there is inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

**13.** ~~12.~~ Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

**14.** ~~13.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

**15.** ~~14.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

**16.** ~~15.~~ This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order **and A&M's retention**.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE