**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
In re: CELSIUS NETWORK LLC, *et al.,* Debtors
Chapter 11, Case No. 22-10964 (MG), Jointly Administered

**Limited Objection to the Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of July 13, 2022**

I, Immanuel Herrmann, a Celsius LLC creditor, respectfully file this limited objection to the Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP because I believe they hold interests adverse to the estate, unless they take appropriate action to remedy the situation.

According to *In Re: Roberts, t*o "hold an interest adverse to the estate" means:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate.

**There is an *actual dispute* in which Voyager Digital (bankruptcy case #22-10943) and Celsius are rival claimants. This dispute *materially limits* Kirkland's representation of Celsius.**

Kirkland & Ellis represents Voyager Digital in its bankruptcy.

Voyager has a **$650 million** claim against the bankrupt 3 Arrows Capital ("3AC").

**It is not an exaggeration to say that the entire fate of the Voyager bankruptcy rests upon Kirkland & Ellis' success in recovering from 3AC.**

On the other hand, Celsius has "only" a $75 million claim against 3AC. That is still a significant claim, representing nearly 2 months of Celsius cash burn at recent rates, but it is not an existentially critical one in quite the same way.

How can Kirkland fight to maximize Celsius' recovery from 3AC, while purporting to represent Voyager at the same time? It is my contention that they cannot.

It does not seem practical, or realistic, for Kirkland to recuse themselves from representing Voyager in its claim against 3AC, given that a massive percentage of Voyager's balance sheet hole *IS* its claim against 3AC. In fact, without that hole, the Voyager bankruptcy might not even have happened to begin with.

A low recovery from 3AC would be adverse to the interests of the Debtors and the creditors in this case and could cost us tens of millions of dollars that we otherwise could have recovered.

Therefore, in my opinion, Kirkland needs to recuse themselves from all matters regarding Celsius' recovery from 3AC.

**There are additional *potential* disputes in which Voyager Digital is a rival claimant**

The 3AC conflict is a *whale* of a dispute.

There are almost certainly others, though, given the size and interconnectedness of the crypto industry. It should not be my responsibility, as a single creditor, to figure out and disclose every *potential* dispute.

So I pose some questions:

Can Kirkland explain how representing both Voyager and Celsius will not damage the Debtors (and therefore damage the estate and the creditors' recovery)?

Have they made all the disclosures that they need to make to meet their ethical obligations?

Has Kirkland represented Tether and any other major shareholders and creditors–and in what capacity? (Tether is a common shareholder of Celsius Network Ltd., and holds, I believe, approximately 10% of the equity of Celsius Network Ltd.)

Has Kirkland represented Equities First? Why was there a complete failure to disclose information about the Equities First loan in Celsius' initial court filings? Why did media leaks have to be the source of information (via leaks)?

Has Kirkland represented Celsius Preferred Shareholders who may have claims against the estate, at the expense of depositors, in the past and do they now?

**Voyager will likely finish its bankruptcy case first, which could leave Celsius with the crumbs (unless we have aggressive, non-conflicted Debtors counsel)**

Because Celsius' bankruptcy started later than Voyager's, and because it is both more complex and more contentious, the Celsius bankruptcy will almost certainly take longer than the Voyager bankruptcy, and finish later.

That is a problem because early claims against solvent, non-bankrupt debtors of Voyber made by Voyager could easily leave Celsius with less available recovery dollars later on, when our turn comes.

By representing both Voyager and Celsius, Kirkland will have complete discretion over the timing of legal actions taken by both Debtors.

In a "race to the courthouse" scenario, I am banking on Voyager to win the race if Kirkland is leading the charge. There is a significant risk that Voyager will recover more claims against (currently) solvent, non-bankrupt entities than Celsius will, due to the timing of lawsuits and recoveries, which Kirkland controls.

With the fragile state of the crypto industry, in a bear market, I do not trust Kirkland & Ellis to put Celsius first and rush to get our money back.

What I am saying, Your Honor, is that Kirkland cannot wear 2 hats at the same time. They cannot decide when to file lawsuits to recover funds for Voyager and when to file lawsuits to recover funds for Celsius at the same time.

Due to timing (which Kirkland controls in this scenario) I am concerned that Voyager creditors could get a larger payout first (on a % basis), and Celsius customers get a relatively lower payout (on a % basis).

Kirkland should propose a plan to deal with this situation, such as a Chinese Wall or special counsel to engage in these matters, and ensure that Celsius receives a fair recovery *vs* Voyager. Frankly, I am worried that even if these steps are taken, there could be virtually unresolvable issues here, but I will leave that to your best judgment.

I would hate for the Voyager bankruptcy to drag on longer because of these issues, but fear it might need to, out of fairness to Celsius creditors, if there cannot be an adequate resolution to these issues that ensure fair distribution *across two separate bankruptcies*.

### **Kirkland & Ellis may be using estate resources to represent Celsius *shareholders* and *management* in their personal capacities**

Kirkland & Ellis has at least the appearance of using estate resources to represent Shlomi Daniel Leon in his personal capacity; they recently filed his "DECLARATION OF STATUS AS A SUBSTANTIAL SHAREHOLDER." (Docket #719)

Kirkland & Ellis should be representing the Debtors, not shareholders or management in their personal capacities.

Kirkland needs to clarify that they do not represent Celsius directors and executives in their personal capacities. They also need to clarify who is paying when court papers are filed on behalf of shareholders and directors in their personal capacities.

**Kirkland & Ellis may be representing non-debtor entities, to the determinant of the Debtor, the bankruptcy estate, and depositors**

I do not understand from Kirkland's filings how Kirkland's representation is split between Celsius Debtor Entities and Non-Debtor Entities.

I am concerned that Kirkland & Ellis may be using estate resources (i.e. money that should go to make depositors whole) to fund legal efforts to keep Non-Debtor Entities and other people and entities that are outside of the bankruptcy from coming into the estate, or to advance the the interests of Preferred or Common Shareholders.

Kirkland needs to explain who they represent: Who are their clients?

Do they represent only Celsius *debtor* entities–as defined in Mr. Patrick Nash's first day presentation?

Do they represent Celsius *non-debtor* entities, insomuch as they are fighting to shield assets from depositors? If so, how does this representation benefit the Debtor and the Debtor's estate?

Are Celsius *debtor* entities footing the bill for the representation provided to *non-debtor entities* or *non-debtor* executives, or are expenses being billed to the correct entities?

**There are questions about the Debtors' proposed sale of GK8 that need to be addressed ASAP**

As of July 5, Celsius had information on its website that assets were insured for $750 million by GK8, a non-debtor affiliate of Celsius owned by Celsius Network IL Ltd. (Israel).

However, after Celsius filed for bankruptcy on July 13, any mentions of insurance mysteriously vanished, along with references to Insurance Giant AON, the provider of said insurance. (See Exhibit A.)

Kirkland & Ellis is currently coordinating the sale of GK8. I am concerned that this may be an effort to lessen the value for the bankruptcy estate and the debtors and cover up what happened, rather than attempt to maximize value, particularly value for the *correct* creditors.

Specifically, I believe that depositors have claims against GK8 for securities fraud and am concerned that the proceeds from the sale of GK8 may flow to the parent company Celsius UK, and that preferred shareholders (i.e. non-depositors) may have a claim against those assets to the detriment of depositors before those claims are heard.

I personally relied on the statement that Celsius offered $750 million in insurance to depositors when choosing to keep my crypto on deposit with Celsius, and want to

ensure that the ability of creditors to make claims against GK8 and/or their insurance partner AON is not compromised by Kirkland's sale of GK8.

I am raising this now in the context of this motion as an issue specifically related to Kirkland's retention, but this is a serious matter. If we cannot get ironclad clarity on where the funds from the sale of GK8 will go before its planned sale, I may be forced to formally object to the sale itself.

Please order Kirkland & Ellis to address these important matters.

Thank you, Your Honor.

Washington, DC
Dated: September 7, 2022

Respectfully submitted by:
s/ Immanuel Herrmann
Immanuel Herrmann
*Pro se creditor*

Exhibit A

# Did Insurance Giant AON PLC Provide $750 in Insurance to Bankrupt Celsius Network?

September 2, 2022

 

Aon Refuses to Confirm or Deny its Involvement in the Billion Dollar Securities Offering

Dublin: Between June 5, 2022 and July 8, 2022 bankrupt crypto lender, Celsius Network, added a banner to its website homepage proudly touting the existence of $750 million in insurance for its assets. The insurance was supposedly obtained through GK8, a Celsius subsidiary that mainly sells crypto vault software.


*Celsius website as of June 6, 2022: https://web.archive.org/web/20220606133917/https://celsius.network/]*

Before being acquired by Celsius in 2021, GK8 partnered with insurance giant Aon PLC to provide insurance to its customers. However, in bankruptcy filings, neither GK8 or Aon is listed as a vendor or insurer of Celsius.

A week before freezing billions of dollars in client accounts, Celsius boldly began boasting it had obtained $750 million in insurance on its assets. Now it seems that was a fabrication to



calm nervous investors and lure in new ones.

On August 19, 2002 and again August 25, 2022, Aon PLC's compliance unit confirmed Celsius was not currently an insured.

*Dear Dr Levy,*

*Thank you for your emails of 15 and 17 August. As you will appreciate, Aon does not normally share details about its clients and counterparties given that such information is commercially sensitive and potentially subject to confidentiality obligations.*

*We can confirm, however, that Aon does not currently have any formal arrangements or agreements with Celsius Network.*

While Aon's response left much to be desired in terms of clarity and prompted follow ups which resulted in a similar  response

Dear Dr Levy,

Thank you for your further email.

We have already confirmed Aon's position regarding Celsius Network. We are unable to provide you with any further information and have no obligation to do so.

Best regards

London based lawyer, Dr. Jonathan Levy represents clients with millions of dollars tied up in Celsius accounts.  Levy blew the whistle on the Celsius insurance claims in June calling it a classic misdirection.  Now, Dr. Levy is calling it fraud in aid of an unregistered securities offering. According to Dr. Levy:

"The insurance does not exist. Celsius' own term of use stated there was no insurance in the boilerplate print. Yet we have Celsius and GK8 shouting about insurance in bold print.  Now Aon the purported insurer refuses direct requests for clarification but at the same timeattempts to disassociate itself from Celsius."

Dr. Levy points out that state regulators have already found that Celsius' highly touted "Earn Accounts" which offered up to 18% interest have been classed as unregulated securities. A bold claim of $750 million of insurance on these assets with no further explanation deceived investors. As to Aon PLC, Dr. Levy expressed concern about the NYSE listed insurance giant's involvement:

"A public company like Aon needs to investigate potential insurance fraud like this and report to the authorities so the public is not deceived by their marketing partner GK8.  The purported insurance, assuming it existed, did not cover investor losses, yet that was strongly implied by Celsius and GK8. Aon's refusal to warn investors is troubling given its

past history of anti-corruption lapses including paying substantial fines to US and UK regulators in 2009 and 2011."

While many investors have accused Celsius and its CEO Alex Mashinsky of fraud, the false claim of insurance a week before accounts were frozen seems to be solid evidence of a concerted attempt to deceive investors.

For more information:

```
Dr. Jonathan Levy
Attorney
Unit 7810, PO Box 6945, London, W1A 6US
United Kingdom

Dr. Jonathan Levy, Esq.
1968 S. Coast Hwy #2767
Laguna Beach CA 92651

info@jlevy.co

UK  +44 (0) 20 8144 2479
US +1-707-298-2132
Fax +1 202 478 1970
```



### Dr. Jon Levy

Dr. Jon Levy is a solicitor who specialises in transnational law and private international law. He has represented the former president of the Republic of China, Chen Shuibian, the former Deputy Prime Minister of Yugoslavia, and numerous African entities and political figures. He has been engaged by clients against the US Office of Foreign Asset Control (OFAC), CIA, US Army, and UK Cabinet. As a litigator he specialises in transnational asset recovery and has taken up cases against the Vatican Bank, UBS AG, the Swiss National Bank, Emaar Corporation, and many others.

