**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
In re: CELSIUS NETWORK LLC, *et al.,* Debtors
Chapter 11, Case No. 22-10964 (MG), Jointly Administered

**Response to the Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner**

I respectfully submit this response to the Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner [D.E. 546] in my personal capacity as a *pro se* Celsius creditor.

**A moral plea**

This filing is, above all else, a moral plea to this court and to you, Your Honor, to be creative, to think outside the box, to put depositors first and focus on returning value to us, while also meeting the government's legitimate needs and interests.

Under the law, I know that you have the powers to help Celsius creditors. I am asking you to use those powers for good, starting with the examiner motion that was put forward.

In this filing, I am giving you some of my best ideas for the path forward on the question of an *examiner* versus a *trustee* and how we can get on with the important business of recovery by the United States Trustee's Office.

As just one depositor, I do not believe that I have all of the answers, but I hope this will be the start of a conversation. I look forward to continuing this dialogue in your courtroom, with the U.S. Trustee's Office, and with the other parties, and fighting for an outcome that maximizes depositors' recovery.

**The U.S. Trustee's concerns are valid, but an examiner is the wrong remedy**

I agree wholeheartedly with the United State Trustee that Celsius needs to be investigated by an *independent neutral third party*.

As I told you in my testimony at the last hearing when describing the plight of non-accredited account holders, Celsius *absolutely needs* to be investigated. We were wronged in many ways.

However, I do not agree with the remedy of an examiner, for the following reasons:

1. An examiner will almost certainly prolong the case, while our assets are frozen.
2. An examiner, if their scope is too broad, will cost us tens of millions of dollars in direct costs, and tens of millions of dollars *a month* in cash indirect costs (cash

burn), particularly if an examination results in delays in getting on with the important business of *restructuring* and *returning value* to shareholders.
3. An examiner will *not* expedite the return of our crypto assets in any way.
4. Under an examiner, Alex Mashinsky and the existing management such as CFO Chris Ferraro would remain in place. Alex Mashinsky lied to customers *for years* and cannot be trusted. Chris Ferraro, in the 341 meeting, could not recall the name of the CEO of Celsius mining and was unable to answer other basic questions. These directors are not fit and proper to save the company and offer us a viable path forward.

**Yet, I do believe there is a path forward that preserves value for creditors.**

**In my view, Celsius needs to have not an examiner, but a *Chief Restructuring Officer*.**

My laymans' understanding is that one way to hire a Chief Restructuring Officer is for you (or the U.S Trustee) to appoint a *bankruptcy trustee* who is a business professional–rather than a bankruptcy lawyer or liquidation expert.

Or perhaps, alternatively, Your Honor can figure out a way to facilitate a *change in management* in some other way (especially, the departure of Alex Mashinsky).

I plan on reaching out to the U.S. Trustee after filing this motion to discuss this motion with their office, as I understand that their office is responsible for appointing, at the very least, an interim trustee.

I also understand that creditors can potentially vote in our own trustee at a 341 meeting (11 U.S. Code § 702.) I hope, however, that we can save that back-and-forth by working out a good process to appoint a trustee that creditors want and support, and the U.S Trustee supports too: a Chief Restructuring Officer to replace Alex Mashinsky, who will also conduct the investigation that the U.S. Trustee desires.

However, in case I cannot work this out with the U.S. Trustee before the next hearing on the 14th, I humbly ask that you consider my request for a trustee (who I believe should be a Chief Restructuring Officer) alongside the U.S. Trustee's motion for an examiner.

**A Chief Restructuring Officer, who has proper incentives–and has interests aligned with depositors and other creditors–will help maximize value and help mitigate creditor infighting.**

A Chief Restructuring Officer should be on the "same side of the table" as depositors. That means they should be someone who:

1. Knows about the cryptocurrency industry, and is either a cryptocurrency professional or comes out of a similar industry, such as finance (and it should be

    someone who, at a bare minimum, owns crypto, understands it, has a hardware wallet and knows how to use it, etc.)
2. Is a savvy business professional.
3. Can restore confidence from creditors.
4. Has the *confidence* of actual Celsius customers.
5. Can maximize liquidity in the short run (but only to the extent liquid assets are available, because we are in a crypto bear market, and liquidity at a premium right now.)
6. Can maximize long-term value for all creditors.

I do not support spending depositor money to teach a trustee (or an examiner, for that matter) about crypto. There are plenty of qualified people out there already. So I humbly ask that we please choose someone who already understands crypto, blockchain analysis, etc.

And rather than being paid hourly, or being paid a retainer, the Chief Restructuring Officer, in my view, should be paid based on performance, based upon:

1. Restoring liquidity
2. Maximizing long-term value

This is a common sense approach that balances speed–-which I understand matters in bankruptcy–and recovery, which matters deeply to depositors, some of whom, as I mentioned in your courtroom, put their life savings into Celsius and lost more than they could afford to lose.

**Creditors should participate in choosing our own Chief Restructuring Officer**

I believe that creditors should play a key role in selecting the Chief Restructuring Officer and either vote on the final selection or be consulted in some other way (such as a collaborative process with the U.S. Trustee's Office.)

I hope that creditors can work with the your court, and the U.S. Trustee's Office, to select an appropriate *professional, business-minded* trustee.

I believe that, if push comes to shove, at a 341 meeting, creditors can elect a trustee, if we don't like the Trustee that the U.S. Trustee's Office chooses for us. That said, that seems rather inefficient and I would kindly ask them them to pick one in consultation with creditors upfront; I would rather work out something more collaborative to save everyone the time and energy of all the back and forth, and get on with the business of picking a person everybody likes and supports, and then get on with the recovery.

**There is a right kind of trustee, and a wrong kind; getting it right is critical**

While I strongly support a Chief Restructuring Officer, I want to be very clear that I strongly **oppose** the wrong type of trustee. The wrong kind of trustee is:

1. Someone who would send us down a path toward liquidation.
2. Someone who gets paid based on how quickly they liquidate assets and pay them out to depositors for pennies on the dollar.
3. Someone who gets to bill the estate primarily by the hour and has incentives to drag the case out.
4. Someone who is more interested in investigations than recovery

Any trustee that is appointed must put depositors first. And let me be clear, Your Honor: We are depositors. Celsius marketed itself like a bank, to all of us, regardless of what the terms say. You have read the letters to this court, and you have heard about the "Ask Me Anything" videos, and read many of the statements.

And now, depositors need a reorganization–with a new leader, a Chief Restructuring Officer, who will get us out of this mess and maximize value.

Retail investors were hurt here, we were lied to and misled, and we need your help to recover.

But we don't just need help from you and bankruptcy lawyers.

Your Honor, and the lawyers, and the UCC, and the *ad hoc* committees, will help us figure out *who is owed what.*

**But who will help us maximize value for all creditors? Not Mashinsky! But all is not lost.** There are *so many* professionals out there who already know the cryptocurrency industry, ones who didn't get everyone into this mess, but can help get us out of this mess. All we have to do is hire one, and let them get to work.

We need a process where, as much as possible, everyone is on the same team and interests are aligned.

### If we can't have a Chief Restructuring Officer, at least force Alex Mashinsky out

If we can't have a Trustee (which I believe must be a Chief Restructuring Officer), then please *facilitate the departure of Alex Mashinsky* in some way.

We need a new CEO who is a competent manager and will assist in recovery.

### If there must be an examiner, please limit the scope

If there must be an examiner, please limit the scope to things that cannot be investigated by the UCC in Your Honor's judgment, based on the motions before this court and the information available to you. From my perspective, an examiner, if we

must have one instead of a trustee, should come with significant restrictions, such as: no delay in the proceedings, and limiting scope and budget to what is absolutely necessary to accomplish what the UCC cannot do on its own.

**But let's not hire an examiner. Let's hire a Chief Restructuring Officer, who can get to work on recoveries for all creditors and end the madness**

No matter what it looks like, getting auctions done (so long as we are clear that the money is going to benefit depositors and there's no monkey business–see my other filing with some concerns around GK8), getting plan sponsors, and doing the hard work of *recovery* is what needs to happen now.

Alex Mashinsky is not the person to do that. But that doesn't mean Celsius has to go into liquidation. With a new management and a new brand, there can *absolutely* be a future for this company.

I have attached, as exhibits A and B–draft plan as *just examples* of the kinds of plans that a Chief Restructuring Officer could support.

I do not believe that Alex Mashinsky or current management would ever support simple but commonsense proposals like these, because, while they return value to depositors and creditors, they leave no future for current management (and there shouldn't be any future for them; we need new management now, and new management post-bankruptcy.)

**A Chief Restructuring Officer can, as a condition of their employment, conduct any investigation that is necessary and appropriate**

A Chief Restructuring Officer can be ordered, as a condition of their employment, to hire their own professionals to conduct any investigation that justice demands *concurrently* with a restructuring (although I would ask that there be limits to the expense paid out of the estate's–and, ultimately, creditors–pockets to avoid duplication of efforts with the UCC, etc.)

Thank you, so much, for your time and consideration, and for all your work.

Washington, DC
Dated: September 7, 2022

Respectfully submitted by:
s/ Immanuel Herrmann
Immanuel Herrmann
*Pro se creditor*

**Exhibit A: Celsius Mining Plan (just an example)**

Celsius owns a bunch of mining machines. However, they lack:
1. The skills and experience to run a major mining operation.
2. Cash to reinvest in machines every 3 years or less (machines depreciate fast)

Because we are currently in a bear market, selling Celsius' mining machines for cash (or BTC) will get a low ROI. But if we keep the machines under Celsius' control, there is a major risk of mistiming the market. For example, if the machines expire in 2 years, they are worthless after that point, except for the BTC they were able to mine in the interim. If the next bull market comes in 3.5 years, it'll be too late.

**That's where the Celsius Mining Merger Proposal comes in.**

Mining company stocks are absolutely crushed vs their all-time highs. Marathon Digital is down 82%. RIOT Blockchain is currently down 88. HUT 8 is down 85%. And Bitfarms is down 82%.

Mining companies do have some cash. However, what they can do in a bear market is issue new restricted stock "for free", and exchange it for mining machines.

This approach gives an outsize chance at high returns while not requiring mining companies to come up with any new capital at all. (They will have to pay for electricity, but, if need be, they can sell mined BTC to do so–or else obtain their own financing.)

According to Celsius' first day presentation, they have $720 million in mining assets. This proposal swaps Celsius' mining assets (machines and real estate) for restricted stock in a large mining company (or multiple companies.)

Example:
1. Marathon has a current market cap of $1.43 billion ($13.42 per share)

2. If Celsius' bitcoin machines, warehouses, and land are worth $720 million, Marathon would take all of the mining assets in exchange for $720 million in restricted stock (at $13.42 per share).

3. The new "Merged SuperMarathon Mining Co" would be worth $2.15 billion ($13.42 per share).

4. To avoid a dump in the stock price, the shares would be restricted, and unlock later (during a bull market, and/or after a fixed amount of time such as 1-2 years.)

5. Celsius investors would get MARA shares after the unlock, and could sell them at will. Those who wait for a bull market might get as much as $150 per share–a return of 1117%. Or, further down the road, even 2000% (or 20x.)

**Exhibit B: Bitcoin Bonus plan**

**Executive Summary**
If a new company, under new management, with a new brand, is able to start a compliant, trustworthy replacement of Celsius, it will need long-term customers.

The higher the number of customers, and the higher the AUM, the more valuable the company will be.

To increase the number of long-term customers and prevent a huge number of people from leaving the new company, I propose a **Bitcoin bonus program.**

Customers who agree to some or all of their Celsius recovery into the new company (the "Newco") and lock it up for a number of years will receive bonus bitcoin that will be locked for the duration of their commitment.

This is not a free lunch: customers would sacrifice additional years of liquidity, on top of the wait for a bankruptcy settlement, to get a somewhat higher recovery, in exchange for locking their deposits to increase the equity value of the new company.

People who participate in this scheme could receive *both stock in the new company and bonus bitcoin* because they are giving up their liquidity for many years in exchange for making the company an immediate success. It could also be layered on with other industry plans. Finally, this plan could potentially replace stock for smaller accounts, where owning a small amount of shares is impractical. And, because it is bitcoin, it could be available to *unaccredited* investors. It is also compliant with regulations because it is simply a *deposit bonus.*

**As an alternative, there could be a program to *make users crypto more whole if they lock their funds for 5 years* (this would require a much larger initial raise from investors in a recovery plan, but the investors would be <u>much more likely to get a good ROI through exit liquidity!</u>)**

**Draft Proposal**
1 year lockup: 5% bonus
2 year lockup: 15% bonus
3 year lockup: 25% bonus
4 year lockup: 40% bonus
5 year lockup: 50% bonus

Terms:
1. Customers only receive a bonus on locked bitcoin that they agree to lock for the full term.

2. Locked bitcoin and bonus bitcoin cannot be withdrawn during the lockup period, or you lose all bonus bitcoin, and forfeit it to the Newco (which could add the BTC to its balance sheet or sell it, immediately increasing the value of the company.)
3. Bonus Bitcoin would be funded by issuing common stock in the new company, and funded by investors, at the time the locked deposit is made.
4. Customers can borrow USDC against their locked bitcoin (secured loan) and pay interest, and/or earn interest against their locked bitcoin.
5. Bonus bitcoin will not earn interest and cannot be borrowed against. It will be locked and deposited (and the Newco can earn interest on it 1:1, but not rehypothecate it.)
6. Locked bitcoin and bonus bitcoin will be treated as property of the customer, but customers will forfeit bonus bitcoin if they withdraw before their commitment period ends.
7. If the company has an IPO, or bitcoin reaches a certain price threshold, such as $100,000, customers will be allowed to withdraw a limited amount of BTC (for example, 20%) to take profits.
8. Alternatively, there could be an allowance to sell locked BTC for locked USDC through a trading feature in the future.
9. If the terms of service are changed at a later date to allow for rehypothecation or degen trading (like Celsius), depositors will be informed, the bonus program will end, and users will be able to immediately withdraw all locked bitcoin. This gives assurances that this will not be economical to do because the Newco would forfeit a ton of bitcoin to customers.

**Outstanding questions/issues**
1. This plan would require more cash from investors upfront. However, it would also increase the value of the stock upfront, increase its chances of success, and provide liquidity to the Newco. How much is that worth and what bonus % can be justified?
2. Is this a special offer for just Celsius customers, or might investors want to offer these bonuses to all depositors? (Depends how much AUM the Newco wants and how much of a bonus pool can be funded.)
3. Is there a limit per customer?
4. Can this program be expanded to Ethereum/Ethereum staking in a regulatory-compliant way (like Kraken?) If so, that would increase participation a lot.