Joshua A. Sussberg, P.C.  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:     (212) 446-4800  
Facsimile:      (212) 446-4900  

*Proposed Counsel to the Debtors and*  
*Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)  
Christopher S. Koenig  
Dan Latona (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:     (312) 862-2000  
Facsimile:      (312) 862-2200  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF SHIRAN KLEIDERMAN,**  
**CHIEF SECURITY OFFICER OF CELSIUS NETWORK LLC,**  
**WITH RESPECT TO THE DEBTORS' SECURITY PROTOCOLS**

I, Shiran Kleiderman, Chief Security Officer and Head of IT of Celsius Network LLC (together with the above-captioned debtors and debtors in possession, the "Debtors") and certain of its Debtor and non-Debtor affiliates (collectively, with the Debtors, "Celsius" or the "Company"), hereby declare under penalty of perjury:

**A.     Background**

1.     I am the Chief Security Officer and Head of IT of Celsius Network LLC and certain other Company subsidiaries and have held that position since March 2020. I have worked for over

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

fifteen years in the information security and cyber intelligence sector. Immediately prior to joining Celsius, I served as Senior Director of Product Engineering at OTORIO, a cyber-security and digital risk-management services provider, from August 2019 to March 2020. Previously, I also served as founding member and Chief Technology Officer of Dark Web Intelligence for BlueVoyant, a cyber-defense platform, from July 2017 to July 2019. My background and experience in security also includes time served with the Israeli military in the field of cryptography and cyber defense.

2. I am generally familiar with the Debtors' day-to-day operations, business, and security protocols. Except as otherwise indicated, all facts in this declaration are based upon my personal knowledge, my discussions with other members of Celsius' management team and advisors, my review of relevant documents and information concerning Celsius' operations and security protocols, or my opinions based upon my experience and knowledge. I am over the age of 18 and authorized to submit this declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth in this declaration.

B. **The Debtors' Cryptocurrency Assets and Location of Such Assets**

3. The Debtors currently maintain cryptocurrency coin assets (the "Coins"). I understand, from conversations with the Debtors' Chief Financial Officer and Chief Revenue Officer, that these Coins are worth approximately $3.65 billion as of September 2, 2022.[2] Of those amounts, Coins worth approximately $2.54 billion are on Fireblocks (as defined below). While there are thousands of cryptocurrencies in existence, Celsius currently maintains over one hundred different cryptocurrencies and has published the holdings of its top 25 Coin types.[3]

---

[2] *See* Expanded Coin Report, dated as of September 14, 2022, filed contemporaneously herewith (the "Expanded Coin Report").

[3] *See id.*

2

        i.      **Coins on the Fireblocks Workspaces**

4.     The Debtors currently store the majority of their Coins in digital "wallets" on the blockchain, which may only be accessed through a self-custody, multi-party computation system on the third-party digital asset custody platform Fireblocks Inc. ("Fireblocks"). Fireblocks is widely recognized as an industry-leading provider of cryptocurrency storage services, and the Debtors have used Fireblocks to store cryptocurrency since 2019.

5.     As noted in the Expanded Coin Report, Celsius maintains ten different workspaces on Fireblocks for the purpose of holding and managing Coins. Two of the Fireblocks' workspaces are test workspaces that are not in use and do not hold any wallets or Coins. The remaining eight workspaces are operational and set up for the following purposes and functions:

- **Celsius Network Limited** – This workspace is used for deployment activities. As of September 2, 2022, it holds wallets containing Coins totaling $1.89 billion.[4]

- **Celsius Network LLC** – This workspace is used for retail activities. As of September 2, 2022, it holds wallets containing Coins totaling $413.7 million.[5]

- **Celsius Network Finance** – This workspace historically was used as an ad hoc workspace, and recently was used to receive funds with respect to certain settlements. It is currently dormant and is not used for any specific purpose. As of September 2, 2022, it holds wallets containing Coins totaling approximately $39,790.[6]

- **Celsius Network EU UAB** – This workspace is held in the name of non-Debtor Celsius Network EU UAB, a Lithuanian-domiciled entity. This workspace holds a combination of Ether, Cardano, Binance, and other Coins. Certain of these other Coins, such as "XRP," cannot be moved off this workspace to a Debtor-based workspace in the U.S. or U.K. for regulatory reasons. As of September 2, 2022, it holds wallets containing Coins totaling approximately $1.3 million.[7]

---

[4] *See id.*

[5] *See id.*

[6] *See id.* Assets in this workspace are *de minimis* such that exact amounts are not expressed in the Expanded Coin Report.

[7] *See id.*

- **Celsius OTC** – This workspace primarily holds CEL Tokens and was originally created to facilitate certain over-the-counter transactions to customers, though these trading activities are currently paused. As of September 2, 2022, it holds wallets containing Coins totaling approximately $21.2 million.[8]

- **Celsius Mining LLC** – This workspace primarily holds Bitcoin mined by Celsius Mining LLC, a portion of which will be sold for USD in accordance with the *Order (I) Permitting the Sale of the Debtors' Mined Bitcoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 514]. As of September 2, 2022, it holds wallets containing Coins totaling approximately $1.4 million.[9]

- **Custody Assets** – This workspace holds wallets containing Coins with respect to the Debtors' "Custody" liabilities. As of September 2, 2022, it holds wallets containing Coins totaling approximately $211.1 million.[10]

- **DeFi** – This workspace is used to hold wallets containing Coins for purposes of DeFi (as defined below) transactions. As of September 2, 2022, it holds wallets containing Coins totaling approximately $66.7 million.[11]

ii. Deployed Coins

6. Historically, the Debtors deployed Coins to generate income. Consequently, some of the Debtors' Coins are tied up in long term and illiquid crypto deployment activities and some have been loaned to third parties, among other things. The Debtors have stopped new deployment activities, but some Coins deployed prior to the Petition Date remain locked in staking activities or smart contracts.[12]

7. For example, Celsius holds some Coins staked on decentralized finance ("DeFi") platforms. In addition to these DeFi / Direct Staking and Other Staking categories, the Debtors also have historically lent Coins to institutional borrowers and deployed Coins on exchanges such as FTX and Bitfinex.

---

[8] *See id.*
[9] *See id.*
[10] *See id.*
[11] *See id.*
[12] *See id.*

8. In the days and weeks leading up to the commencement of these chapter 11 cases, the Debtors took considerable steps to "unwind" certain deployments, and following the Petition Date, the Debtors agreed not to engage in any further exchange deployments absent Court approval. Substantially all of the Debtors' DeFi borrowings have been repaid and the collateral returned to the Debtors, with only one borrowing remaining in an amount of approximately $3.2 million collateralized by $6.6 million in Coins.[13]

9. Since the Pause, the Debtors have made tremendous efforts to conserve their Coin assets and increase the safety and security of such assets, as set forth in greater detail below.

C. **Overview of the Debtors' Coin Security Processes and Procedures**

10. The Debtors have a defined cybersecurity framework that includes protecting people, technology, and digital assets. Their security team is multidisciplinary and designed like a bank or large enterprise that employs military-grade security. The security protocols utilize several strategies and activities, including conducting first and third-party security assessments, multi-party computation and asset protection, and 24/7 monitoring and proactive hunting for risks. The Debtors hold certificates from the International Organization for Standardization (ISO) in various operations, privacy and information security management-related domains.

11. To maintain their wallets, the Debtors utilize the Fireblocks platform to securely streamline their digital asset trading operations and maintain direct custody of their digital assets on one platform. Fireblocks workspaces are made up of many wallets, and each workspace has policies that define the administrative quorum needed for whitelisting addresses and approval of transactions. The Fireblocks wallets are organized into ten different workspaces, all of which are currently deactivated or frozen for security purposes, except the Celsius Mining LLC workspace.

---

[13] *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23], ¶¶ 71–73.

Postpetition, specific transactions have been conducted as authorized by the Court and with the approval of the Special Committee.

12. Consistent with industry standards and best security practices, for the majority of the Debtors' transactions on the Fireblocks workspaces, the Debtors' approval protocols required that an external wallet first be "whitelisted," and second, that the ultimate transaction be approved by a quorum of specific individuals that have the power to approve and initiate transactions (each, an "Authorized Individual").  Each of the Fireblocks workspace private keys are also backed up and stored offline in cold storage devices.  These cold storage devices are stored in physical vaults in Israel that are under 24-hour physical surveillance.

13. These security measures have been sufficient to safeguard the Debtors' valuable Coin assets and are on par with security measures employed by financial institutions and other sectors that employ military-grade security.  However, the Debtors are always looking to improve security and enhance existing protocols and have engaged in extensive discussions with the Committee about Coin security and additional safety measures that can be taken and are working to implement security enhancements suggested by the Committee's professionals.[14]

14. Since the pause of withdrawal operations and customer activities, the Debtors have rigorously clamped down their security system through several measures, as described below in Part E of this declaration, including severely restricting access to Fireblocks workspaces and increasing the number of steps required to authorize any movement of cryptocurrency.

**D.    Overview of the Debtors' Other Security Measures**

15. I am also familiar with the Debtors' other policies, procedures, and security controls employed to prevent misappropriation and external cyber-attacks with respect to the Coins and

---

[14] *See Joint Stipulation and Agreed Order Between the Debtors and the Committee with Respect to Cryptocurrency Security*, filed contemporaneously herewith (the "Joint Security Stipulation").

6

Coin-based transactions. The Debtors utilize a combination of cutting-edge technology and top cybersecurity talent to protect their assets as part of a multilevel cybersecurity framework. For example, for any large withdrawals, the Debtors historically engaged in an automated risk assessment that utilized multiple techniques to analyze risk factors. Cases flagged at certain risk levels were escalated to security personnel to review and investigate.

16. The Debtors maintain a 24/7 security operations center that is responsible for the monitoring of the Debtors' infrastructure and interfaces. The Debtors also work with leading vendors that are used by institutions worldwide to provide the security services needed to protect client assets and data.

**E.    Security Updates Since the Commencement of These Cases**

17. Since the commencement of these chapter 11 cases, I have personally overseen or been made aware of the implementation of further security measures in compliance with requests from the official committee of unsecured creditors (the "Committee"), including:

    a. halting all Coin-based transactions, including all activity on Fireblocks workspaces and other controlled channels (exchanges, GK8, for example), other than Court-authorized transactions;

    b. updating protocols to require the written and verbal authorization of four U.S.-based Authorized Individuals, and at least one of two non-U.S. based Authorized Individuals to unlock or unfreeze any Fireblocks workspaces, whitelist addresses, and approve transactions/move assets;

    c. deactivating and securing the retail withdrawal and transaction platform for further safeguarding of the retail assets; and

7

   d. removing access from a majority of employees, including traders and coin deployment specialists, at the network access and Fireblocks levels.

  18. I believe that the Debtors' current security protocols and posture, including the updates described herein, provide sufficient security for the Debtors' Coins for at least three reasons. **First**, Coins are protected from misappropriation by individuals within Celsius because any transaction involving the Coins requires multiple levels of coordinated authorizations. **Second**, Coins are protected from outside cyberattacks as they are securely maintained in wallets through the Fireblocks custodial system. I am aware that Fireblocks is an industry leading provider of cryptocurrency storage services. **Finally**, people, technology, and process are all monitored 24/7 and the relevant security enforcement controls are in place.

  19. Due to the digital nature of the Coins, they cannot be stored in a traditional bank account, and I believe that the security protocols and controls as described herein and the ongoing collaboration and work with vendors, such as Fireblocks, are sufficient to address the bespoke protections the Coins require. Nevertheless, the Committee requested certain modifications to the Debtors' security protocols and procedures, and the Debtors were open to conversations about how to further improve their processes. Accordingly, the Debtors negotiated the terms of the Joint Stipulation with the Committee, which provides for, among other things, modifications to the Debtors' processes for authorizing transactions, and that the Debtors and the Committee will seek to identify an Acceptable Custodian (as defined in the Joint Stipulation) that will (i) hold the backup for the Account Keys (as defined in the Joint Stipulation) and (ii) implement transfers of the Debtors' cryptocurrency assets, as set forth in greater detail in the Joint Stipulation. I believe the terms of the Joint Stipulation are reasonable and appropriate modifications to the Debtors'

security protocols and controls, and I understand that the Joint Stipulation implements the Committee's requested modifications.

[*Remainder of Page Intentionally Left Blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: September 14, 2022                /s/ *Shiran Kleiderman*
                                         Name:  Shiran Kleiderman
                                         Title:   Chief Security Officer
                                         Celsius Network LLC