**Hearing Date: October 6, 2022, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: September 29, 2022, at 4:00 p.m. (prevailing Eastern Time)**

| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF HEARING ON
DEBTORS' MOTION SEEKING ENTRY OF
AN ORDER (I) PERMITTING THE SALE OF STABLECOIN
IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* (the "Motion") will be held on **October 6, 2022, at 10:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 528]; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **September 29, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for

2

Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on October 6, 2022 must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on October 6, 2022.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room," in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of Page Intentionally Left Blank*]

<div style="display: flex; justify-content: space-between;">

New York, New York  
Dated: September 15, 2022

/s/ Joshua A. Sussberg  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Joshua A. Sussberg, P.C.  
601 Lexington Avenue  
New York, New York 10022  
Telephone:   (212) 446-4800  
Facsimile:   (212) 446-4900  
Email:         jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)  
Christopher S. Koenig  
Dan Latona (admitted *pro hac vice*)  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:   (312) 862-2000  
Facsimile:   (312) 862-2200  
Email:         patrick.nash@kirkland.com  
                   ross.kwasteniet@kirkland.com  
                   chris.koenig@kirkland.com  
                   dan.latona@kirkland.com

*Counsel to the Debtors and*  
*Debtors in Possession*

</div>

4

Hearing Date: October 6, 2022, at 10:00 a.m. (prevailing Eastern Time)
Objection Deadline: September 29, 2022, at 4:00 p.m. (prevailing Eastern Time)

| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION SEEKING ENTRY OF AN
ORDER (I) PERMITTING THE SALE OF STABLECOIN
IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1.    The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"): (a) permitting the Debtors, on a postpetition basis and consistent with past practice and in the ordinary course of business, to continue to sell and/or exchange their

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

stablecoin for U.S. dollars and (b) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 363(c)(1), 541, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## Background

5. The Debtors, together with their non-Debtor affiliates (collectively, "Celsius"), are one of the largest and most sophisticated cryptocurrency based finance platforms in the world and provide financial services to institutional, corporate, and retail clients across more than 100 countries. Celsius was created in 2017 to be one of the first cryptocurrency platforms to which users could transfer their crypto assets and (a) earn rewards on crypto assets and/or (b) take loans using those transferred crypto assets as collateral. Headquartered in Hoboken, New Jersey, Celsius has more than 1.7 million registered users and approximately 300,000 active users with account balances greater than $100.

6. On July 13, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Mashinsky Declaration") and the *Declaration of Robert Campagna, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Campagna Declaration").[2] As described in more detail in the Mashinsky Declaration, the Debtors commenced these chapter 11 cases to provide Celsius an opportunity to stabilize its business and consummate a comprehensive restructuring transaction that maximizes value for stakeholders.

7. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 53]. On July 27, 2022, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee"). On September 14, 2022, the Court entered an order authorizing the appointment of an examiner [Docket No. 820].

**Stablecoin Activity**

8. As described in the Mashinsky Declaration, stablecoins are an important subset of cryptocurrencies because their value is tied (or "pegged") to another currency—usually 1:1 with

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Mashinsky Declaration or the Campagna Declaration (together, the "First Day Declarations"), as applicable.

3

fiat currency.[3] Through pegging to fiat currency, such as the U.S. dollar, stablecoins, as the name suggests, offer a stable cryptocurrency option that is not subject to market fluctuations.

9. Celsius currently owns eleven different forms of stablecoin totaling approximately $23 million. The stablecoin is held by Debtor Celsius Network Limited (UK), Debtor Celsius Network LLC (US), and non-Debtor Celsius Network EU UAB (LT).

10. In the ordinary course of its business, Celsius used stablecoins in its retail and institutional lending services, as further described in the Mashinsky Declaration, and would monetize its stablecoin assets as needed to fund operations. Since the Petition Date, the Debtors ceased their active retail lending programs, Earn program, and Custody services, among other activities. In addition, pursuant to the Third Interim Cash Management Order,[4] the Debtors agreed that they would not liquidate or exchange any cryptocurrency absent further order of the Court. *See* Third Interim Cash Management Order ¶ 6. The Debtors, however, continue to own stablecoins that should be monetized to fund their operations in these chapter 11 cases given their market stability compared to other types of cryptocurrencies.

11. The Debtors, in an exercise of their reasonable business judgment, believe that the sale of their stablecoin consistent with past practice and in the ordinary course of business is an efficient way to generate liquidity to help fund the Debtors' operations.

---

[3] For example, as described in the Mashinsky Declaration, USD Coin (or "USDC") is one of the largest stablecoins by market capitalization, and is pegged 1:1 with the U.S. dollar. USDC is collateralized by a pool of U.S. dollars, or other cash equivalent, to ensure that it maintains its price stability—for every USDC in circulation, $1 is held as collateral. Each USDC is redeemable for $1 through Circle (the issuer of USDC). *See* Mashinsky Decl. ¶ 28.

[4] The "Third Interim Cash Management Order" means the *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 699].

4

## Basis for Relief

12. The relief requested in this Motion relates solely to the continued ordinary course conduct of the Debtors' business within the meaning of section 363(c)(1) of the Bankruptcy Code. The Debtors believe that sale of their stablecoin, consistent with prepetition practice, fits squarely within the meaning of ordinary course conduct, however, pursuant to the Third Interim Cash Management Order, an order of the Court is required to authorize the Debtors to convert cryptocurrency to cash. *See* Third Interim Cash Management Order ¶ 6. Therefore, the Debtors seek entry of an order for the relief requested herein to provide all parties in interest with notice that the Debtors intend to sell, as is necessary and appropriate, both their current stablecoins and any future stablecoins the Debtors may receive to fund these chapter 11 cases.[5]

I. **The Debtors May Continue to Sell Their Stablecoin Assets in the Ordinary Course of Business Pursuant to Bankruptcy Code Section 363(c)(1) of the Bankruptcy Code.**

13. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use, sell, or lease property of the estate in the ordinary course of its business providing, in relevant part:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204 or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

14. As threshold matters, the Debtors continue to operate their business as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code, and any

---

[5] For the avoidance of doubt, the Debtors will not sell any stablecoins that constitute Custody Assets and/or Withhold Assets pending the outcome of the *Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 670] (both as defined therein) and/or any other motions, pleadings, and proceedings addressing the return and/or release of Custody Assets and/or Withhold Assets.

5

stablecoin held by the Debtors' postpetition activity constitutes property of the Debtors' estates in accordance with section 541(a) of the Bankruptcy Code. Accordingly, the proceeds generated by the sale of stablecoin also constitute property of the Debtors' estate.[6]

15. As a general matter, section 363 of the Bankruptcy Code is designed to strike a balance between allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets. *See In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997) (citations omitted). The ordinary course of business standard was intended to allow a debtor in possession the flexibility required to run its business and respond quickly to changes in the business environment. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Accordingly, a debtor in possession may use, sell, or lease property of the estate without need for prior court approval if the transaction is in the ordinary course. *See Lavigne*, 114 F.3d at 384; *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796–97 (Bankr. D. Del. 2007) ("Thus, whether notice and a hearing are required depends on whether a transaction is 'in the ordinary course of business.'"); *In re Chernicky Coal Co.*, 67 B.R. 828, 834 (Bankr. W.D. Penn. 1986) (holding that bankruptcy court approval was not required for a transaction in which the debtor "did nothing post-petition that it did not do pre-petition in the ordinary course of its regular business activities"). Stated differently, creditors are not given the right to notice and a hearing when transactions are in the ordinary course of business "because their objections to such transactions are likely to relate to the [debtor's] chapter 11 status, not the particular transactions themselves." *See In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983).

---

[6] *See* 5 Collier on Bankruptcy ¶ 541.15 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Included as property of the estate under section 541(a)(6) [of the Bankruptcy Code] are all proceeds, products, offspring, rents, or profits of or from property of the estate, acquired after the case is commenced.").

6

16. The Bankruptcy Code does not define the "ordinary course of business." To determine whether a transaction is in the ordinary course of business under section 363, courts in the Second Circuit apply a two-part test, the objective horizontal test and the subjective vertical test. *See, e.g.*, *Lavigne*, 114 F.3d at 384–85 (citing *Roth Am.*, 975 F.2d at 952-53). The horizontal test is a factual analysis as to whether the transaction in question is of the sort commonly undertaken by companies in the relevant industry. *See Lavigne*, 114 F.3d at 384–85. The vertical test is an analysis conducted from the perspective of a hypothetical creditor to determine whether the transaction subjects such creditor to an economic risk of a nature different from those it accepted when it entered into a contract with the debtors. *Id*. In making this determination, courts look to the debtor's prepetition business practices and conduct and compare them to the debtor's postpetition conduct. *See, e.g.*, *Nellson Nutraceutical*, 369 B.R. at 797. Here, the Debtors continuing to sell their stablecoin satisfies both the horizontal and vertical tests.

17. The Debtors' sale of their stablecoin satisfies the horizontal test as a matter of definition. Stablecoins are "pegged" to the U.S. dollar and do not fluctuate in value as other cryptocurrencies do. As a result, stablecoin is often accounted for on a 1:1 basis with the U.S. dollar in a company's books and records. Accordingly, a cryptocurrency platform would be reasonably expected to use or sell stablecoins as needed to access liquidity or offer loans backed by a trusted collateral. Thus, the horizontal test is satisfied here because the sale of current or future stablecoins constitutes the regular, ordinary course practice of companies in the Debtors' industry and should be permitted.

18. The Debtors' sale of stablecoin satisfies the vertical test because a hypothetical reasonable creditor would likely see no material change in its exposure to economic risk in connection with the Debtors' sale of their stablecoin. That is, a hypothetical prepetition creditor

7

would reasonably expect (and likely prefer) that the Debtors continue their prepetition practice in this regard on a postpetition basis instead of having the Debtors seek secured financing. Rather, it is likely that a reasonable creditor would view its exposure to economic risk as materially and negatively altered if the Debtors hypothetically limited their ability to monetize stablecoin to fund operations as needed. If the Debtors are not able to sell their stablecoins as needed, then they lack the ability to use an asset that is valued 1:1 with the U.S. dollar to fund these chapter 11 cases and may be forced to seek other financing, likely secured by the Debtors' assets that will prime recoveries to the Debtors' current creditors (their customers). Because stablecoins do not fluctuate in value, selling and/or exchanging stablecoins for U.S. dollars will not increase, but likely decreases, a creditor's exposure to economic risk in these chapter 11 cases. To be sure, the Debtors' sale of stablecoin will be performed consistent with their past practice.

19.    Section 363(c)(1) of the Bankruptcy Code provides sufficient authority for the Debtors' continued sale of stablecoin on grounds that such activity is squarely "ordinary course" under the binding precedent of this circuit. In addition, the relief requested herein complies with the requirements set forth in the Third Interim Cash Management Order.

### Waiver of Bankruptcy Rule 6004(h)

20.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

21.    Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular

8

claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Motion Practice

22.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Rule 9013-1(a).

## Notice

23.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the United States Trustee for the Southern District of New York; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the Internal Revenue Service; (e) the offices of the attorneys general in the states in which the Debtors operate; (f) the Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

24.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Reminder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York<br>Dated: September 15, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>Email: jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email: patrick.nash@kirkland.com<br>ross.kwasteniet@kirkland.com<br>chris.koenig@kirkland.com<br>dan.latona@kirkland.com<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |

# Exhibit A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) PERMITTING SALE OF THE DEBTORS' STABLECOIN
IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) permitting the Debtors to continue to sell stablecoin consistent with past practice and in the ordinary course of the Debtors' business and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (if any) before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to sell and/or exchange any stablecoin, whether currently held or received in the future, on a postpetition basis consistent with prepetition practices and in the ordinary course of business without further notice and hearing; *provided* that the Debtors shall not sell any stablecoins that constitute Custody Assets and/or Withhold Assets pending further order of the Court.

3. Notwithstanding anything to the contrary herein, upon the Debtors' sale of stablecoin, such cash proceeds are subject to the applicable provisions of the *Third Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 699] and any other order of the Court relating to the subject matter hereof.

4. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular

2

claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim

5.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York  
Dated: _____, 2022

<div style="text-align: right;">
THE HONORABLE MARTIN GLENN  
CHIEF UNITED STATES BANKRUPTCY JUDGE
</div>