To The Honorable Judge Martin Glenn,

I am a Borrower, Earn account holder, and a CEL token holder on the Celsius platform. I have previously written to you in the Celsius case (docket 355). I would like to re-emphasize my suggestions and provide the following as support and update for item no. 2 of the suggestions regarding loans and collateral.

I believe there are very strong arguments in favor of the collateral belonging to the borrowers, without any liens or impediments, once the loan principal and accumulated interest is paid back to Celsius.

1. This position is well supported in the California Financial Protection document (annex A) where it is shown that all Celsius official communication also supports this standpoint (for example item 15 in the document).

2. The Loan Terms of Use (LTU) are contradictory, mix incompatible concepts (like collateralized loan agreement with transfer of ownership of the collateralized asset) and have been changed numerous times as per the 'Mashinsky Declaration' (docket no. 393), with different statements regarding the collateral. The official communication and explanations from senior management also contradict the LTU and omit to mention or point out the extremely important issues regarding the collateral and any changes to them. The changes are many and based on the above arguments, the LTU should be seen as void and not enforceable.

3. Any transfer of property rights normally require some form of Sale and Purchase agreement, something that obviously has not been signed in regards to the Loan Agreement. Such transfer of property rights in a loan collateral context would also necessitate some type of repurchase agreement in order to establish the right of the borrower to buy back the funds/crypto for the price equalling the loan principal, again this does not exist. It is also inconceivable that a lender would put up the collateral for a borrower. It then follows that the collateral should be viewed as encumbered property of the borrower. Celsius only have a claim on this asset up to the value of the loan amount plus unpaid interest. This is clear in the balance sheet as collateral is listed as liability while loans are listed as assets. The loan amount and interest is therefore a secured claim on the borrower, and the collateral encumbered assets (property) of the borrowers.

4. If the above arguments for some reason are not recognized, by paying off the loan (plus interest) the loan agreement contract is fulfilled and concluded. On this basis only, even without the other supporting arguments, should the full, unencumbered property rights of the collateral be restored to the borrower. In such case the borrower should immediately have the collateral, in kind, released to address(es) specified by the borrower.

5. Additionally, Celsius actions in relation to their own loans, that was paid off in order to get the collateral back to Celsius, support this position. General collateralized loan agreements both in and outside the crypto space also follow this fundamental view of collateralized loans.

6. I am sure you are aware that there has been a substantial amount of misrepresentation, incorrect statements and even serious suspicion of deception and fraud on the part of Celsius senior management. This fact is already evidenced in numerous letters to the court. Such behavior by senior management casts significant doubt on the legality of any contracts or TOS agreements.

7. It is also clear from the balance sheet that Celsius has ample assets available to return the collateral to the borrower upon repayment. Once the repayment is done, the full

unencumbered property rights and title resides with the borrowers and the highest priority should therefore be assigned to return this property to it's rightful owners.

8. Even if LTU are to be considered void, the common theme in them and in management communications has been that loans can be repaid at any time. Celsius also seems to honor this at the present time but they **will not** release the collateral out from Celsius platform to external addresses. This is obviously not acceptable as the property rights of the collateral get compromised once the funds return to an Earn account.

9. Finally, Celsius counsel has in an earlier hearing argued that funds used as collateral somehow would take on properties from the account from whence it came. This argument is not convincing for several reasons and should be thrown out and dismissed;
    - The crypto/funds for collateral originates as property of a customer (ensured by KYC requirements). For most of the time and for most customers, the only way to transfer these crypto/funds to Celsius for use as collateral was via the Earn account. While in this account the title and property rights of the crypto/funds *may* have changed (this is an issue to be discussed elsewhere). However, once transferred on to a Custody account it has already been established that title and property rights of the crypto/funds revert back to the customer. So here it is accepted that the crypto/funds do not in any way somehow retain properties from the account it came from. The same should apply for the collateral. Once crypto/funds are moved from an Earn account to collateral, title and property rights revert back to customer/borrower, albeit encumbered by the loan obligation.
    - How far would you 'look back' to determine the property rights and title to crypto/funds? Would a collateral that was transferred from Custody account have different property attributes than collateral transferred from Earn? And what if the funds entered Celsius as Earn account, transferred to Custody and then used as collateral? Who then has the title and property rights? The more one thinks about this the more obvious it becomes that this argument is untenable and unacceptable.

It is my firm conviction that **only the loan principal and interest is part of the bankruptcy estate's assets and not the collateral itself.** Celsius has a secured claim on the borrower. Once the loan and interest are paid, i.e. the loan contract is fulfilled, the collateral becomes the unencumbered property of the borrower (similar to Custody account) and must immediately be returned to the borrower outside of Celsius platform.

Based on the above arguments I therefore request that;

1. The Court immediately order Celsius to accept loan settlements for borrowers willing to pay back principal plus interest in USD. Celsius should actively ask borrowers if they want to repay or not so as to ensure all borrowers know about this option.
2. The Court order Celsius to immediately release the collateral to any wallet address specified by a borrower once the loan principal plus interest is repaid.

These actions are absolutely necessary in order to ensure confidence remains in the crypto lending market as well as in the collateral loan market as any ruling compromising the collateral may impact collateralized loans everywhere. Please do not delay such ruling as the doubt and uncertainty already created is unhealthy for the industry and also detrimental to the health and wellbeing of borrowers.
On a personal note, my collateral form the foundation of my retirement and not being able to access it has a devastating impact on my present and future life situation.

Sincerely

Johan Bronge

CLOTHILDE V. HEWLETT
Commissioner
MARY ANN SMITH
Deputy Commissioner
DANIEL P. O'DONNELL
Assistant Chief Counsel
JEREMY F. KOO (State Bar No. 300225)
Counsel
Department of Financial Protection and Innovation
2101 Arena Boulevard
Sacramento, California 95834-2306
Telephone: (916) 936-7582
Facsimile: (916) 928-7929

Attorneys for Complainant

BEFORE THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION

OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of: | CFL LICENSE NO.: 60DBO-133776 |
| THE COMMISSIONER OF FINANCIAL PROTECTION AND INNOVATION, | ACCUSATION AND STATEMENT IN SUPPORT OF: |
| Complainant, | (1) NOTICE OF INTENTION TO ISSUE ORDER REVOKING CFL LICENSE; |
| v. | (2) ORDER CONDITIONING SURRENDER OF LICENSE |
| CELSIUS LENDING LLC, | |
| Respondent. | (3) ORDER TO SUSPEND ALL CFL BUSINESS OPERATIONS |

Clothilde V. Hewlett, Commissioner of the Department of Financial Protection and Innovation (Department), brings this action in the public interest and alleges and charges as follows:

## I.

## Jurisdiction and Venue

1. The Commissioner of Financial Protection and Innovation (Commissioner) brings this action pursuant to the provisions of Financial Code sections 22700, 22707.5, and 22714.[1]

2. The Commissioner is authorized to administer and enforce the provisions of the California Financing Law (CFL) (§ 22000 et seq.).

3. This action against Celsius Lending LLC's CFL license is, pursuant to the police and regulatory power exception, excepted from the bankruptcy stay issued after Celsius Lending LLC filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. (11 U.S.C. § 362(b)(4).)

## II.

## Introduction

4. At all relevant times, Celsius Lending LLC (Celsius Lending) is and was a company licensed as a lender under the authority of the California Financing Law (CFL) beginning on August 3, 2021, CFL license number 60DBO-133776, with a business address of 221 River Street 9th Floor, Hoboken, New Jersey 07030.

5. Celsius Lending is a wholly owned subsidiary of Celsius US Holding LLC. Celsius US Holding LLC is a wholly owned subsidiary of Celsius Network Limited. Celsius Network Inc. is 82.91 percent owned by Celsius Network Limited. Collectively, each of these entities are hereinafter referred to as "the Celsius entities."

6. In addition to the retail lending activities performed by Celsius Lending under its CFL license, the Celsius entities act as a financial service company that generates revenue through digital asset trading, lending, and borrowing, as well as by engaging in proprietary trading. The Celsius entities derive capital for these activities, at least in part, through the deposit of digital assets into

---

[1] All further statutory references are to the Financial Code, unless otherwise indicated.

interest-bearing "Earn Rewards" accounts and through the use of "collateral" posted by Celsius Lending borrowers.

7. On or about June 12, 2022, the Celsius entities suspended the fulfillment of customer withdrawal requests, citing "extreme market conditions."

8. On or about June 22, 2022, the Commissioner, through her CFL Exam Unit, initiated a special examination upon Celsius Lending pursuant to her authority provided by section 22701 ("Special Exam").

9. On or about July 13, 2022, the Celsius entities filed Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of New York. Celsius Lending reports that it ceased all lending activity as of that date and will not be liquidating existing customer loans.

10. On or about July 21, 2022, Celsius Lending filed an application to surrender its CFL license. The Commissioner has determined that despite the application to surrender, it is in the public interest to institute a proceeding to revoke the license and immediately order Celsius Lending's license be suspended.

### III.

### Unlicensed Finance Lender Activity (Section 22100, Subdivision (a))

11. Section 22100, subdivision (a), provides, in pertinent part, "No person shall engage in the business of a finance lender . . . without obtaining a license from the commissioner."

12. The Commissioner issued Celsius Lending its license on August 3, 2021.

13. The Commissioner's Special Exam revealed that Celsius Lending originated and funded five loans on August 1 and August 2, 2021, without a CFL license from the commissioner, in violation of section 22100, subdivision (a).

### IV.

### Advertising Statements That Omit Material Information Necessary to Make Statements Not False, Misleading, or Deceptive (Section 22161, subdivision (a)(3))

14. Section 22161, subdivision (a)(3), provides, in pertinent part, that a person subject to the CFL shall not

> [a]dvertise . . . or cause or permit to be advertised . . . in any manner, any statement or representation with regard to the business subject to the

-3-

ACCUSATION AND STATEMENT IN SUPPORT

provisions of this division, including the rates, terms or conditions for making or negotiating loans, . . . that is false, misleading, or deceptive, or that omits material information that is necessary to make the statements not false, misleading, or deceptive[.]

15. On its website, Celsius Lending advertises its "collateralized" loans. In a Frequently Asked Questions section on its main lending page, https://celsius.network/crypto-loans, Celsius poses the question, "Do I earn rewards on the coins that are locked as collateral?", referring to those that earn interest from their Earn Rewards deposits. Celsius answers, in pertinent part, "Unfortunately, no. When your crypto is locked as collateral against your loan, you are not earning rewards on it. Instead, what is happening is that, you are paying interest on the dollars that you've borrowed **and we have your crypto as collateral, so that is an asset that Celsius is holding on to."** (Emphasis added.)

16. However, Celsius Lending was not, in fact, holding on to borrower's digital assets. In fact, it was not doing anything that the typical consumer might think of ordinarily when "holding onto collateral."

17. Each Celsius Lending borrower executes the "Celsius Loan Terms and Conditions," hereinafter referred to as the "Celsius Loan Terms" or the "Terms."

18. Section 20 of the Celsius Loan Terms provide:

> 20.1. In consideration for the Loan, you grant Celsius and any of its Affiliates the right, subject to applicable laws, without further notice to you, to hold the Digital Assets provided as Collateral in Celsius' name or in another name, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and **without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets**, and to use or invest such Digital Assets at Celsius' own risk. You acknowledge that, with respect to Digital Assets used by Celsius pursuant to this paragraph:
>
> > 20.1.1. You will not be able to exercise any rights of ownership;
> >
> > 20.1.2. Celsius may receive compensation in connection with its using the Digital Assets in its business, to which you have no claim or entitlement; and
> >
> > 20.1.3. You will not be entitled to receive any benefits granted to the holder of any Digital Asset from time to time, including any airdrops, New Currency resulting from a Hard Fork (as these terms are defined in the Network Terms).

Section 20 of the Celsius Loan Terms effectively allowed Celsius to invest customer collateral in the company's income-generating activities.

19. It is false, misleading, or deceptive, in violation of section 22161, subdivision (a)(3), to advertise that borrowers are merely putting up "collateral" to secure their loans when in fact borrowers have their collateral subject to unknown investment risks that could potentially be lost in the event Celsius became insolvent.

20. It is false, misleading, or deceptive, in violation of section 22161, subdivision (a)(3), to advertise that "Celsius is holding on to" borrower's "crypto as collateral" when in fact the terms of service specifically permitted Celsius to "not retain in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets at Celsius' own risk."

## V.
### Contracting for Unlawful Prepayment Penalties (Section 22307.5)

20. Section 22307.5 provides, "A licensee shall not charge, impose, or receive any penalty for the prepayment of a loan. This section does not apply to a loan secured by real property."

21. Section 6 of the Celsius Loan Terms relates to customer requests to make an early repayment of a loan in full. Section 6.4 states, "In any event of Early Repayment, liquidation of Collateral . . . , or otherwise termination by you prior to the lapse of six (6) months of the Loan Effective Date, you will be nevertheless obligated to pay Celsius the interest for the full first six (6) month period." (Emphasis removed.) The requirement to pay six months of interest prior to the lapse of six months is a prepayment penalty prohibited by section 22307.5.

22. The Commissioner's Special Exam revealed that between its licensing on August 3, 2021, and July 5, 2022, Celsius Lending illegally enforced Section 6.4 of its terms on 15 loans, in violation of section 22307.5.

## VI.
### Making Untrue Statements to the Commissioner With the Intent to Impede, Obstruct, or Influence the Administration or Enforcement of the CFL (Section 22170, Subdivision (b))

23. Section 22170, subdivision (b), provides, in pertinent part, "It is unlawful for any

-5-

ACCUSATION AND STATEMENT IN SUPPORT

person to knowingly make an untrue statement to the commissioner . . . during the course of licensing, investigation, or examination, with the intent to impede, obstruct, or influence the administration or enforcement of any provision of this division."

24. On or about April 14, 2021, the Commissioner, through her Licensing Examination staff, sent a letter to Celsius Lending requiring, in pertinent part, that Celsius Lending "provide a sample loan agreement or contract" in order to complete the company's application for a CFL license.

25. On or about May 5, 2021, Celsius Lending sent the Commissioner, through her Licensing Examination staff, a document similar to the Celsius Loan Terms, but whose file name indicated it was applicable only to California borrowers ("Sample California Terms").

26. While Section 6.4 of the actual Celsius Loan Terms provided to the Commissioner during the Special Exam applied the illegal minimum six-month interest term to all borrowers, section 6.3.2 of the Sample California Terms applied the minimum six-month interest payment only to "commercial loans exceeding $5,000.00 in principal." Such a term, when applied to a commercial loan, is not explicitly prohibited by the CFL.

27. On or about March 14, 2022, Celsius Lending filed its CFL Annual Report, as required by section 22715. The CFL Annual Report declares that all loans made or refinanced in calendar year 2021 were consumer loans only and the company made no commercial loans.

28. In response to the Special Exam, Celsius Lending reported that it had made no commercial loans in California during its licensing period. Advertising copy provided to the Commissioner as part of the Special Exam also indicates that all loans were intended to be consumer loans and not commercial loans.

29. On August 8, 2022, Celsius Lending's Chief Executive Officer, Alex Mashinsky, filed a declaration in the United States Bankruptcy Court for the Southern District of New York stating, in pertinent part, that the Celsius Loan Terms submitted to the Commissioner as part of her Special Exam were the terms applicable to retail borrowers between August 1, 2021, through July 5, 2022, with an immaterial change made on or about October 19, 2021. The declaration, which purports to set forth all versions of Celsius Lending's loan terms that were effective for users outside of the United Kingdom between October 17, 2019, and August 8, 2022, does not include any version of the Sample California

1 Terms.

2 30. In providing Sample California Terms that appear to be specifically designed to make the Commissioner believe that Celsius Lending would not seek to impose an illegal prepayment penalty on a consumer loan in response to the Commissioner's demand for sample loan terms, Celsius Lending knowingly made an untrue statement to the Commissioner during the course of licensing, investigation, or examination, with the intent to impede, obstruct, or influence the administration or enforcement of the CFL, including section 22307.5, in violation of section 22170, subdivision (b).

**VII.**

**Excess Liquidation Charges (Financial Code sections 22306 and 22307, subdivision (a))**

31. Section 22200 defines "charges" in consumer loans to include "fees, . . . expenses, and other forms of costs charged, contracted for, or received by a licensee or any other person in connection with the . . . servicing, collecting, and enforcing of a loan or forbearance of money, credit, goods, or things in action, or any other service rendered."

32. For loans with a bona fide principal value of less than $5,000, section 22306 provides, "No amount in excess of that allowed by this article shall be directly or indirectly charged, contracted for, or received by any person, and the total charges of the finance lender and broker and any other person in the aggregate shall not exceed the maximum rate provided for in this article."

33. For loans with a bona fide principal value of less than $5,000, section 22307, subdivision (a), provides, in pertinent part, "Except as provided in Section 22305 and Article 4 (commencing with Section 22400), all charges on loans made under this division shall be computed and paid only as a percentage per month of the unpaid principal balance or portions thereof, and shall be so expressed in every obligation signed by the borrower."

34. Section 15.2 of the Celsius Loan Terms provides:

> You understand and acknowledge that any Liquidation Event may cause Celsius to incur costs and expenses (whether directly or indirectly), including but not limited to exchange fees, gas fees and legal expenses. Any such costs and expenses shall be deducted from the liquidated Collateral, up to a cap of three percent (3%) of the Fiat value of the liquidated Collateral. Celsius shall not be obligated to provide you with any proof of the costs and expenses incurred by it.

35. Celsius Lending's three percent fee imposed on liquidating collateral are charges that

-7-

ACCUSATION AND STATEMENT IN SUPPORT

1  violate sections 22306 and 22307, subdivision (a), because they are charges not assessed as a
2  percentage per month of the unpaid principal balance of the loan and are not otherwise exempt.
3      36.    The Commissioner's Special Exam revealed that Celsius Lending enforced section 15.2
4  of the Celsius Loan Terms by collecting or assessing a three percent fee on 875 liquidated loans with a
5  bona fide principal value of less than $5,000, in violation of sections 22306 and 22307.

## VIII.

### Contracting for Unlawful Balloon Payments (Section 22307, Subdivision (b); California Code of Regulations, Title 10, Section 1453)

9      37.    California Code of Regulations, title 10, section 1453, provides, in pertinent part, "Any
10 so-called 'ballooning' of loan contracts is prohibited. Any scheduled installment that is more than
11 twice the amount of any other scheduled installment will be considered a balloon payment for
12 purposes of this section and Section 22307 of the Financial Code." Exempt from this requirement are
13 loans made for a bona fide principal amount of $10,000 or more. (Cal. Code Regs., tit. 10, § 1570.)
14     38.    Section 22307, subdivision (b), provides, in pertinent part, that a "loan contract shall
15 provide for payment of the aggregate amount contracted to be paid in substantially equal periodical
16 installments[.]" Exempt from this requirement are loans made for a bona fide principal amount of
17 $10,000 or more. (§ 22250, subd. (a).)
18     39.    Sections 3 and 4 of the Celsius Loan Terms provide that borrowers are only required to
19 pay monthly interest on their loans and that the principal balance is only due with the final
20 repayments. Such terms are prohibited ballooning under section 22307, subdivision (b), and California
21 Code of Regulations, title 10, section 1453.
22     40.    The Commissioner's Special Exam revealed that between its licensing on August 3,
23 2021, and July 5, 2022, Celsius contracted for 7,886 loans for less than $10,000 with ballooning terms
24 prohibited under California Code of Regulations, title 10, section 1453 and that do not provide for
25 payment of the aggregate amount contracted to be paid in substantially equal periodical installments,
26 in violation of section 22308, subdivision (b).
27 / / /
28 / / /

-8-

ACCUSATION AND STATEMENT IN SUPPORT

**IX.**

**Contracting for Loans Exceeding Lawful Maximum Terms (Section 22334, Subdivision (a))**

41. Section 22334, subdivision (a), provides, for loans not secured by real property, that licensee shall not enter into any loan contracts that provide for scheduled repayment of principal greater than the terms set forth in the table below:

| Principal amount of loan | Maximum term |
|---|---|
| Less than $500 | 24 months and 15 days |
| $500 but less than $1,500 | 36 months and 15 days |
| $1,500 but less than $3,000 | 48 months and 15 days |
| $3,000 but less than $10,000 | 60 months and 15 days |

42. The Commissioner's Special Exam revealed that between its licensing on August 3, 2021, and July 5, 2022, Celsius Lending contracted for 1,382 loans exceeding the limits set forth in section 22334, subdivision (a), to wit:

| Principal amount of loan | Maximum term | Loans exceeding maximum term |
|---|---|---|
| Less than $500 | 24 months and 15 days | [no loans made] |
| $500 but less than $1,500 | 36 months and 15 days | 1,016 |
| $1,500 but less than $3,000 | 48 months and 15 days | 350 |
| $3,000 but less than $10,000 | 60 months and 15 days | 16 |

**X.**

**Contracting for Loans Below Lawful Minimum Term (Section 22334, subdivision (c))**

43. Section 22334, subdivision (c), provides, "A licensee shall not enter into any contract for a loan that provides for a scheduled repayment of principal that is less than 12 months. This subdivision applies to a loan of a bona fide principal amount of at least two thousand five hundred dollars ($2,500), but less than ten thousand dollars ($10,000)."

44. The Commissioner's Special Exam revealed that between its licensing on August 3, 2021, and July 5, 2022, Celsius Lending contracted for 312 loans of at least $2,500 but less than

-9-

ACCUSATION AND STATEMENT IN SUPPORT

22-10965-mg    Doc    Filed 09/26/22    Entered 09/26/22 16:48:28    Main Document
Pg 12 of 17

$10,000 for a term of six months, in violation of section 22334, subdivision (c).

## XI.

### Failure to Take Into Consideration Financial Ability of Borrowers to Repay Loans (Tit. 10, Cal. Code Regs. § 1452)

45. California Code of Regulations title 10, section 1452, provides, "When making or negotiating loans, a finance company shall take into consideration, in determining the size and duration thereof, the financial ability of the borrowers to repay the same, to the end that the borrowers should be reasonably [able] to repay said loans in the time and manner provided in the loan contracts."

46. The Commissioner's Special Exam reveals that Celsius Lending does not have an underwriting policy and does not maintain documents related to a borrower's ability to repay a loan on the grounds that a fully collateralized loan does not require evaluation of a borrower's credit history.

47. However, the Celsius Loan Terms do not waive the deficiency balance in a scenario where, due to digital asset market conditions, the sale of digital assets cannot be completed in a manner that would allow Celsius Lending to recoup the full balance of the loan plus operational expenses incurred in liquidating collateral, such as blockchain transaction fees.

48. The Commissioner's Special Exam reveals that between its licensing on August 3, 2021, and July 5, 2022, Celsius contracted for 11,195 loans without considering the borrower's ability to repay the loan, in violation of California Code of Regulations, title 10, section 1452.

## XII.

### Failure to Disclose CFL License Number on Loan Contract (Section 22337, Subdivision (a))

49. Section 22337, subdivision (a), provides, in pertinent part, that each lender shall "[d]eliver or cause to be delivered to the borrower, or any one thereof, at the time the loan is made, a statement showing in clear and distinct terms the name, address, and license number of the finance lender and the broker, if any."

50. The Commissioner's Special Exam reveals that between its licensing on August 3, 2021, and July 5, 2022, Celsius Lending failed to deliver or cause to be delivered to the borrower a statement showing its license number for 11,195 loans, in violation of section 22337, subdivision (a).

/ / /

-10-

ACCUSATION AND STATEMENT IN SUPPORT

## XIII.

### Failure to Obtain Broker Statements (Section 22337, Subdivision (b))

51. Section 22337, subdivision (b), provides, in pertinent part, that each lender shall "[o]btain from the borrower a signed statement as to whether any person has performed any act as a broker in connection with the making of the loan. . . . The finance lender shall keep these statements for a period of three years from and after the date the loan had been paid in full, or has matured according to its terms, or has been charged off."

52. The Commissioner's Special Exam revealed that between its licensing on August 3, 2021, and July 5, 2022, Celsius Lending failed to obtain from the borrower or retain a signed statement as to whether any person has performed any act as a broker in connection with the making of the loan for 11,195 loans, in violation of section 22337, subdivision (b).

## XIV.

### Failure to Disclose Required Information on Statement of Loan (California Code of Regulations, Title 10, Section 1454(a)(3) – (a)(6)))

53. California Code of Regulations, title 10, section 1454(a), provides, in pertinent part:

> In addition to the specific requirements of Sections 22337, 22338 and 22400(b) of the Financial Code, the statement of loan form shall contain the following and may consist of more than one document:
>
> [. . .]
>
> (3) A statement of any fees, charges, costs, insurance premiums or other sums which have been paid or are to be paid by or on behalf of the borrower at the time the loan is made. . . ;
>
> (4) A statement that the borrower shall have the right to make payment in advance and in any amount on any contract of loan at any time;
>
> (5) A statement in not less than 12-point bold face capital letters:
> FOR INFORMATION CONTACT THE DEPARTMENT OF BUSINESS OVERSIGHT, STATE OF CALIFORNIA.
>
> (6) A statement that the loan is made pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code.

54. The Commissioner's Special Exam revealed that between its licensing on August 3, 2021, and July 5, 2022, Celsius Lending failed to provide borrowers the disclosures required by

-11-

ACCUSATION AND STATEMENT IN SUPPORT

California Code of Regulations, title 10, sections 1454(a)(3) – (a)(6), in violation of that section.

## XV.

### Failure to Maintain a Surety Bond (Section 22112, Subdivision (a))

55. Section 22112, subdivision (a) provides, in pertinent part, "A licensee shall maintain a surety bond in accordance with this subdivision in a minimum amount of twenty-five thousand dollars ($25,000)."

56. On or about July 19, 2022, Great American Insurance Company cancelled Celsius Lending's surety bond. Celsius was unable to obtain a replacement surety, and, since the cancellation of the bond, has been in violation of section 22112, subdivision (a).

## XVI.

### Applicable Law

57. Section 22700, subdivision (c), provides:

> Surrender of a license becomes effective 30 days after receipt of an application to surrender the license or within a shorter period of time that the commissioner may determine, unless a revocation or suspension proceeding is pending when the application is filed or a proceeding to revoke or suspend or to impose conditions upon the surrender is instituted within 30 days after the application is filed. If a proceeding is pending or instituted, surrender of a license becomes effective at the time and upon the conditions that the commissioner determines.

58. Section 22707.5, subdivision (b), provides, in pertinent part

> [N]othing in this section shall prevent the commissioner from issuing an order to . . . suspend all business operations to a person or licensee who is engaged in or who has engaged in continued or repeated violations of this division. In any of these circumstances, the sanctions authorized under this section shall be separate from, and in addition to, all other administrative, civil, or criminal remedies.

59. Section 22714, subdivision (a) provides, in pertinent part:

> The commissioner shall suspend or revoke any license, upon notice and reasonable opportunity to be heard, if the commissioner finds any of the following:
>
> [. . .]
>
> (2) The licensee has violated any provision of this division or any rule or regulation made by the commissioner under and within the authority of this division.

-12-

ACCUSATION AND STATEMENT IN SUPPORT

[. . .]

(4) There has been repeated failure by the finance lender, when making or negotiating loans, to take into consideration in determining the size and duration of loans, the financial ability of the borrower to repay the loan in the time and manner provided in the loan contract, or to refinance the loan at maturity.

### XVII.

### Order Conditioning Surrender of License (Section 22700, Subdivision (c))

60.    Pursuant to section 22700, subdivision (c), the Commissioner will not accept surrender of Celsius Lending's CFL license unless, after providing Celsius Lending with notice and an opportunity for a hearing, the Commissioner ultimately determines some license action other than revocation is warranted, at which time the Commissioner will determine at what time and upon what conditions the surrender will be effective. The Commissioner has concurrently issued an immediately effective separate order conditioning surrender of the license.

### XVIII.

### Order to Suspend All Business Operations (Section 22707.5, Subdivision (b))

61.    Pursuant to section 22707.5, subdivision (b), the Commissioner has concurrently issued a separate order to Celsius Lending to immediately suspend all business operations requiring a CFL license due to its continued or repeated violations of the CFL.

62.    Pursuant to section 22716, the order does not impair or affect the obligation of any preexisting lawful contract between Celsius Lending and any borrower.

### XIX.

### Prayer for Order Revoking CFL License (Section 22714)

63.    Celsius Lending has violated provisions of the CFL by:

a.    Making 5 loans without a CFL license in violation of section 22100, subdivision (a);

b.    Advertising false, misleading, or deceptive statements or representations in violation of section 22161, subdivision (a)(3);

c.    Imposing and collecting unlawful prepayment penalties against 15 loans, in violation of section 22307.5;

-13-

ACCUSATION AND STATEMENT IN SUPPORT

        d.      Knowingly making untrue statements to the Commissioner with the intent to impede, obstruct, or influence the administration or enforcement of the CFL by transmitting sample loan terms to the Commissioner in the course of licensing to deceive the Commissioner into believing it would not impose unlawful prepayment penalties, in violation of section 22170, subdivision (b);

        e.      Imposing excess charges upon collateral liquidation on 875 liquidated loans, in violation of sections 22306 and 22307, subdivision (a);

        f.      Contracting for 7,886 loans of principal amount less than $10,000 that do not provide for payment of the aggregate amount contracted to paid in substantially equal periodical installments, in violation of section 22308, subdivision (b), and provide for unlawful balloon payments, in violation of California Code of Regulations, title 10, section 1453;

        g.      Contracting for 1,382 loans with terms violating the maximum limits set forth in section 22334, subdivision (a);

        h.      Contracting for 312 loans with terms violating the minimum limits set forth in section 22334, subdivision (c);

        i.      Contracting for 11,195 loans without considering the borrower's ability to repay the loan, in violation of California Code of Regulations, title 10, section 1452;

        j.      Failing to deliver to the borrower a statement showing Celsius Lending's license number on 11,195 loans, in violation of section 22161, subdivision (a);

        k.      Failing to obtain from the borrower or retain for regulatory review a signed statement as to whether any person has performed any act as a broker in connection with the making of the loan for 11,195 loans, in violation of section 22161, subdivision (c);

        l.      Failing to disclose, for 11,195 loans, information required by California Code of Regulations, title 10, sections 1454(a)(3) – (a)(6), in violation of that section.

        m.      Failing to maintain a surety bond of at least $25,000, in violation of section 22112, subdivision (a).

64.      The Commissioner's Special Exam remains ongoing, and the Commissioner expressly reserves the right to amend this accusation to add additional charges of violations of the CFL.

65.      WHEREFORE, IT IS PRAYED that Respondent Celsius Lending's CFL license be

State of California - Department of Financial Protection and Innovation

-14-

ACCUSATION AND STATEMENT IN SUPPORT

revoked for its over 55,000 violations of the CFL or regulations made under the authority of the CFL, and for its repeated failure, when making or negotiating loans, to take into consideration in determining the size and duration of loans, the financial ability of the borrower to repay the loan in the time and manner provided in the loan contract, or to refinance the loan at maturity.

Dated: August 19, 2022  
Sacramento, California

CLOTHILDE V. HEWLITT  
Commissioner of Financial Protection and Innovation

By _____  
    JEREMY F. KOO  
    Counsel  
    Enforcement Division

-15-

ACCUSATION AND STATEMENT IN SUPPORT