**Hearing Date: October 20, 2022, at 10:00 a.m (prevailing Eastern Time)**
**Objection Deadline: October 13, 2022, at 4:00 p.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## NOTICE OF HEARING ON DEBTORS'
## MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR CIVIL CONTEMPT

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion, Pursuant to Sections 105(a), 362, 9014, and 9020 of the Bankruptcy Code, to Enforce the Automatic Stay and for Civil Contempt* (the "Motion") will be held on **October 20, 2022, at 10:00 a.m., prevailing Eastern Time** (the "Hearing"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall:  (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **October 13, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/celsius and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

**PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

New York, New York
Dated: September 28, 2022

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

*Counsel to the Debtors and*
*Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR CIVIL CONTEMPT

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>")

respectfully state the following in support of this motion (this "<u>Motion</u>"):

## INTRODUCTION

1.    Since the Debtors filed their Chapter 11 petitions on July 13, 2022 (the "<u>Petition</u>

<u>Date</u>"), Core Scientific, Inc. ("<u>Core Scientific</u>") has knowingly and repeatedly violated the

automatic stay provisions of 11 U.S.C. § 362(a).  Debtor Celsius Mining LLC ("<u>Celsius</u>") has

informed Core Scientific of its violations, but Core Scientific has refused to conform its conduct.

Celsius has been left with no choice but to seek Court intervention to protect itself and the

estate's assets.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

2.      Core Scientific's violations of the automatic stay are many and ongoing.  **One**, Core Scientific is refusing to perform the contractual obligations it owes to Celsius under the parties' Master Services Agreement ("MSA") and Order #10 to the MSA ("Order #10") (together, the "Agreement").  **Two**, Core Scientific has threatened to terminate the Agreement until Celsius pays its pre-petition obligations.  **Three**, Core Scientific has started adding improper surcharges, called "Power Costs Pass-through," to Celsius' invoices following the Petition Date—charges that only arose after the Bankruptcy filing, that constitute a breach of the fixed-price structure of Order #10 (and the preceding orders), and that are an illegitimate attempt to setoff Celsius' pre-petition debts.

3.      Because Core Scientific has refused to live up to its obligations and honor the automatic stay, pursuant to Sections 105(a), 362, and 365 of the Bankruptcy Code and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure, the Debtors file this Motion and seek entry of an order: (i) holding Core Scientific in civil contempt for having violated the automatic stay of Section 362 of the Bankruptcy Code; (ii) directing Core Scientific to perform under its Agreement with the Debtors; (iii) ordering Core Scientific to immediately return any improperly invoiced amounts and cease any collection efforts for "Power Costs Pass-through" charges; and (iv) assessing appropriate damages for Core Scientific's civil contempt, including, but not limited to, the costs and attorneys' fees associated with bringing this Motion and actual damages Celsius has incurred after the Petition Date arising from Core Scientific's violations of the automatic stay.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern

District of New York, entered February 1, 2012.  This is a contested matter pursuant to Federal Rules of Bankruptcy Procedure 9014 and 9020.  *See* Fed. R. Bankr. P. 9014 ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."); Fed. R. Bankr. P. 9020 ("Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 531 (Bankr. S.D.N.Y. 2007) (Glenn, J.) (treating civil contempt request as a "contested matter"); *see also In re Yerushalmi*, 2011 WL 65739, at *1 (Bankr. E.D.N.Y. Jan. 10, 2011) (same).

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a) and 362 of title 11 of the United States Code.

## **BACKGROUND**

### A.      **The Agreement**

8.      On December 18, 2020, Core Scientific and Celsius entered into the MSA,[2] in which Core Scientific agreed to provide certain services in connection with Celsius' digital-asset mining rigs, including services relating to colocation, hosting, monitoring, maintenance and repair, technical support, and heat and thermal management.  *See* Lawlor Decl., **Exhibit A** ("MSA"), § 1(a).  Core Scientific agreed to perform its obligations under the MSA in a

---

[2] The Agreement was executed by Celsius Core LLC, which is the former name of Debtor Celsius Mining. Declaration of Quinn Lawlor ("Lawlor Decl.") ¶¶ 1, 3.

"professional and workmanlike manner." *Id.* § 5.

9.      The parties further agreed that the MSA would be supplemented by certain "Orders," which would identify the rigs to be deployed, the deployment schedule for those rigs, and the terms of payment. *Id.* § 1(a).   At the time the parties entered the MSA, they simultaneously entered and executed Order #1 through Order #7. *See id.* at 10–23.  The parties later signed Order #8, but they subsequently cancelled it and refunded all deposits. *See* Lawlor Decl. ¶ 4.  On August 22, 2021, Core Scientific and Celsius signed Order #9, which concurrently terminated Order #5. *See id.*, **Exhibit B** at 1.  On September 27, 2021, Core Scientific and Celsius signed Order #10. *See id.*, **Exhibit C** ("Order #10").

10.     Order #10 obligates Core Scientific to provide a specified power allocation beginning in certain months of the contract.  It details this power allocation by identifying the deployment month (e.g., "Sep[tember] 2021"), the approximate quantity of rigs to be deployed (e.g., "2,250"), the type of rig ("M30S+ or Equivalent"), and the assumed power consumption per rig in "KWh" or kilowatt hours (3.57 <u>KWh</u>), as follows:

| Equipment hosted**: | Deployment Month | Quantity & Type of Unit (the "Units") | Assumed power consumption per Unit (KWh): |
|---|---|---|---|
| | SEP 2021 | 2,250 - M30S+ or Equivalent | 3.57 |
| | MAR 2022 | 3,530 - M30S+ or Equivalent | 3.57 |
| | APR 2022 | 4,710 - M30S+ or Equivalent | 3.57 |
| | MAY 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | JUNE 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | JUL 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | AUG 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | SEP 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | OCT 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | NOV 2022 | 2,350 - M30S+ or Equivalent | 3.57 |
| | DEC 2022 | 2,350 - M30S+ or Equivalent | 3.57 |

*See* Order #10 at 1.

11.     The monthly power allocation is calculated by multiplying the specified quantity of rigs by the assumed power consumption per rig.  Lawlor Decl. ¶ 6.  The power allocation is

cumulative month over month, such that, by the end of the term of Order #10, Core Scientific must provide up to 105 megawatts ("MWs") of power to Celsius. *Id.* Relevant here, as of September 2022, Core Scientific is obligated to provide up to 79.4 MWs of power to Celsius. *Id.*

12. The Agreement also requires Core Scientific to notify Celsius of additional hosting availability as it becomes available. Order #10 at 4–5. Order #10 states:

> [Core Scientific] ***will notify [Celsius] as soon as practicable of additional hosting availability***, if any, and provide [Celsius] up to 10 additional MW per month at a hosting services rate of $0.0625 per KWh. Additional hosting availability if available will be the subject of a separate order ***and provided to [Celsius] on a priority basis***, subject to [Celsius'] acceptance.

*Id.* at 4–5 (emphasis added).

13. In exchange for these services, Celsius agreed to pay Core Scientific an up-front fee along with a series of additional monthly prepayments. *Id.* at 1–3. The monthly prepayment amount is based on estimated power usage for the upcoming month, which then is subject to a "true up" in the next billing cycle based on Celsius' actual usage. *See id.* at 4. Order #10 has fixed-rate pricing for hosting services (the "Hosting-Services Rate"). *Id.*; Lawlor Decl. ¶ 7. The Hosting-Services Rate includes the cost of energy and services for operating rigs. Lawlor Decl. ¶ 7. In September 2021, the Hosting-Services Rate was fixed at $.0575/KWh; in March 2022, the rate was fixed at $.0594/KWh; and from April 2022 through December 2022, the rate is fixed at $.0625/KWh. *Id.* ¶ 7; Order #10 at 1. In the section titled "Fees," Order #10 states that Celsius' fees will be determined "by reference to the Assumed power consumption per Unit of each deployed Unit, multiplied by the Hosting-Services Rate (***each as set forth above in this Order***)." Order #10 at 4 (emphasis added).[3]

---

[3] The preceding orders (Orders #1 through #9) similarly had a fixed-rate pricing structure. Lawlor Decl., **Exhibit A** at 10–23, **Exhibit B** at 1, **Exhibit C** at 1.

14.     Because Order #10 and the preceding orders are fixed-price agreements, they do not permit Core Scientific to pass through increased power costs.  Lawlor Decl. ¶ 7.  To the contrary, Section 4(f) of the MSA allows Core Scientific to "pass through" only "new taxes, levies, tariffs or governmental fees and charges with respect to the provision of Services"—but not increased power costs.  MSA § 4(f) (emphasis added).  For Celsius, the fixed Hosting-Services Rate under Order #10, and the preceding orders, were an essential term of the parties' agreement because it meant that Core Scientific, not Celsius, would bear the risk of rising power rates.  Lawlor Decl. ¶ 7.

15.      To date, Celsius has paid approximately $18.2 million under Order #10 and has continuing payment obligations of approximately $5.4 million under Order #10.  *Id.* ¶ 9.

**B.     Core Scientific's Failure to Deploy Celsius' Rigs**

16.     Celsius has delivered 10,885 rigs into Core Scientific's possession under Order #10.  To this day, Core Scientific is deploying only 6,564 of Celsius' rigs and is providing Celsius with only 21.5 MWs of power.  Lawlor Decl. ¶ 10; Order #10 at 1.  But Celsius is entitled to 79.4 MWs as of September 2022, which is the hosting capacity to operate approximately 22,000 rigs of the type specified in Order #10.  Lawlor Decl. ¶ 10; *see* Order #10 at 1.  Thus, Core Scientific's current shortfall under Order #10 is 58 MWs of power and at least 15,700 rigs.  Lawlor Decl. ¶ 10.

17.      Core Scientific's current shortfalls are a direct consequence of its pre-petition conduct.  Since the MSA was signed, Core Scientific has performed a now-familiar routine: it delays deployment of Celsius' rigs; it follows those delays with empty promises to catch up; and it follows those promises with even more delays, in contravention of the Agreement and its own interim representations.

18.    Celsius delivered its 10,885 rigs under Order #10 to Core Scientific in three tranches prior to the petition, and each time, Celsius had to wait months for its rigs to come online.  *Id.* ¶ 11.  For nearly half those rigs, Celsius is still waiting.  *Id.* ¶ 15.  Celsius delivered an initial tranche of 2,245 rigs to Core Scientific between the end of October and mid-November 2021.  *Id.* ¶ 11.  Core Scientific did not fully deploy those rigs until January 30, 2022.  *Id.*

19.    Celsius delivered a second tranche of 3,780 rigs to Core Scientific at the end of March 2022.  *Id.* at ¶ 12.  By May 25, 2022, the March rigs were still not deployed.  *Id*.  In an attempt to resolve the issue amicably, Celsius reached out to Core Scientific to ask it to confirm that the 3,780 March rigs (and plus an additional 4,710 rigs from other Orders) would be deployed by June so that Celsius could "put [it] into our working assumptions on deployment activities this month."  *Id.*, **Exhibit D** at 2.  Core Scientific wrote back, "Yes sir, it is . . . 8490 confirmed."  *Id.* at 1.  Celsius took Core Scientific at its word and relied upon that promise. Lawlor Decl. ¶ 13.  Celsius both built this assumption into its financial projections and reduced the intensity of its search for alternative hosting services providers.  *Id.*

20.    But that representation was false, and Core Scientific again failed to deploy the rigs according to its latest representations.  *Id.*  Core Scientific even acknowledged its breach of the Agreement.  On June 2, 2022, a representative from Core Scientific proposed that Celsius could delay making any further payments to Core until after June 20 "as compensation for our delayed deployment schedule."  *Id.*, **Exhibit E** at 1.

21.    Ultimately*,* Core Scientific did not fully deploy the March rigs until July 21, 2022.  *Id.* ¶ 14.  But even after getting those rigs online, between July 21, 2022 and September 16, 2022, Core Scientific had the March rigs online for a total of approximately ***eight*** days.  *Id.* No power was available to the March rigs for the remainder of that time.  *Id.*  Core Scientific

only brought the March rigs back online on September 16, 2022, after leaving them idle for months.  *Id*.  In other words, until two weeks ago, Core Scientific was providing Celsius with only approximately 9.7 MWs (just 12% of the hosting capacity Core Scientific is obligated to provide under Order #10), and only approximately 2,794 of Celsius' rigs were operational.  *Id*.

22.    Celsius delivered a third tranche of 4,860 rigs to Core Scientific in June 2022.  *Id.* ¶ 15.  Despite having those rigs in its possession for more than three months, Core Scientific has failed to deploy 4,320 of those rigs and, instead, they are sitting idle.  *Id.*  Now, Core Scientific has prohibited Celsius from sending any more rigs under Order #10.  *Id.* ¶ 16.  Thus, rigs that Celsius has been planning to deploy under Order #10 are now sitting in limbo with no place to go, instead of earning revenue for the estate.

23.    Core Scientific's delays have caused the Debtors to suffer material losses to their potential gross revenues and profits.  *Id.*  The Debtors continue to suffer additional losses with each day that Core Scientific fails to immediately deploy Celsius' rigs.

### C.    Core Scientific's Failure to Notify Celsius of Additional Availability

24.    Core Scientific's performance failures are not limited to delays in deploying rigs. It also continues to fail to notify Celsius of additional hosting availability and to provide that availability on a "priority basis," as the Agreement requires.  *See* Order #10 at 4–5.  Core Scientific had availability but used it for itself rather than offering it to Celsius.  *See* Lawlor Decl. ¶ 19.  In fact, Core Scientific announced to investors that it had increased its own mining fleet from 67,000 to 85,000 mining rigs between December 2021 and April 2022.  *Id*.  Core Scientific never informed Celsius of any additional hosting availability.  *Id.*

### D.    Core Scientific's Post-Petition Termination Threats

25.    Following the Petition Date, Core Scientific has threatened to terminate the Agreement and withhold performance due to Celsius' pre-petition debts.  On an August 22,

2022, telephone call between Core Scientific and Celsius, a representative for Core Scientific stated that no new deployments would go forward until Celsius caught up on its payments. Lawlor Decl. ¶ 17. Then, in an August 29, 2022 email, Core Scientific notified Celsius that it had an overdue invoice, and threatened Celsius that, among other things, Core Scientific could "suspend the provision of the Services," "disconnect Client Equipment and store it," and "terminate the MSA and all Orders thereunder." *See Id.* ¶ 18, **Exhibit F** at 1. Core Scientific has since disclaimed the August 29 threat, as discussed below, but it did not disclaim or deny the August 22 verbal threat and instead has ginned up different and pretextual potential bases for termination. *Id.* ¶ 28.

### E.      Core Scientific's Attempt to "Pass Through" Its Power Costs

26.      Finally, since the Petition Date, Core Scientific has begun adding certain surcharges to Celsius' invoices that contravene the fixed-price structure of the orders between the parties. Worse, Core Scientific has misrepresented the nature of these surcharges.

27.      On July 15, 2022, Celsius received its first post-petition invoice from Core Scientific, which totaled approximately $4.6 million. Lawlor Decl. ¶ 20, **Exhibit G**. The July 15 invoice contained a new line item that had never before appeared on any previous (*i.e.*, pre-petition) invoice, called "Power Costs Pass-through." *Id*., **Exhibit G** at 3. The charges for "Power Costs Pass-through" totaled just over $911,000. *Id.* at 3. According to the invoice, these charges were being retroactively imposed for services provided to Celsius between May 2022 and June 2022. *Id.*

28.      Core Scientific explained these charges as follows:

> Core Scientific has incurred continuing significant tariff increases since the implementation of our Master Services Agreement – Core Scientific has been notified by its electrical utility suppliers of significant tariff increases due to rising fuel costs. As an ***Increased Costs under the Master***

>      ***Services Agreement (Section 4f), Core will be passing through such
>      tariff increases without markup***.

*Id.* at 1 (emphasis added).  Because the invoice indicated that the "Power Costs Pass-through"

charges accrued pre-petition, Celsius did not pay them.  Lawlor Decl. ¶ 21.

29.     On August 16, 2022, Celsius received its second post-petition invoice from Core

Scientific totaling $5.5 million.  *Id.* ¶ 22, **Exhibit H**.  Once again, Core Scientific included a line

item for "Power Costs Pass-through."    **Exhibit H** at 3.   This time, the "Power Costs Pass-

through" line item was even more significant—accounting for over $1 million of the $5.5 million

invoice.  *Id.*  Core Scientific again explained this cost as a "tariff increase" that it was "passing

through" under Section 4(f) of the MSA.  *Id.* at 1.  In reliance on Core Scientific's representation

that the "Power Costs Pass-through" was a "tariff" subject to pass-through under Section 4(f),

Celsius paid the post-petition amounts, including the post-petition portion of the "Power Costs

Pass through" item, in order to avoid a post-petition breach of the Agreement.  Lawlor Decl. ¶

22.

30.     On September 15, 2022, Celsius received a third post-petition invoice from Core

Scientific, totaling $6.5 million.  *See* Lawlor Decl., **Exhibit I**.  That invoice also included the

"Power Costs Pass-through" charge, which totaled more than $1.74 million.  *Id.* at 3.  Core

Scientific again claimed that this was a "tariff" subject to pass through under Section 4(f) of the

MSA.  *Id.* at 1.

31.     Giving the timing of these new costs, Celsius became concerned, and on

September 20, 2022, Celsius disputed the "Power Costs Pass-through."  Lawlor Decl., **Exhibit J**.

Celsius also asked Core Scientific to provide "any documents and materials reflecting both the

'tariff increases' that Core Scientific claims it has incurred and the payment of those charges by

Core Scientific."  *Id.* at 2.

32.     In response, Core Scientific provided information showing increased power rates in the various jurisdictions where Celsius rigs are located.  *Id*. at 5–8.  This confirmed that the "Power Cost Pass-through" surcharges Core Scientific had been adding to Celsius' post-petition invoices were not new "tariffs," as Core Scientific had claimed, but rather, were simply the incremental increases in power costs to ***Core Scientific***—which were not subject to pass through under the MSA.  Lawlor Decl. ¶ 26.

### F.     Celsius Advises Core Scientific Of Its Automatic Stay Violations

33.     On September 9, 2022, the Debtors sent a letter to Core Scientific demanding that Core Scientific fulfill its commitments under the Agreement and advising Core Scientific that its failure to do so is a violation of the automatic stay under Bankruptcy Code Section 362(a).  *See* Lawlor Decl., **Exhibit K**.  Celsius sent this letter in an effort to resolve its issues with Core Scientific without the Court's involvement.

34.     Eleven days later, on September 20, 2022, Core Scientific finally responded by letter to counsel for Celsius.  *See* Lawlor Decl., **Exhibit L**.  Core Scientific explicitly disclaimed that it had invoked any of the contractual remedies referenced in its August 29, 2022, email, dismissing that email as "automated."  *Id*. at 1.  Without providing any supporting detail, Core Scientific denied that it failed to provide Celsius with the hosting capacity required by the MSA or Order #10.  *Id.*  At no point did Core Scientific deny that the Agreement qualifies as an executory contract, nor did it dispute that a failure to perform under the Agreement (if shown) would qualify as a violation of the automatic stay under Bankruptcy Code Section 362.

35.     The Debtors therefore are left with no choice but to bring this Motion and seek a Court order of civil contempt, compelling Core Scientific's compliance with its contractual obligations and imposing other damages that the Court deems proper.  The Debtors should not be left at the mercy of a contractual counterparty that both is trying to starve them of critical

revenues by refusing to deploy rigs and attempting to bleed their coffers dry by imposing improper "tariffs."

## **LEGAL STANDARD**

36.    Section 362 of the Bankruptcy Code operates immediately upon a debtor's filing of a bankruptcy petition to stay various acts that could interfere with the orderly distribution of the bankruptcy estate. *See S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000).  "[T]he purpose of the automatic stay is to give the debtor a breathing spell from creditors, to stop all collection efforts, and to permit the debtor to attempt repayment or reorganization." *In re Enron Corp.*, 300 B.R. 201, 211 (Bankr. S.D.N.Y. 2003) (citation omitted, alteration in original).  As relevant here, Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3). Section 362(a)(7) prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." *Id.* § 362(a)(7).

37.    Bankruptcy courts can enforce the automatic stay pursuant to their powers under Sections 362 and 105(a) of the Bankruptcy Code. *See In re Congregation Birchos Yosef*, 535 B.R. 629, 632 & n.2 (Bankr. S.D.N.Y. 2015).  Further, through their inherent contempt powers and Section 105, bankruptcy courts can award sanctions for violations of the automatic stay. *In re Windstream Holdings, Inc.*, 627 B.R. 32, 38 (Bankr. S.D.N.Y. 2021); *In re Chateaugay Corp.*, 920 F.2d 183, 186-87 (2d Cir. 1990).  To impose civil contempt sanctions, the Court need not make a finding of willfulness; rather, it need only find that there was no objectively "fair ground of doubt" that the party's conduct was prohibited by the automatic stay. *Windstream Holdings*, 627 B.R. at 40–41.

## ARGUMENT

**I.    The Agreement Is An Executory Contract Protected By The Automatic Stay.**

38.    "[E]xecutory contracts and leases are considered a form of property of the estate."

*In re Broadstripe, LLC*, 402 B.R. 646, 657 (Bankr. D. Del. 2009), (citation omitted).  "[T]hose

rights [therefore] are protected by the automatic stay."  *Enron*, 300 B.R. at 212 (citation omitted).

The debtor is entitled to enforce any executory contract pending a decision whether to assume or

reject the contract.  *See McLean Indus. v. Medical Lab'y Automation, Inc*, 96 B.R. 440, 449

(Bankr. S.D.N.Y. 1989); *Broadstripe, LLC*, 402 B.R. at 656; *McLean*, 96 B.R. at 448 ("[A]n

assumable but unassumed executory contract continues in effect and can be enforced by a

debtor-in-possession.").

39.    The Agreement is an executory contract pending the Debtors' decision to assume

or reject it.  A federal bankruptcy court uses one of two tests to determine whether an agreement

is an "executory contract" enforceable by the debtor, as the Second Circuit has not conclusively

adopted either one as the correct standard.  *See In re NanoDynamics, Inc.*, 735 F. App'x 762, 764

(2d Cir. 2018).  The first test—the "Countryman" test—considers a contract "executory" "if

material future performance obligations remain on both sides of the contract."  *In re WorldCom,

Inc.*, 343 B.R. 486, 493 (Bankr. S.D.N.Y. 2006) (citation omitted).  The second test—the "some

performance due" test—is "a less demanding inquiry … [that] defines an executory contract as

one 'on which performance remains due to some extent on both sides.'"  *NanoDynamics*, 735 F.

App'x at 764 (quoting *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 998–99 (2d Cir. 1996)).

40.    The Agreement is executory regardless of which test applies, and Core Scientific

has never contended otherwise.  *See* Lawlor Decl., **Exhibit M**.  The Countryman test is satisfied

because the parties' remaining future performance obligations are "material" to the Agreement.

*See In re Teligent, Inc.*, 268 B.R. 723, 730–31 (Bankr. S.D.N.Y. 2001).  It cannot be seriously

disputed that Core Scientific's hosting and notification obligations, on the one hand, and Celsius' payment obligations, on the other, "go[] to the essence" of the parties' bargain under the Agreement. *Id.*; *see also Broadstripe*, 402 B.R. at 655 ("Based on the parties' respective continuing obligations under the Member Agreement, the Member Agreement is an executory contract.").

41.    The "some performance due" test is satisfied because "neither side [has] tendered complete performance on the Agreement." *NanoDynamics*, 735 F. App'x at 764. Core Scientific owes Celsius 58 MWs of additional power deployment as of the date of this filing, and it has continuing deployment obligations through at least December 2022 under Order #10. Lawlor Decl. ¶ 10; Order #10 at 1, 3. It also has an ongoing obligation to notify Celsius of additional hosting availability on a priority basis. Order #10 at 4–5. Celsius, on the other hand, has continuing payment obligations to Core Scientific through December 2022. Lawlor Decl. ¶ 9.

## II.    Core Scientific's Failure To Perform And Threats To Terminate The Agreement Violate The Automatic Stay.

42.    Core Scientific has violated Section 362(a)(3) by failing to perform its obligations under the Agreement and threatening termination. *See In re AMR Corp.*, 730 F.3d 88, 102 (2d Cir. 2013) ("[T]he bankruptcy court did not err in concluding that any attempt to [rescind a contract provision] would be an attempt to modify contract rights and would therefore be subject to the automatic stay that went into effect when [the debtor] made its § 1110(a) elections."); *Enron*, 300 B.R. at 212 ("[B]y seeking to enforce the terms of the Employment Agreement, and by unilaterally seeking to terminate same and invoke its damages provisions, the Court finds that Claimant violated the automatic stay."); *see also In re 48th Steakhouse, Inc.*, 835 F.2d 427, 431

(2d Cir. 1987); *Broadstripe*, 402 B.R. at 657; *In re The Elder-Beerman Stores Corp.*, 195 B.R. 1019, 1024 (Bankr. S.D. Ohio 1996).

43.    ***First***, Core Scientific is providing Celsius with only 21.5 MWs of power under Order #10, even though Celsius is due 79.4 MWs as of the end of September 2022.  Lawlor Decl. ¶¶ 6, 10.  Core Scientific is running only 6,564 Celsius rigs under Order #10.  *Id.* ¶ 10.  Core Scientific has another 4,320 rigs that it refuses to deploy.  *Id.* ¶ 15.  And it is contractually obligated to deploy approximately 11,000 more rigs under Order #10—but Celsius has not provided those to Core Scientific both because Core Scientific has refused to deploy the rigs in its possession and because Core Scientific has prohibited Celsius from sending it more rigs.  *Id.* ¶ 16.  Not only does Core Scientific's conduct contravene the deployment schedule, *see* Order #10 at 1, but it also falls far short of Core Scientific's obligation to provide services "in a professional and workmanlike manner," *see* MSA § 5(a).  Core Scientific's ongoing failure to perform its deployment obligations under Order #10 violates the automatic stay.  *See Broadstripe*, 402 B.R. at 657 ("By refusing to perform its obligations under the Member Agreement, NCTC is interfering with Broadstripe's property rights under the Member Agreement and acting in violation of the automatic stay.").

44.    To the extent Core Scientific attempts to shift blame to Celsius for any delays in delivering the rigs, such an argument should be rejected.  Core Scientific has acknowledged that it is to blame for the delays.  Lawlor Decl. ¶ 13, **Exhibit E** at 1.  In fact, Core Scientific has ***prohibited*** Celsius from even sending it any more rigs under Order #10.  Lawlor Decl. ¶ 16.  Regardless, any delivery delays could not possibly excuse Core Scientific's excessive, repeated delays in deployment, nor could they excuse Core Scientific's failure to fully deploy the rigs that it has.

45.    **Second**, Core Scientific continues to fail to notify Celsius of the availability of hosting sites "on a priority basis," as required by Order #10.  *See* Order #10 at 4–5.  Celsius has never once been notified of additional hosting availability, and in fact, is aware of at least one pre-petition instance in which Core Scientific breached this obligation.  *See* Lawlor Decl. ¶ 19. Core Scientific's ongoing failure to perform on its notification obligations violates the automatic stay.  *In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 760–61 (Bankr. M.D. Fla. 2009) ("While these agreements are in full force and effect, the parties are bound by their terms and must continue to operate under the agreements in good faith.").

46.    **Third**, Core Scientific has threatened to terminate the Agreement due to Celsius' overdue pre-petition obligations.  Lawlor Decl. ¶¶ 17–18 & **Exhibit F**.  Although Core Scientific now disclaims its August 29, 2022, email threat to terminate the MSA, *see* Lawlor Decl., **Exhibit L** at 2, Core Scientific did not disclaim or deny that its representative stated on an August 22, 2022, phone call that Core Scientific would not conduct any more deployments until Celsius became current on its payments.  Lawlor Decl. ¶ 28; *see* **Exhibit L**.  Threats like this to terminate the Agreement or withhold performance until the debtor makes payments violate the automatic stay.  *See Enron Corp.*, 300 B.R. at 212 ("In attempting to enforce the Employment Agreement by procuring payment of the Retention Bonus and the Termination Payment, and by sending notice of the termination of such agreement, Claimant acted to obtain possession of property of the estate and to exercise control over property of the estate."); *Elder-Beerman Stores Corp.*, 195 B.R. at 1024 ("It is therefore clear, that Thomasville's actions in attempting to cancel its contract with Elder–Beerman were in violation of the automatic stay.").

47.    It is no answer to suggest that Celsius' past due balance somehow gives Core Scientific a valid ground to terminate or otherwise seek to enforce the Agreement against

Celsius.    Courts have been clear that "an unassumed executory contract is not enforceable against the Chapter 11 debtor," and therefore "the nondebtor party cannot terminate the contract by reason of the debtor's defaults thereunder."    *United States v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 625 (8th Cir. 1994) (citation omitted); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984); *In re Monarch Cap. Corp.*, 163 B.R. 899, 907 (Bankr. D. Mass. 1994).

## III.    Core Scientific's Attempt To Collect Pre-Petition Debt Violates The Automatic Stay.

48.    Core Scientific's improper attempt to "pass through" to Celsius increased power costs violates the automatic stay in multiple, independent ways: Core Scientific is attempting to siphon "possession of property of the estate" without any lawful basis, *see* 11 U.S.C. § 362(a)(3); Core Scientific is attempting to modify its contractual obligations under the specific orders between the parties, *see AMR Corp.*, 730 F.3d at 102 (stating that "an attempt to modify contract rights" violates the automatic stay); and Core Scientific is attempting to offset Celsius' pre-petition debts by charging additional fees, *see* 11 U.S.C. § 362(a)(7); *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010) (holding that defendant violated the automatic stay by increasing debtor's post-petition payment requirement to account for a pre-petition obligation).

49.    As discussed above, after the Petition Date, Core Scientific began adding the "Power Costs Pass-through" to Celsius' monthly invoices.    Lawlor Decl. ¶¶ 20-25.    This "pass-through" line item—which is significant—has only appeared on the invoices after the Petition Date.    *Id.*    As Core Scientific's own documentation shows, the "Power Cost Pass-through" is simply the incremental increase in Core Scientific's power costs resulting from price fluctuations for the cost of energy.    Lawlor Decl., **Exhibit J** at 5–8.

50.    Core Scientific has attempted to pass off its increased power costs as "tariffs" subject to pass through under Section 4(f) of the MSA.    Lawlor Decl. ¶¶ 22–24; *see* **Exhibit I** at 1.    A tariff, as commonly understood and as used in Section 4(f), refers to "duties to be imposed

on imports and exports." Oxford English Dictionary (Online Ed.); Black's Law Dictionary (11th ed. 2019) (defining "tariff" as "[a] schedule or system of duties imposed by a government on imported or exported goods."). A fluctuation in the cost of power is neither "new" nor a "tariff[]." Indeed, such an interpretation would directly contravene the fixed-rate pricing structure under Order #10 and the preceding orders, which entitle Celsius to the fixed Hosting-Services Rate as "*set forth . . . in this Order*." *See* Order #10 at 4 (emphasis added); *see also* Lawlor Decl., **Exhibit A** at 10–23, **Exhibit B** at 1.

51.     Core Scientific's conduct leaves Celsius with a lose-lose choice: either pay the improper charges and sacrifice estate property that Core Scientific is not entitled to, or refuse to pay and give Core Scientific a pretextual basis to terminate the Agreement. Indeed, Core Scientific has already threatened to terminate if Celsius does not remain current on its post-petition obligations. *See* Lawlor Decl., **Exhibit L** at 2.

## IV.   Core Scientific Is In Contempt Of This Court For Its Violations Of The Automatic Stay.

52.     Core Scientific's actions in violation of the automatic stay "are void and without effect." *48th St. Steakhouse*, 835 F.2d at 431 (2d Cir. 1987) (citation omitted). Core Scientific remains bound by the terms of the Agreement and "must continue to do business with" Celsius "absent an order granting relief from stay." *Ernie Haire Ford*, 403 B.R. at 753, 760–61 (granting debtor's motions to compel non-debtors' compliance with contracts).

53.     Moreover, by withholding performance, threatening termination, and attempting to setoff a pre-petition debt, Core Scientific is in contempt of this Court for violating the automatic stay. Section 362(a) "clearly and unambiguously stays such conduct," and "[a] reasonable person would not think otherwise." *Windstream Holdings*, 627 B.R. at 41. Although a finding of willfulness is not required to hold a party in contempt, *id.* at 39, Core Scientific had

actual notice of its violations, which makes its conduct even more egregious.  Celsius both sent a letter to Core Scientific and disputed the "Power Costs Pass-through" on its invoices.  Lawlor Decl., **Exhibit J** at 2, **Exhibit K**.  Yet, Core Scientific refused to cure its breaches of the automatic stay.  *See* **Exhibit L**.

54.    The Court has the ability to award sanctions under its civil contempt power for breach of the automatic stay, including "coercive sanctions to encourage compliance" and "damages for monetary harm," including but not limited to, the "fees and expenses incurred in trying to enforce the stay." *Windstream Holdings*, 627 B.R. at 47, 49.

55.    Consistent with this authority, the Debtors respectfully request that the Court enter an order:

    i.    Holding Core Scientific in civil contempt for having violated and disregarded the automatic stay;

    ii.    Directing Core Scientific to deploy all Celsius rigs in its possession forthwith, to accept and deploy additional rigs from Celsius as permitted under the Agreement, and to notify Celsius of any additional hosting availability;

    iii.    Ordering Core Scientific to immediately return any "Power Costs Pass-through" paid by Celsius to Core Scientific in connection with the August 15, 2022 invoice and to immediately cease and desist from any attempts to collect or further assess charges for "Power Costs Pass-through;" and

    iv.    Assessing appropriate compensatory payments in the amount of reasonable attorneys' fees and costs incurred in seeking to enforce the stay and actual damages Celsius has incurred after the Petition Date arising from Core Scientific's violations of the automatic stay.

## NOTICE

56.    The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (d) the United States Attorney's Office for the Southern District of New York; (e) the Internal Revenue Service; (f)

the offices of the attorneys general in the states in which the Debtors operate; (g) the Securities and Exchange Commission; (h) Core Scientific; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

57.    No prior request for the relief sought in this Motion has been made to this or any other court.


*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

New York, New York
Dated: September 28, 2022

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            patrick.nash@kirkland.com
                    ross.kwasteniet@kirkland.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## PROPOSED ORDER PURSUANT TO SECTIONS 105(A), 362 AND 365 OF THE BANKRUPTCY CODE TO ENFORCE THE AUTOMATIC STAY AND FOR CIVIL CONTEMPT AGAINST CORE SCIENTIFIC

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), to enforce the automatic stay pursuant to sections 105(a), 362, and 365 of the Bankruptcy Code and for civil contempt sanctions, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing thereon were

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      Core Scientific is hereby held in civil contempt for having violated and
disregarded the automatic stay provisions of 11 U.S.C. § 362(a).

3.      Pending assumption or rejection of the Agreement by Celsius, Core Scientific
shall perform its obligations to provide the services as required by it under the Agreement,
without regard to any alleged defaults by Celsius under the Agreement, including but not limited
to promptly deploying all Celsius mining rigs in its possession, accepting and deploying
additional Celsius mining rigs as required under the Agreement, and notifying Celsius of
additional hosting availability.

4.      Core Scientific is ordered to immediately return any "Power Costs Pass-through"
paid by Celsius to Core Scientific in connection with the August 15, 2022 invoice and to
immediately cease and desist from any attempts to collect or further assess charges for "Power
Costs Pass-through."

5.      Core Scientific is ordered to pay to Celsius reasonable attorneys' fees and costs
incurred in seeking to enforce the stay and actual damages Celsius has incurred after the Petition
Date arising from Core Scientific's violations of the automatic stay, subject to an evidentiary
hearing on Celsius' damages to be held on _____, 2022 at __:__ a.m./p.m. EST.

6.       The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

7.       Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

8.       Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.       The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE