Jarno Öberg,

Pro se creditor

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                              )
In re:                                                     )         Chapter 11
                                                              )
Celsius Network LLC, et al.,                  )         Case No. 22-10964 (MG)
                                                              )
                          Debtors             )         (Jointly Administered)
_____  )


**JOINDER TO CAMERON CREWS'S (DOCKET #914) "OMNIBUS OBJECTION TO THE DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REOPEN WITHDRAWALS FOR CERTAIN CUSTOMERS WITH RESPECT TO CERTAIN ASSETS HELD IN THE CUSTODY PROGRAM AND WITHHOLD ACCOUNTS AND (II) GRANTING RELATED RELIEF DOCKET #670, TO THE AD HOC GROUP OF CUSTODIAL ACCOUNT HOLDERS' ADVERSARY CASE #22-01142 COMPLAINT FOR DECLARATORY JUDGMENT DOCKET #662, AND TO THE AD HOC GROUP OF WITHHOLD ACCOUNT HOLDERS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY DOCKET #737."**

**Summary**

Respectfully,

This joinder supports Cameron Crews's Omnibus Objection (Docket 914) with the following observations: (1) It can be shown that the Earn account depositors have, on closer inspection, the greater title (right of ownership) to their deposits, and that Celsius has the lesser title to these deposits. (2) It is my belief that it is in the court's powers to decide if, in the case of Earn accounts, those who have the greater title to the deposits also have the actual ownership of them. If the court does decide this, ownership of the deposits can follow from this greater title,

1

and this ownership can be granted by the court to the Earn account depositors if there is evidence to support that conclusion. If the court does decide so, a cause for the Earn account depositors having ownership of their deposits can be this greater title to their deposits. That greater title can be shown to reside within the Earn account depositors themselves. (3) If Earn account depositors have the greater title, and if therefore they have ownership of their deposits, there appears to be no difference that follows from the questions of title and of ownership that would separate Earn account depositors from other depositors. (4) In that case, if there is a difference that separates custody accounts from Earn accounts, that would not be based on the questions of title and ownership, but on other things. (5) It appears that the questions concerning Earn deposit ownership should be solved before the Custody account funds can be released. (6) Therefore I respectfully request the court and different parties to consider whether a decision on Earn deposit ownership should be made before deciding on the nature of the possible Custody account asset release.

**Argument**

As a non-lawyer I have the following limited ideas about ownership rights, and about the power of courts to make judgements about them. I have had the conviction, that my Earn account contract with Celsius is built around these concepts, and I have made the contract with Celsius with belief in the following:

A: *Title and ownership*
(A.1) It is possible for there to be layered rights and titles to the same asset, that belong to different people and entities. (A.2) The layering of different rights and titles may lead to the idea that actual ownership is undefinable. (A.3) However, if someone evidently has a greater title to something than someone else has, this can indicate their ownership of it. (A.4) If it is necessary, ownership can be expected to be defined as belonging to that person or entity, who evidently has this greater title to the assets in question.

B: *Greater and lesser title*
(B.1) It can be shown that depositing assets to Earn accounts does not consist of a transfer of ownership, but of a creation of a secondary title to these assets, and of handing that secondary title over to Celsius. (B.2) This secondary title is limited by the contract that is made between the Earn account depositor and Celsius. (B.3) It can be shown that the title that is handed over

2

to Celsius is a lesser title than the one that remains with the depositor. (B.4) It can be shown that the contract made with Celsius doesn't undo the depositors' greater title to their deposits.

C: *Situations where the greater title remains with the depositors*

(C.1) In the Terms of Service, Celsius indicates what they mean by the "granting all rights and title".[1] The language in the contract defines limits to the title it claims for Celsius from the Earn contract depositors. The contract also uses the term "ownership", but the contract also indicates in what limits the question of ownership is thought to be transferred to Celsius. The language of the contract indicates that "granting all rights and title" are *limited to the Earn contract use in itself*. If the Earn contract is undone, the interest, rights and title of Celsius, are also undone.

    (C.2) In this situation, the rights and title can be verified to be retained by the depositor, *because of* the greater title that the customer has towards these funds. This greater title is not returned to the customer, but the customer always had it. And even if the customer didn't have the greater title to *some aspects of ownership* while the funds were in the Earn contract, the undoing of the Earn contract would undo any cause for the transferring of that title to Celsius. This would, in turn, again reveal that the greater title resides in the depositor. This greater title resides in the depositor also in situations of bankruptcy, and the contract does

---

[1] https://celsius.network/terms-of-use "13. Consent to Celsius' Use of Digital Assets: In consideration for the Rewards payable to you on the Eligible Digital Assets using the Earn Service, for us entering into any Loan Agreement, and the use of our Services, **you grant Celsius, subject to applicable law and for the duration of the period during which you elect to utilize the Eligible Digital Assets in the Earn Service** (if available to you) and thus loan such Eligible Digital Assets to us through your Celsius Account, or as collateral under the Borrow Service (if available to you), **all right and title to such Eligible Digital Assets, including ownership rights,** and the right, without further notice to you, to hold such Digital Assets in Celsius' own Virtual Wallet or elsewhere, and **to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets**, separately or together with other property, **with all attendant rights of ownership, and for any period of time,** and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets in Celsius' full discretion. You acknowledge that with respect to Digital Assets used by Celsius **pursuant to this paragraph: 1. You will not be able to exercise rights of ownership**; 2. Celsius may receive compensation in connection with lending or otherwise using Digital Assets in its business to which you have no claim or entitlement; and 3.**In the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, any Eligible Digital Assets used in the Earn Service or as collateral under the Borrow Service may not be recoverable, and you may not have any legal remedies or rights in connection with Celsius' obligations to you other than your rights as a creditor of Celsius under any applicable laws."** (Emphasis added.)

not indicate otherwise. Ownership rights are only waived "pursuant to this paragraph", which indicates the idea that Celsius needs the user to waive these rights *only within the Earn account activity*. From this it can still be concluded that the exclusive greater title always resides with the Earn account depositor.

(C.3) Celsius publicly confirms this interpretation of its contract. Adding to what Cameron Crews writes in his objection, when Celsius reassures the customers that the deposits are the customer's funds "your coins", "your crypto" (Crews Objection, Exhibits B–E), Celsius *itself interprets and clarifies to the user the intended meaning of the contract itself.* This includes the affirmation that the funds in the Earn account are the *user's funds,* and therefore the user's property. Cameron Crews's objection provides evidence for this observation.[2]

(C.4) The greatest title and ownership is not transferred from the depositors to Celsius when there is no evidence of an event of buying or selling, and the taxation of this event. Exceptions to this would be deposits in countries and states who's law would dictate that the deposits to Celsius are sell-events, or similar to sell-events. Then there would be applicable tax consequences also. In those instances, ownership *would* transfer from the depositors to Celsius, but in the non-exceptional situation, this is not the case. If it was the case, that would mean that the "all title" given towards the Earn contract in the Terms of Service consists of a selling of the assets, which it doesn't do in the standard use of the Earn contract.

(C.5) Celsius itself does not demand an interpretation of the Earn contract that leads to them having exclusive or greater title of the deposits. It can be confirmed that in their public-facing communications Celsius has expressed that in the event of the death of the customer they generally no longer have an effective interest in their deposits. Instead they will generally return the deposits to the inheritors of the deceased person's estate. If the matter was different, they would have to make this explicit in the Terms of Service. Celsius would then be able to demand ownership of the deceased's funds by reasons of stronger title than the person inheriting the deposits would have towards them. But the contract doesn't give that title to Celsius, and neither do they demand it. On the other hand, if there would be no other claim on the deceased's funds, Celsius could claim title by possession of unclaimed funds, and thereby possibly obtain ownership. This could be expected to happen only if no-one else has a greater title to the funds than Celsius does. But Celsius in fact doesn't claim this greater title towards the inheritors in the first place, and thereby neither does it claim ownership. And if

---

[2] Cameron Crews, *Objection*, Docket 914.
https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909282280000000102.pdf

4

Celsius claimed the greater title to their customer's funds, they would strangely care about their greater title only while the customer is alive. The sole reason for that, that can be accepted, is that the greater title is not actually the greater title, but is just the partial title, that has to do with the contents of the Earn contract while it's active.

D: *Reasons that make it impossible or unjustified for Celsius to be the owner of the Earn account deposits*
(D.1) Celsius can't have the ownership of the Earn account funds, because it doesn't have a banking license that would make this possible in an acceptably regulated way. (D.2) Celsius can't have the ownership of these funds, because it has not made a contract with its users that would transfer the greater title to Celsius. (D.3) Also, Celsius doesn't have proper licenses for having the greater title and ownership of the depositor's assets within the *securities contracts* that the Earn accounts may be. (D.4) Celsius can't have the ownership of the funds, because, as said previously, Celsius itself interprets the content of its contract to the customers in a way that directly says that the ownership belongs to the customers.

(D.5) Celsius has continuously said publicly that it always "acts in the best interest of the customers". The Terms of Service language on bankruptcy proves, that the debtor has been *knowledgeably responsible of the way a possible bankruptcy would affect the customers.* Therefore the debtor can't say that it's working in the best interests of its customers and at the same time knowingly lead them, through a fiduciary relationship, to a contract in which they become payout-men for customers in other contract types because of "vague ownership". If this was allowed to be the case, or verified by the court, I respectfully submit that it would indicate a constructive betrayal of the fiduciary relationship that these statements (and others) have formed between Celsius and the users. If we assume that the debtor has been acting in good faith, "the best interest of the depositors" means what Celsius appears to be saying anyway, which is that their contracts mean that the customers remain the owners of their deposits, and they always keep the greater title to them.

**Conclusions**
*Conclusion 1:* If the court so decides, a causal factor for the Earn account clients owning their funds can be that they have a greater title to their funds than Celsius does. And if the court so decides, this may cause the ownership of the funds to be with the depositors. This would appear to be an equitable conclusion, and within the powers of the court.

5

*Conclusion 2:* If Earn account depositors have the greater title, and therefore have ownership of their deposits, there appears to be no difference that follows from the questions of title and of ownership that would separate Earn account depositors from other classes.

*Conclusion 3:* In that case, if there is a difference that separates custody accounts from Earn accounts, that difference would not be based on the questions of title and ownership, but on other grounds.

*Conclusion 4:* It appears that the questions concerning Earn deposit ownership should be solved before the Custody account funds can be released.

**Request**

Therefore I respectfully request the court and different parties to consider whether a decision on Earn deposit ownership should be made before deciding on the nature of the possible Custody account asset release.

**An estimate of these conclusions**

If there is a difference between Custody accounts and Earn accounts, this may be based on other things than title and ownership. If both Custody and Earn depositors own their funds, there appears to be no reason to think that there are forms of Custody accounts that should obtain *more funds* from the estate than others do. It is a different thing to speak about *whose ownership is more easily verified,* and whether it follows from this that Custody account holders can be allowed to obtain funds *before than others* in the process. They can then have a *priority* but not in the sense that some would have been led to a relationship where they end up paying for others.

I join these observations to what Mr. Cameron Crews says about these issues in his own objection. I challenge legal professionals to support these arguments, verify their claims for themselves, and to inform the court of better ones, and ones that contain legal precedent.

**Signature**

September 29, 2022                                    /s/ Jarno Öberg
                                                     Jarno Öberg, pro se creditor

**Sources**

Cameron Crews, *Objection*, Docket 914.

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174909282280000000102.pdf

Celsius Terms of Service.

https://celsius.network/terms-of-use