SUGGESTED HEARING DATE: October 20 at 10 AM EST

SUGGESTED OBJECTION DEADLINE: October 17 at 5pm EST

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | Chapter 11 Case No. 22-10964 (MG) |
| **SOUTHERN DISTRICT OF NEW YORK** | (Jointly Administered) |

In re CELSIUS NETWORK LLC, *et al¹*.,

# DANIEL A. FRISHBERGS' MOTION TO COMPEL INSIDER CLAWBACKS BY THE DEBTORS²/UCC³

**PLEASE TAKE NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

² Or in the case of conflicts, the various conflict counsel's.

³ Or in the case of conflicts, the various conflict counsel's.

the Southern District of New York (which are available on the Court's website at

http://www.nysb.uscourts.gov).

    **(i)** the entities on the Master Service List available on the case website of the debtors and debtors in possession (the "Debtors") at https://cases.stretto.com/celsius and

    **(ii)** any person or entity with a particularized interest in the subject matter of the Motion.

    **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by Daniel A. Frishberg.

    **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

                                                                           */s/Daniel A. Frishberg*

                                                                           October 11th, 2022

# INTRODUCTION

After significant analysis of the court docket, and other sources of information such as the bankruptcy code and online resources, I, Daniel A. Frishberg, a Celsius Network LLC Creditor[4], have come to the conclusion that the assets that have been withdrawn by insiders (such as Alexander Mashinsky and his wife/daughter) at an astonishing rate. These assets must be clawed back in accordance with the bankruptcy code (see 11 U.S.C. § 547).

This is a quite unusual request coming from me, a *pro se filer*, and not the UCC/Debtor's/US Trustee/various regulators. What I think is more unusual, however, is that no one seems to have attempted clawbacks or filed motions compelling the debtors to begin the clawbacks given that we are dealing with cryptocurrency, which is incredibly easy to hide and steal. It is essential that these clawbacks take place as soon as humanly possible. Quite frankly it is likely already too late to recover significant assets as they have likely already either been spent, hidden, laundered or dissipated[5] in other ways. It is shocking that these clawbacks did not happen months ago.

## MY INITIAL INSIDER CLAWBACKS PROPOSAL

I believe, following analysis, that the preferential payments made in the past year (at a time when Celsius was very likely already insolvent and the standard for insider clawbacks) likely *do* constitute property of the bankruptcy estate, and that you can rule this from the bench at the hearing with no additional information needed except what is in this motion and in the court record.

---

[4] That is what I have been classified as, but I dispute this.
[5] For more information, go to "*Dissipation Of Funds/Potential Money Laundering*".

Any assets withdrawn by insiders (and anyone else with non-public information) in the past year should therefore begin immediately.

Although I am eager to get started on clawbacks going back further than one year, I accept that we have to wait for additional information about the Debtor's insolvency to start on them. This compromise will not please all Creditors, and it doesn't please me, but it is a start to take practical steps to bring money back into the estate on an emergency basis, as much of as is we can, before more of it is dissipated.

There is quite a bit of disagreement in the "Celsius Community" about clawbacks of so-called preferential payments. Some want it to target every single retail customer dollar withdrawn from Celsius in the 90 days leading up to the bankruptcy above the statutory threshold of $7,575 (which would be an extremely wasteful of resources and time). Others want more limited clawbacks from only insiders, large so called "whales[6]" and institutions such as Tether. Almost everyone can agree, however, that insiders and anyone with non-public knowledge of the insolvency/upcoming closure of withdrawals, should be forced to return the assets, and any and all interest/gains/profits made from the assets (such as rewards for "staking.[7]". In addition, insiders should compensate the estate for any costs associated with pursuing them for the preferential payments.

According to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* filed by the Debtors, many insiders, including Alexander Mashisnky and his family (along with other insiders such as the Co-Founder, and various high ranking executives), withdrew tens of millions of dollars in the days leading up to the bankruptcy filing. Clearly, this was done based on insider, non-public information (all the while, Alexander Mashinsky was telling everyone,

---

[6] A term used in the crypto community to describe holders with large amounts of crypto.

[7] Some coins, like ETH are able to be "staked" to effectively earn interest for locking up the coins.

including on Twitter, that everything was fine and there are no issues with withdrawals). These clearly constitute preferential payments and **must** be returned to the estate **on an urgent basis.**

## DISSIPATION OF FUNDS/POTENTIAL MONEY LAUNDERING

It is quite shocking to me that no one has yet recommended to the court that clawbacks be carried out against insiders. Cryptocurrency is an extremely difficult asset to recover. Unlike fiat currencies (such as the US dollar) there are no centralized entities that can be ordered to either reverse transactions or freeze funds (assuming the person attempting to hide the assets takes even basic steps to prevent them from being seized).

There is already large amounts of clear evidence[8] that at the very least some funds[9] have already been dissipated. And as recently as September 19th, 2022, more "CEL" tokens have been moved into wallets which have been used to sell it through a decentralized exchange (DEX).

On August 29th, 2022, approximately $35,000 worth of "CEL" tokens were exchanged for USDC (a stablecoin pegged 1-1 to the US Dollar) and ETH.

It should be noted that Celsius purchased *hundreds of millions* of dollars worth of "CEL" before and **after** "The Pause" on withdrawals. This qualifies as embezzlement against the estate under 18 USC § 153 in my opinion, Your Honor; they created liquidity with depositors assets for "CEL" (which, on its own, would not have any liquidity since it effectively only existed because Celsius propped it up), and than they used that liquidity to profit by selling "CEL" tokens (which, again, they should not have because everything they withdrew is property of the estate).

---

[8] https://www.arkhamintelligence.com/reports/celsius-report this report by Arkham labs, which came out prepetition, and was backed up by information which (months later) came out during the bankruptcy process.
[9] Various internet sleuths have done chain analysis which shows that the Mashinsky's have been selling various tokens (which, it should be noted, do **not** belong to them since they are property of the estate) continuously. https://twitter.com/MikeBurgersburg/status/1571882204682141696
https://dirtybubblemedia.substack.com/p/the-mashinskys-keep-celling-out

Even now[10], as wallets linked to the Mashinsky's are selling large amounts of "CEL" tokens. Almost 200 million[11] "CEL" tokens passed through known[12] wallets of the Mashinshky's, the all time high (ATH) price of "CEL" was $8.05[13]. This is only an example of *one* insider. It is highly likely that other insiders have done the same. And this is only an example of what is known, on a transparent, public ledger blockchain. There also needs to be an investigation on what happened on Centralized exchanges, such as FTX, where Celsius transferred $320 million before bankruptcy; if those funds were used to provide liquidity for CEL token, or any other improper transactions, they need to be traced and recovered.[14]

**MONERO AND PRIVACY COINS CREATE AN URGENT SITUATION**

If someone wanted to truly hide assets that would be completely untraceable to anyone, including the US Government and Federal investigators, they would use a privacy coin called "Monero[15]" (ticker symbol XMR). [16]

All transactions made with Monero are 100% private and anonymous, it is impossible to see anyones account balance, or anything. It is also possible to do a so called "atomic swap[17]" (which, basically is a way to exchange Monero to another cryptocurrency like BTC or ETH

---

[10] As of 10/10/2022
https://twitter.com/coffeebreak_YT/status/1579641990228373505?cxt=HHwWgsDTvaqBguwrAAAA
[11] See: https://dirtybubblemedia.substack.com/p/hodl-for-thee-but-not-for-me also see Exhibit C.

[12] And it is likely that there are more wallets which are unknown that are under their and other insider's control.
[13] According to *CoinGecko,* a website/app which tracks over 10,000 cryptocurrencies.
[14] https://cases.stretto.com/public/x191/11749/PLEADINGS/1174910032280000000095.pdf this filing by Alexander Peter Simmons discusses issues with FTX Exchange and CEL token
[15]See:  https://leofinance.io/@forexbrokr/is-monero-traceable-in-2021

[16] https://prohashing.com/blog/the-value-of-a-celsius-bankruptcy-claim
[17] https://www.getmonero.org/2021/08/20/atomic-swaps.html

without the use of any exchange, centralized and decentralized), which is also untraceable (at least on the Monero side of it).

Various US government agencies like the IRS have offered large cash bounties to crack Monero (it is still unclaimed after over 2 years). Even if someone developed a way to track XMR, the developers will/can "fork" it (change the code to make it untraceable again). It is **imperative** that insider assets are retrieved as soon as possible, because with cryptocurrency, it is possible to hide billions of dollars worth of assets in a matter of minutes.

### RISK OF ASSETS LEAVING US JURISDICTION

Cryptocurrency is an asset that is extremely easy to move outside of this courts (and the entirety of the United State's jurisdiction). To the best of my knowledge, some assets are already outside of the reach of US jurisdiction. The Co-Founder of Celsius, Mr. Leon, is in Israel (there is a risk that the Israeli authorities do not cooperate, like they sometimes do not cooperate) he may decide to not cooperate[18].. The same risk exists for Mr. Alexander Mashinsky and his family. He has Isaraeli citizenship, so he may decide to flee the country (to avoid potential criminal charges/large amounts of civil lawsuits) it should be noted that Israel does not extradite their own citizens. Cryptocurrency can be moved to the other side of the world in mere *seconds*, and there is nothing anyone can do to stop it. There is an **extreme** risk of even more assets disappearing/dissipating and/or simply being spent, and that is why it is crucial to order these clawbacks to begin as soon as possible.

---

[18] I am not saying that he will not, or that he is engaged in any sort of illegal (other than the preferential withdrawal related acts) activities, just that it is a possibility.

## NFTs

Another way to launder/hide assets is through NFTs (Non-Fungible Tokens[19]). It is basically a unique picture (or artwork) that is stored on the blockchain. NFTs are perfect for laundering crypto because some NFTs sell for millions of dollars[20]. It will be extremely hard if not impossible to identify genuine NFT sales from NFT sales that are used for laundering money. According to Arkham Labs[21], "0xB1" (who at one point was given control of almost $2 billion of Celsius's assets) bought numerous NFTs for millions of dollars, most of which are still missing. According to Arkham labs: "Additionally, many of the NFTs are still unaccounted for. Despite spending 3,535[22] ETH on NFTs, 0xB1 only ever sold 76 ETH worth of said NFT". The same thing could easily happen with the withdrawn assets. I wouldn't be surprised if the laundering of money through NFTs has already happened. The ease at which money can disappear with cryptocurrency is terrifying, and it will significantly harm creditor's recovery.

## OTHER POTENTIAL MONEY LAUNDERING AVENUE'S

Krissy Mashinsky (Alexander Mashinsky's wife) has a company called USA Strong. It may be a front for money laundering, and should be looked into. What we do know is that NFTs (which were purchased with depositor funds) were sent to the USA Strong Wallet from 0xB1

---

[19] https://www.idnow.io/blog/nft-non-fungible-tokens-new-art-money-laundering/

[20] One sold for almost $70,000,000:
https://nftnow.com/features/most-expensive-nft-sales/#beeple-everydays
[21] https://www.arkhamintelligence.com/reports/celsius-report

[22] As of October 9th, 2022, the difference between the purchase price and sales price is almost $4,500,000. At ETH's all time high price, that is approximately $17,000,000 "loss".

(the same person/entity who ended up losing Celsius approximately $400 million). According to the Financial Times:[23]

> *Interestingly, on June 7, 2021, weeks after the termination of Celsius' and 0xB1's relationship, the 0xB1 wallet transferred three "Meme Ltd." NFTs to the Ethereum address "usastrong.eth." USA Strong is the business of Celsius CEO Alex Mashinsky's wife, Krissy Mashinsky. This wallet belongs to her.*

We do know that they sell some amount of real merchandise from internet reports. Still, there is also the evidence (above) that it *may be* a front for money laundering via NFTs. Any sales of NFTs that were once in insider wallets need to be traced and the proceeds found and clawed back.  This store also has very poor online reviews, which *may* indicate that it is more of a front[24], then a legitimate business. And, they are selling an "UnBankrupt YourSelf" shirt[25], which *may* be more to taunt customers (similar to the way Mrs. Mashinsky taunts Celsius customers on Twitter) rather than sell anything. This is especially disturbing in light of the fact that Krissy Mashinsky seems to have withdrawn essentially everything from her wallet, while telling the community "I'm a creditor too."

As I have shown, USA Strong and Krissy Mashinsky should be looked into, since these actions are all a *potential* way for (what effectively is stolen) money to be **laundered**, or, at a minimum, embezzlement against estate under 18 USC § 153 (USA Strong's wallet[26] has sold "CEL" tokens which were withdrawn from Celsius–using insider information of the solvency issue–and NFTs that came into and out of its wallet need to be looked into.) Any and all assets

---

[23] https://www.ft.com/content/773a963a-e6d0-415f-bf0a-8f3fcc8022c3
[24] https://www.trustpilot.com/review/usastrong.io

[25] See: Exhibit A
[26] https://twitter.com/MikeBurgersburg/status/1571882204682141696

that were diverted from Celsius's depositers/withdrawn based on insider information, and proceeds from those assets/the current value of them *must* be returned to the estate **immediately**.

### REQUEST FOR RELIEF

1. I ask for the court to hear this motion at the October 20 hearing, with an objection deadline of October 17 at 5pm ET, because with every day that goes by, more funds are at risk of disappearing forever, robbing the Debtor's estate of more funds.

2. I ask that Your Honor approves my motion and orders the UCC and/or US Trustee to begin immediate clawbacks for funds withdrawn by Alex and Krissy Mashinsky and other known insiders at the October 20 hearing.

3. I ask the the Debtor and Kirkland and Ellis be required to file, with this court, a schedule of all NFTs that have ever been inside of Celsius-owned wallets and the wallets of insiders, along with the current wallet each NFT resides in today, the original purchase price of each NFT, the address the NFT was bought from, the address the NFT resides in today, and each NFTs current estimated value. Each NFT, like a piece of fine art, must be treated as a separate piece of property by the debtor; they could have significant value into the millions of dollars or more. Each NFT requires close scrutiny and tracing of each individual transaction due to money laundering issues. As I mentioned, it is easy to make money "disappear" from the estate via NFTs and each NFT transaction must be deeply examined and scrutinized.

4. I ask that this court order Alex Mashinsky to immediately cease and desist from selling "CEL" tokens. He is continuing to dump "CEL" tokens right now[27], as I write this motion. He and his wife should also be ordered to immediately cease the transfer,

---

[27] See Exhibit C.

conversion, sale and dissipation of all cryptocurrencies, NFTs, and anything that was (including cars, houses, stocks, bonds, commodities, etc) purchased using funds withdrawn from Celsius based on non-public information, or is otherwise ill gotten.

5. I ask that the court direct the UCC and/or the examiner to investigate whether Celsius' insolvency extends back more than 1 year at the October 20 hearing (like the report issued by Vermont and the other states suggests it does), and that they come back to this court by the November 1 hearing with a plan to deal with insider/preferential (to include anyone who has had non-public information) payment clawbacks (including transfers from "Earn" to "Custody" accounts) going back further than 1 year.

6. I also ask that Your Honor orders the UCC/US Trustee and the Debtors to formulate a plan to clawback *all* large withdrawals by accredited investors/so called "whales[28]" and institutions, and present it at the November 1st hearing.

7. I ask that Your Honor order the clawbacks of assets from the list that will be presented at the November 1st hearing.

8. I ask that Your Honor orders any and all assets, cryptocurrencies, cash, and anything that is recovered via clawbacks is unable to be sold, transferred, dissipated, converted, or used without court approval, pending a full hearing process. The Debtors should not be able to spend any and all assets (and anything of value), including cash, for expenses, to pay fees of any sort or to dissipate it in any way (yet). The assets/cash/cryptocurrency/everything recovered should be added to the estate (unless it is a liability, then of course, the estate[29] does not need anymore liabilities). I expect the Debtors to attempt to use the funds

---

[28] A term used in the crypto community to describe holders with large amounts of crypto.
[29] But **not** declared property of the estate, and that it is treated as all other creditors' property is.

clawed back to help fund their horribly inefficient and expensive upkeep, this should not be allowed (for more information, see my motion on cost cutting).

9. I ask that the court **not** approve any (further) expenses and dissipation of funds from the estate; to any and *all* consultants, advisors, **legal counsel**, etc, until *after* the wrongfully withdrawn funds have been returned. It *may* very well be **malpractice** for Kirkland and Ellis to know about the insider withdrawals and do *nothing* about it for the approximately 4 months they have been working for Celsius/the bankruptcy estate.

10.

Signed:

/s/*Daniel A. Frishberg*

Daniel A. Frishberg, *Pro Se*

October 11th, 2022

Exhibit A:



Exhibit B:



Exhibit C:

