Hearing Date:  October 20, 2022 at 10:00 a.m. (prevailing Eastern Time)

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) <br> ) |
| Debtors. | ) (Jointly Administered) <br> ) <br> ) **Re Docket Nos. 21, 56, 513, 592,** <br> ) **699, and 720** |

**DEBTORS' REPLY IN SUPPORT OF**
**ENTRY OF THE FINAL CASH MANAGEMENT ORDER**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") in response to the *Limited Objection to Cash Management* [Docket No. 592] (the "Objection") filed by the United States Trustee for the Southern District of New York (the "U.S. Trustee") and in further support of the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

*Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 21] (the "Motion").[2] The Debtors request that the Final Order[3] be entered and, in further support of the Motion, submit the *Declaration of Christopher Ferraro, Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, in Further Support of the Debtors' Motion for Entry of a Final Order (I) Authorizing the Debtors to Continue to Operate Their Cash Management System and (II) Granting Related Relief* (the "Ferraro Declaration"), attached hereto as **Exhibit A**, and state the following:

**Preliminary Statement**

1.  As set forth in the *Joint Stipulation and Agreed Order Between the Debtors and the Committee with Respect to Cryptocurrency Security* [Docket No. 813] (the "Security Stipulation"), the Debtors, in consultation with the official committee of unsecured creditors (the "Committee"), implemented additional security measures to ensure that the Debtors' digital assets are properly protected during these chapter 11 cases. The deadline to object to the Security Stipulation passed on September 29, 2022, without objection from the U.S. Trustee or other parties in interest. Moreover, as discussed in the *Declaration of Shiran Kleiderman, Chief Security Officer of Celsius Network LLC, with Respect to the Debtors' Security Protocols* [Docket No. 812] (the "Kleiderman Declaration"), the protocols set forth in the Security Stipulation are in addition to the Debtors' existing security protocols. These security protocols include processes and procedures involving multidisciplinary teams designed much like that of a bank or large

---

[2] Capitalized terms not otherwise defined herein are given the meanings ascribed to them in the Motion.

[3] The Debtors will file a revised version of the Final Order prior to the hearing.

2

enterprise with enhanced security. As a result of the Security Stipulation and the Kleiderman Declaration, the Debtors have resolved the U.S. Trustee's concerns with respect to the storage and security of the Debtors' cryptocurrency.

2.	With respect to the Debtors' Brokerage Accounts (as defined herein), a waiver of section 345 of the Bankruptcy Code is appropriate because the administrative burdens associated with closing the Brokerage Accounts outweigh the benefits to the Debtors' estates. As of the date of the filing of this Reply, the Debtors and the U.S. Trustee are in discussions with respect to the Brokerage Accounts but have not yet reached a resolution.

3.	For these reasons, the Court should enter the Final Order.

## Reply

4.	Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes the deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). As a practical matter, a debtor is vested with some discretion in investing money of the estate, but "section 345(b) of the Bankruptcy Code limits that discretion." *In re Ditech Holding Corp.*, 605 B.R. 10, 16–17 (Bankr. S.D.N.Y. 2019). The purpose of section 345(b) of the Bankruptcy Code is "to ensure 'that the funds of a bankrupt that are obligated to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankrupt estate,' while also giving bankruptcy courts the flexibility to modify such requirement for 'just cause' where strict compliance might 'work to needlessly handcuff larger, more sophisticated debtors.'" *Id.* at 22 (citing H.R. Rep. 103-835, 103rd Cong., 2d Sess. 210 (Oct. 4, 1994)).

5.	For deposits of money or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the

full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires a debtor to "bond" such deposit, "unless the court for cause orders otherwise."  11 U.S.C. § 345(b). Additionally, under the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"), debtors in possession must deposit all estate funds into accounts at a depository institution on a pre-approved list issued by the U.S. Trustee.

6. Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause." In evaluating whether "cause" exists, courts consider the "totality of circumstances," including a number of factors such as:

(1)   the sophistication of the debtor's business;

(2)   the size of the debtor's business operations;

(3)   the amount of the investments involved;

(4)   the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

(5)   the complexity of the case;

(6)   the safeguards in place within the debtor's own business for ensuring the safety of the funds;

(7)   the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

(8)   the benefit to the debtor;

(9)   the harm, if any, to the debtor;

(10)  the harm, if any, to the estate; and

(11)  the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896–97 (Bankr. M.D. Ten. 1999).

7. It is unclear if a debtor's cryptocurrency is "money of the estate" subject to compliance with section 345 of the Bankruptcy Code. The Bankruptcy Code does not define "money," and, to date, no court or federal agency has concluded that cryptocurrency is money. Regardless, whether cryptocurrency is money or whether section 345(a) applies does not need to be decided in these chapter 11 cases because a waiver of compliance with section 345 is appropriate.

8. With respect to the Brokerage Accounts, given the complexity, scale, and sophistication of the Debtors' operations, in addition to the loss of value and time the Debtors would incur in complying with section 345, "cause" exists for the Court to grant a limited waiver of compliance with section 345.

### A. The Debtors and the Committee Resolved the U.S. Trustee's Objection with Respect to the Security of Their Cryptocurrency and Other Digital Assets.

9. The Debtors are safely securing their cryptocurrency and other digital assets as set forth in the Security Stipulation and Kleiderman Declaration. In its Objection, the U.S. Trustee argues that it is the Debtors' "burden to demonstrate that the requirements of 11 U.S.C. § 345 . . . are satisfied with respect to their handling of the Debtors' 'money' which may or may not include cryptocurrency." Obj. ¶ 10. The U.S. Trustee further argues that a final order on the Motion should "be denied until the Debtors establish either that they have satisfied Section 345, that they have 'cause' for waiving its requirements, or that Section 345 does not apply to cryptocurrency." *Id*. ¶ 12. The Debtors worked with the Committee to establish a comprehensive security protocol—as set forth in the Security Stipulation—to address the concerns raised by the U.S. Trustee and ensure that the Debtors' digital assets are protected.

10. These protections, among others, include preventing unauthorized transactions of cryptocurrency and protecting the keys to the Debtors' private wallets (the "Account Keys").

5

Security Stipulation, Recital 8.  The Debtors distributed the Account Keys to four U.S.-based authorized individuals who must consent in writing to any transfers of cryptocurrency.  *Id*. ¶ 4.  Furthermore, the Debtors agreed to select a custodian from a list of entities provided by the Committee to (a) hold the backup for the Account Keys and (b) implement transfers for the majority of the Debtors' cryptocurrency.  *Id*. ¶ 2.  The Debtors have selected a custodian to hold the backup of the Account Keys and are in discussions with the Committee and potential custodians regarding implementation of cryptocurrency transfers.

11. The Debtors have resolved the U.S. Trustee's Objection through the Security Stipulation and the Kleiderman Declaration.  Thus, the Debtors understand that the U.S. Trustee no longer intends to pursue his Objection at the hearing on October 20, 2022.

12. Moreover, to be clear, regardless of whether section 345 applies here, the Debtors demonstrated that "cause" exists to waive the Debtors' compliance with section 345(b).  Specifically, "cause" exists because (a) the amount of investments involved are worth millions if not billions of dollars, and (b) the safeguards set forth in the Security Stipulation and Kleiderman Declaration are more than sufficient to ensure the safety of the assets.  Moreover, the Committee and the U.S. Trustee support such relief.

13. For these reasons, the U.S. Trustee's Objection is resolved and the Court should find that a waiver of compliance with section 345 of the Bankruptcy Code is appropriate in light of the security protocols set forth in the Security Stipulation and Kleiderman Declaration, which are sufficient to ensure the safety and security of the Debtors' cryptocurrency during these chapter 11 cases.

B.   **Cause Exists to Waive Compliance with Section 345 with Respect to Their Brokerage Accounts.**

14.   The Debtors also seek a limited waiver of compliance with section 345 of the Bankruptcy Code for their two Brokerage Accounts.[4] *First*, with respect to the Oppenheimer Account, cause exists because the Debtors have emptied the account by liquidating its assets and agreed that they will not use it during these chapter 11 cases. Ferraro Decl. ¶ 9. On that basis, the U.S. Trustee does not object to the Debtors leaving the Oppenheimer Account open, but empty, so that the Debtors do not need to incur the administrative costs and burdens associated with closing such account. As such, a waiver is appropriate with respect to the Oppenheimer Account as there is no harm to the Debtors' estates associated with leaving it open.

15.   *Second*, with respect to the SSG Account, cause exists because closing the account at this time is impracticable. The SSG Account holds approximately 2,932,321 units ("OBTC") in a trust, the Osprey Bitcoin Trust, which holds Bitcoin. *Id.* ¶ 10. As of October 17, 2022, the fair market value of the Debtors' OBTC is approximately $13.8 million, based on a spot price for each unit of OBTC of $4.71 as of 9:40 a.m., prevailing Eastern Time, on October 17, 2022. *Id.*

16.   OBTC is an exchange-traded fund (ETF) with a trailing ten-day trading volume of approximately 12,000 shares per day. *Id.* Unwinding this position of over 2.9 million units of OBTC at volumes representing an entire day's transactions could take well over a year. *Id.* Moreover, considering the relatively low trading volume, it would be virtually impossible to sell any material amount of the Debtors' holdings at once. Even if the shares could be sold in advance

---

[4]   As defined herein, "Brokerage Accounts" means the brokerage accounts at (a) Oppenheimer & Co. Inc. ending in 9697 (the "Oppenheimer Account") and (b) Signature Securities Group Corporation ending in 0783 (the "SSG Account"). Since filing the Motion, the Debtors closed their brokerage account at ED&F Man Capital Markets, Inc. ending in 51000.

7

at volume, such a transaction would likely come with a steep discount for the Debtors. *Id*. In light of the illiquid market for OTBC, a waiver with respect to the SSG Account is appropriate.

17. Courts in this district have granted relief similar to that requested herein in other complex chapter 11 cases. *See*, *e.g.*, *In re Revlon Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. Dec. 9, 2022) (waiving application of deposit and investment guidelines set forth in section 345 on a final basis); *In re Grupo Posadas S.A.B. de C.V.*, No. 21-11831 (SHL) (Bankr. S.D.N.Y. Dec. 9, 2021) (same); *In re Lakeland Tours, LLC*, 20-11647 (JLG) (Bankr. S.D.N.Y. Aug 6, 2020) (same).[5]

18. As of the filing of this Reply, the Debtors and the U.S. Trustee are in discussions with respect to whether a waiver of section 345 is appropriate for the SSG Account. In the event that a resolution is reached between the parties prior to the hearing on October 20, 2022, the Debtors will file a revised proposed Final Order reflecting the terms of such resolution.

## Reservation of Rights

19. The Debtors expressly reserve all rights with respect to the Motion and this Reply, including the right to supplement or add to the legal and factual arguments to further respond to the Objection at the hearing on the Motion or otherwise. Importantly, for the reasons stated above, regardless of whether cryptocurrency is "money," the Court should grant a waiver under section 345(b)(2) of the Bankruptcy Code. In the event the Court determines that it is necessary to resolve the issue of whether cryptocurrency is "money" to enter a final order on the Motion, or decides that the issue needs to be resolved later in these chapter 11 cases, the Debtors reserve all rights with respect thereto and request permission to fully brief the issue.

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Reply. Copies of these orders are available upon request to the Debtors' counsel.

8

20.     For the avoidance of doubt, nothing herein, including any omission, shall be interpreted or construed as waiver or limitation on any such rights or an admission that section 345 of the Bankruptcy Code applies to cryptocurrency or other digital assets, and the Debtors reserve all rights with respect thereto.

## **Conclusion**

21.     For the reasons stated above and in the Motion, the Court should grant the relief requested in the Final Order.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request that the Court enter the Final Order granting the relief requested in the Motion and herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| New York, New York<br>Dated: October 18, 2022 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           jsussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:   (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           patrick.nash@kirkland.com<br>                     ross.kwasteniet@kirkland.com<br>                     chris.koenig@kirkland.com<br>                     dan.latona@kirkland.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

2

**<u>Exhibit A</u>**

**Declaration of Christopher Ferraro**

Joshua A. Sussberg, P.C.  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:  (212) 446-4800  
Facsimile:  (212) 446-4900  

*Counsel to the Debtors and Debtors in Possession*

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)  
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)  
Christopher S. Koenig  
Dan Latona (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle Street  
Chicago, Illinois 60654  
Telephone:  (312) 862-2000  
Facsimile:  (312) 862-2200  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| Debtors. | ) (Jointly Administered) |

**DECLARATION OF CHRISTOPHER FERRARO,**
**INTERIM CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING**
**OFFICER, AND CHIEF FINANCIAL OFFICER OF THE DEBTORS, IN**
**FURTHER SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF A**
**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE TO OPERATE**
**THEIR CASH MANAGEMENT SYSTEM AND (II) GRANTING RELATED RELIEF**

I, Christopher Ferraro, hereby declare as follows under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius Network LLC ("Celsius"). Celsius, along with certain of its

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

subsidiaries and affiliates, are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors").

2. I am familiar with the Debtors' day-to-day operations, businesses and financial affairs, and books and records. I am also familiar with the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 21] (the "Motion") and the *Debtors' Reply in Support of Entry of the Final Cash Management Order* filed contemporaneously herewith (the "Reply", and the respective order, the "Order").[2]

3. I submit this declaration (this "Declaration") in support of the Motion and the Reply. Except as otherwise indicated, the statements set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, and information obtained from other members of the Debtors' management team and advisors. I am authorized to submit this Declaration on behalf of the Debtors. I am over the age of eighteen and, if called upon to testify, I could and would testify competently to the facts and opinions set forth in this Declaration.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Reply.

2

## Qualifications

4.  I am the interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Celsius. I was appointed as Chief Financial Officer on July 11, 2022, and was appointed as interim Chief Executive Officer and Chief Restructuring Officer on September 27, 2022. I have approximately two decades of experience in financial, planning, and analysis, asset and liability management, and product control.

5.  Before my roles with Celsius, I was a Senior Managing Director at Cerberus Operations & Advisory Company ("Cerberus"), where I focused on improving the operating returns for two legacy portfolio positions. In this role, I advised the chief executive officer and leadership team on increasing profitability by changing and repricing business mix, restructuring costs, and optimizing the balance sheet.

6.  Prior to Cerberus, I served in various roles at JP Morgan Chase & Co. from 2001 to 2018. I was the head of Financial Analysis and a Senior Leader, for which I was responsible for all financial, planning, and analysis activities, developed analytical tools, and authored a patent application in forecasting. Before my role as head of Financial Analysis and a Senior Leader, I was the Treasurer of the Consumer Bank and the Retail Loan Pricing Manager.

7.  I hold a Bachelor's degree in Economics, Finance, & Accounting from the University of Washington. I also passed the Washington state Uniform Certified Public Accountant Examination.

**The Debtors' Brokerage Accounts**

8.  The Debtors maintain two Brokerage Accounts.[3] The Oppenheimer Account is currently empty because the assets have been liquidated and the Debtors will not use it during these chapter 11 cases.

9.  The SSG Account holds approximately 2,932,321 units ("OBTC") in a trust, the Osprey Bitcoin Trust, which holds Bitcoin. As of October 17, 2022, the fair market value of the Debtors' OBTC is approximately $13.8 million, based on a spot price for each unit of OBTC of $4.71 as of 9:40 a.m., prevailing Eastern Time, on October 17, 2022.

10. I understand that OBTC is an exchange-traded fund (ETF) with a trailing ten-day trading volume of approximately 12,000 shares per day. Thus, it is my understanding that unwinding this position of over 2.9 million units of OBTC at volumes representing an entire day's transactions could take well over a year. Moreover, considering the relatively low trading volume, I believe that it would be virtually impossible to sell any material amount of the Debtors' holdings at once. Even if the shares could be sold in advance at volume, it is my understanding that such a transaction would likely come with a steep discount for the Debtors.

[*Remainder of page intentionally left blank*]

---

[3] As defined herein, "Brokerage Accounts" means the brokerage accounts at (a) Oppenheimer & Co. Inc. ending in 9697 (the "Oppenheimer Account") and (b) Signature Securities Group Corporation ending in 0783 (the "SSG Account"). Since filing the Motion, the Debtors closed their brokerage account at ED&F Man Capital Markets, Inc. ending in 51000.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 18, 2022
Quito, Ecuador

/s/ Christopher Ferraro
Name: Christopher Ferraro
Title: Interim Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of Debtor Celsius Network LLC