**Hearing Date and Time:** November 1, 2022 at 11:00 a.m. EDT
**Objection Deadline:** October 29, 2022 at 4:00 p.m. EDT

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Proposed Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF HEARING ON EXAMINER'S MOTION TO**
**CONFIRM EXAMINATION SCOPE OR ALTERNATIVELY**
**FOR EXPANSION OF THE SCOPE OF THE EXAMINATION**

PLEASE TAKE NOTICE that a hearing on the *Examiner's Motion to Confirm Examination Scope or Alternatively for Expansion of the Scope of the Examination* (the "**Motion**") will be held on November 1, 2022 at 11:00 a.m., prevailing Eastern Time (the "**Hearing**"). In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

remotely using Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York, and the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Dkt. 521]; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served so as to be actually received by **October 29, 2022, at 4:00 p.m., prevailing Eastern Time**, by (i) the entities on the Master Service List available on the case website of the above-captioned debtors and debtors in possession (the "**Debtors**") at https://cases.stretto.com/celsius, and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

PLEASE TAKE FURTHER NOTICE that only those responses or objections that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Examiner.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at

https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: October 18, 2022                    Respectfully submitted,

                                           JENNER & BLOCK LLP

                                           By: /s/ *Catherine L. Steege*
                                           Catherine L. Steege (admitted *pro hac vice*)
                                           Vincent E. Lazar
                                           353 N. Clark Street
                                           Chicago, IL 60654
                                           (312) 222-9350
                                           vlazar@jenner.com
                                           csteege@jenner.com

                                           Richard Levin
                                           Kayvan Sadeghi
                                           1155 Avenue of the Americas
                                           New York, NY 10036
                                           (212) 891-1600
                                           rlevin@jenner.com
                                           ksadeghi@jenner.com

                                           *Proposed Counsel to the Examiner*

3

**Hearing Date and Time:** November 1, 2022 at 11:00 a.m. EDT
**Objection Deadline:** October 29, 2022 at 4:00 p.m. EDT

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, New York 10036
(212) 891-1600

*Proposed Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**EXAMINER'S MOTION TO CONFIRM EXAMINATION SCOPE OR**
**ALTERNATIVELY FOR EXPANSION OF THE SCOPE OF THE EXAMINATION**

Shoba Pillay, the duly appointed Examiner, respectfully moves this Court for entry of an

Order confirming the scope of her examination, or in the alternative, expanding the examination

topics, in either case to take account of the concerns of the Debtors' customers expressed in their

*pro se* filings, and states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC
(8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius
Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius
Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is
121 River Street, PH05, Hoboken, New Jersey 07030.

## INTRODUCTION

In its Order directing the appointment of an Examiner, the Court directed the Examiner to "review the pro se filings related to the [Examiner] Motion, to consider whether any revisions to the Scope [of her examination] are appropriate." (*See Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Dkt. 820] (the "**Examiner Order**") ¶ 16.) Immediately following her appointment, the Examiner began her review of the more than 400 *pro se* filings on the docket, including those that continue to be filed. Based upon her review of those filings, the Examiner believes that certain issues those letters repeatedly raise should be addressed in her report and are already within a fair reading of the scope of her existing mandate.

Specifically, the Debtors' customers, some of whom state that they invested significant amounts of their life savings with the Debtors and are fearing that their investments may be lost, repeatedly express distrust in the Debtors and raise recurring questions about two issues that they believe should be examined by a neutral court-appointed examiner:

(1) the Debtors' CEL tokens, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded – including whether any of the Debtors' trading practices involving CEL tokens generally or determinations of CEL tokens awarded as part of the Earn Rewards program – impacted their value; and

(2) the representations Debtors generally made in public representations to customers to attract them to their platform and about their cryptocurrency holdings and account offerings.

While the Examiner believes that these two issues already fall within the scope of issues set forth in the Examiner Order, she makes this Motion to ensure that the Court and all parties understand the Examiner's reading of her mandate and to address the Court's directive that she review the *pro se* letters and advise the Court about any issues she believes should be addressed. She requests that the Court clarify that the two topics the Examiner has identified are within the scope of issues one and two of the Examiner Order. Alternatively, the Examiner requests that the Court expand her mandate to include these two issues.

## BACKGROUND

1.     On July 13, 2022 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued to operate their businesses and manage their affairs as debtors and debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On July 27, 2022, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**").

3.     On August 18, 2022, the United States Trustee filed a motion seeking appointment of an examiner. [Dkt. 546.]

4.     On September 14, 2022, the Court entered the Examiner Order and directed an examination of the following topics:

>    (i)     An examination of the Debtors' cryptocurrency holdings, including a determination as to where the Debtors' cryptocurrency holdings were stored prepetition and are stored postpetition and whether different types of accounts are commingled.

>    (ii)     An examination as to why there was a change in account offerings beginning in April 2022 from the Earn Program to

3

the Custody Service for some customers while others were placed in a "Withhold Account."

(iii)   An examination of the Debtors' procedures for paying sales taxes, use taxes, and value added taxes and the extent of the Debtors' compliance with any non-bankruptcy laws with respect thereto.

(iv)   An examination of the current status of the utility obligations of the Debtors' mining business.

(Examiner Order ¶ 3.)

5.   The Examiner Order further provided that:

Once the Examiner is appointed, the Examiner and the Examiner's professionals shall consult with the Committee, the Debtors, and the United States Trustee, and review the *pro se* filings related to the Motion, to consider whether any revisions to the Scope are appropriate. Any proposed revisions to the Scope should be included in an application to the Court to amend this Order.

(Examiner Order ¶ 16.) The Examiner Order also stated that its entry was "without prejudice to (i) the right of any party to seek relief from the Court to further expand the Scope of the Investigation, and (ii) the right of the Examiner to seek such other relief from the Court as he or she may deem appropriate in furtherance of the discharge of his or her duties and the investigation." (Examiner Order ¶ 13.)

6.   On September 29, 2022, the United States Trustee appointed Shoba Pillay as Examiner and filed a notice of the appointment [Dkt. 920] and an application to approve the appointment of the Examiner. [Dkt. 921.] On that same date, the Court entered an order approving the appointment of the Examiner. [Dkt. 923.]

7.   Following her appointment, the Trustee and her professionals consulted with the Debtors, the Committee, and the United States Trustee, as well as with all three ad hoc committees and counsel for various states and governmental bodies. She has reviewed every *pro se* filing made

4

to date and consulted with all the above parties regarding her views about what issues those filings raise and what issues those parties believe should be examined.

8.    In their letters, the *pro se* filers repeatedly raised questions about the Debtors' CEL token program and the statements the Debtors made about their cryptocurrency holdings and account offerings. For example, two investors explained that:

> Timothy Cradle, Director of Financial Crimes Compliance states that top executives were openly discussing how the company could use client funds to manipulate the price of CEL token (currently, an unregistered security), as well as describing a failure of risk management. According to Arkham Report and multiple validation sources, Alex Mashinsky sold $40,000,000 USD of CEL token in 2021 alone. This happened after the company was aware there was a hole in the balance sheet. This occurred on the same exchange as Celsius (the company) itself was buying CEL tokens to pay their users rewards.

[Dkt. 208 at 2; Dkt. 269 at 2.] Another investor asserted that "[i]n addition to the pathological lying, Mashinsky also was using customer funds to pump up the price of the CEL token." [Dkt. 212.] "It's seeming pretty blatant that the Celsius token was being manipulated and controlled by the company to their own benefit." [Dkt. 184.]

9.    The most common statement expressed in the *pro se* letters was that investors felt misled and deceived by public statements made by the Company and Mr. Mashinksy:

> Mr. Mashinsky and Celsius Management have been engaging in deceptive marketing of their platform and products using catchy phrases such as "Unbank yourself" and "Banks are not your friends" to imply that leaving funds with Celsius is just like depositing funds on savings accounts with traditional banks, if not superior. This deceptive marketing strategy continued while they continued to gamble away customer funds in volatile markets and failed to disclose the deteriorating financial health of the company and going as far as denying any problems via Mr. Mashinsky's own Twitter account 4 days in the lead up to announcing the pause of withdrawals.

[Dkt. 128.]

5

10.    Similarly, another investor wrote that:

> Alex Mashinsky would regularly release status updates on the
> network, during which he often explained that... No, Celsius did not
> engage in risky investing strategies. No, Celsius would always
> ensure our assets were available. And, right up to the end... No,
> Celsius is not insolvent . . . Yet, right up until the end, the retail
> investor received assurances [sic]. "Damn the Torpedoes", [a post
> on the Celsius blog][2] which was released five days before the freeze,
> is a fine example."

[Dkt. 206; *see also* Dkt. 475 (providing additional examples of allegedly deceptive statements to

induce use of the Borrow program).]

11.    Many of the *pro se* filers who commented on the Examiner Motion took the position

that a trustee was required. While the Court did not take that step, these requests demonstrate that

the customers are seeking a court-appointed neutral party to address their concerns, making it

appropriate for the Examiner to do so in her report. [*See e.g.*, Dkt. 770, 571, 269.][3]

## ARGUMENT

12.    In accordance with the Examiner Order and the Court's comments made at the

October 7, 2022 hearing, the Examiner has carefully reviewed the scope of her mandate. She has

considered all of the information made available to the Examiner to date, the numerous formal

---

[2] Available at: https://celsiusnetwork.medium.com/damn-the-torpedoes-full-speed-ahead-4123847832af
(last visited Oct. 15, 2022).

[3] The *pro se* letters also frequently asked for an investigation of Debtors' insiders, citing concerns about
withdrawals from the platform and have filed multiple requests asking that any pari-withdrawals be avoided and
brought back into the estate. [*See*, *e.g.*, Dkt. 87, 567 ("[I]t would be just and fair to cancel all these unfair
front-running transactions, with restitution. I would like to ask your Honor to request the return of the assets
that they withdrew in that period. Those assets should be part of the total Celsius asset pool in the
restructuring process, and these officers and employees should have a claim pari-passu with the other claims
of the customers."); Dkt. 1042 (*pro se* motion to compel insider clawbacks).] Because the Examiner
understands that the Committee has already begun an investigation of those claims, she does not seek to
include that within her mandate.

submissions made by *pro se* customers and other interested parties, and direct communications received from customers and other interested parties following her appointment. She has also taken into consideration the cost to the estates and any delay that might be occasioned by an expansion of the investigation. Based upon the foregoing, the Examiner believes that a fair reading of the existing Examiner Order is that the two topics identified below fall within the scope of issues (i) and (ii) of the Examiner Order, and the Examiner seeks an Order confirming this is the case. Alternatively, the Examiner request that the Court expand her mandate to include the two identified below.

13.      *First*, a significant number of customers and other parties-in-interest have raised questions about the Debtors' actions with respect to the CEL token, including why and how other digital assets were converted into CEL tokens, and how these tokens were marketed, stored, and traded – including whether any of the Debtors' trading practices involving CEL tokens generally or  determinations of CEL tokens awarded as part of the Earn Rewards program – impacted their value. The Examiner believes that this issue is already subsumed in topic (i) which directs the Examiner to conduct "[a]n examination of the Debtors' cryptocurrency holdings…." (Examiner Order ¶ 3.) But because many parties have expressed different views of what these topics entail and given customers' requests that these issues be explored, the Examiner believes it is prudent to place on the record that she intends to investigate these issues in the course of examining the Debtors' cryptocurrency holdings.

14.      The Examiner also believes this information will be highly relevant to any decisions that customers and creditors may need to make about the viability of restructuring proposals involving CEL tokens, and that in any event all parties in interest would benefit from an

independent report from a party that is not representing a constituency with an interest in the outcome of the issue.

15.    To the extent that the Court determines that this issue is outside of the scope of topic (i), the Examiner requests that topic (i) be expanded to include this issue. Given that she will already be investigating where the Debtors' tokens were historically held and that this would include CEL tokens and any digital assets used in connection with CEL token transactions, expanding the scope of her examination to include an examination of the nature, extent, and timing of CEL token trading would not involve material additional cost to the estate.

16.    *Second*, a number of customers have alleged that they were misled by the Debtors concerning the safety of their investments and the manner in which their deposits would be treated, or that the Debtors purposefully obfuscated such information.  The Examiner believes that a report on what statements or representations were generally made to customers in public communications, will be relevant to resolution of many customer claims, and in any event is a matter of general significance in this case about which customers are very concerned.  Because the Examiner already is examining information concerning the shift to "withhold" and "custody" account structures and related terms of use, the Examiner believes that these issues are already within the scope of topic (ii) of the Examiner Order, but that if this is viewed as an expansion of the scope, this work also could be completed without material additional cost to the estate.

17.    At this time, barring a lack of timely access to information needed to complete her investigation, the Examiner would expect to complete this work pursuant to the schedule established by the Court in the Examiner Order and its Order directing the filing of an interim report. If that were to change for any reason, the Examiner would advise the Court and seek appropriate relief.

## CONCLUSION

The Examiner respectfully requests that this Court enter an Order finding that the two topics the Examiner has identified herein fall within the scope of topics one and two of the Examiner Order or alternatively, that the Court expand the Examiner's investigation to include the two topics, and that the Court grant such other relief as may be just.

Dated: October 18, 2022                     Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ *Catherine L. Steege*
Catherine L. Steege (admitted *pro hac vice*)
Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
vlazar@jenner.com
csteege@jenner.com

Richard Levin
Kayvan Sadeghi
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rlevin@jenner.com
ksadeghi@jenner.com

*Proposed Counsel to the Examiner*