**Hearing Date: November 1, 2022 at 11:00 a.m. (prevailing Eastern time)**
**Objection Deadline: October 25, 2022 at 4:00 p.m. (prevailing Eastern time)**

**WHITE & CASE LLP**
David M. Turetsky
Keith H. Wofford
Samuel P. Hershey
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Email:  david.turetsky@whitecase.com
        kwofford@whitecase.com
        sam.hershey@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  mandolina@whitecase.com
        gregory.pesce@whitecase.com

**WHITE & CASE LLP**
Aaron E. Colodny (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
Email:  aaron.colodny@whitecase.com

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE
DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) PERMITTING
THE SALE OF STABLECOIN IN THE ORDINARY COURSE
AND (II) GRANTING RELATED RELIEF**

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are as follows:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") states as follows in support of this objection (the "**Objection**") to the *Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 832] (the "**Stablecoin Sale Motion**" or the "**Motion**"):[2]

### Preliminary Statement

1.      The Committee recognizes that the Debtors may eventually need additional liquidity to administer these chapter 11 cases and emerge from bankruptcy.  The Committee also understands that selling stablecoin (which is theoretically not subject to as dramatic fluctuation in value as other types of cryptocurrency) may be a less costly source of financing than, and preferable to, debtor-in-possession financing, borrowing from decentralized finance protocols, or other sources of liquidity.

2.      Regardless, the Stablecoin Sale Motion should not be approved at this time.  The ownership of the stablecoin is contested by certain creditors that transferred stablecoin to the Debtors.  Indeed, at the outset of these chapter 11 cases, the Debtors identified the question of whether the Debtors or account holders own crypto assets held on the Celsius platform as one of the key legal issues in these cases.  In the more than three months since the commencement of these cases and the forty days since the filing of the Stablecoin Sale Motion, the Debtors have not met their burden to establish which (if any) crypto assets constitute property of the estate.  Indeed, the Stablecoin Sale Motion includes little more than conclusory statements that the Debtors own the assets at issue, which is insufficient for purposes of an issue of this magnitude (and particularly

---

[2]      Capitalized terms used herein but not defined shall have the meanings given to such terms in the Stablecoin Sale Motion or the *Declaration in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23] (the "**First Day Declaration**"), as applicable.

given the circumstances of these cases).  Simply put, until the Debtors provide sufficient evidence to establish that they own the stablecoin they are seeking to sell, they should not be permitted to sell those assets.  Furthermore, the Court should defer any hearing on the ownership of the stablecoin until the Debtors provide notice to interested parties of the evidence and arguments that the Debtors intend to present with respect to the ownership issue.  The Committee understands that there is a need to move these cases forward in a deliberate manner and believes these matters can be briefed within the current sale timeline recently approved by the Court.

3.      Alternatively, to the extent that the Debtors demonstrate an immediate need to sell stablecoin, the order approving any such sale should provide that (i) potentially affected account holders shall receive, as adequate protection, liens on unencumbered assets held by the Debtors, to the extent the Court finds that those account holders have an interest in the stablecoin being sold, and to the extent of and in an aggregate amount equal to, any dollar-for-dollar diminution in value of their interests in stablecoin (which may be zero, if account holders do not have an interest in the stablecoin) arising from the Debtors' sale thereof ("**Diminution in Value**"), (ii) all parties' rights with respect to issues regarding the ownership of cryptocurrency transferred to the Debtors, whether as part of the Earn, Custody, or Borrow programs or marked as Withheld assets, are fully reserved, and (iii) the Debtors shall comply with additional procedural and notice requirements to ensure that any sales of stablecoin are necessary and in the best interests of the Debtors' estates.[3]

## Background

4.      On July 13, 2022, the Debtors filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.  At the first day hearing, the Debtors identified several "key legal questions" in these chapter 11 cases.  One of those questions was: "Are the crypto assets in

---

[3]    A draft proposed order including these changes is attached as **Exhibit A** to this Objection.

Celsius' possession property of the estate?  Is the answer to this question different for crypto assets held under the Custody vs. the Earn program?  What about crypto assets transferred to Celsius to collateralize institutional and retail loans?"  *First Day Hr'g Presentation* [Docket No. 45] at 3 (the "**First Day Hearing Presentation**").

5.      On September 15, 2022, the Debtors filed the Stablecoin Sale Motion, requesting authorization "to continue to sell and/or exchange their stablecoin for U.S. dollars" on "a postpetition basis and consistent with past practice."  Stablecoin Sale Motion ¶ 1.  The Debtors disclose that Debtors Celsius Network Limited (UK), Debtor Celsius Network LLC (US), and non-Debtor Celsius Network EU UAB (LT) hold "eleven different forms of stablecoin" valued at $23 million.  *Id*. ¶ 9.  The Debtors do not identify (1) which types of stablecoin they hold and propose to sell, (2) whether the stablecoin are all collateralized stablecoin or algorithmic stablecoin, or (3) how or when the Debtors acquired the stablecoin.[4]  The Debtors argue in conclusory fashion and without citation that "any stablecoin held by the Debtors' postpetition activity constitutes property of the Debtors' estate in accordance with section 541(a) of the Bankruptcy Code.  Accordingly, the proceeds generated by the sale of stablecoin also constitutes property of the Debtors' estate."  *Id*. ¶ 14.  The Debtors assert that selling stablecoin is necessary to "generate liquidity" and that creditors would expect a cryptocurrency business like the Debtors to sell stablecoin in the ordinary course of business to fund operations.  *Id*. ¶¶ 10-11.  The Debtors provided no evidence to support their request.

---

[4]    Generally, the issuer of collateralized stablecoin maintains a reserve of fiat currency, precious metals, or other security or commodities that support a 1:1 value of the coin to the reference fiat currency or other reserved asset, or in the case of stablecoin collateralized by cryptocurrency 150% of the value of the coin.  By contrast, algorithmic stablecoins typically are not supported by an asset reserve; instead, an algorithm limits the supply and demand of the stablecoin, typically by a relationship with a related cryptocurrency that is bought and sold to maintain the algorithmic stablecoin at a specified value.  As one example, TerraUSD is an algorithmic stablecoin whose value imploded in the spring of 2022 based upon the algorithm's failure to maintain TerraUSD's value, which also caused tens of millions of dollars in losses for the Debtors.  *See* First Day Decl. ¶ 112.

## Objection

### I.    The Debtors May Not Sell Stablecoin That Is Not Estate Property.

6.    The Court should deny the Stablecoin Sale Motion at this time because the Debtors have not established that the stablecoin they seek to sell is estate property.  At the outset of these cases, the Debtors conceded that the ownership of the cryptocurrency assets held by the debtors is disputed.  *See* First Day Hr'g Presentation at 3.  Various creditors and state regulators have objected to the Stablecoin Sale Motion and several creditors have asserted an ownership interest in the stablecoin.[5]

7.    Section 363 of the Bankruptcy Code only permits a Debtor to "use, sell, or lease . . . ***property of the estate***."  11 U.S.C. §§ 363(b)-(c) (emphasis added).  The question of whether the Debtors actually own the assets they seek to sell is, therefore, a "'threshold question'" that must be resolved before a sale is approved.  *In re Grubb & Ellis*, No. 12–10685 (MG), 2012 WL 1036071, at *6 (Bankr. S.D.N.Y. Mar. 27, 2012), *aff'd*, 523 B.R. 423 (S.D.N.Y. 2014) (quoting *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001)).  "[I]mplicit within the statutory grant of authority to sell property under section 363 is the requirement that the estate have an interest in the property to be sold."  *In re Eastman Kodak Co.*, No. 12-10202 (ALG), 2012 WL 2255719, at *3 (Bankr. S.D.N.Y. June 15, 2012).  Put simply, a debtor cannot sell another

---

[5]    *E.g., Objection to the Proposed Sale of Stablecoins by Celsius* [Docket No. 853]; *Objection to the Debtors' Motion Permitting the Sale of Stablecoins* [Docket No. 901]; *Objection of the Texas State Securities Board and the Texas Department of Banking to Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Docket No. 922]; *Objection of the Vermont Department of Financial Regulation to the Debtors' Motion to Sell Stablecoin in the Ordinary Course and for Related Relief* [Docket No. 925]; *State of Wisconsin's Joinder to Objections to the Debtors' Motion to Sell Stablecoin Filed By Texas and Vermont* [Docket No. 967]; *Víctor Ubierna De Las Heras Joinder To Objection to the Debtors' Motion to Sell Stablecoin* [Docket No. 970]; *State of Washington's Joinder to Objections to the Debtors' Motion to Sell Stablecoin* [Docket No. 1085]; *see also Limited Omnibus Objection of the United States Trustee to: (i) the Debtors' Motion Seeking Entry of an Order Authorizing the Debtors to Reopen Withdrawals for Certain Customers With Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (ii) Motion Seeking Entry of an Order Permitting the Sale of Stablecoin in the Ordinary Course* [Docket No. 933].

entity's assets.  *E.g.*, *In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997) (dismissing appeal as equitably moot but recognizing that a "sale of property outside the scope of th[e] estate" may have been "erroneously authorized"); *In re Grubb & Ellis*, 2012 WL 1036071, at *6 ("In the context of a 363 sale, a bankruptcy court may not approve the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property").

8.  The Debtors have not met their burden to demonstrate that the stablecoin that they seek to sell is property of the estate.  Indeed, the Debtors have not taken any steps to adjudicate whether stablecoin or other cryptocurrency held in the Earn or Borrow program constitutes estate property in the three-plus months since the commencement of these cases.  Rather, they appear to argue that the stablecoin was generated from their postpetition activity and is therefore property of the estate.  Stablecoin Sale Motion, ¶ 14.  But that assertion is not supported by facts, and certainly none proven by the Debtors with admissible evidence.   The Stablecoin Sale Motion does not provide any reasoned basis for the Court to resolve the threshold question of whether the stablecoin the Debtors seek to sell is estate property that may be sold under section 363.  *In re Grubb & Ellis*, 2012 WL 1036071, at *6.

9.  Indeed, the Debtors appear ready to determine whether cryptocurrency assets that were transferred by account holders to the Debtors to participate in the Earn or Borrow program are property of the estate through the Stablecoin Sale Motion, which purports to request an ordinary course of business finding from this Court only out of an abundance of caution.  *See, e.g., Debtors' Omnibus Reply to Objections to Bidding Procedures Motion* [Docket No. 1109] ¶ 3; Stablecoin Sale Motion ¶ 12.  It is inappropriate to use a backdoor ruling with no evidence to potentially create law of the case, particularly with respect to an issue of this importance.  Further, introducing evidence (which should have been submitted with the Stablecoin Sale Motion) on reply is not

appropriate and does not provide parties with a sufficient opportunity to review and potentially contest that evidence and argument.  To the extent the Debtors wish to obtain a "law of the case" ruling that assets transferred as part of the Earn or Borrow program are property of the estate, they must do so through the appropriate procedural mechanisms on adequate notice (which may be done within the current schedule approved by the Court in connection with the bid procedures). *E.g.*, *In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997) (reversing approval of sale because debtors did not provide "creditors and other interested parties" sufficient notice of the proposed sale and the reasons supporting the sale or "the opportunity for a hearing if they object[ed]"); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that a debtor "carries the burden of demonstrating" with "evidence" that a proposed sale of estate property satisfies section 363's requirements).

10.     The Court should therefore deny the Stablecoin Sale Motion if the Debtors seek to proceed with the hearing currently scheduled for November 1, 2022, and should defer consideration of the Stablecoin Sale Motion until such time as the Debtors have set forth their full evidentiary support and the Committee and other parties have had sufficient time to consider such evidence (and, if appropriate, object).

## II.     The Debtors May Not Sell Stablecoin Without Adequately Protecting Account Holders.

11.     There is no pressing need to sell stablecoin.  As disclosed in the Debtors' budget report and cash forecast, the Debtors anticipate that they will have ample liquidity (exceeding $100 million in baseline liquidity) through at least the end of December 2022.  *See* Docket No. 1111 at 1.  Based on the Debtors' current cash burn, it does not appear that the Debtors will breach their "minimum cash balance" of $20 million until at least the spring of 2023.  *Id.*  The Debtors already have means (and Court authority) to generate liquidity by selling mined Bitcoin and *de minimis*

assets.  *See Mined Bitcoin Order* [Docket No. 514] ¶ 2; *De Minimis Asset Sales Order* [Docket No. 692] ¶¶ 2-3.  The Debtors have not explained why selling stablecoin at this time is necessary in light of their current cash forecast and these alternative liquidity-generating opportunities.

12.     To the extent the Debtors demonstrate an immediate need for liquidity and argue that they need to sell stablecoin at this time, they should be required to provide potentially affected account holders with adequate protection in the event that the Court determines the stablecoin is their property or that account holders otherwise have an interest in the property being sold.  Section 363(e) of the Bankruptcy Code provides that, if an entity "has an interest in property" that is "proposed to be used, sold, or leased," the court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  While the Bankruptcy Code does not define "adequate protection," adequate protection is meant to compensate creditors for any diminution in value of their interest in the property being used.  *Bluebird Partners, L.P. v. First Fid. Bank, N.A. New Jersey*, 85 F.3d 970, 972 (2d Cir. 1996).  Courts have significant discretion to fashion appropriate adequate protection for creditors, which may take the form of "cash payments, a lien, or such other relief as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 257 (2d Cir. 2010); *In re Sears Holdings Corp.*, No. 20-3343, 2022 WL 7772911, at *2 (2d Cir. Oct. 14, 2022) (describing adequate protection package that included replacement liens and potential claims under section 507(b), which provides creditors superpriority administrative expense claims if their adequate protection package fails to protect them against the diminution in value of their interest in the debtor's property).

13.     Creditors are entitled to adequate protection if they have an "interest" in the specific property that a debtor seeks to sell.  *Id.*  Courts define an "interest" broadly to include any property

right that gives rise to a secured claim against the debtor. *E.g.*, *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) (noting that an "interest" in property includes, but is not limited to "such concepts as 'fee ownership,' 'life estate[s],' 'co-ownership,' and 'security interest[s]'"); *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 199 (Bankr. S.D.N.Y. 2016) ("a secured creditor's interest in a debtor's property is measured" for purposes of adequate protection "as the value of the collateral securing the debtor's obligations to such creditor").

14.     Here, the Debtors have not demonstrated they have more than a current possessory interest in the stablecoin.  To the extent the Court authorizes the Debtors to sell stablecoin prior to the final adjudication of the Debtors' and account holders' respective ownership rights in the stablecoin, any such sale should be conditioned on the Debtors adequately protecting the account holders' interests (to the extent the account holders have interests in the stablecoin) by granting the account holders liens on unencumbered assets in an aggregate amount equal to any dollar-for-dollar Diminution in Value of the account holders' interests (if any) in stablecoin.  If the stablecoin is sold and the Court later determines that the stablecoin was not property of the account holders, then there would have been no Diminution in Value of the accounts holders' interests in the stablecoin, and the adequate protection liens would be valued at $0.

III.     **The Court Should Incorporate Additional Procedural and Notice Requirements in Any Order Granting the Stablecoin Sale Motion.**

15.     Finally, to the extent that the Court is inclined to grant the Stablecoin Sale Motion, the Committee requests that the Court require the Debtors to comply with additional procedural and notice requirements and account holder protections, which are designed to ensure that any sales of stablecoin are in the best interests of the Debtors' estates.  Specifically, the Committee requests that the Court direct that the following revisions be made to any order granting the

Stablecoin Sale Motion:

- The Debtors shall not be authorized to sell or exchange any stablecoin unless the Debtors' liquidity, measured on a consolidated basis, is below their $20 million target minimum liquidity threshold, and the Debtors shall only be permitted to sell stablecoin sufficient to bring their liquidity, measured on a consolidated basis, to $25 million.

- The Debtors shall provide the Committee's professionals with 3 calendar days' notice prior to selling or exchanging any stablecoin, which notice may be provided by email and shall specify: (i) what kind of stablecoin the Debtors intend to sell or exchange; (ii) the quantity of stablecoin the Debtors propose to sell or exchange; (iii) which entity purportedly owns the stablecoin that the Debtors propose to sell or exchange; (iv) how and where the Debtors intend to sell or exchange such stablecoin; and (v) how the Debtors intend to use the proceeds from the sale or exchange of such stablecoin.

- If the Committee objects to the sale or exchange of any stablecoin within the 3 calendar day notice period (which objection may be communicated over email), the Committee and the Debtors shall negotiate in good faith to resolve the Committee's objection consensually.  If the parties fail to resolve the Committee's objection within 2 calendar days after the Committee provides notice of its objection, the Debtors may seek the Court's approval of the sale or exchange after notice and a hearing (which may be on an expedited basis if approved by the Court).  The Debtors shall not be permitted to proceed with the sale or exchange unless and until the Debtors and the Committee consensually resolve the Committee's objection or the Court enters an order approving the sale or exchange.

- The Debtors shall not be permitted to sell or exchange stablecoin once the aggregate value of all stablecoin sold or exchanged equals $20 million absent further order of the Court.

- All proceeds from the sale or exchange of stablecoin shall be subject to the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 1152] and any other order of the Court relating to the subject matter thereof, including any restrictions on transferring such proceeds to Celsius Mining LLC.

- Nothing in the Order shall constitute a finding or be deemed to be an admission of any fact or legal conclusion with respect to the ownership of the stablecoin, assets held in Custody accounts, assets held in "Withhold" accounts, or any assets that were transferred to the Debtors as part of the Debtors' Earn program.

A revised proposed order incorporating the above-described changes is attached hereto as **Exhibit A**.

**Reservation of Rights**

16.    The Committee reserves all of its rights to supplement or amend this Objection, raise additional issues regarding the Stablecoin Sale Motion, and present evidence at the hearing. For the avoidance of any doubt, to the extent that the Court denies the Motion or the Debtors or any other party seek to reschedule the hearing on the Motion, the Committee reserves all rights to take discovery related to the Motion and to raise additional objections to the Motion.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court deny the relief requested in the Stablecoin Sale Motion, or, alternatively, direct that the order granting the Stablecoin Sale Motion be modified in accordance with this Objection, and grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

Dated:   October 25, 2022                    Respectfully submitted,
         New York, New York

                                             */s/ David M. Turetsky*
                                             **WHITE & CASE LLP**
                                             David M. Turetsky
                                             Keith H. Wofford
                                             Samuel P. Hershey
                                             1221 Avenue of the Americas
                                             New York, New York 10020
                                             Telephone: (212) 819-8200
                                             Facsimile:  (212) 354-8113
                                             Email:  david.turetsky@whitecase.com
                                                     kwofford@whitecase.com
                                                     sam.hershey@whitecase.com

                                             – and –

                                             **WHITE & CASE LLP**
                                             Michael C. Andolina (admitted *pro hac vice*)
                                             Gregory F. Pesce (admitted *pro hac vice*)
                                             111 South Wacker Drive, Suite 5100
                                             Chicago, Illinois 60606
                                             Telephone: (312) 881-5400
                                             Facsimile:  (312) 881-5450
                                             Email:  mandolina@whitecase.com
                                                     gregory.pesce@whitecase.com

                                             – and –

                                             **WHITE & CASE LLP**
                                             Aaron E. Colodny (admitted *pro hac vice*)
                                             555 South Flower Street, Suite 2700
                                             Los Angeles, California 90071
                                             Telephone: (213) 620-7700
                                             Facsimile:  (213) 452-2329
                                             Email:  aaron.colodny@whitecase.com

                                             *Counsel to the Official Committee of
                                             Unsecured Creditors*

**<u>Exhibit A</u>**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————
                                                      )
In re:                                                )    Chapter 11
                                                      )
                                                      )
CELSIUS NETWORK LLC, *et al.*,[1]                     )    Case No. 22-10964 (MG)
                                                      )
                              Debtors.                )    (Jointly Administered)
                                                      )
———————————————————————————

**ORDER (I) PERMITTING SALE OF THE DEBTORS' STABLECOIN**
**IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order"), (a) permitting the Debtors to

continue to sell stablecoin consistent with past practice and in the ordinary course of the Debtors'

business and (b) granting related relief, all as more fully set forth in the Motion; and upon the First

Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court for

the Southern District of New York, entered February 1, 2012; and this Court having the power to

enter a final order consistent with Article III of the United States Constitution; and this Court

having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and this Court having found that the relief requested in the Motion is in the best interests of

the Debtors' estates, their creditors, and other parties in interest; and this Court having found that

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under

the circumstances and no other notice need be provided; and this Court having reviewed the

Motion and the objections filed thereto, and having heard the statements in support of and in

opposition to the relief requested therein at a hearing (if any) before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

Hearing (if any) establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized,

but not directed, to sell and/or exchange any stablecoins that the Debtors held on the Petition Date,

on a postpetition basis consistent with prepetition practices and in the ordinary course of business,

subject to the following conditions:

    a.    The Debtors shall not be authorized to sell or exchange any stablecoins unless the Debtors' liquidity, measured on a consolidated basis, is below their $20 million target minimum liquidity threshold, and the Debtors shall only be permitted to sell stablecoins sufficient to bring their liquidity, measured on a consolidated basis, to $25 million.

    b.    The Debtors shall provide the Committee's professionals with 3 calendar days' notice prior to selling or exchanging any stablecoins, which notice may be provided by email and shall specify: (i) what kind of stablecoins the Debtors intend to sell or exchange; (ii) the quantity of stablecoins the Debtors propose to sell or exchange; (iii) which entity purportedly owns the stablecoins that the Debtors propose to sell or exchange; (iv) how and where the Debtors intend to sell or exchange such stablecoins; and (v) how the Debtors intend to use the proceeds from the sale or exchange of such stablecoins.

    c.    If the Committee objects to the sale or exchange of any stablecoins within the 3 calendar day notice period (which objection may be communicated over email), the Committee and the Debtors shall negotiate in good faith to resolve the Committee's objection consensually.  If the parties fail to resolve the Committee's objection within 2 calendar days after the Committee provides notice of its objection, the Debtors may seek the Court's approval of the sale or exchange after notice and a hearing (which may be on an expedited basis if approved by the Court).  The Debtors shall not be permitted to proceed with the

sale or exchange unless and until the Debtors and the Committee consensually resolve the Committee's objection or the Court enters an order approving the sale or exchange.

d.   The Debtors shall not be permitted to sell or exchange stablecoins once the aggregate value of all stablecoins sold or exchanged equals $20 million absent further order of the Court.

3.      Adequate Protection.  As adequate protection for any interests of the account holders with an interest in stablecoins (the "**Stablecoin Holders**"), pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition for the Debtors' sale of such stablecoins, each of the Stablecoin Holders is hereby granted the following, to the extent the Stablecoin Holders have an interest in stablecoins (collectively, the "**Adequate Protection**"), effective as of the Petition Date:

(a)      Adequate Protection Liens.  Solely to the extent of, and in an aggregate amount equal to, any diminution in value of any Stablecoin Holder's interests (if any) in stablecoin, on a dollar-for-dollar basis, from and after the Petition Date, arising from the Debtors' sale of such stablecoin (any such diminution, a "**Diminution in Value**"), each Stablecoin Holder is hereby granted, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable first priority lien on, and security interest in (collectively, the "**Adequate Protection Liens**"), the unencumbered property of the estate of each Debtor that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and non-avoidable liens in existence as of the Petition Date that are perfected after the Petition Date, as permitted by section 546(b) of the Bankruptcy Code.

(b)      Effectiveness of Adequate Protection Liens.  This Order shall be sufficient and conclusive evidence of the validity, perfection, enforceability and priority of the Adequate Protection Liens without the necessity of filing or recording any financing

statement, deed of trust, mortgage, security agreement, notice of liens, or other similar instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, any Stablecoin Holder may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  Each Stablecoin Holder, in its sole discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.

4.      Notwithstanding anything to the contrary herein, all proceeds from the Debtors' sale or exchange of stablecoins shall be subject to the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to Postpetition Intercompany Balances, and (III) Granting Related Relief* [Docket No. 1152] and any other order of the Court relating to the subject matter thereof, including any restrictions on transferring the proceeds of the sale or exchange of stablecoins to Celsius Mining LLC.

4

5.      Notwithstanding anything to the contrary in this Order, nothing in this Order shall constitute a finding or be deemed to be an admission of any fact or legal conclusion with respect to the ownership of the stablecoins, assets held in Custody accounts, assets held in "Withhold" accounts, or any assets that were transferred to the Debtors as part of the Debtors' Earn program.

6.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission by the Debtors or the Committee as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' or the Committee's respective rights to dispute any particular claim on any grounds; (c) a promise or requirement by the Debtors or any third party (including any member of the Committee) to pay any particular claim; (d) an implication or admission by the Debtors or the Committee that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization by any Debtor to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or the Committee's respective rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or the Committee that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and the Committee each expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  Any payment made pursuant to this Order is not intended and should not be construed as an admission by the Debtors or the Committee as to the validity of any particular claim or a waiver of the Debtors' and the Committee's respective rights to subsequently dispute such claim.

7.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

8.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Redline**

*[Different first page link-to-previous setting changed from off in original to on in modified.]*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) PERMITTING SALE OF THE DEBTORS' STABLECOIN**
**IN THE ORDINARY COURSE AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) permitting the Debtors to continue to sell stablecoin consistent with past practice and in the ordinary course of the Debtors' business and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*[Different first page link-to-previous setting changed from off in original to on in modified.]*

hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and the objections filed thereto, and having heard the statements in support of and in opposition to the relief requested therein at a hearing (if any) before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing (if any) establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.       The Motion is granted as set forth herein.

2.       Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors are authorized, but not directed, to sell and/or exchange any stablecoin, whether currentlystablecoins that the Debtors held or received inon the futurePetition Date, on a postpetition basis consistent with prepetition practices and in the ordinary course of business without further notice and hearing; provided that the Debtors shall not sell any stablecoins necessary to satisfy Custody Assets and/or Withhold Assets pending further order of the Court., subject to the following conditions:

    a.   The Debtors shall not be authorized to sell or exchange any stablecoins unless the Debtors' liquidity, measured on a consolidated basis, is below their $20 million target minimum liquidity threshold, and the Debtors shall only be permitted to sell stablecoins sufficient to bring their liquidity, measured on a consolidated basis, to $25 million.

    b.   The Debtors shall provide the Committee's professionals with 3 calendar days' notice prior to selling or exchanging any stablecoins, which notice may be provided by email and shall specify: (i) what kind of stablecoins the Debtors intend to sell or exchange; (ii) the quantity of stablecoins the Debtors propose to sell or exchange; (iii) which entity purportedly owns the stablecoins that the Debtors propose to sell or exchange; (iv) how and where the Debtors intend to sell or exchange such stablecoins; and (v) how the Debtors intend to use the proceeds from the sale or exchange of such stablecoins.

    c.   If the Committee objects to the sale or exchange of any stablecoins within the 3 calendar day notice period (which objection may be communicated over email), the Committee and the Debtors shall negotiate in good faith to resolve

3

the Committee's objection consensually.  If the parties fail to resolve the Committee's objection within 2 calendar days after the Committee provides notice of its objection, the Debtors may seek the Court's approval of the sale or exchange after notice and a hearing (which may be on an expedited basis if approved by the Court).  The Debtors shall not be permitted to proceed with the sale or exchange unless and until the Debtors and the Committee consensually resolve the Committee's objection or the Court enters an order approving the sale or exchange.

d.   The Debtors shall not be permitted to sell or exchange stablecoins once the aggregate value of all stablecoins sold or exchanged equals $20 million absent further order of the Court.

3.    Adequate Protection.  As adequate protection for any interests of the account holders with an interest in stablecoins (the "**Stablecoin Holders**"), pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition for the Debtors' sale of such stablecoins, each of the Stablecoin Holders is hereby granted the following, to the extent the Stablecoin Holders have an interest in stablecoins (collectively, the "**Adequate Protection**"), effective as of the Petition Date:

(a)    Adequate Protection Liens.  Solely to the extent of, and in an aggregate amount equal to, any diminution in value of any Stablecoin Holder's interests (if any) in stablecoin, on a dollar-for-dollar basis, from and after the Petition Date, arising from the Debtors' sale of such stablecoin (any such diminution, a "**Diminution in Value**"), each Stablecoin Holder is hereby granted, pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable first priority lien on, and security interest in (collectively, the "**Adequate Protection Liens**"), the unencumbered property of the estate of each Debtor that is not subject to (x) valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or (y) valid and non-avoidable liens in existence as of the Petition

4

Date that are perfected after the Petition Date, as permitted by section 546(b) of the Bankruptcy Code.

(b)      Effectiveness of Adequate Protection Liens.  This Order shall be sufficient and conclusive evidence of the validity, perfection, enforceability and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of liens, or other similar instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, any Stablecoin Holder may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments or documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  Each Stablecoin Holder, in its sole discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.

4.      3.  Notwithstanding anything to the contrary herein, uponall proceeds from the Debtors' sale of stablecoin, such cash proceeds areor exchange of stablecoins shall be subject to

5

the ~~applicable provisions of the *Third Interim*~~*Final* Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status to ~~postpetition~~*Postpetition* Intercompany Balances, and (III) Granting Related Relief [Docket No. ~~699~~1152] and any other order of the Court relating to the subject matter ~~hereof~~thereof, including any restrictions on transferring the proceeds of the sale or exchange of stablecoins to Celsius Mining LLC.

5.    Notwithstanding anything to the contrary in this Order, nothing in this Order shall constitute a finding or be deemed to be an admission of any fact or legal conclusion with respect to the ownership of the stablecoins, assets held in Custody accounts, assets held in "Withhold" accounts, or any assets that were transferred to the Debtors as part of the Debtors' Earn program.

6.    ~~4.~~Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission by the Debtors or the Committee as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' or the Committee's respective rights to dispute any particular claim on any grounds; (c) a promise or requirement by the Debtors or any third party (including any member of the Committee) to pay any particular claim; (d) an implication or admission by the Debtors or the Committee that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization by any Debtor to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or the Committee's respective rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or the Committee that any liens (contractual, common law, statutory,

6

or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and the Committee each expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission ~~as~~by the Debtors or the Committee as to the validity of any particular claim or a waiver of the Debtors' and the Committee's respective rights to subsequently dispute such claim.

7. ~~5.~~ The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

8. ~~6.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9. ~~7.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10. ~~8.~~ This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2022

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE